IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:15-cv-01974-WJM-KLM

DAVID MUELLER,

      Plaintiff,

v.

TAYLOR SWIFT;
FRANK BELL;
SCOTT BORCHETTA;
ANDREA SWIFT a/k/a ANDREA FINLAY;
SCOTT SWIFT; and JOHN DOES 1-5,

      Defendants.

---

**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)**

---

Defendant Scott Borchetta, through his undersigned counsel, submits this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).  The Amended Complaint (Doc. 2) should be dismissed as alleged against Mr. Borchetta for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

### I. COMPLIANCE WITH WJM REVISED PRACTICE STANDARD III.D.1

Undersigned counsel conferred with counsel for plaintiff on October 27 and 28, 2015 regarding this Motion, the relief requested herein, and the grounds therefore. Plaintiff opposes the requested relief.

## II. INTRODUCTION

The Court should dismiss the Amended Complaint as the allegations relate to Scott Borchetta. Plaintiff ("Mueller") alleges that he was terminated from his position as a disc jockey following an incident at a Taylor Swift concert. Mueller bases his claims against Mr. Borchetta on a single telephone call. In doing so, Mueller expects the Court to infer from this single allegation that he has pleaded sufficient facts to meet the requisite elements of two tort claims.

The Court should dismiss the Amended Complaint for two reasons. First, the single telephone call of which Mueller complains is not sufficient for the Court to justify the exercise of personal jurisdiction over Mr. Borchetta. The Amended Complaint fails to plead the minimum jurisdictional requirements to reflect sufficient minimum contacts within the State of Colorado to justify the exercise of personal jurisdiction over Mr. Borchetta.

Second, Mueller fails to state a claim upon which relief can be granted against Mr. Borchetta. Mueller fails to plead essential elements for his claim against Mr. Borchetta of intentional interference with contractual obligations. Specifically, Mueller does not allege that Mr. Borchetta knew of the employment contract, that he intended for Mueller's employer to breach his employment agreement, that Mr. Borchetta's actions made it impossible for Mueller to perform, or that Mueller's former employer actually breached the employment agreement. Mueller also fails to state any facts regarding how Mr. Borchetta prevented his current or future employers from continuing/entering into a business relationship with Mueller, and as a result, fails to meet the legal requirements for stating a claim for tortious interference with prospective

business relations. Accordingly, the Court should dismiss Mueller's Amended Complaint against Mr. Borchetta.

### III. RELEVANT FACTUAL ALLEGATIONS

The following allegations are accepted as true only for purposes of this Motion to Dismiss. Mueller is a resident of Colorado who worked in the radio industry for many years. (Am. Compl., Doc. 2 ¶ 10). Mr. Borchetta is a resident of Tennessee and is the President of Big Machine Label Group, where Defendant Taylor Swift ("Swift") is one of many recording artists. (*Id.* at ¶¶ 4, 28, 32).

In June 2013, Mueller attended a backstage meet-and-greet at Ms. Swift's concert in Denver, Colorado. (*Id.* at ¶ 14). Mueller allegedly engaged in inappropriate contact with Ms. Swift during the meet-and-greet, which resulted in conversations with several members of Ms. Swift's security team.  (*Id.* at ¶¶ 26-27). Defendant Frank Bell, a member of Ms. Swift's management team, allegedly complained to Mueller's supervisor, Eddie Haskell ("Haskell"), regarding Mueller's alleged interaction with Swift during the meet-and-greet. (*Id.* at ¶ 30).

Upon hearing this information, Haskell suspended Mueller pending investigation of the allegations. (*Id.* at ¶ 31). After Haskell made and informed Mueller of this decision, Mr. Borchetta called Haskell to voice concerns over the allegations and explain the emotional condition of Ms. Swift's mother, Defendant Andrea Swift. (*Id.* at ¶ 32). Haskell informed Mr. Borchetta that Mueller was already suspended. (*Id.*).

Numerous conversations between members of Swift's management team and Mueller's supervisors took place over the next two days; none of which involved or were initiated by Mr. Borchetta. (*Id.* at ¶¶ 33-36). KYGO terminated the employment contract

between Mueller and Lincoln Financial Media Company of Colorado ("Lincoln") on June 4, 2013. (*Id.* at ¶ 37). That contract, which was executed in January 2013, provided Mueller a base salary of $150,000 for a two-year term. (*Id.* at ¶ 12).

## IV. LEGAL ANALYSIS

### A.    This Court lacks personal jurisdiction over Mr. Borchetta.

The only action Mueller alleges as the basis for his claims against Mr. Borchetta, and indeed, the only time Mr. Borchetta is ever mentioned in the Amended Complaint, is with respect to the single telephone call Mr. Borchetta made to Haskell. The allegations in the Amended Complaint are insufficient to establish minimum contacts with Colorado sufficient to satisfy the requirements of due process and the long-arm statute for the exercise of specific personal jurisdiction.

"To determine whether a court has personal jurisdiction in a diversity case such as this one, a plaintiff must show (1) that jurisdiction is proper under the forum state's long-arm statute; and (2) that exercise of personal jurisdiction over the defendant comports with due process." *Beyer v. Camex Equip. Sales & Rentals, Inc.*, 2011 U.S. Dist. LEXIS 73573, *6-7, 2011 WL 2670588 (D. Colo. July 8, 2011) (Martínez, J.) (citing *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir. 1990)).   Under Colorado's long-arm statute, this Court "need only address the constitutional question of whether the exercise of personal jurisdiction over [Mr. Borchetta] comports with due process." *Id.* at *7 (citation omitted).

Personal jurisdiction comports with due process when: (1) a non-resident defendant purposefully avails itself of the benefits and protections of the forum state via minimum contacts; and (2) a court's exercise of personal jurisdiction over such a

defendant would not offend traditional notions of fair play and substantial justice.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (same).  The "minimum contacts" test may be met in two ways: general jurisdiction or specific jurisdiction.  *Beyer*, 2011 U.S. Dist. LEXIS 73573 at *8-9.

"A court has general jurisdiction if the defendant conducted continuous and systematic activities that are of a general business nature in the forum state." *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1194 (Colo. 2005), *as modified on denial of reh'g* (2005). Mueller does not allege that Mr. Borchetta conducted "continuous and systematic activities" of a general business nature in Colorado, thus this Court may not exercise general personal jurisdiction over Mr. Borchetta.

"A court may assert specific jurisdiction if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Beyer*, 2011 U.S. Dist. LEXIS 73573 at *9-10 (citation and internal quotations omitted). The proper question, under the due process 'minimum contacts' analysis regarding exercise of personal jurisdiction over a nonresident defendant, "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Giduck v. Niblett*, 2014 COA 86, ¶ 16 (Colo. App. July 3, 2014) (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014)). "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* Mueller's allegations against Mr. Borchetta are insufficient to establish specific jurisdiction over him. Mueller does not allege that Mr. Borchetta's conduct connects him to the forum state in a *meaningful*

way, and Mr. Borchetta's business relationship with Ms. Swift[1] is not enough to haul him into the jurisdiction of this Court.

Furthermore, Mr. Borchetta's single phone call to a representative of KYGO is not enough. Due process requirements for the exercise of personal jurisdiction over a nonresident defendant "look[ ] to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Id.* (citation omitted). Colorado courts, among others, have adopted a three-part test to determine whether the requisite minimum contacts exist in circumstances such as those presented here, *i.e.* where a single act is claimed as the basis of jurisdiction. *Beckman v. Carlson,* 553 F. Supp. 1049, 1051 (D. Colo. 1983) (Dismissing case for lack of personal jurisdiction where, although "defendants may have caused important consequences to persons in Colorado, they did not have any substantial contacts with Colorado."). The test provides as follows:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* (citing *Waterval v. District Court,* 620 P.2d 5 (Colo.1980)).

---

[1] Mueller alleges a claim under the theory of respondeat superior on the grounds that Mr. Borchetta is an employee of Ms. Swift. However, Mueller admits that Mr. Borchetta is not an employee of Ms. Swift but is instead an independent employee of another company with which Ms. Swift transacts business. (Am. Compl., Doc. 2 at ¶ 32.) Accordingly, any claim of liability against Mr. Borchetta giving rise to Mueller's claim based in respondeat superior against Ms. Swift should also be dismissed and does not provide a basis for personal jurisdiction.

The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state," and when the defendant's conduct with the forum state is such that he "should reasonably anticipate being haled (sic) into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (quoting *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 297 (1980)). While a single act can in certain circumstances support the exercise of specific personal jurisdiction, it does not do so in this case. The rule in the Tenth Circuit provides that "phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Klein Frank, P.C. v. Girards*, 932 F. Supp. 2d 1203, 1214 (D. Colo. 2013) (quoting *Far W. Capital Inc. v. Towne,* 46 F.3d 1071, 1077 (10th Cir.1995)). Here, Mr. Borchetta was not present in Colorado when the alleged events transpired, nor did he engage in significant contacts with those present in the forum state such that he could reasonably anticipate being hauled into court in Colorado. Rather, Mr. Borchetta made one single telephone call where he stated opinions and commented on the emotional state of Ms. Swift's mother. (Am. Compl., Doc. 2 at ¶ 32.) Mr. Borchetta's single phone call is not a "substantial connection" within the forum state to justify the exercise of personal jurisdiction over him in Colorado.

As to the second factor, whether plaintiff's claims arise from the defendant's activities in the forum, here too Mueller's Amended Complaint falls short. Because the Amended Complaint fails to specify the commission of any tortious act by Mr. Borchetta, there is no conduct from which a cause of action based in tort could arise, such that Mr. Borchetta cannot be submitted to the jurisdiction of this Court under Colorado's long-

arm statute. Colo. Rev. Stat. § 13-1-124 (requiring the commission of a tortious act *within* the state). Mr. Borchetta was never personally in Colorado during the time of the events alleged in the Amended Complaint. Again, Mueller has not pleaded any connection between Mr. Borchetta's phone call to Haskell and KYGO's termination of his employment contract, and any attempt to do so would require pure speculation. Mueller's allegations are thus legally insufficient as a matter of law.

Finally, as to the third factor, the question is whether exercising personal jurisdiction over Mr. Borchetta would be reasonable in light of his activities or the consequences from his activities. The United States Supreme Court has held that asserting personal jurisdiction is not reasonable where the "nature and quality and the circumstances of their commission create only an 'attenuated' affiliation with the forum." *Burger King Corp.*, 471 U.S. at 475 n.18. That is certainly the case here. Mr. Borchetta is an out-of-state defendant who has not availed himself of the benefits and protections of Colorado law such that he should be subject to the burden of defending litigation here. Mr. Borchetta's single phone call to a KYGO representative in Colorado is not enough to meet the minimum jurisdictional requirements as a matter of law. This action should be dismissed against Mr. Borchetta for lack of personal jurisdiction.

**B.      Mueller fails to state a claim upon which relief can be granted for intentional interference with contractual obligations.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the

allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Consideration of a motion to dismiss pursuant to Rule 12(b)(6) requires a two-step analysis. First, this Court must identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Second, this Court must consider the well-pleaded factual allegations to "determine whether they plausibly give rise to an entitlement to relief." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal punctuation omitted). If the factual allegations fail to state a claim that is plausible on its face and not merely conceivable, dismissal is the appropriate remedy. *Twombly*, 550 U.S. at 570.

A federal court sitting in diversity jurisdiction applies the law of the forum state, in this case, the law of Colorado. *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994); (*see also* Notice of Removal, Doc. 1 at 2, ¶ 2 (establishing diversity jurisdiction).). In Colorado,

> To state a claim for intentional interference with contractual relations or prospective business advantage, a plaintiff must allege facts in support of the following elements: (1) the existence of a valid contract or reasonable prospect of having a business relationship; (2) that the defendant knew of the contract or prospective relationship; (3) the defendant intended to induce a breach of the contract or interfere with the prospective business relationship; (4) defendants engaged in conduct which produced a breach of contract or prevented the plaintiff from acquiring or continuing a prospective business relationship; (5) the interference was improper; and (6) the plaintiff suffered damages.

*Zimmer Spine, Inc. v. EBI, LLC*, 2011 U.S. Dist. LEXIS 103629, *6-7, 2011 WL 4089535 (D. Colo. Sept. 14, 2011) (citing *Memorial Gardens, Inc. v. Olympian Sales & Mgmt.*

*Consultants, Inc.*, 690 P.2d 207, 210 (Colo. 1984); *see also Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995)). "[T]ortious interference with contractual rights to be actionable must involve a wrongful act or a legal act performed in an unlawful manner." *Int'l Assoc. of Machinists v. Southard*, 459 P.2d 570, 572 (1969). To determine whether the alleged tortfeasor's action was "improper," Colorado courts evaluate factors including the nature of the alleged conduct, the alleged tortfeasor's motive, and the interests of society in protecting freedom of action by the alleged tortfeasor. *Memorial Gardens*, 690 P.2d at 210 (citing Restatement (Second) of Torts § 767).

Mueller alleges only one act on behalf of Mr. Borchetta and expects the Court to infer that Mueller has met all of the requisite elements giving rise to individual liability for two separate torts based on Mr. Borchetta's single act. (Am. Compl., Doc. 2 at ¶ 32.) The single time Mueller mentions Mr. Borchetta in the Amended Complaint is with respect to the phone call Mr. Borchetta made to Haskell *after* Haskell already suspended Mueller's employment with KYGO. (*Id.*) Mueller concedes that Mr. Borchetta's conduct consisted only of this single communication regarding his concerns over the allegations and a statement about the emotional status of Ms. Swift's mother.

Mueller's allegations regarding Mr. Borchetta are not legally sufficient to state a claim for intentional interference with contract under Colorado law. Mueller fails to plead any allegation plausibly demonstrating Mr. Borchetta knew of a contract between Mueller and KYGO, which is a required element of the claim. Mueller alleges only in conclusory fashion that all defendants "knew or reasonably should have known of the contract." (Am. Compl., Doc. 2 at ¶ 43.) This is the type of conclusory allegation which this Court must reject from its 12(b)(6) analysis under *Twombly/Iqbal. Iqbal*, 556 U.S. at

679. As this tort is intentional, it is imperative that the alleged tortfeasor, here, Mr. Borchetta, "have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract." Restat 2d of Torts, § 766, cmt. i. "[T]he actor does not induce or otherwise intentionally cause [another's failure to perform a contract] if he has no knowledge of the contract." *Id.* On this basis alone, Mueller fails to state a claim upon which relief can be granted as to Mr. Borchetta.[2]

Mueller likewise fails to allege that Mr. Borchetta's phone call somehow was intended to induce KYGO to breach the contract or made it impossible for KYGO to perform any obligation it had under the contract. In fact, Mueller specifically states that Haskell suspended him prior to Haskell's conversation with Mr. Borchetta, and ultimately terminated him after several conversations in which Mr. Borchetta was not involved. (Am. Compl., Doc. 2 at ¶¶ 31, 33-37). "The essential thing is the intent to cause the result. If the actor does not have this intent, his conduct does not subject him to liability under this rule . . . ." Restat 2d of Torts, § 766, cmt. h. Mueller fails to allege with any specificity that Mr. Borchetta somehow intended to interfere with the alleged contract.

Mueller also fails to plead that Mr. Borchetta's conduct was improper. Mueller alleges Mr. Borchetta made a single statement regarding his concerns and Ms. Swift's mother's emotional state. (Am. Compl., Doc. 2 at ¶ 32.) Mueller does not and cannot allege any facts that show Mr. Borchetta's motive in making the call to Haskell was for KYGO to terminate its contract with Mueller. Mueller has not pleaded any connection

---

[2] "In Colorado, employment is rebuttably presumed to be 'at will,' and an employee may be terminated without cause or notice." *Watson v. Pub. Serv. Co.*, 207 P.3d 860, 867-68 (Colo. App. 2008).

between Mr. Borchetta's phone call to Haskell and KYGO's termination of his employment contract, nor can he, as Mr. Borchetta's tangential role in Mueller's allegations is legally insufficient as a matter of law.

Perhaps most importantly, Mueller has not alleged that Mr. Borchetta intended KYGO to breach or that KYGO actually breached the employment agreement when it terminated Mueller's contract. Without an underlying breach of contract, it cannot be said that Mr. Borchetta "induced [KYGO] to breach." Accordingly, all that is left is the claim that Mr. Borchetta "made it impossible" for Mueller to perform. Mueller does not allege that Mr. Borchetta's conduct or speech made it impossible for Mueller to perform his obligations under the employment contract, so there is no viable claim for interference. Mueller's allegations are insufficient to satisfy the elements of an intentional interference claim, and thus he fails to state a plausible claim upon which relief can be granted.[3]

### C. Mueller fails to state a claim upon which relief can be granted for tortious interference with prospective business relations.

Similarly, Mueller's bare allegations against Mr. Borchetta are insufficient to state a claim for tortious interference with prospective business relations as a matter of law.

---

[3] Regarding the respondeat superior claim, as previously stated, Mueller admits that Mr. Borchetta is not an employee of Ms. Swift but is instead an independent employee of another company with which Ms. Swift transacts business. (Am. Compl., Doc. 2 at ¶ 3.) In any event, in Colorado, "an agent acts improperly only when he or she is motivated solely by the desire to harm one of the contracting parties or to interfere in the contractual relations between the parties." *W.O. Brisben Companies, Inc. v. Krystkowiak*, 66 P.3d 133, 137 (Colo. App. 2002) aff'd on other grounds, 90 P.3d 859 (Colo. 2004); *See also Ayon v. Kent Denver Sch.*, No. 12-CV-2546, 2013 WL 1786978, at *5 (D. Colo. Apr. 26, 2013)("[A] plaintiff must, at minimum, plead sufficient facts to show that 'the agent was motivated out of personal animus towards one or both of the contracting parties.'") (citations omitted). Assuming, for purposes of this Motion only, that in making the call to Haskell Mr. Borchetta was in some way acting as Ms. Swift's agent, Mueller does not and cannot plead any facts to demonstrate that Mr. Borchetta was motivated solely by a desire to harm Mueller or out of personal animus towards him or his employer. *Id.*

Under Colorado law, one who intentionally and improperly interferes with another's prospective contractual relation is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation. Restatement (Second) of Torts § 766B (1979); *Purac America Inc. v. Birko Corp.,* No. 14-CV-01669-RBJ, 2015 WL 1598065, at *5 (D. Colo. Apr. 8, 2015).

Claims for interference with contractual relations and prospective business relations require identical elements, "with the exception that an existing contract need not be alleged for interference with prospective business relations." *Zimmer Spine, Inc.*, 2011 U.S. Dist. LEXIS 103629, at *7. "Rather, a plaintiff must show that there was a reasonable likelihood that a contract would have resulted but for the wrongful interference." *Id.* (citation and internal quotations omitted).

Mueller alleges that "Defendants" intentionally interfered with Mueller's existing employment contract and prevented him from realizing prospective opportunities of which they "knew or reasonably should have known." (Am. Compl., Doc. 2 at ¶ 49). Again, these are conclusory allegations which this Court must reject from its 12(b)(6) analysis. *Iqbal*, 556 U.S. at 679. Mueller does not allege facts that can support the proposition that Mr. Borchetta's single phone call either induced KYGO not to continue its relationship with Mueller or caused KYGO to terminate the employment contract. Mueller also fails to plead that the concerns Mr. Borchetta raised over the allegations and the statement he made regarding Ms. Swift's mother prevented KYGO from continuing its business relationship with Mueller, or prevented Mueller from acquiring

other prospective business opportunities. Moreover, the Amended Complaint contains nothing that plausibly connects Mr. Borchetta's actions with the damages Mueller seeks, such that the Court would be required to speculate as to any relation between the two. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has . . . not shown that the pleader is entitled to relief." *Id.* (internal punctuation omitted). The nature of Mr. Borchetta's alleged actions coupled with a lack of improper motive support dismissal of this claim.

Mueller's allegations also fail to satisfy Federal Rule of Civil Procedure 9(b). "Rule 9(b) requires that 'in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *Purac Am. Inc.*, 2015 U.S. Dist. LEXIS 45955, at *19 (internal citations omitted). In the context of a tortious interference claim, the heightened pleading standard Rule 9(b) applies to the fraudulent inducement element of the tortious interference claim. *Id.* Mueller fails to plead how Mr. Borchetta actually prevented KYGO from continuing its relationship with Mueller, or how he caused prospective employers not to enter into a business relationship with Mueller. Moreover, Mueller fails to plead how Mr. Borchetta's sole act could plausibly prevent Mueller from acquiring prospective business opportunities in perpetuity. Thus, Mueller's theory appears to be that Defendants induced KYGO to end its relationship with Mueller by making allegedly false statements relating to Mueller's interaction with Ms. Swift. Specifically, the Amended Complaint alleges that a series of conversations took place between members of Ms. Swift's management team – not Mr. Borchetta – and KYGO after Mueller's suspension and prior to his termination. Accordingly, in alleging this inducement, Mueller must satisfy the requirements of Rule 9(b).

To do so, he must "set forth the who, what, when, where and how of the alleged fraud," or, in other words, "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,* 472 F.3d 702, 726-27 (10th Cir. 2006) (internal citations and quotations omitted). In the present case, however, Mueller fails to allege that Mr. Borchetta made false statements[4] to KYGO or explain how Mr. Borchetta's alleged representations resulted in Mueller being terminated by KYGO. Indeed, the Amended Complaint provides little information about those statements beyond alleging their general content. Mueller's bare accusations require pure speculation to find any relation between Mr. Borchetta's conduct and Mueller's alleged damages. For this reason, the allegations are insufficient under Rule 9(b) in addition to the deficiencies identified previously and should be dismissed.

## V. CONCLUSION

For the foregoing reasons, this Motion to Dismiss should be granted and the Amended Complaint dismissed as alleged against Scott Borchetta. Mr. Borchetta requests attorneys' fees and costs pursuant to C.R.S. § 13-17-201.

---

[4] Tortious interference with prospective business relations is generally directed against conduct, not speech. Mueller fails to allege specific conduct by Borchetta to sufficiently plead a claim under this cause of action. *See Jefferson Cnty. Sch. Dist. No. R–1 v. Moody's Investor's Servs., Inc.,* 175 F.3d 848 (10th Cir. 1999). Moreover, "a plaintiff cannot succeed on a tortious interference claim that is predicated on speech protected by the First Amendment." *Id.* Here, Borchetta's alleged statements are concerns and statements of fact, which are entitled to First Amendment protection, and thus cannot be the premise for Mueller's tortious interference claim.

Respectfully submitted this 28th day of October, 2015.

/s/ John R. Jacobson
John R. Jacobson
Jenna L. Harris
Riley Warnock & Jacobson, LLC
1906 West End Avenue
Nashville, TN 37203
Tel: 615-320-3700
jjacobson@rwjplc.com
jharris@rwjplc.com
*Attorneys for Defendant Scott Borchetta*

/s/ John M. Palmeri
John M. Palmeri
Nicole C. Salamander Irby
GORDON & REES LLP
555 Seventeenth Street, Ste. 3400
Denver, Colorado 80202
(303) 534-5160
jpalmeri@gordonrees.com
nsalamanderirby@gordonrees.com
*Attorneys for Defendant Scott Borchetta*

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that on this 28th day of October, 2015 a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system and the same served via email upon the following:

M. Gabriel McFarland
Evans & McFarland, LLC
910 13th St., Suite 200
Golden, Colorado 80401
Tel: 303-279-8300
Fax: 303-277-1620
gmcfarland@emlawyers.com

*Counsel for Plaintiff*

J. Douglas Baldridge
Courtney A. Sullivan
Katherine M. Wright
Venable LLP
575 7th Street, NW
Washington, D.C. 20004
Telephone: (202) 344-4703
Telephone: (202) 344-4043
FAX: (202) 344-8300
jdbaldridge@venable.com
casullivan@venable.com
kmwright@venable.com

*Counsel for Defendants Frank Bell,*
*Scott Swift, Andrea Swift, and Taylor Swift*

/s/ John M. Palmeri
John M. Palmeri
Nicole C. Salamander Irby
GORDON & REES LLP
555 Seventeenth Street, Ste. 3400
Denver, Colorado 80202
(303) 534-5160
jpalmeri@gordonrees.com
nsalamanderirby@gordonrees.com
*Attorneys for Defendant Scott Borchetta*