**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| DAVID MUELLER | ) |
| | ) |
|       Plaintiff, | ) |
| v. | )   Case No. 1:15-cv-01974-WJM |
| | ) |
| TAYLOR SWIFT; FRANK BELL | ) |
| SCOTT BORCHETTA; ANDREA | ) |
| SWIFT a/k/a ANDREA FINLAY; | ) |
| SCOTT SWIFT; and JOHN DOES 1-5 | ) |
| | ) |
|       Defendants. | ) |
| | ) |

**FRANK BELL AND THE SWIFT DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

Defendants Frank Bell, Scott Swift, Andrea Swift, and Taylor Swift (collectively, "Defendants") respond to the Amended Complaint filed by Plaintiff/Counterclaim Defendant David Mueller ("Plaintiff" or "Mueller") as follows:

**ANSWER**

**PARTIES AND VENUE**

1. Defendants are without sufficient knowledge and information to admit or deny the allegation in Paragraph 1, and, on that basis, deny the allegation.

2. Defendants deny the allegation in Paragraph 2. Taylor Swift is a resident of Tennessee.

3. Defendants admit the allegation in Paragraph 3.

4. Defendants are informed, and reasonably believe, that Defendant Scott Borchetta resides in Tennessee, and, on that basis, admit the allegation in Paragraph 4.

1

5. Defendants admit the allegation in Paragraph 5.

6. Defendants admit the allegation in Paragraph 6.

7. Defendants are without sufficient knowledge and information to admit or deny the allegation in Paragraph 7, and, on that basis, deny that allegation.

8. The allegation in Paragraph 8 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants are without sufficient knowledge and information to admit or deny the allegation in Paragraph 8, and, on that basis, deny the allegation.

9. The allegation in Paragraph 9 contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that Defendants committed any tortious conduct within the City and County of Denver, Colorado, or elsewhere.

## **GENERAL ALLEGATIONS**

10. Defendants are without sufficient knowledge and information to admit or deny the allegations in Paragraph 10, and, on that basis, deny those allegations.

11. Defendants are without sufficient knowledge and information to admit or deny the allegation in Paragraph 11, and, on that basis, deny the allegation.

12. Defendants are without sufficient knowledge and information to admit or deny the allegations in Paragraph 12, and, on that basis, deny the allegations.

13. Defendants are without sufficient knowledge and information to admit or deny the allegation in Paragraph 13, and, on that basis, deny the allegation.

14. Defendants are without sufficient knowledge and information to admit or deny the allegations in Paragraph 14, and, on that basis, deny the allegations.

15.     Defendants are without sufficient knowledge and information to admit or deny the allegation in Paragraph 15, and, on that basis, deny the allegation.

16.     Defendants are without sufficient knowledge and information to admit or deny the allegations in Paragraph 16, and, on that basis, deny the allegations. Defendants admit only that Mueller was in a different "group" than Mr. Haskell and Mr. Kliesch.

17.     Defendants are without sufficient knowledge and information to admit or deny the allegations in Paragraph 17, and, on that basis, deny the allegations.

18.     Defendants admit that Ms. Swift met and greeted a number of people prior to her June 2, 2013 concert at the Pepsi Center, in Denver, Colorado. Defendants are without sufficient knowledge and information to admit or deny the remainder of the allegations in Paragraph 18, and, on that basis, deny the allegations.

19.     Defendants are without sufficient knowledge and information to admit or deny the allegations in Paragraph 19, and, on that basis, deny the allegations.

20.     Defendants admit that Ms. Swift posed for a photograph with Mueller and Melcher, but deny all other allegations in Paragraph 20.

21.     Defendants deny the allegation as pled in Paragraph 21, and deny any characterizations of Ms. Swift's conduct in this Paragraph.

22.     To the extent that Ms. Swift may have "bid good bye" to Melcher and Mueller, Defendants deny Plaintiff's characterization of Ms. Swift's demeanor.

23.     Defendants are without sufficient knowledge and information to admit or deny the allegations in Paragraph 23, and, on that basis, deny the allegations.

24. Defendants are without sufficient knowledge and information to admit or deny the allegations in the first and second sentences of Paragraph 24, and, on that basis, deny those allegations. Defendants deny the allegation in the third sentence of Paragraph 24. Defendants further deny that Mr. Haskell put his hands on Ms. Swift as alleged.

25. Defendants are without sufficient knowledge and information to admit or deny the allegations in Paragraph 25, and on that basis, deny the allegations.

26. Defendants admit the third sentence of Paragraph 26 only to the extent that Craig, a member of Ms. Swift's security team, correctly accused Mueller of improperly and inappropriately groping Ms. Swift while Mueller was being photographed with her. Defendants are without sufficient knowledge and information to admit or deny the remainder of the allegations in Paragraph 26, and, on that basis, deny each and every one of them.

27. Defendants admit the first sentence in Paragraph 27 only to the extent that members of Ms. Swift's staff told Mueller he could not attend the concert. Defendants deny that anyone "verbally abused" Mueller. Defendants are without sufficient knowledge and information to admit or deny the remainder of the allegations in Paragraph 27, and, on that basis, deny each and every one of them.

28. Defendants are without sufficient knowledge and information to admit or deny the allegations in Paragraph 28, and, on that basis, deny the allegations.

29. Defendants are without sufficient knowledge and information to admit or deny the allegation in Paragraph 29, and, on that basis, deny the allegation.

30. Defendants admit that Mr. Bell showed Mr. Haskell a photograph of Mueller with his hand in an inappropriate place and a grin on his face. Defendants deny the exact quotes

attributed to Mr. Bell in Paragraph 30. Defendants are without sufficient knowledge and information to admit or deny the remaining allegations in Paragraph 30, and, on that basis, deny each and every one of them.

31. Defendants admit the allegation in Paragraph 31.

32. Defendants are without sufficient knowledge and information to admit or deny the allegations in Paragraph 32, and, on that basis, deny the allegations.

33. Defendants admit the allegations in the first and second sentences of Paragraph 33. Defendants deny the exact quotes attributed to Mr. Bell in Paragraph 33, and deny entirely Mueller's characterization of Mr. Bell's telephone call with Mr. Call. Defendants admit the fourth sentence in Paragraph 33.

34. Defendants admit the allegation in the first sentence of Paragraph 34 only to the extent that Frank Bell phoned Bob Call sometime on June 3, 2013. Defendants deny the exact quotes attributed to Mr. Bell in Paragraph 34, and deny entirely Mueller's characterization of Mr. Bell's telephone call with Mr. Call.

35. Defendants admit that Mr. Call and Mr. Haskell met with Mueller to discuss the accusations against him. The image depicted in the photograph of Ms. Swift with Melcher and Mueller speaks for itself. Defendants deny that Mueller "consistently maintained that Ms. Swift's accusations were false." Defendants deny the remaining allegations in Paragraph 35.

36. Defendants admit only that Mr. Call telephoned Mr. Bell sometime on June 3, 2013. Defendants deny the exact quotes attributed to Mr. Bell in Paragraph 36 and deny entirely Mueller's characterization of Mr. Bell's telephone call with Mr. Call.

37. Defendants are informed and reasonably believe that KYGO terminated Mueller's employment with KYGO on June 4, 2013, and, on that basis, admit the allegation in Paragraph 37.

38. Defendants are without sufficient knowledge and information to admit or deny the allegations in Paragraph 38, and, on that basis, deny the allegations.

39. Defendants deny the allegations in Paragraph 39 and the characterization of those allegations.

40. Defendants are without sufficient knowledge and information to admit or deny the allegations in the first two sentences in Paragraph 40, and, on that basis, deny the allegations. Defendants deny the allegation in the third sentence of Paragraph 40.

Defendants deny each and every remaining allegation of the Amended Complaint to the extent not expressly admitted in the foregoing paragraphs.

## FIRST CLAIM FOR RELIEF

### (Intentional Interference with Contractual Obligations)

41. Defendants incorporate by reference their responses to Paragraphs 1 through 40.

42. Defendants deny the allegation in Paragraph 42.

43. Defendants deny the allegation in Paragraph 43.

44. Defendants deny the allegation in Paragraph 44.

45. Defendants deny the allegation in Paragraph 45.

46. Defendants deny the allegation in Paragraph 46.

## SECOND CLAIM FOR RELIEF

### (Tortious Interference with Prospective Business Relations)

47. Defendants incorporate by reference their responses to Paragraphs 1 through 46.

48. Defendants deny the allegation in Paragraph 48.

49. Defendants deny the allegation in Paragraph 49.

50. Defendants deny the allegation in Paragraph 50.

51. Defendants deny the allegation in Paragraph 51.

52. Defendants deny the allegation in Paragraph 52.

## THIRD CLAIM FOR RELIEF

### (*Respondeat Superior*)

53. Defendants incorporate by reference their responses to Paragraphs 1 through 52.

54. Defendants deny the allegation in Paragraph 54.

55. Defendants deny the allegation in Paragraph 55.

## AFFIRMATIVE DEFENSES

Without assuming any burdens it would not otherwise bear, Defendants assert the following affirmative defenses. Defendants reserve the right to amend or supplement their affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to state a claim)

Plaintiff's claims are barred, in whole or in part, because the Amended Complaint has failed to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Unclean hands, laches, estoppel)

Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands, laches and/or estoppel. Plaintiff has engaged in wrongful, unconscionable, or inequitable conduct

regarding his assault on Ms. Swift. Additionally, Plaintiff unreasonably delayed the filing of his suit.

## THIRD AFFIRMATIVE DEFENSE

### (No Improper Conduct)

Defendants' actions were authorized by law and in fact and were not improper.

## FOURTH AFFIRMATIVE DEFENSE

### (Lack of knowledge or intentional conduct)

Defendants conduct is not, and was not at any time, intentional and at no time prior to Plaintiff's termination did Defendants have knowledge of Plaintiff's alleged employment contract. Plaintiff's claims are barred in whole or in part because Defendants acted in good faith and without knowledge of, or interfering with, Plaintiff's contract.

## FIFTH AFFIRMATIVE DEFENSE

### (Lack of knowledge of prospective business relations)

Plaintiff's claims are barred, in whole or in part, because Defendants did not have knowledge of any of Plaintiff's prospective business relations, to the extent that any such relations even existed.

## SIXTH AFFIRMATIVE DEFENSE

### (*Respondeat Superior* is not a stand-alone cause of action)

*Respondeat Superior* is wholly barred because it is not a cognizable legal claim where, as in this case, Plaintiff fails to plead, and the claim is not premised on, any underlying torts. Accordingly, Plaintiff's claim for *respondeat superior* is barred.

## SEVENTH AFFIRMATIVE DEFENSE

### (Truth)

Any and all statements made by Defendants leading to the alleged actionable conduct are, and at all times were, truthful and accurate. Because no statements by Defendants were defamatory or otherwise tortious or wrongful, they cannot serve as the basis of either of Plaintiff's tortious interference claims.

## EIGHTH AFFIRMATIVE DEFENSE

### (Lack of personal jurisdiction over Scott Swift)

This Court lacks both specific and general jurisdiction over Defendant Scott Swift.

Defendants reserve all affirmative defenses under Fed. R. Civ. P. 8(c) and any other defenses, at law or equity, that may now exist or in the future be available based on additional discovery and factual investigation in this case.

## COUNTERCLAIM

Taylor Swift counterclaims against Plaintiff/Counterclaim Defendant Mueller and alleges as follows:

### NATURE OF THE ACTION

1. This Counterclaim seeks to recover damages from Plaintiff/Counterclaim Defendant, David "Jackson" Mueller, arising from the undisputed fact that a sexual assault was committed against Defendant/Counterclaimant, Taylor Swift, at the time, a twenty-three year old girl. Indeed, Mueller admits – in fact pleads in his Amended Complaint – that Ms. Swift was assaulted, but conveniently contends that his superior at Denver radio station KYGO, Eddie

9

Haskell, committed the assault. Mueller's newfound claim that he is the "wrong guy" and, therefore, his termination from KYGO was unjustified, is specious. Ms. Swift knows exactly who committed the assault – it was Mueller – and she is not confused in the slightest about whether her long-term business acquaintance, Mr. Haskell, was the culprit. Resolution of this Counterclaim will demonstrate that Mueller alone was the perpetrator of the humiliating and wrongful conduct targeted against Ms. Swift, and will serve as an example to other women who may resist publicly reliving similar outrageous and humiliating acts. For this reason, any recovery obtained by Ms. Swift will be donated to charitable organizations dedicated to protecting women from similar acts of sexual assault and personal disregard.

## JURISDICTION AND VENUE

2. Ms. Swift is a resident, and therefore a citizen, of the State of Tennessee.

3. Mr. Mueller is a resident, and therefore a citizen, of the State of Colorado.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Counterclaimant and Plaintiff/Counterclaim Defendant, and the amount in controversy exceeds $75,000 exclusive of interest and costs. In addition, the Court has subject matter jurisdiction over Ms. Swift's Counterclaim pursuant to 28 U.S.C. § 1367 because it is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district.

## THE PARTIES

6. Taylor Swift is a twenty-five year old singer and songwriter. She is a household name known throughout the world.

7. Upon information and belief, Plaintiff/Counterclaim Defendant Mueller was hired by Lincoln Financial Media Company of Colorado ("Lincoln Financial") to serve as an early morning on-air personality at the local Denver radio station KYGO. He worked in that capacity for six months. Before that, and for nine years, Plaintiff/Counterclaim Defendant was a founding partner of his own business, Nineball Radio Networks. Prior to that, Mueller had not worked as an on-air radio personality since May 2006. He was twice terminated from on-air radio positions he held with other radio stations.

## FACTUAL ALLEGATIONS

8. On June 2, 2013, Ms. Swift performed a concert at a large venue, the Pepsi Center, in Denver, Colorado.

9. Before performing her concert on June 2, 2013, Ms. Swift held two, separate, backstage events. The first was a VIP event for various VIPs and record industry executives, held in a private room. The second was a separate fan "meet and greet," held in a different back-stage area, during which Ms. Swift met and took photographs with fans, comprised largely of young girls who had been invited or won contests to meet Ms. Swift backstage.

10. Upon information and belief, Mueller and his girlfriend and then co-worker, Shannon Melcher ("Melcher"), were granted access to the second meet and greet for fans, and waited in line for the opportunity to meet and pose in a photograph with Ms. Swift. The line in

which fans and Mueller and Melcher waited was outside of an enclosed area in which Ms. Swift met with fans individually or in small groups.

11. Once an individual or small group of fans posed for a photograph with Ms. Swift, they were escorted out of the enclosed area allowing for the next group to enter the area.

12. After Ms. Swift had greeted and posed for photographs with a number of fans, Mueller and Melcher entered the enclosed area to pose for a photograph with Ms. Swift.

13. In the course of his meet and greet with Ms. Swift, Mueller intentionally reached under her skirt, and groped with his hand an intimate part of her body in an inappropriate manner, against her will, and without her permission. Mueller did not merely brush his hand against Ms. Swift while posing for the photograph: he lifted her skirt and groped her.

14. Ms. Swift was surprised, upset, offended, and alarmed that Mueller had lifted her skirt and groped her bottom. This event caused her extreme anxiety because she did not know that Mueller, or anyone else, would grope her private and intimate body part, during an event to which she opened access to her fans and radio personnel as a show of her appreciation.

15. Ms. Swift released her first, top-selling album in 2006, at age sixteen. Since then, and throughout her entire career, Ms. Swift has displayed constant respect for the radio stations that broadcast her music and sincere gratitude toward her fans. The Internet is awash in stories and photographs posted by the countless fans and entertainment industry personalities with whom she has met. She has held thousands of meet and greet events for both fans and radio station personnel. In those thousands of events, she has been inappropriately groped one time—by Mueller—a radio personality.

16. Upon information and belief, Mueller is approximately 6'3'' tall and weighed over 200 pounds at the time he inappropriately put his open hand on Ms. Swift's bottom and groped it. He was much larger than Ms. Swift.

17. Ms. Swift had never seen, met, or spoken with either Mueller or Melcher at any time before the evening of June 2, 2013, when they first entered that enclosed area.

18. Immediately after Mueller and Melcher left the enclosed area, Ms. Swift, shocked and understandably distressed, reported to her photographer, her tour manager, and security that a man completely unknown to her, Mueller, had lifted her skirt and groped her.

19. A relatively short time thereafter, Ms. Swift's security personnel identified the man who groped Ms. Swift as Plaintiff/Counterclaim Defendant David Mueller.

20. Ms. Swift reported that Mueller had groped a highly intimate part of her body without her expecting it or consenting to it. Ms. Swift was forced to begin a several-hour long concert in front of 13,000 fans still distressed that she had been so inappropriately touched.

## COUNT ONE

### (Assault)

21. Ms. Swift incorporates as though fully stated herein each of the allegations set forth in Paragraphs 1 through 20.

22. Plaintiff/Counterclaim Defendant intended to, and did intentionally cause, offensive and harmful physical contact.

23. Plaintiff/Counterclaim Defendant put Ms. Swift in apprehension of immediate physical contact.

24. Ms. Swift did not consent to such contact.

25. Plaintiff/Counterclaim Defendant's contact was both harmful and offensive.

## COUNT TWO

### (Battery)

26. Ms. Swift incorporates as though fully restated herein each of the allegations set forth in Paragraphs 1 through 25.

27. Plaintiff/Counterclaim Defendant made physical contact with Ms. Swift.

28. Plaintiff/Counterclaim Defendant intended to make harmful and offensive contact with Ms. Swift.

29. Plaintiff/Counterclaim Defendant's contact was harmful and offensive.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimant Taylor Swift requests that this Court enter judgment against Plaintiff/Counterclaim Defendant David Mueller as follows:

(i) Compensatory and actual damages in an amount to be proven at trial;

(ii) Punitive damages;

(iii) Costs and fees associated with this matter and exemplary damages; and

(iv) Such additional and further relief as is deemed just and appropriate.

## JURY TRIAL DEMAND

Defendants demand a jury trial for the Claims for relief asserted in Plaintiff/Counterclaim Defendant David Mueller's Amended Complaint and for Counterclaimant Taylor Swift's Counterclaim for any issue triable of right by a jury.

Date: October 28, 2015                    Respectfully Submitted,

<div style="margin-left: 40%;">

<u>/s/ J. Douglas Baldridge</u>
J. Douglas Baldridge
Courtney A. Sullivan
Katherine M. Wright
Venable LLP
575 7th Street, NW
Washington, D.C. 20004
Telephone: (202) 344-4703
Fax: (202) 344-8300
E-mail: jdbaldridge@venable.com
E-mail: casullivan@venable.com
E-mail: kmwright@venable.com

*Attorney for Defendants Frank Bell, Andrea Swift, and Scott Swift and Defendant/Counterclaimant Taylor Swift*

</div>

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 28th day of October a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system to the following:

M. Gabriel McFarland
Evans & McFarland, LLC
910 13th Street
Suite 200
Golden, CO 80401
gmcfarland@emlawyers.com

John R. Jacobson
Jenna L. Harris
Riley Warnock & Jacobson, LLC
1906 West End Avenue
Nashville, TN 37203
jjacobson@rwjplc.com
jharris@rwjplc.com

John M. Palmeri
Nicole Christine Irby
Gordon & Rees, LLP-Denver
555 17th Street
Suite 3400
Denver, CO 80202
jpalmeri@gordonrees.com
nsalamander@gordonrees.com

Cara F. Thornton
J. Lawrence Hamil
Hamil Law Group LLC
140 East 19th Avenue
Suite 600
Denver, CO 80203
cthornton@hamillawgroup.com
jhamil@hamillawgroup.com

/s/ *J. Douglas Baldridge*
J. Douglas Baldridge