**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:15-cv-01974-WJM-KLM

DAVID MUELLER,

        Plaintiff,

v.

TAYLOR SWIFT; FRANK BELL;
ANDREA SWIFT a/k/a ANDREA FINLAY;
SCOTT SWIFT; and JOHN DOES 1-5,

        Defendants.

---

**DEFENDANT/COUNTERCLAIMANT TAYLOR SWIFT'S OPPOSITION TO MOTION
TO STRIKE PORTIONS OF DEFENDANT'S COUNTERCLAIM**

---

        Defendant/Counterclaimant Taylor Swift respectfully submits this Opposition to Plaintiff/Counterclaim Defendant David Mueller's ("Plaintiff's" or "Mueller's") Motion to Strike Portions of Defendant's Counterclaim ("Motion"). The Court should deny Plaintiff's Motion for the following three reasons:

        1.     The allegations that Plaintiff seeks to strike from the "Nature of the Action" section of Ms. Swift's Counterclaim were put at issue directly in Plaintiff's Complaint and have clear bearing on this controversy; accordingly, it would be improper as a matter of law for the Court to strike them.

        2.     Plaintiff fails to meet the heavy burden imposed by Federal Rule of Civil Procedure 12(f) to strike the contested allegations, because he does not show that the challenged allegations have "no possible bearing" on this controversy and that Plaintiff has been prejudiced by those allegations. Rule 12(f) is a two-pronged standard, requiring Plaintiff to demonstrate that the

allegations are immaterial, impertinent or scandalous *and* that Plaintiff has been prejudiced. The rule is not designed to determine the ultimate admissibility of evidence at the pleading stage. Although Plaintiff makes empty assertions that the subject allegations are "impertinent and "immaterial," he does not address the question of whether they have any possible bearing on the case, which is the applicable standard. And he fails to specifically allege any prejudice.

3. The Court need not address Plaintiff's request to strike references to punitive and exemplary damages from paragraphs (ii) and (iii) of the Counterclaim's Prayer for Relief. Before Plaintiff filed this Motion, Ms. Swift voluntarily agreed to remove those references and to later reassert them in an Amended Counterclaim, which is highly likely given Mueller's conduct.

## I. BACKGROUND

Over the course of two years, Mueller sent three different complaints to Ms. Swift, before ultimately filing this case. Specifically, in July 2014 and February 2015, Mueller sent draft complaints to Ms. Swift's counsel. The first, alleging facts similar to those alleged in the present suit, asserted claims of slander and slander per se against Ms. Swift. After the statute of limitations expired on those two claims,[1] Mueller sent a second draft complaint alleging claims of interference with contractual obligations and tortious interference with business relations against Ms. Swift.[2] Plaintiff did not file either draft, instead opting to attempt to extract a cash payment from Ms. Swift.[3]

---

[1] C.R.S. § 13-80-103.
[2] Both draft complaints named Ms. Swift alone as defendant.
[3] Mueller not only admits, he actually alleges (Compl. ¶ 24), that Ms. Swift was the victim of the assault and battery on June 2, 2013. He now contends, however, that it was his superior at KYGO (Eddie Haskell) who committed the crime. Mueller did not mention his superior's alleged role in the attack until his third draft of the complaint.

2

On May 29, 2015—at most five days before the statute of limitations expired[4]—Plaintiff filed a Complaint against Ms. Swift in the District Court for the City and County of Denver, Colorado alleging the two "interference" torts against her alone.  Three days later, on June 1, 2015, Plaintiff filed an Amended Complaint adding four named defendants—both of Ms. Swift's parents, Frank Bell, Scott Borchetta—and five "John Does." (*See* June 1, 2015 Am. Comp. ("Compl.") (ECF No. 2)).  Plaintiff also added an allegation against Ms. Swift for *respondeat superior*.  (*Id.* at 7). The Parties timely removed the action to this Court.  On November 17, 2015, Mueller voluntarily dismissed his claims against Scott Borchetta, the president of Ms. Swift's record label.  (*See* ECF No. 37).

In his Amended Complaint, Mueller alleges that he was terminated from his job at KYGO shortly after he was asked to leave a June 2, 2013 Taylor Swift concert, accused of improperly touching Ms. Swift while posing for a photo with her during a fan "meet and greet."  (Compl. ¶¶ 11, 14, 17, 26-27, 37).  As noted above in footnote 3, though he failed to include it in his prior draft complaints and demands, Mueller's Amended Complaint claims his superior at KYOG, Eddie Haskell, committed the improper conduct against Ms. Swift, and that Mr. Haskell in fact told Mueller that he had touched Ms. Swift's bottom that evening.  (*Id.* ¶ 24).

Even though she was and remains certain that it was Mueller who inappropriately groped her on June 2, 2013, Ms. Swift did not wish to relive the emotional distress, embarrassment, and humiliation she suffered as a result.  Both Mueller's Amended Complaint and her Counterclaim are openly accessible through the federal court filing system only because Mueller elected to pursue this case.

---

[4] C.R.S. § 13-80-102 (two year statute of limitations for tortious interference claims).

3

Ms. Swift's Counterclaim is a direct response to Mueller's accusations, asserted to prove that he alone assaulted her. The publicity surrounding this suit is of Mueller's own making. Ironically, he now complains that Ms. Swift should be prevented from identifying her motives for filing her Counterclaim and should be prevented from explaining that she does not seek to obtain personal financial recovery. Not only do the allegations that Mueller asks this Court to strike bear on this controversy, they are inescapably born out of Mueller's lawsuit. Who Ms. Swift is and how she conducts her life was put in issue when Mueller correctly alleged in his Amended Complaint that she is an admirable and deserved "role model." (Compl. ¶ 19).

## II.   ARGUMENT

### A.   Courts Disfavor and Infrequently Grant Rule 12(f) Motions to Strike.

It is well-settled that striking allegations under Rule 12(f), through which a party may move to strike "redundant, immaterial, or scandalous matter," is a disfavored and drastic remedy. *Johnson v. Pinnacle Credit Servs., LLC*, No. 1:15-cv-663, 2015 WL 6700599, at *2 (D. Colo. Sept. 14, 2015) (citing *Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275, 285 (D. Colo. 1997)). And, "courts infrequently grant such requests." *Webster v. Nations Recovery Ctr.*, No. 09-cv-1685, 2009 WL 2982649, at *1 (D. Colo. Sept. 15, 2009); 5C Wright & Miller, Federal Practice and Procedure § 1380 (2d ed. 1990) (same). Accordingly, the moving party has a heavy burden to overcome in order to entitle it to relief. *Bd. of Cnty. Comm'rs of the Cnty. of La Plata, Co. v. Brown Grp. Retail, Inc.*, No. 08-cv-855, 2009 WL 2514094, at *2 (D. Colo. Aug. 14, 2009). Motions to strike are usually only granted when the allegations have *no bearing* on the controversy and the movant can show that he has been prejudiced. *Sierra Club*, 173 F.R.D 275, 285 (emphasis added). A party moving to strike allegations must show not only that the challenged

4

allegations fit into one of the categories enumerated in Rule 12(f), but must also show that he may be significantly prejudiced by the allegations. *Johnson*, 2015 WL 6700599, at *2 (citing 5C Wright & Miller, Federal Practice and Procedure § 1380 (2d ed. 1990)); *Rawson v. Sears Roebuck & Co.*, 585 F. Supp. 1393, 1397 (D. Colo. 1984) (citation omitted).

Rule 12(f) motions are usually denied unless the language in the pleading has no possible relation to the controversy and is clearly prejudicial. *Lahr*, 2015 WL 5286790, at *3. "If there is any doubt as to whether to strike a matter, courts should deny the motion." *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-cv-02432, 2013 WL 5448078, at *2 (D. Colo. Sept. 27, 2013) (citation omitted); *see also Davis v. Ruby Foods*, 269 F.3d 818, 821 (7th Cir. 2001) (advising counsel against moving to strike extraneous matter unless its presence in the complaint is actually prejudicial, because "[s]uch motions are what give 'motions practice' a deservedly bad name").

### B. Ms. Swift's Allegations in the Counterclaim's "Nature of the Action" Section Are Directly at Issue and Have Bearing on this Controversy.

Mueller seeks to strike the italicized portion of the last two sentences of the Counterclaim's "Nature of the Action":

> Resolution of this Counterclaim will demonstrate that Mueller alone was the perpetrator of the humiliating and wrongful conduct targeted against Ms. Swift, *and will serve as an example to other women who may resist publicly reliving similar outrageous and humiliating acts. For this reason, any recovery obtained by Ms. Swift will be donated to charitable organizations dedicated to protecting women from similar acts of sexual assault and personal disregard.*

(Mot. at 4).

First, although Mueller contends that "whether or not Ms. Swift's counterclaim will serve as an example to other women and whether or not she will donate any recovery to charity are entirely collateral, impertinent, and immaterial to her claims for assault and battery" (Mot. at 9),

5

Mueller himself put Ms. Swift's influence on, and generosity towards, female fans squarely at issue in his Complaint. Mueller alleged that he and his girlfriend, Ms. Melcher, waited in line to meet Ms. Swift with her "fans," whom he described as a group of "small children," "people wearing Taylor Swift t-shirts," and "people holding homemade signs." (Compl. ¶ 17). More significantly, Mueller alleged that once they reached the front of the line of fans, he and Ms. Melcher had the following personal exchange with Ms. Swift:

> Ms. Melcher introduced herself and Mr. Mueller. *Mr. Mueller complimented Ms. Swift on her patience and sincerity with her fans*. Ms. Melcher commented that she had enjoyed watching the little girls dance and sing while waiting in line, *and that Ms. Swift was a great role model*.

(Compl. ¶ 19 (emphasis added)); *see Lahr v. Brigadoon Financial, Inc.* No. 1:15-cv-106, 2015 WL 5286790, at *3 (N.D. Ind. Sept. 9, 2015) (denying Rule 12(f) motion to strike allegations regarding defendant's "charitable and political involvement" because plaintiff had put the allegations "at issue" in complaint and allegations were connected to defendant's claim); *Lynch v. Southampton Animal Shelter Found., Inc.,* 278 F.R.D. 55, 65 (E.D.N.Y. 2011) (denying defendant's Rule 12(f) motion to strike plaintiff's allegations of "opinions" about euthanasia policies and operational practices of animal shelter on basis that "background, motivation, context and content" of plaintiff's conduct had bearing on dispute).

Mueller's Complaint alleges that, at the exact time of the incident that is the very heart of this case—when the photograph was taken with Ms. Swift—Mueller's girlfriend called Ms. Swift a "role model," and Mueller praised her for being sincere and patient with her fans; but it simultaneously paints Ms. Swift as, at best, confused by inaccurately accusing Mueller of groping her and causing his termination. (Compl. ¶¶ 19, 35). In her Counterclaim, Ms. Swift reluctantly publicizes highly personal and humiliating facts about being the undisputed and admitted victim

6

of an assault. By alleging Ms. Swift's role model status in tandem with compelling her to file a Counterclaim publicly disclosing the humiliation he inflicted on her, Mueller cannot properly contest that he alone put in dispute the very allegations he seeks to strike.

Second, Ms. Swift's allegation that she will donate to charity any recovery she may obtain from her Counterclaim likewise has bearing on this dispute. Courts have acknowledged in a variety of contexts the relevance of statements regarding a party's intention of donating recovery to charitable organizations. *See, e.g.*, *Tucker v. Farmers Ins. Co.*, No. DV-03-741, 2007 WL 1794381 (D. Mont. Mar. 27, 2007) (denying motion in limine attempt to exclude evidence of plaintiff's charitable contributions as evidence of her emotional distress); *Franklin Mint Co. v. Superior Court*, 130 Cal. App. 4th 1550, 1558 (2d Dist. 2005) (highlighting with approval "plaintiffs' intention from the outset to donate any recovery (whether by trial or settlement) to charity"); *Skaff v. Le Meridien*, No. 05-cv-27, 2008 U.S. Dist. LEXIS 123537, at* 29 (C.D. Cal. Aug. 29, 2008) (relying on statement in post-trial attorneys' fees application that plaintiff "offered to donate his damage award to a charity"). Such charitable intent is similarly relevant here because Ms. Swift has alleged emotional distress as part of her damages claim. Her reaction to that distress by making charitable use of any recovery to aid women who have confronted similar acts of improper conduct bears directly on this claim. Evidence of charitable activities in the context of establishing emotional distress is undoubtedly relevant and will in no way confuse a jury.

### C. Mueller has not Met the Burden Imposed by Federal Rule of Civil Procedure 12(f).

Despite the fact that a court will grant a motion to strike only "under the rarest of circumstances," *Allen v. P&B Capital Grp.*, No. 09-cv-01707, 2009 WL 2940206, at *1 (D. Colo. Sept. 9, 2009), Mueller offers a single paragraph supporting his request: (1) that the allegations

7

are impertinent and immaterial; (2) that no evidence supporting these allegations would be admissible at trial; and (3) that the allegations are a "public relations maneuver," asserted to "sensationalize" Ms. Swift's Counterclaims, and would taint potential jurors.

### 1.  Mueller has failed to show that the contested allegations are "Impertinent and Immaterial."

First, without any analysis or argument, Mueller calls the contested allegations "collateral, impertinent, and immaterial." (Mot. at 4).[5]  But, Mueller simply ignores the threshold question that the Court must address in determining if allegations are impertinent or immaterial:  Whether, in reading the Counterclaim in Ms. Swift's favor, the Court can find at this early stage of the litigation that the disputed allegations have no conceivable bearing on this controversy.  "Only allegations 'so unrelated to plaintiff's claims as to be unworthy of consideration' should be stricken."  *Kimpton Hotel & Restaurant Grp., LLC v. Monaco Inn, Inc.*, No. 07-cv-1514, 2008 WL 140488, at *1 (D. Colo. Jan. 11, 2008) (citation omitted).

Ms. Swift's allegations assert that she was motivated to file a Counterclaim to serve as an example to other women fearful of reliving similar outrageous and humiliating conduct to that engaged in by Mueller and not to obtain personal recovery.  Courts widely recognize that a claimant may plead a "Nature of the Action," or "Preliminary Statement" providing an overview of the case, describing the events upon which a claimant's case are premised, his or her motivation for bringing those claims, and the relief that he or she seeks.  *See, e.g.*, *Lahr* 2015 WL 5286790, at *2-3; *Fox v. Will Cnty.*, No. 04-cv-7309, 2011 WL 6206238, at *2 (N.D. Ill. Dec. 7, 2011).  The fact that two allegations in Ms. Swift's "Nature of the Case" may contain "matters of opinion"

---

[5] Mueller's description of the allegations as "collateral," is not a basis for striking material from pleadings under Rule 12(f).

8

(again, that Ms. Swift might serve as an example to others) is not in and of itself grounds to strike those allegations. *Lynch*, 278 F.R.D. at 65.[6]

### 2. The Court should not strike the allegations on the grounds that they may be inadmissible at trial.

As this Court has recently explained, a Rule 12(f) movant cannot strike allegations by seeking a ruling, through the Rule 12(f) motion, on the inadmissibility of those allegations at trial. On a motion to strike, resolution of the actual admissibility or relevance of [such] allegations is premature." *Allen*, 2009 WL 2940206, at *2 (citation omitted). In addition, Mueller "will have ample opportunity after discovery" to show that Ms. Swift's allegations are irrelevant. *Lynch*, 278 F.R.D. at 66. Of course, Defendants will have the same opportunity and fully intend to show their relevance, but that is not the inquiry under Rule 12(f).

### 3. The Court should not strike the allegations on the grounds that they are purported "public relations maneuvers," attempts to "sensationalize" Ms. Swift's Counterclaims, and intended to "taint potential jurors."

Mueller's argument that the subject allegations in Ms. Swift's Counterclaim are a public relations maneuver incorrect. Mueller threatened Ms. Swift with a lawsuit for nearly two years. Mueller finally sued her, then amended his claim to sue her parents and business associates. As he knew it would based on Ms. Swift's stature, his lawsuit directly placed this case in the public eye. The case was sensationalized the moment Mueller sued Ms. Swift. He now claims that Ms. Swift is engaged in public relations maneuvering by including background information in a

---

[6] While ultimately there may be reasons to limit evidence describing the context of Ms. Swift's Counterclaim and her motivations for bringing it, the Court cannot find at this stage of the litigation that Ms. Swift's allegations have no bearing on the issues in this controversy. *Lynch*, 278 F.R.D. at 65.

9

Counterclaim that Mueller's actions compelled her to file. As a legal matter, a party's disfavor with alleged "public relations manuever[ing]" is simply not a basis to strike allegations from a counterclaim. *See Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, No. 11-cv-1503, 2011 WL 2119703, at *1 (S.D.N.Y. May 23, 2011) (respondent challenged movants' complaint as a "public relations device" to present their side of a confidential arbitration proceeding). Given that Rule 12(f) motions should be "sparingly used," asserting public relations as a basis for striking a counterclaim is improper. *See id.* (finding that parties to litigation are free to conduct their own public relations campaigns); *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, No. 11-cv-1040, 2012 WL 104773, at *4-5 (S.D.N.Y. Jan. 10, 2012) (denying motion to strike based on respondent's charge that filing was "designed to function as a 'press release for other matters'").

Mueller's contention that Ms. Swift is attempting to "taint potential jurors" also is unsupportable. He is acutely aware that not only are allegations about tainting a potential jury premature and curable, Ms. Swift's allegations are no more likely to taint a potential jury than are his own. This case is at the most preliminary stage, and neither Ms. Swift's nor Mueller's allegations will hypothetically taint an unknown jury pool. Moreover, the Court is charged with and fully capable of eliminating tainted jurors during voir dire. *See, e.g.*, *Lord v. Hall*, No. 10-cv-02695, 2011 WL 2559824, at *2 (D. Colo. June 28, 2011) ("voir dire can effectively address whether potential jurors have seen press coverage and whether it impacts their view of the case"); *Pfahler v. Swimm*, No. 07-cv-01885, 2008 WL 323244, at *2 (D. Colo. Feb. 4, 2008) ("at the time of trial, the potential jury pool will have to go through extensive voir dire conducted by this court,

10

in particular, in the area of pretrial publicity that will assure that a fair and impartial jury will be selected to hear this case").

### D. Mueller's Failure to Allege any Prejudice is Fatal to his Motion.

Finally and determinatively, the Court must deny Mueller's Motion based solely on the fact that he neither alleged nor made any showing of prejudice. "Motions to strike are granted *only* where the allegations have no bearing on the controversy *and* the movant can show prejudice." *United States v. Health Care Mgmt. Partners, Ltd.*, No. 04-cv-2340, 2006 WL 6654875, at *11 (D. Colo. Aug. 17, 2006) (emphasis added). *See Webster*, 2009 WL 2982649, at *2 ("A showing of immateriality or impertinence must be coupled with prejudice to the movant, in order to properly implicate the striking of pleadings."); *Spratt v. Lester*, No. 06-cv-1526, 2007 WL 776670, at *1 (D. Colo. Mar. 9, 2007) (denying motion to strike for failure to show prejudice alone and not addressing whether challenged allegations fell within Rule 12(f) categories); *Big Cats of Serenity Springs v. Vilksack*, 84 F. Supp. 3d 1179, 1198 (D. Colo. 2015) (finding that movants who did not offer any argument that they would be prejudiced failed to meet their "heavy burden" to strike material from a complaint).

### E. The Court Need Not Rule on Mueller's Motion to Strike References in Ms. Swift's Prayer for Relief.

The Court need not reach the first argument set forth in Mueller's Motion. (Mot. at 2-3). As he stated conspicuously in the "Certification" on the first page of his Motion, after conferring with Ms. Swift's counsel on and before filing this Motion, as required by this Court's Standing Order (WJM Revised Practice Standards III.D.1), Ms. Swift's counsel consented that very day to strike portions of paragraphs (ii) and (iii) from the Prayer for Relief on page fourteen of her Counterclaim. (Mot. at 1). Again on that same day, Ms. Swift voluntarily filed a Notice pursuant

11

to Colorado Statute § 13-21-102(1.5)(A), in which she agreed to follow the recently amended terms of that statute, temporarily withdraw her claim for exemplary damages, and appropriately reassert them in an Amended Counterclaim. (*See* ECF No. 42). Despite Ms. Swift's agreement to temporarily strike these damage references, Mr. Mueller devoted two pages of his five-page Motion arguing that the Court order that those exact references should be stricken from Ms. Swift's Counterclaims. This unnecessary use of motions practice undercuts the language and spirit of this Court's standing order. As Ms. Swift's counsel represented to Mr. Mueller's, Ms. Swift intends to voluntarily file an Amended Counterclaim at the appropriate time following the Court's ruling on the present Motion. Accordingly, the Court need not consider the first argument set forth in Mueller's Motion.

### III. CONCLUSION

For the foregoing reasons, Counterclaimant Swift respectfully requests the Court deny Plaintiff/Counterclaim Defendant's Motion to Strike Portions of Defendant's Counterclaims.

A proposed order is attached for the Court's convenience.

Dated: December 21, 2015                    Respectfully Submitted,


/s/ J. Douglas Baldridge
J. Douglas Baldridge
Courtney A. Sullivan
Katherine M. Wright
Venable LLP
575 7th Street, NW
Washington, D.C. 20004
Telephone: (202) 344-4703
Facsimile: (202) 344-8300
E-mail: jdbaldridge@venable.com
E-mail: casullivan@venable.com
E-mail: kmwright@venable.com

*Attorneys for Defendant/Counterclaimant Taylor Swift*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 21st day of December a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system to all counsel of record.

/s/ *J. Douglas Baldridge*
J. Douglas Baldridge