**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:15-cv-01974-WJM-KLM

DAVID MUELLER

        Plaintiff,

v.

TAYLOR SWIFT; FRANK BELL;
ANDREA SWIFT a/k/a ANDREA FINLAY;
SCOTT SWIFT; and JOHN DOES 1-5

        Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Frank Bell, Scott Swift, Andrea Swift, and Taylor Swift (collectively, "Defendants"), move this Court for an Order dismissing with prejudice: (1) the First through Fourth Claims for Relief asserted by Plaintiff David Mueller ("Plaintiff") against Defendants, and (2) Plaintiff's Fifth Claim for Relief asserted against Defendant Taylor Swift ("Ms. Swift"). The Second Amended Complaint fails to state claims upon which relief can be granted and therefore must be dismissed.[1]

## I. INTRODUCTION

Plaintiff's Second Amended Complaint seeks to recover damages from Defendants based upon the undisputed fact that an assault was committed against Ms. Swift. Plaintiff admits Ms.

---

[1] Because the face of Plaintiff's Second Amended Complaint demonstrates that he cannot allege any set of facts in support of his claims, there is no reasonable likelihood of Plaintiff "mustering factual support," and elevating his claims beyond "a mere metaphysical possibility." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Given the impossibility of stating a valid claim on the facts of this case," and "further amendments to the complaint would be futile," *id.* at 1178, the Court should dismiss Plaintiff's claims with prejudice.

Swift was assaulted, but contends that his superior at Denver radio station KYGO committed the assault.[2] Plaintiff claims that he is the "wrong guy" and his termination from KYGO was therefore unwarranted. Plaintiff's contention against his superior is relatively new-found. It was not mentioned in prior complaints delivered to Ms. Swift by Plaintiff. Plaintiff's Second Amended Complaint seeks to add two, new causes of action—slander *per se* and slander *per quod*—that have been time-barred by the applicable statute of limitations for over a year and a half.

The Court should dismiss Plaintiff's Second Amended Complaint for three reasons. First, slander *per se* and slander *per quod* are barred by the Colorado statute of limitations. Second, Plaintiff alleges no plausible claim for tortious interference with contractual obligations or prospective business relations. Plaintiff not only alleges bare legal conclusions without proper factual support, he actually alleges facts *contrary* to the five essential elements of his interference claims: (1) Defendants did *not* know that he had an existing employment contract; (2) Defendants did *not* know that he had any identifiable future business opportunities; (3) Plaintiff had nothing more than a *mere hope* of entering future business relationships with unknown persons; (4) Defendants did not take *any action* to interfere with Plaintiff's contract or speculative business prospects; and (5) Defendants did *not act* against Plaintiff at all, let alone with improper motive.

Third, Plaintiff's *respondeat superior* claim against Ms. Swift is unsupportable because the underlying tort claims upon which it is based fail, depriving the claim of any legal foundation.

---

[2] Plaintiff's contract was with Lincoln Financial Media Company of Colorado, the entity that owns KYGO. (Compl. ¶ 10). Defendants use the term KYGO when referring to Plaintiff's employer in this Motion.

## II. BACKGROUND

In July 2014 and February 2015, Plaintiff sent draft complaints to Ms. Swift alleging facts similar to those set forth in the present suit.[3] Plaintiff did not file either draft, instead demanding an unwarranted cash payment from Ms. Swift. On May 29, 2015, Plaintiff filed a Complaint against Ms. Swift in the District Court for the City and County of Denver, Colorado alleging torts against her alone. Plaintiff filed an Amended Complaint three days later, on June 1, 2015, adding four named defendants—Mr. Bell, Scott Borchetta, Mrs. Swift, and Mr. Swift—and five "John Does." (*See* June 1, 2015 Am. Compl. (ECF No. 2)). He also added an allegation against Ms. Swift for *respondeat superior*.[4] The parties timely removed to this Court. On February 25, 2016, Plaintiff filed his Second Amended Complaint ("Compl.") adding the time-barred claims of slander *per se* and slander *per quod* against Defendants.[5] He did not allege a single new fact. (*See* ECF No. 72).

Plaintiff alleges that he was terminated by KYGO shortly after he was asked to leave a June 2, 2013 Taylor Swift concert, accused of assaulting Ms. Swift while posing for a photo with her during a fan "meet and greet." (Compl. ¶¶ 10, 13, 18, 25, 36). Although apparently not worth mentioning in his prior drafts and demands, his filed Complaints allege that his superior at KYGO, Eddie Haskell, committed the assault against Ms. Swift. (*Id.* ¶ 23). Plaintiff contends that his

---

[3] Both draft complaints named Ms. Swift alone as Defendant. The first asserted claims for slander *per se* and slander *per quod*. The second asserted claims of intentional interference with contractual obligations and tortious interference with prospective business relations.
[4] Plaintiff voluntarily dismissed his claims against Scott Borchetta on November 17, 2015. (ECF No. 37).
[5] Plaintiff's first draft complaint sent to Ms. Swift on July 2014 threatened these claims against Ms. Swift alone.

termination from KYGO was the result of unidentified conduct, "interference," and "slander" by the Defendants in addressing the admitted assault on Ms. Swift.

### III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts . . . to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove,* 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The Tenth Circuit has stated that there are two working principles that underlie the *Twombly* holding requiring that a claim be plausible on its face. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Kan. Penn Gaming*, *LLC v. Collins*, 656 F.3d. 1210, 1214 (10th Cir. 2011) (citations and quotations omitted). Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* ("a plaintiff must offer sufficient factual allegations to 'raise a right to relief above the speculative level'" (quoting *Twombly*, 550 U.S. at 555)).

Plaintiff cannot meet this standard. He alleges a host of facts, untethered from his claims, and insufficient to support them. Plaintiff's "General Allegations" encompass "a wide swath of conduct, much of it innocent." *Robbins v. Okla.,* 519 F.3d 1242, 1247-48 (10th Cir. 2008). As a result, Plaintiff has "not nudged [his] claims across the line from conceivable to plausible." *Id*. at 1247 (citations omitted). Plaintiff wholly relies on the naked recitation of elements in his enumerated "Claims for Relief." (Compl. ¶¶ 40-66.) These impermissible legal conclusions, devoid of plausible factual support, show that Plaintiff is not entitled to relief.

## IV. ARGUMENT

### A. Plaintiff's Slander *Per Se* and Slander *Per Quod* Claims are Time-barred by the Statute of Limitations.

An affirmative defense may be raised under Rule 12(b)(6) "[i]f the defense appears plainly on the face of the complaint itself." *Miller v. Shell Oil Co.*, 345 F.3d 1174, 1177 (10th Cir. 1965). A statute of limitations defense is appropriately resolved under 12(b)(6) "when the dates given in the complaint make it clear that the right sued upon has been extinguished." *Aldrich v. McCulloch Props., Inc.,* 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). Courts in this circuit routinely decide statute of limitations issues on motions to dismiss. *See e.g., Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997). In Colorado, slander claims must be filed within one year of "the date both the injury and its cause are known or should have been known by the exercise of reasonable due diligence." *Shepherd v. Am. Numismatic Ass'n*, No. 13-CV-03075, 2014 WL 4548724, at *1 (D. Colo. Aug. 27, 2014); Colo. Rev. Stat § 13-80-103(1)(a) (slander claims "shall be commenced within one year after the cause of action accrues"). The cause of action accrues on the date of injury: when the alleged defamatory statements are made. *See Taylor v. Goldsmith*, 870 P.2d. 1264, 1265-66 (Colo. App. 1994) (statute of limitations for defamatory statements accrued from day plaintiff's supervisor advised that a woman had made sexual allegations against plaintiff, not the day of his termination).

Not only does Plaintiff fail to identify which "statements" allegedly made by each specific Defendant are allegedly defamatory, what injury they caused, or how they did so, Plaintiff plainly alleges the critical dates on the face of his Complaint on which his alleged injury occurred: June 2 through 4, 2013. (*See* Compl. ¶¶ 14, 25, 27, 29, 31-36). The initial complaint in this action was filed on May 29, 2015 – *nearly 2 years after Plaintiff's alleged injury and its cause was known*.

5

Therefore, the "dates given in the complaint make it clear that the right sued upon has been extinguished," *Aldrich*, 627 F.2d at 1041 n.4, and claims Three and Four of the Second Amended Complaint must be dismissed with prejudice.

### B. Plaintiff Does Not Plead Sufficient Facts to State Plausible Claims for Tortious Interference with Contractual Obligations.

Colorado has adopted § 766 of the Restatement (Second) of Torts regarding intentional interference with contractual obligations. *See*, *e.g.*, *Mem'l Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.2d 207, 210 (Colo. 1984). To state this claim under Colorado law, Plaintiff must allege: (1) Plaintiff's contract existed; (2) Defendants had knowledge of the contract; (3) Defendants interfered and induced Plaintiff's employer not to perform the contract; and (4) Plaintiff was injured or damaged as a result. *Nobody in Particular Presents, Inc. v. Clear Channel Commnc's, Inc.*, 311 F. Supp. 2d 1048, 1115, 1116-17 (D. Colo. 2004) (citations omitted). Critically, Plaintiff must allege facts showing that Defendants improperly interfered with his contract, and that Defendants' improper interference caused his employer to terminate him. *Id.* at 1117.

#### 1. Plaintiff does not, and cannot, allege that the Swifts knew that his contract existed.

Plaintiff does not make a single factual allegation regarding the most fundamental element of this claim: that any of the Swifts knew that Plaintiff had a contract with KYGO. (*See generally* Compl.). Nor does Plaintiff offer any detail from which the Court could reasonably infer this element. *Gen. Steel Domestic Sales, LLC v. Chumly,* No. 10-CV-01398, 2012 WL 1459132, at *2 (D. Colo. Apr. 26, 2012) (plaintiff cited no evidence suggesting that defendant was aware of contractual relationship); *Nobody in Particular*, 311 F. Supp. 2d at 1117 (plaintiff presented no

evidence that defendant knew about contract). Indeed, Plaintiff does not plead that Ms. Swift or her parents had any idea who he was, much less knew where he worked or that he had a contract with anyone. He does not even allege that Mr. or Mrs. Swift were present at the concert at all.

Plaintiff alleges facts implying that only two individuals connected to the Swifts—"Craig" and Mr. Bell—learned that he worked for KYGO. He alleges that when stopped upon re-entering the venue by "Craig," an alleged member of Ms. Swift's security staff, Plaintiff said that "he worked for KYGO" and that Craig should contact his boss, Mr. Haskell. (Compl. ¶ 25).[6] He alleges that Mr. Bell thereafter spoke to Mr. Haskell, and Mr. Haskell identified Plaintiff from the backstage photo with Ms. Swift. (*Id.* ¶ 29). He pleads no facts to suggest that the Swifts learned about his contract in the two days between Plaintiff's conversation with Craig, Mr. Bell's conversation with Mr. Haskell, and Plaintiff's termination.[7]

### 2. Plaintiff does not, and cannot, plead that Defendants intended to and improperly induced KYGO to terminate his contract.

Plaintiff pleads two allegations that undercut, if not completely upend, his tort claims. He alleges that on the evening of the concert, directly after Mr. Haskell identified Plaintiff as the man in the photo with Ms. Swift (Compl. ¶ 29.), Mr. Haskell left Plaintiff a voicemail message "informing [Plaintiff] that he would not appear on the air the following Monday [June 3, 2013], pending the radio station's investigation" of the incident. (*Id.* ¶ 30). Consequently, Plaintiff admits

---

[6] Plaintiff also alleges that he "made it clear [to Craig] that Mr. Haskell was in the arena, and most likely backstage." (Compl. ¶ 25). During their conversation, Plaintiff "once again requested that Craig get the KYGO program director, Mr. Haskell." (*Id.* ¶ 26). Plaintiff asserts that Craig refused to "get Mr. Haskell," and escorted him to the exit. (*Id.*).
[7] Ms. Swift's concert, and the assault, occurred on the night of Sunday, June 2, 2013, just before she performed at a large venue. (*Id.* ¶¶ 13-14). The same night, Mr. Haskell advised Plaintiff that he was suspended from work beginning Monday, June 3, 2013, and that the radio station was investigating him. (*Id.* ¶ 30). KYGO terminated Plaintiff on Tuesday, June 4, 2013. (*Id.* ¶ 36).

that the station took independent, unilateral action by immediately suspending Plaintiff based on reviewing the photograph and undertaking its own investigation. (*Id.* ¶¶ 29-30). Mr. Haskell did so the day before Mr. Bell is alleged to have phoned KYGO Station Manager, Bob Call (discussed below) to discuss the incident. (*Id.* ¶¶ 30, 32-35). Moreover, Mr. Bell's speaking with Mr. Haskell, showing him the photo, allegedly stating that Plaintiff was "banned for life" from Ms. Swift's concerts, and that the incident "reflected negatively on KYGO and radio in general," (*id* ¶ 29) were not improper. *See, e.g. Palmer v. First Transit, Inc.*, No. 13-CV-2401, 2014 WL 3267306, at *4-5 (D. Colo. July 8, 2014) (defendant did not improperly interfere by showing video footage of plaintiff's conduct to potential future employer and describing her as "unreliable").[8]

Factual contradictions aside, Plaintiff's Complaint fails alone on the grounds that he wholly fails to plead that either the Swifts or Mr. Bell improperly intended to cause KYGO to terminate him. Plaintiff states no facts from which the Court could reasonably infer improper interference by any Defendant. It contains three specific allegations expressly describing action taken by Ms. Swift: (1) Plaintiff attended Ms. Swift's fan meet and greet; (2) Ms. Swift permitted Plaintiff and his girlfriend to pose for a photo with her, and (3) she was pleasant during the interaction. (Compl. ¶¶ 17-21). There is no allegation that Ms. Swift did anything of relevance, much less anything improper. *See Elec. Payment Sys., LLC v. Elec. Payment Solutions of Am., Inc.*, No. 14-CV-2624, 2015 WL 5444278, at *2 (D. Colo. Sept. 16, 2015) (complaint lacked well-plead facts to state

---

[8] Although Plaintiff admits that Ms. Swift was assaulted, and newly asserts that Mr. Haskell admitted to putting his "hands on [Ms. Swift's] bottom," (Compl. ¶ 23), he does not allege that any one of Ms. Swift's associates accused Mr. Haskell, that there is an incriminating photograph of Mr. Haskell, that Mr. Bell asked to see any photos depicting Mr. Haskell, or that Mr. Bell showed Mr. Haskell photos of anyone other than Plaintiff himself. And, despite blaming Mr. Haskell for "grabbing" Ms. Swift—the very incident that resulted in Plaintiff's termination—Plaintiff does not name Mr. Haskell or KYGO as a party to this suit.

8

claim for improper contractual interference where it offered no further detail to explain how defendant interfered with plaintiff's contract).[9]

Plaintiff also utterly fails to plead intentional and improper interference by Mrs. and Mr. Swift. He does not allege that the Swifts did anything. He claims that on June 2, 2013, Scott Borchetta told Mr. Haskell that Mrs. Swift was "livid," and that on June 3, 2013, Mr. Bell had three telephone calls with Mr. Call, KYGO's Station Manager, in which Mr. Bell related that Ms. Swifts "parents" were "very upset," that "Ms. Swift and her parents were increasingly upset and looking for action," that "the Swift's were considering all of their options," and would take some unspecified action if KYGO would not. (Compl. ¶¶ 31-35). These second-hand, hearsay reports, taken as true for purposes of this Motion, express the Swifts' state of mind about the incident and make no specific reference to Plaintiff. Nor do they suggest what "action" the Swift's would or could have taken. Plaintiff does not specifically plead or allow the Court to reasonably infer that statements allegedly attributable to the Swifts, and allegedly conveyed by an intermediary, were intentional, improper, or induced KYGO to terminate him. These allegations are far from nudging Plaintiff's claims from conceivable to plausible.

In determining whether an actor's conduct was improper, Colorado courts consider, among other factors, the nature of the actor's conduct, the actor's motive, and the proximity or remoteness of the actor's conduct to the interference. *See Jefferson Cnty. School Dist. No. R-1 v. Moody's*

---

[9] Even taking as true Plaintiff's express allegation that "Ms. Swifts' accusations were false" (Compl. ¶ 34), he admits that she *truthfully* complained that she was grabbed, albeit, according to Plaintiff, by someone else. (*Id.* ¶ 23). Should the Court conceivably draw any inference against Ms. Swift from these allegations, Plaintiff's claim thoroughly fails against her, because he never pleads or implies that Ms. Swift knew about Plaintiff's contract and that she intended to interfere with it—two indispensable elements of this offense. *See Nobody in Particular*, 311 F. Supp. 2d at 1116-17.

*Investor's Servs., Inc.*, 175 F.3d 848, 858 (10th Cir. 1999) (citation omitted). Plaintiff alleges no direct "conduct" by the Swifts; raises no suggestion that they had any malice or motive to personally harm him; and, admits that their alleged activity was remote at best. He blatantly fails to plead any impropriety by the Swifts.

Plaintiff's allegations regarding Mr. Bell's phone calls are likewise insufficient to allege that Mr. Bell intended to interfere with Plaintiff's contract or that Mr. Bell's conduct was improper. Plaintiff pleads no facts stating or indicating that Mr. Bell told Mr. Call to fire Plaintiff. He asserts merely that Mr. Bell phoned Mr. Call to discuss the incident, convey his concerns, and make general statements about "tak[ing] action." (Compl. ¶¶ 32, 33). These allegations do not specifically claim or support a reasonable inference that Mr. Bell was improperly pressuring KYGO to terminate Plaintiff. *Palmer,* 2014 WL 3267306, at *4 ("simply passing along requested information is not enough to rise to tortious interference"); *Baldwin v. Key Equip Fin., Inc.*, No. 05-CV-502, 2006 WL 2016843, at *12-13 (D. Colo. July 17, 2006) (supervisor's excessive discipline resulting in plaintiff's termination was not improper because supervisor had no malice or improper motive). At most the Court can infer that Mr. Bell suggested that KYGO mount some unspecified response to the incident.

### 3. Plaintiff fails to allege that Mr. Bell acted with the requisite intent to hold him personally liable for contractual interference.

The Amended Complaint alleges that "[a]t all relevant times, Defendant Frank Bell . . . w[as] acting within the scope of [his] employment by Defendant Taylor Swift." (Compl. ¶ 65). When a claim for intentional interference with contractual relations is alleged against an agent, plaintiffs are required to plead additional allegations beyond the mere elements of the tort. *Ayon v. Kent Denver Sch.*, No. 12-CV-2546, 2013 WL 1786978, at *5 (D. Colo. Apr. 26, 2013); *W.O.*

*Brisben Cos. v. Krystkowiak*, 66 P.3d 133, 136-37 (Colo. App. 2002). In Colorado, "attaching personal liability to an agent occurs only in the 'rare circumstances' where the agent was 'motivated solely by a desire to breach or interfere with the [plaintiff's] contract.'" *Ayon*, 2013 WL 1786978, at *5 (citations omitted). Taking as true the allegation that Mr. Bell was acting as Ms. Swift's agent, Plaintiff does not, and cannot, plead any facts to suggest that Mr. Bell was motivated solely by the desire to harm Plaintiff or out of personal animus towards Plaintiff or his employer. *Id.*; *see also Trimble v. City & County of Denver,* 697 P.2d 716, 720-21, 725-27 (Colo. 1985) (en banc) (overruled by statute on other grounds) (agent acted improperly by abusing administrative authority to fire employee because of personal hostility, rather than bona fide organizational purpose).

### C. Plaintiff Does Not Plead Sufficient Facts to State Plausible Claims for Tortious Interference with Prospective Business Relations.

Plaintiff alleges that Defendants tortiously interfered with (1) an optional one-year extension and potential bonuses under his employment contract; (2) "employment by other radio stations for the remainder of his career;" and (3) "potential" money from "performance bonuses, product endorsement fees, and public appearance fees." (Compl. ¶¶ 11, 47). Colorado has adopted the elements of the Restatement (Second) of Torts—Section 766B—for alleging tortious interference with prospective business relations. *Ryskin v. Banner Health, Inc.*, No. 09-CV-1864, 2010 WL 4818062, at *14-15 (D. Colo. Nov. 9, 2010). The elements for this offense are nearly identical to those for intentional interference with contractual obligations. *Zimmer Spine, Inc. v. EBI, LLC*, No. 10-CV-3112, 2011 WL 4089535, at *2 (D. Colo. Sept. 14, 2011). Whether interference was intentional and improper remains "the crucial question" for determining liability. *Occusafe, Inc. v. EG&G Rocky Flats, Inc.,* 54 F.3d 618, 622 (10th Cir. 1995) (citation omitted).

Plaintiff must also adequately allege the existence of a prospective business relationship. Interference with another's prospective contractual relation is tortious only when there is a likelihood or reasonable probability that a contract would have resulted. *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995). He must also allege that Defendants both knew about the prospective relationship and acted with the requisite intent to interfere with it. "[I]nterference with the other's prospective business relation is intentional if the actor desires to bring it about or if he knows the interference is certain or substantially certain to occur as a result of his action." *Ryskin,* 2010 WL 4818062, at *15 (citing Restatement (Second) of Torts § 766B, cmt. d).

Plaintiff's allegations fail on all fronts: (1) Plaintiff does not sufficiently allege that Defendants knew about his potential contract extension, theoretical and utterly speculative future endorsements, bonuses, or appearance fees; (2) he does not allege that Defendants had any intent to interfere with his prospective business opportunities, whatever they may have been; and (3) Plaintiff does not identify any ongoing relationship on which there is or was a reasonable likelihood that (conjectural) opportunities would materialize. Instead, Plaintiff asserts that, but for the alleged interference, he would have enjoyed the hypothetical benefits of lifetime employment at undetermined "other radio stations," bonuses, and unspecified endorsement and appearance fees. (Compl. ¶¶ 11, 47). These imagined opportunities are but a "mere hope" on which Plaintiff is legally unable to base his claim. Plaintiff has identified no party with whom he would have the most remote possibility of entering a contract. His claim is "so speculative it's scary." *See Klein* 44 F.3d at 1506 (dismissing plaintiff's claim that defendants interfered with potential investment in plaintiff's product by identified third-party with whom he had been speaking).

### D. Plaintiff's Claim of *Respondeat Superior* Fails because His Underlying Tort Claims Fail.

Plaintiff pleads a claim of *respondeat superior* against Ms. Swift, allegedly arising from the tortious acts of Mr. Bell. *Respondeat superior* is not a stand-alone cause of action or cognizable legal claim; it is a method to prove another claim, and must be based on an underlying tort. *Baker v. Baxa Corp.,* No. 09-CV-2034, 2011 WL 650002, at *1 (D. Colo. Feb. 11, 2011). When an underlying tort claim fails, so too does the *respondeat superior* claim upon which it is based. *Lymon v. Aramark Corp.*, 499 Fed. App'x 771, 774 (10th Cir. 2012). Because Plaintiff's underlying tort claims for interference with contract and prospective business relations asserted against Mr. Bell fail, his actions cannot serve as a basis for Plaintiff's *respondeat superior* claim.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted.

March 15, 2016

Respectfully Submitted,

/s/ J. Douglas Baldridge
J. Douglas Baldridge
Courtney A. Sullivan
Katherine M. Wright
Venable LLP
575 7th Street, NW
Washington, D.C. 20004
Telephone: (202) 344-4703
FAX: (202) 344-8300
E-mail: jdbaldridge@venable.com
E-mail: casullivan@venable.com
E-mail: kmwright@venable.com

*Attorneys for Defendants Frank Bell, Scott Swift, Andrea Swift, and Taylor Swift*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 15th day of March, 2016 a copy of the foregoing was filed with the Clerk of Court using the Court's CM/ECF system on all counsel of record.

/s/ *J. Douglas Baldridge*
J. Douglas Baldridge