**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:15-cv-01974-WJM-KLM

DAVID MUELLER

                Plaintiff,

v.

TAYLOR SWIFT; FRANK BELL;
ANDREA SWIFT a/k/a ANDREA FINLAY;
SCOTT SWIFT; and JOHN DOES 1-5

                Defendants.

---

**PLAINTIFF MUELLER'S UNOPPOSED AND JOINT MOTION TO RESTRICT
ACCESS TO THE PARTIES' JOINT STATUS REPORT**

---

Plaintiff/Counterclaim Defendant David Mueller ("Mr. Mueller" or "Plaintiff"), pursuant to D.C.Colo.LCivR. 7.2, moves the Court to restrict access to the Parties' Joint Status Report which was filed as a restricted document on August 19, 2016. Defendants do not oppose and join this Motion. In support of their Motion, Plaintiff states:

**OVERVIEW**

On May 16, 2016, Magistrate Judge Mix ordered the Parties to submit a Joint Status Report. (Doc. 85). On August 19, 2016, the Parties filed the Joint Status Report as a Level 1 restricted document. (*See* Doc. 97). It includes confidential, private, and work-product protected information the Parties were required to provide pursuant to Magistrate Judge Mix's Order. Accordingly, Plaintiff Mueller, with Defendants' consent and joinder, requests that the Court grant this Motion for Restricted Access and permanently designate the Joint Status Report as a Level 1 restricted document.

## STANDARD OF REVIEW

The public's right to judicial records is not absolute. *Jetway Aviation, LLC v. Bd. of Cty. Comm'rs of Cty. of Montrose, Colo.*, 754 F.3d 824, 826 (10th Cir. 2014) (citations omitted). Courts may exercise discretion and restrict a public's right to access judicial records if that "right of access is outweighed by competing interests." *Id.* (quoting *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011)). Restricted access to records is proper when a party "articulate[s] a real and substantial interest that justifies depriving the public of access to the records that inform [the court's] decision-making process." *Id.* Examples of a sufficient showing to restrict access to documents include where the records contain trade secrets, "business information that might harm a litigant's competitive standing," information that could "harm the competitive interests of third parties," private information, or otherwise invade privacy interests. *See, e.g.*, *Pine Telephone Co. v. Alcatel Lucent USA Inc.*, 617 Fed. App'x 846, 852 (10th Cir. 2015); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *Hershey v. ExxonMobil Oil Corp.*, 550 Fed. App'x 566, 574 (10th Cir. 2013); *Huddleson v. City of Pueblo, Colo.*, 270 F.R.D. 635, 637 (D. Colo. 2010); Fed. R. Civ. P. 5.2. The decision to limit public access to a document "is necessarily fact-bound" and therefore there is "no comprehensive formula for decision-making." *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985). Rather, the "decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the <u>relevant facts and circumstances of the particular case</u>." *Id.* (emphasis added).

In the District of Colorado, the fact-based inquiry for determining a motion to restrict is guided by Local Rule 7.2. Such a motion must: (1) identify the document for which restriction is sought; (2) address the interest to be protected and why such interest outweighs the presumption

2

of public access; (3) identify a clearly defined and serious injury that would result if access is not restricted; (4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question; and (5) identify the level of restriction sought. D.C.Colo.LCivR. 7.2. Defendants address each of these local rule requirements below.

## ARGUMENT

**Document Identification**: As noted above, the Parties move to restrict access to the Parties' Joint Status Report, filed in response to Magistrate Judge Mix's Minute Order on May 16, 2016. (*See* Doc. 97). The Joint Status Report was filed as a restricted document on August 19, 2016. (*Id.*).

There are a number of interests to be protected here that warrant restricted access as well as clearly defined and serious injury that would result if such restricted access is not granted.

**Interest 1**: Ensuring that court files do not become a vehicle for improper purposes and taint the jury pool. As Magistrate Judge Mix noted in prior hearings, substantial media attention is being paid to this action. Several of the topics requested by the Court in the Joint Status Report pose the very serious risk of jury prejudice in a case that has been shown to have extensive coverage by the press.

The Supreme Court has recognized that the public's general right to access of court files is rightfully curtailed when "court files might have become a vehicle for improper purposes" including the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. *Nixon v. Warner Commn'cs*, 435 U.S. 589, 598 (1978). Moreover, many state's ethics rules, including Colorado's, prohibit dissemination of information

that could "materially prejudice an adjudicative proceeding." *See* Col. R. Prof'l Conduct 3.6.[1] Given the ongoing media attention, which will only increase as trial approaches, a very real risk is posed that potential jurors will be exposed to the media's version of the issues in this case, running the very real risk of tainting or limiting the jury pool. Resulting jury prejudice or jury pool diminishment is not only a real possibility, it is likely and clearly an outcome the Parties, and presumably the Court, wish to avoid.

Moreover, the public interest in obtaining information in the Joint Status Report is non-existent, especially in light of the fact that neither Party sought any affirmative relief from the mandatory filing of the Joint Status Report. In contrast, the Parties', and the Court's, interests in keeping the information confidential, not allowing the media to report the case through its lens, and thereby avoid tainting the future jury pool, is substantial.

**Interest 2**: Protecting and maintaining the confidentiality of whether there have been settlement discussions, and the content thereof, if any. The substance and even existence (or lack) of settlement communications and discussions is presumptively confidential and there is no right of public access to confidential settlement discussions. *See, e.g.*, *Landco Equity Partners, LLC v. City of Colo. Springs*, 259 F.R.D. 510, 514 (D. Colo. 2009) (citing *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 857-58 (2d Cir. 1998)) (recognizing that "parties rely on the confidential nature of the settlement process to have frank and open discussions about both the strengths and weaknesses of their cases, and that few cases would ever settle if the press or public were privy to such discussions"); *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*,

---

[1] Counsel recognizes that this rule generally governs extrajudicial comments, but, as the Parties are well aware, every filing in this case is magnified and widely disseminated due to the media's interest in its participants.

No. 3:11-CV-1209, 2013 U.S. Dist. LEXIS 110400, at *19-21 (D. Conn. Aug. 5, 2013) (citing *Gambale v. Duetsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004)) (granting motion to seal portions of documents reflecting confidential settlement discussions). Therefore, to the extent of any such discussions between the Parties, confidentiality is presumptively required. Without confidentiality, both Parties will be unwilling to engage in such discussions and the impetus for many settlements will be thwarted. *See Landco Equity Partners*, 259 F.R.D. at 514.

**Interest 3:** Protecting the confidentiality of the Parties counsel's rates at this stage of the litigation. Fee and cost information, while not necessarily privileged is generally kept confidential in a matter unless or until one party seeks to prove their entitlement to recovery of those fees and costs. *See* C.R.S. § 13-17-104 ("The attorney and his client shall remain free to negotiate in private the actual fee which the client is to pay his attorney."); *Colorado Mills, LLC v. Philadelphia Indem. Ins. Co.*, No. 12-CV-01830-CMA-MEH, 2013 WL 1340649, at *5 (D. Colo. Apr. 2, 2013) (finding certain attorney fee and rate information privileged). At this point of the litigation, with a motion to dismiss pending and dispositive motions not yet due, it is entirely premature to think that counsel would ever have disclosed their rates or costs to opposing counsel, let alone the public.[2] Counsels' rates and fee arrangements in any particular case is private and confidential information and there is no justifiable reason requiring disclosure of that information to the public (nor does the public have an identifiable interest in knowing

---

[2] Abiding by ethics rules requirements is also a consideration here as some states, including Maryland, a State one of Defendants' lawyers is barred in, recognizes that clients often want and assume that their fee arrangement with their attorney kept confidential. *See In re Criminal Investigation No. 1/242Q,* 602 A.2d 1220, 1221 (Md. 1992). Such confidentiality is required pursuant to Rule 1.6 of the Maryland Rules of Professional Responsibility. *Id.* While that rule of Professional Responsibility does not preclude an attorney from disclosing fee information when required by court order, the general interest in maintaining client confidence, including confidentiality of fee arrangements, is clear.

counsels' rates or anticipated costs through the conclusion of this matter). Counsel are of course wary of the competitive harm from disclosing their rates, which are adjusted to meet the needs of individual cases, at this stage in the litigation before any motion for attorneys' fees has been filed. Such competitive harm and maintaining confidentiality outweigh any interest the public has in knowing counsels' fees and estimates of costs at this stage of the litigation.

**Interest 4**: Protecting information subject to the protective order entered in this matter (Doc. 81). Much of the information included in the Joint Status Report is subject to the operative protective order as it was learned through protected deposition testimony and documents. (*See id.*). While the Parties recognize that the inclusion of material subject to a protective order alone is insufficient to justify restriction (*see* Local Rule 7.2(c)(2)), it is an important consideration. Obviously, the Parties will be harmed if confidential information subject to the protective order is released to the public. The injury is especially acute here where neither Party actively sought to disclose the information but rather was required to do so through a status report pursuant to a Court order. When considered in conjunction with the other interests identified above, the various harms identified herein, and the facts and circumstances of this case, the interest in maintaining the confidentiality of information subject to the case's governing protective order points toward restricting access to the Joint Status Report.

**No Alternative to Restriction**. The Joint Status Report is not an affirmative filing by any of the Parties and does not require the Court to make any sort of ruling. *See Meeker v. Life Care Centers of Am., Inc.*, No. 1:14-CV-2010, 2015 WL 7882695, at *8 (D. Colo. Dec. 4, 2015) (highlighting the policy behind open access to court records is to allow public access to "records that inform [the court's] decision-making process"). Rather, it is a Court-mandated filing,

providing a status update and requiring detailed information that the Parties would never voluntarily release to the public. Redaction, summarization, or stipulation are not feasible options here because information requiring protection permeates the entirety of the document and the nature of the document, a joint status report, does not lend itself to further summarization or stipulation. Every section of the document required disclosure of private, confidential, or work-product protected information and therefore must be restricted in its entirety.

**Level of Restriction Sought**. The Parties jointly request Level One (1) protection of the Joint Status Report, allowing access to both Parties and the Court.

WHEREFORE, for the foregoing reasons, the Parties respectfully request the Court grant its Joint Motion to Restrict Access to the Parties' Joint Status Report.

DATED this 2nd day of September, 2016.

                Respectfully submitted,

                EVANS & MCFARLAND, LLC

                */s/ M. Gabriel McFarland*
                M. Gabriel McFarland
                Evans & McFarland, LLC
                910 13th Street, #200
                Golden, CO 80401
                303-279-8300
                Email: gmcfarland@emlawyers.com
                *Attorney for Plaintiff / Counterclaim*
                *Defendant David Mueller*

                                              VENABLE LLP

                                              /s/ *J. Douglas Baldridge*
                                              J. Douglas Baldridge
Courtney A. Sullivan
Katherine M. Wright
Venable LLP
575 7th Street, NW
Washington, D.C. 20004
Telephone: (202) 344-4000
FAX: (202) 344-8300
E-mail: jbaldridge@venable.com
E-mail: casullivan@venable.com
E-mail: kmwright@venable.com

*Attorneys for Defendants Frank Bell,*
*Scott Swift, Andrea Swift, and Taylor Swift*
*and Counterclaimant Taylor Swift*

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on this 2nd day of September, 2016, a copy of the foregoing **PLAINTIFF MUELLER'S UNOPPOSED AND JOINT MOTION TO RESTRICT ACCESS TO THE PARTIES' JOINT STATUS REPORT** was filed with the Clerk of Court using the Court's CM/ECF system on all counsel of record.

                                              /s/ *M. Gabriel McFarland*
                                              M. Gabriel McFarland