# EXHIBIT 22

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-01974-WJM-KLM

DAVID MUELLER

    Plaintiff

v.

TAYLOR SWIFT;
FRANK BELL;
ANDREA SWIFT a/k/a ANDREA FINLAY;
SCOTT SWIFT; and
JOHN DOES 1 - 5

    Defendants

## PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff David Mueller, through counsel, M. Gabriel McFarland of Evans & McFarland, LLC, hereby submits his Responses to Defendants' First Set of Interrogatories:

### GENERAL AND CONTINUING OBJECTIONS

1.    Plaintiff objects to Defendants' instructions and definitions to the extent they seek to impose obligations not imposed by the Federal Rules of Civil Procedure.

2.    Plaintiff objects to Defendants' discovery requests to the extent any individually numbered request contains multiple subparts, rendering each numbered request in reality more than one request.

3.    Plaintiff objects to Defendants' discovery requests to the extent they seek legal conclusions rather than factual information.

Exhibit No.: 6
Deponent: Mueller
Date/RPR: 7/13/16
Hunter + Geist, Inc.

4. Plaintiff objects to Defendants' discovery requests to the extent they seek information protected by any privilege, including the attorney/client privilege and the work product doctrine.

5. Plaintiff objects to Defendants' discovery requests to the extent they seek the identification or production of confidential information, trade secrets, or proprietary documents.

6. Plaintiff objects to Defendants' discovery requests to the extent they are overly broad, unduly burdensome, or seek information not reasonably calculated to lead to the discovery of admissible evidence.

7. Plaintiff, in making these responses, does not in any way waive or intend to waive: (a) objections relating to competency, relevancy, materiality, privilege, or admissibility; or (b) the right to revise, correct, supplement, or clarify any response.

Subject to these General and Continuing Objections, Plaintiff submits his responses to Defendants' First Set of Interrogatories as follows:

## INTERROGATORIES

1. Identify Mueller's entire employment history up to the present day, including the name of the employer, the name of Mueller's direct supervisor at each employer, the dates of employment and the reason for departure from each employer.

### ANSWER TO INTERROGATORY NO. 1:

Plaintiff objects to this request in that it is overly broad and seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding, and without waiving, this objection, please see Plaintiff's resume, which will be produced.

2

2.      Identify all of Plaintiff's "prospective business opportunities" alleged in Paragraph 48 of the Complaint and state the factual basis for Mueller's contention that Defendants "knew" or "should have known" of these "prospective business opportunities."

### ANSWER TO INTERROGATORY NO. 2:

Plaintiff has a long history as a successful radio personality. In 2012, KYGO had serious problems with the morning drive day-part of its programming, which led it to an extensive search for a new morning show. Plaintiff and Ryan Kliesch had worked together in San Diego and in Kansas City, and they had recently performed for a country station in Nashville. The demo tapes from their work in Nashville sparked the interest of Steve Reynolds, KYGO's morning show consultant.

In January 2013, the station offered the morning show job to Plaintiff and Mr. Kliesch. Plaintiff resigned as an employee for the company he co-founded, Nineball Radio, Inc., and accepted KYGO's guaranteed contract and the opportunity to work with Mr. Kliesch.

Barring Defendants' wrongful and damaging conduct, Plaintiff's employment contract with KYGO would have been renewed or extended. In addition, he would have similar or even better opportunities in other radio venues but for Defendants' essentially blackballing him from radio. The shows Plaintiff worked on prior to arriving at KYGO were 'highly rated' and his knowledge of morning radio was extensive enough to co-found a very popular and successful morning radio prep business — Nineball Radio, Inc. In the weeks just prior to signing a contract with KYGO, Plaintiff was offered and turned down a morning show position at 96.3 K-Twin

3

(Minneapolis). Plaintiff also had serious discussions regarding morning show opportunities in KVIL (Dallas) and KLOS (Los Angeles).

After his termination by KYGO, Plaintiff began searching for desirable morning show opportunities in Top 20 markets. Plaintiff restarted discussions with KVIL (Dallas). Plaintiff also had extensive conversations with KSSX (San Diego) and sent his radio package — resume, headshot and demo tape — to 92.5 The Wolf (Denver). Those stations declined to hire Plaintiff.

3. Describe, separately and in detail, the bases for the allegations in Paragraph 47 of the Complaint that "there was a reasonable likelihood that Plaintiff Mueller's employment contract with Lincoln Financial Media Company of Colorado would be extended, and/or that he would continue to enjoy employment by other radio stations for the remainder of his career."

**ANSWER TO INTERROGATORY NO. 3:**

*See* Answer to Interrogatory No. 2. Plaintiff and Mr. Kliesch were a good team and were developing a winning morning show.

4. Identify each and every radio station at which Plaintiff has ever worked or is currently working, including the name of the station, the name of Plaintiff's employer, the dates of Plaintiff's employment, and his job title(s) at each.

**ANSWER TO INTERROGATORY NO. 4:**

Plaintiff objects to this request in that it is overly broad and seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding, and without waiving, this objection, please see Plaintiff's resume, which will be produced.

4

5. Identify the date, time, and location for each recording produced in Plaintiff's First Supplemental Initial Disclosures, including where the recording took place and the identity of all speakers on each recording.

**ANSWER TO INTERROGATORY NO. 5**

The audio recordings were from meeting in the office of Bob Call at Lincoln Financial Media on June 3, 2013. Plaintiff, Bob Call, and Eddie Haskell participated in the meeting.

6. State the factual basis for Mueller's contention that Defendants "knew or reasonably should have known" of Mueller's contract with Lincoln Financial, as alleged in Paragraph 42 of the Complaint.

**ANSWER TO INTERROGATORY NO. 6:**

Plaintiff explicitly identified himself as a KYGO personality and employee at the subject meet-and-greet with Ms. Swift and repeated this information to Ms. Swift's security personnel when they accosted him. Anyone, and certainly anyone involved in the entertainment industry and associated media, would reasonably infer he was under a contract with the station. Apparently, the communications among Defendants included this information, as Ms. Swift's agents contacted KYGO and demanded action against Plaintiff.

7. Identify the "words and conduct" Defendants used to intentionally cause Lincoln Financial to terminate its contract with Mueller, as alleged in Paragraph 43 of the Complaint.

5

## ANSWER TO INTERROGATORY NO. 7:

The words and conduct currently known to Plaintiff are set forth in Paragraphs 27-37 of the Second Amended Complaint and Jury Demand. Presumably, other words and conduct occurred to set those described in the Complaint into motion, including, for example, Ms. Swift's conversations with the co-Defendants and others. There may also have been additional communications between Defendants and KYGO representatives of which Plaintiff was not apprised.

8. Identify all "additional compensation" Mueller received in the form of performance bonuses, product endorsement fees, and public appearance fees, as alleged in Paragraph 11 of the Complaint, from the time his employment at KYGO started until his termination, including the form and amount of compensation, for what it was received, and from whom the compensation was received.

## ANSWER TO INTERROGATORY NO. 8:

The vast majority of this information is in the possession of KYGO. Plaintiff will subpoena the same forthwith.

9. Identify the statements "Defendants orally published and/or caused to be orally published" to third parties, including which Defendant made each statement, the date of each statement, and who each statement was made to, as alleged in Paragraphs 53 and 54 of the Complaint.

## ANSWER TO INTERROGATORY NO. 9:

*See* Answer to Interrogatory No. 7. Please also see paragraph 53 and 54 of the Complaint.

10. Identify each and every individual present for the conversation described in Paragraphs 23 and 24 of the Complaint between Mueller and Eddie Haskell. If the identity of any individual is unknown, provide a physical description of each individual.

**ANSWER TO INTERROGATORY NO. 10:**

Mr. Haskell was on the concourse outside the main entrance. He was standing on the Pepsi Center side of the walkway, out of the sun. Upon seeing Plaintiff, Mr. Haskell moved toward Plaintiff, asked if he had met Taylor, and then excitedly described his own encounter with her earlier that evening. After Haskell told his story, two younger girls — 14 to 18 years of age — approached Mr. Haskell from the direction of the parking area. Haskell was familiar with at least one of the girls. She had blonde hair. This girl was upset about not meeting Taylor and either had tickets Mr. Haskell gave her or was going to get tickets from Mr. Haskell. Plaintiff offered the girl one of the headshots he received while backstage at the meet-and-greet. The girl then requested that Mr. Haskell and Plaintiff join her and her friend for a photo.

11. Identify how much and what type of alcohol Mueller consumed on June 2, 2013.

**ANSWER TO INTERROGATORY NO. 11:**

Plaintiff had one sip from a mixed drink in a plastic cup after returning to the Pepsi Center from the parking lot. Plaintiff was standing on the main floor of the arena, holding said drink, as he was approached by Craig from the Swift security team. Craig ordered Plaintiff to put his drink down and Plaintiff complied.

7

12.     Identify each and every instance on which, during his employment with KYGO, Plaintiff introduced a musical artist or artists at a live performance, conducted interviews with an artist or artists backstage, and/or accompanied any KYGO listeners to meet-and-greet events, as alleged in Paragraph 12 of the Complaint. For each such instance identified, identify the date, the location, the specific musical artist(s), and whether Plaintiff introduced a musical artist or artists at a live performance, conducted a backstage interview, or accompanied a KYGO listener to a meet-and-greet. For each such instance, identify the individual or individuals at KYGO or Lincoln Financial Media whom required Plaintiff to participate in or attend.

## ANSWER TO INTERROGATORY NO. 12:

Plaintiff objects to this request in that it is overly broad and unduly burdensome and seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding, and without waiving, this objection, Plaintiff provides the following information:

- February of 2013 – Plaintiff and Mr. Kliesch introduced and interviewed country artist Josh Turner at the Soiled Dove venue. KYGO Promotions Director Garret Doll and KYGO Sales Manager Jeff Silver requested that Plaintiff and Mr. be present at the event. (KYGO did not have a Program Director at that time.)
- April or May 2013 – Plaintiff introduced three country music acts at Toby Keith's I Love This Bar and Grill. KYGO Program Director Eddie Haskell requested that Plaintiff be present at the event.

8

- May, 18, 2013 – Plaintiff and Mr. Kliesch introduced an opening act for the "Locked and Reloaded Tour" at the Fiddler's Green venue. Plaintiff and Kliesch also led a group of listeners backstage for a meet-and-greet with country artist Randy Houser. KYGO Program Director Eddie Haskell requested that Plaintiff and Kliesch be present at the event.

13. Identify the polygraph examiner who performed the polygraph examination alleged in Paragraph 39 of the Complaint, including name, phone number, address, and any other contact information.

**ANSWER TO INTERROGATORY NO. 13:**

Reports with the requested information will be produced.

14. Describe in detail the factual basis for Plaintiff's knowledge that the telephone calls and meetings in Paragraphs 27, 28, 39, 31, 32, 33, 35, and 37 of the Complaint took place on the dates alleged and involved the specific conversations alleged.

**ANSWER TO INTERROGATORY NO. 14:**

This information was conveyed orally and in writing by Messrs. Haskell and Call.

15. Identify every person with whom you have discussed the Events, in whole or in part.

**ANSWER TO INTERROGATORY NO. 15:**

Plaintiff objects to this request in that it is overly broad and unduly burdensome and seeks information that is not relevant or reasonably calculated to lead to the

9

discovery of admissible evidence. Notwithstanding, and without waiving, this

objection, Plaintiff provides the following information:

KYGO PERSONNEL:
    Bob Call
    Eddie Haskell
    Steve Reynolds (consultant)
    Shannon Melcher
    Ryan Kliesch

FELLOW NINEBALL RADIO OWNERS:
    Stefan Jones
    Matt Hier

RADIO FRIENDS:
    Tommy "Mojo" Carballo (WKQI-Detroit)
    Tim "Chio" Acosta (WISX-Philadelphia)
    Tony Zazza
    Michael Steele
    Tommy "McFly" Pavlick
    Lamont Hollywood (KSAN-San Francisco)
    Steve Maney
    Danny Czekalinski
    Tim Richards
    Chris Rollins
    Todd Shannon
    Mark Todd
    Dave Kaelin
    Dave Smiley
    Jessica Fiore
    Dan Binder

FAMILY:
    Denise Mueller (mom)
    Carol Mann (sister)
    Shel Mann (brother-in-law)
    Deborah Mueller (sister)
    Sarah Mann (niece)
    Patty Atkins (cousin)
    Gary Atkins (cousin)
    Michelle Levinson (cousin)

PERSONAL FRIENDS:
    Raland Camara
    Charissa Hauff

10

Chris Harrington
Clare Harrington
Tim Pickwell
Mark Zeigler

16. Identify every person with whom you have discussed any of the allegations of your Complaint.

**ANSWER TO INTERROGATORY NO. 16:**

*See* the response to Interrogatory No. 15 above.

11

## VERIFICATION

The foregoing answers to interrogatories are accurate and complete to the best of my knowledge as of today's date.

_____
David Mueller

12

## VERIFICATION

The foregoing answers to interrogatories are accurate and complete to the best of my knowledge as of today's date.

_____
David Mueller

12

Dated this 16th day of June, 2016.

        Respectfully submitted,

        EVANS & MCFARLAND, LLC

By: s/ M. Gabriel McFarland
    M. Gabriel McFarland
    Evans & McFarland, LLC
    910 13th St., #200
    Golden, CO 80401
    Telephone: 303.279.8300
    Facsimile: 303.277.1620
    Email: gmcfarland@emlawyers.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2016, **PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES** was served via e-mail on the following:

J. Douglas Baldridge (jbaldridge@venable.com)
Courtney A. Sullivan (casullivan@venable.com)
Katherine M. Wright (kmwright@venable.com)

s/M. Gabriel McFarland
M. Gabriel McFarland

00059742.DOC;1

14