## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1: 15-cv-01974-WJM-KLM

DAVID MUELLER

                    Plaintiff,

v.

TAYLOR SWIFT; FRANK BELL;
ANDREA SWIFT a/k/a ANDREA FINLAY;
and JOHN DOES 1-5

                    Defendants.


### DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## Table of Contents

**Page**

INTRODUCTION ..................................................................................................... 1

    REPLY CONCERNING UNDISPUTED FACTS .................................................... 3

    RESPONSE CONCERNING ADDITIONAL DISPUTED FACTS....................... 8

ARGUMENT ............................................................................................................ 10

    I.    THERE IS NO GENUINE DISPUTE OF MATERIAL FACT REGARDING PLAINTIFF'S INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS CLAIM ................................................................................ 10

        A.  Ms. Swift Did Not Have Any Knowledge of Mueller's KYGO Contract........... 10

        B.  Defendants Did Not Intentionally and Improperly Interfere with Plaintiff's Contract............................................................................................. 11

        C.  Plaintiff Concedes Defendants' Causation Arguments......................................... 14

    II.  THERE IS NO GENUINE DISPUTE OF MATERIAL FACT REGARDING PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS .............................................................. 15

        A.  Plaintiff Concedes the Majority of Defendants' Arguments ................................ 15

        B.  Plaintiff Cannot Save His Claim Through the Use of Unsupported Assertions About What he Hopes to Testify to at Trial.......................................................... 16

    III.  PLAINTIFF'S CLAIMS FOR SLANDER *PER SE* AND *SLANDER PER QUOD* ARE TIME-BARRED ................................................................................ 17

    IV.  BECAUSE ALL OF PLAINTIFF'S UNDERLYING TORT CLAIMS FAIL, SO TOO DOES HIS CLAIM OF *RESPONDEAT SUPERIOR*........................................ 20

CONCLUSION......................................................................................................... 20

## INTRODUCTION

In an effort to oppose Defendants' Motion for Summary Judgment, Plaintiff actually concedes that there is no genuine dispute of material fact. (*See* Dkt. 119 ("Opp.")). The simple fact is that the allegations he asserts are not material to Defendants' Motion, and his efforts to contest other facts are sorely lacking. Further conceding the Motion, Plaintiff does not even attempt to respond to many of Defendants' arguments. Taken together, Plaintiff cannot defeat summary judgment.

Plaintiff tries to create a genuine dispute of *material fact* by misdirecting attention to an issue that is <u>not</u> material to Defendants' Motion. Plaintiff points to insignificant (and natural) variations in evidence to try to undermine Ms. Swift's account of her assault, including his own denial of that action. Given Plaintiff's admissions and the undisputed evidence described below, whether or not Ms. Swift was assaulted in precisely the manner she maintains does not need to be resolved by this Court in order to grant Defendants' Motion.[1]

The reason for this is that the undisputed evidence does not, and cannot, support a claim for tortious interference. For example, Plaintiff admits that he has no facts to suggest that Ms. Swift had a motive or incentive to fabricate a story about him. He concedes he has no facts to dispute that Ms. Swift reported what happened to her mother and to others on her team—but never to anyone at KYGO. The undisputed testimony shows that when Mr. Bell reported the incident to KYGO, he never requested that KYGO terminate Mueller. KYGO independently investigated the report by, among other things, interviewing Mueller and his then-girlfriend, and viewing the

---

[1] Of course, the evidence and testimony of Ms. Swift and every other witness is overpowering in proving that Ms. Swift was assaulted by Mueller exactly as she described.

photograph of Mueller with Ms. Swift (which Mueller admits looks "bad"). KYGO made the decision to terminate Mueller after concluding that the photograph was "damning" and Mueller had lied by changing his story about what happened—wholly independent of anything the Defendants are alleged to have done. In light of these admissions and undisputed facts, there is nothing about the events that could support a claim against any Defendant for tortious interference with Mueller's contract or any of his alleged prospective business relations.

Plaintiff also admits deficiencies on other elements of his claims. For example, Plaintiff admits a lack of evidence that Ms. Swift or Andrea Swift interfered with his contract, as he admits that neither contacted anyone at KYGO. He also admits that no Defendant actually interfered with his prospective business relations, as he admits that he has no evidence Defendants ever communicated with any identified prospective business relation other than KYGO. He further admits he knew all of the allegedly defamatory statements more than a year before he asserted those claims, and thus admits that his slander claims are time-barred.

Finally, even if all of Plaintiff's admissions and the undisputed facts mentioned above were not enough to support Defendants' Motion (which they are), summary judgment would still be warranted because Plaintiff failed to respond to a number of Defendants' legal arguments. For example, he wholly fails to address Defendants' arguments that none of their alleged conduct caused Plaintiff any injury. As a matter of law, Plaintiff has conceded those legal arguments, and both of his tortious interference claims, as a result.

## REPLY CONCERNING UNDISPUTED FACTS

**Preliminary Statement**

Plaintiff's response to Defendants' Statement of Material Facts ("SOF"), demonstrates that no genuine dispute of material facts exists. In fact, Plaintiff admitted many of Defendants' undisputed facts. *See*, *e.g.*, Pl.'s Resp. to SOF ¶¶ 1, 2, 3, 8, 10, 11, 15, 19, 24, 30, 35, 37, 39, 43, 44, 50, 52, 53, 54, 55, 56, and 58. Plaintiff offered no response to certain of Defendants' other undisputed facts. *See* Pl.'s Resp. to SOF ¶ 7, 26. Those facts should be deemed admitted. *Freeman v. White*, No. 05-cv-164, 2006 WL 2793139, at *2 n.3 (D. Colo. Sept. 28, 2006). Plaintiff's effort to dispute Defendants' other SOFs suffers from two pervasive, fundamental problems.

First, Mueller impermissibly attempts to dispute various facts without any reference to admissible evidence. Such "unsupported conclusory allegations. . . do not create an issue of fact" that can defeat summary judgment. *Freeman*, 2006 WL 2793139, at *14; *see Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir. 2004); *Cordova v. N.M. Taxation & Revenue Dep't*, No. 08-cv-681, 2011 WL 7164459, at *9 (D.N.M. Dec. 28, 2011); WJM Revised Practice Standards § III.E.5. Thus, there is no dispute regarding SOF ¶¶ 17, 18, 22, 23, 34, 42, 46, 49, 51, 57, and 59.

Second, Mueller impermissibly attempts to create disputes by raising other facts that are not material to those Defendants identified. *Freeman*, 2006 WL 2793139, at *2 n.3 (response to a factual proffer stating a denial and then offering a factual statement that did not refute the substance of a defendant's initial proffer deemed the fact admitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Thus, there is no dispute as to, for example, SOF ¶¶ 9, 29, 32.

Defendants reply to Plaintiff's attempts to dispute the remaining SOFs as follows:

4.      Plaintiff's unsupported characterization of KYGO's reasons for terminating him do not create a genuine dispute of material fact. *Salehpoor*, 358 F.3d at 789.  The evidence is clear that Plaintiff was terminated for violating the morality clause of his contract. (Ex. 2 at SWIFT_0000029; Ex. 4. at 40:6-14; Ex. 5 at SWIFT_0000027; *see* Ex. 1 at SWIFT_0000011).[2] The "clarification" Plaintiff identifies in Mr. Haskell's deposition was an explanation of how Plaintiff violated his morality clause. (Ex. 4 at 39:18-40:11).

5.      Plaintiff's unsupported characterizations of KYGO's investigation do not create a genuine dispute of material fact. *Salehpoor*, 358 F.3d at 789. None of the assertions raised by Plaintiff in response to SOF ¶¶ 4 and 5 dispute that KYGO terminated Plaintiff after conducting an investigation of the incident. Moreover, Plaintiff's assertion that Mr. Call "made no effort to talk to any witness to the alleged incident" is belied by the undisputed fact that KYGO interviewed both Plaintiff and his then-girlfriend, Ms. Melcher. *See* SOF ¶ 26.

6.      There is no genuine dispute of material fact as Plaintiff does not dispute that "Ms. Swift contends that during a June 2, 2013 meet-and-greet at the Pepsi Center, Mr. Mueller inappropriately touched her once, by putting his hand under her dress and grabbing her bare ass."

8.      Plaintiff admits the fact in SOF ¶ 8. The additional unsupported language in Plaintiff's response does not create a genuine dispute of material fact. *Salehpoor*, 358 F.3d at 789.

9.      Plaintiff's Response to SOF ¶ 9 does not create a genuine dispute of material fact. Notably, the vast majority of Plaintiff's assertions are irrelevant to whether witnesses identified Mueller as the man who inappropriately touched Ms. Swift, and none of the assertions offer

---

[2] All Exhibits cites herein refer to exhibits filed in Support of Defendants' Motion for Summary Judgment (Dkt. 108) and attached to the Declaration of Katherine Wright (Dkt. 108-2) unless otherwise specified.

evidence contrary to the facts asserted by Defendants in SOF ¶ 9. Moreover, Plaintiff's response misstates and ignores relevant testimony cited in SOF ¶ 9. *See* SOF ¶¶ 12, 13.

12.     Plaintiff's response ignores that the photographer, Ms. Simbeck, testified: "Yes, I saw that his hand was on her butt." (Ex. 8 at 48:8-14).

13.     The fact asserted in SOF ¶ 13 is admitted, as Plaintiff admits that Mr. Dent stated "he saw Mr. Mueller lift up [Ms. Swift's] skirt." Mr. Dent also testified: "I knew he touched her butt." (Ex. 10 at 46:6). The additional unsupported language in Plaintiff's response does not create a genuine dispute of this material fact. *Salehpoor*, 358 F.3d at 789.

14.     Plaintiff's attempt to dispute SOF ¶ 14 is undermined by his admission of SOF ¶ 37, which states that both Mr. Haskell and Mr. Dimick described the photograph as "damning," and SOF ¶ 11, where Plaintiff admits the photograph looks "bad." Plaintiff's unsupported characterization of Exhibit 14 does not create a genuine dispute of material fact as the photograph speaks for itself. Moreover, Plaintiff ignores Ms. Swift's testimony that in the photo Mueller "is in progress of lifting my skirt in order to grab my ass underneath it." (Ex. 7 at 28:10-12).

16.     Plaintiff cites no record evidence supporting his denial. Unsupported denials do not create a genuine dispute of material fact. *Salehpoor*, 358 F.3d at 789. Plaintiff's assertion that the statement in SOF ¶ 16 "appears to be inadmissible hearsay" is unfounded and unsupported. The facts can be presented through admissible evidence at trial, and the cited testimony consists of statements that are not hearsay or are admissible under one of a number of exceptions, such as excited utterance and state of mind. *See* Fed. R. Evid. 803(2), (3).

20.     The record is clear that Mr. Bell never asked KYGO to fire Mueller. *See* SOF ¶ 32. None of Plaintiff's citations dispute Mr. Bell's testimony. Plaintiff's unsupported characterizations

of Mr. Bell's intentions, communications, and the photograph do not create a genuine dispute of material fact. *Salehpoor*, 358 F.3d at 789.

21.     Plaintiff admits that, "Andrea Swift said something to the effect that she had no expectation as to what KYGO would do." (*See* Ex. 16 at 29:14-23). Plaintiff's unsupported denials do not create a genuine dispute of material fact. *Salehpoor*, 358 F.3d at 789.

22.     Plaintiff's unsupported assertions do not create a genuine dispute of material fact. *Salehpoor*, 358 F.3d at 789. Moreover, Plaintiff's assertion is undermined by his statement in response to SOF ¶ 21 that Frank Bell, Andrea Swift, and Robert Allen made the decision to contact KYGO.

23.     *See* Reply to Pl.'s Resp. to SOF ¶ 22.

25.     Plaintiff does not dispute the factual assertion in SOF ¶ 25 that a minimum of seven KYGO and Lincoln Financial senior management personnel and counsel were involved in the station's investigation. Plaintiff's unsupported characterizations of that investigation do not create a genuine dispute of material fact. *Salehpoor*, 358 F.3d at 789; *see also* SOF ¶¶ 4, 5 and Replies thereto.

27.     Plaintiff admits the fact in SOF ¶ 27. *See also* Reply to Pl.'s Resp. to SOF ¶ 16.

28.     Plaintiff admits the fact in SOF ¶ 28. *See also* Reply to Pl.'s Resp. to SOF ¶ 16.

29.     Plaintiff cites no record evidence supporting his denial. Unsupported statements do not create a genuine dispute of material fact. *Salehpoor*, 358 F.3d at 789. Moreover, the second sentence of Plaintiff's response does not refute, or respond to, the factual assertion in SOF ¶ 29.

31.     Plaintiff admits the fact in SOF ¶ 31. *See also* Reply to Pl.'s Resp. to SOF ¶ 16.

32.     Plaintiff's response does not dispute the fact that Mr. Bell and Mr. Call testified that Mr. Bell "never" requested that KYGO terminate Mueller or take any other specific action. Plaintiff's additional "facts" are not responsive to Defendants' undisputed fact in SOF ¶ 32 and cannot create a genuine dispute of material fact. *Freeman*, 2006 WL 2793139, at *2 n.3.

33.     There is no dispute regarding the factual assertion in SOF ¶ 33.

34.     *See* SOF ¶¶ 8, 33-35, 38 and Pl.'s Resp. thereto.

36.     Plaintiff admits that KYGO "looked at [the photograph] and determined that it looked bad." He also admits that Mr. Haskell and Mr. Dimick described the photograph as "damning." Pl.'s Resp. to SOF ¶ 37. Thus, there is no genuine dispute of the material fact in SOF ¶ 36.

38.     Plaintiff's response is contradicted by his admission in Response to SOF ¶ 35. In addition, Plaintiff cites no record evidence supporting his denial. Unsupported denials do not create a genuine dispute of material fact. *Salehpoor*, 358 F.3d at 789.

40.     Plaintiff's response is contradicted by his admission in Response to SOF ¶ 39. In addition, Plaintiff cites no record evidence supporting his denial. Unsupported denials do not create a genuine dispute of material fact. *Salehpoor*, 358 F.3d at 789.

41.     Plaintiff's response is contradicted by his admission in Response to SOF ¶ 39. In addition, Plaintiff cites no record evidence supporting his denial. Unsupported denials do not create a genuine dispute of material fact. *Salehpoor*, 358 F.3d at 789.

45.     Plaintiff's characterization of the statement in SOF ¶ 45 as a "legal conclusion" does not create a genuine dispute of material fact. As Plaintiff testified, "[l]egally, [KYGO] did not have an obligation" to employ him after January 20, 2015.  (Ex. 3 at 157:10-16).

47.     The quoted testimony does not create a genuine dispute of material fact given the testimony cited in SOF ¶ 47, which says Plaintiff's show was not doing well and struggling with ratings.

48.     Plaintiff's response does not create a genuine dispute of material fact, as it ignores Plaintiff's testimony that Mr. Haskell "made it clear to both Ryan Kliesch and myself that he was not happy with us, and he really wanted to get rid of both of us or one of us." (Ex. 3 at 31:19-32:1); *see also* Pl.'s Resp. to SOF ¶ 50.

## RESPONSE CONCERNING ADDITIONAL DISPUTED FACTS

None of Plaintiff's "additional" facts are material to Defendants' Motion for Summary Judgment. Thus, regardless of whether they are admitted or disputed—because, for example, they misstate the cited testimony—none create a genuine dispute of material fact that could preclude summary judgment.

1.     Admitted that Ms. Simbeck testified that she saw Plaintiff's hand on Ms. Swift's bottom and she identified the picture of Plaintiff touching Ms. Swift's bottom. (Pl.'s Ex. 4 at 54:7-16; Ex. 8 at 48:8-14). Admitted that Ms. Swift testified that Plaintiff touched her bottom under her clothing. (Ex. 7 at 7:9-8:1 (he "put his hand under my dress and grabbed my bare ass")). To the extent Plaintiff insinuates that Ms. Simbeck saw Plaintiff's hand "over" Ms. Swift's clothing, denied as that misstates Ms. Simbeck's testimony. (*See* Ex. 8 at 47:23-25; Pl.'s Ex. 4 at 54:7-16).

2.     Admitted.

2.[3]     Admitted that Ms. Worden testified that the photograph shows Plaintiff's "hand . . . on [Ms. Swift's] rear" and "you can clearly see in that photo that he's touching her." (Pl.'s Ex. 5

---

[3] Both this and the prior Statement of Additional Disputed Facts are numbered "2."

at 27:11-30:9). Also admitted that Ms. Swift testified that Plaintiff touched her bottom under her clothing. (Ex. 7 at 7:9-8:1 (he "put his hand under my dress and grabbed my bare ass")). To the extent Plaintiff insinuates that Ms. Worden saw Plaintiff's hand "over" Ms. Swift's clothing, denied as that misstates Ms. Worden's testimony. (*See* Pl.'s Ex. 5 at 27:11-17). Plaintiff's characterization of Ms. Worden's testimony as "contrary" to Ms. Swift's is wrong (the testimony is consistent) but immaterial. (*See* Ex. 7 at 7:9-8:1; Pl.'s Ex. 5 at 28:9-17). Plaintiff's characterization that Ms. Swift "acknowledged she did not know whether Mr. Mueller is touching her bottom in the photograph" is erroneous given Ms. Swift testified that in the photo Mueller "is in progress of lifting my skirt in order to grab my ass underneath it." (Ex. 7 at 28:4-12). Defendants further dispute Plaintiff's unsupported characterization of the photograph. The photograph speaks for itself, as does the testimony of Mueller (it looks "bad") and KYGO employees (it is "damning"). *See* SOF ¶¶ 11, 37 and Pl.'s Resp. thereto.

3. Denied. Mr. Bell was not employed at KYGO. Pl.'s SOF ¶ 9. Also denied that Mr. Haskell "had not voiced any concerns about [Plaintiff's] performance." *See* SOF ¶¶ 48-50.

4. Admitted that Mueller made these statements during his first meeting with KYGO. Mueller subsequently changed his story. SOF ¶¶ 35, 38.

5. Admitted.

6. Denied. KYGO's investigation is described in SOF ¶¶ 25-27, 31, 36.

7. Denied. Plaintiff misstates Mr. Haskell's testimony. (*See* Pl.'s Ex. 1 at 60:23-61:10).

8. Denied as to the characterization of Mr. Dent as Ms. Swift's "personal body guard." (*See* Pl.'s Ex. 8 at 27:25-28:13). Otherwise admitted.

9.      Admitted.

10.     Admitted.

11.     Denied. Plaintiff misstates Ms. Swift's testimony. She testified that after Plaintiff left the meet-and-greet area, she continued to greet her fans and that "as soon as the last person left [her] meet-and-greet, as soon as they walked out" she alerted her team that Mueller had inappropriately touched her. (Pl.'s Ex. 3 at 10:3-11:18). Ms. Swift did not alert anyone earlier because she did not "have one split second without a fan in front of [her] until that moment." (*Id.* at 11:10-18).

12.     Denied as to the characterization of Mr. Dent as Ms. Swift's "personal body guard." (*See, e.g.*, Pl.'s Ex. 3 at 12:2-19). Otherwise admitted.

## ARGUMENT

### I.      THERE IS NO GENUINE DISPUTE OF MATERIAL FACT REGARDING PLAINTIFF'S INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS CLAIM

#### A.  Ms. Swift Did Not Have Any Knowledge of Mueller's KYGO Contract

Contrary to Plaintiff's assertion, the record shows that Plaintiff's claim against Ms. Swift under Count 1 fails because she did not have any knowledge of Mueller's contract with KYGO. Knowledge is, of course, a necessary element of any such claim. *See, e.g.*, *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1115 (D. Colo. 2004) (citation omitted). Plaintiff admits that prior to June 2, 2013 Ms. Swift had never met and knew nothing about Plaintiff, his relationship with KYGO, or his contractual relationship. *See* SOF ¶ 24 and Pl.'s Resp. thereto. This is consistent with Plaintiff's admission in his deposition that he never told Ms. Swift he was with KYGO, let alone that he was an on-air personality for the station.  *Id.*

Plaintiff tries to side-step these facts by conflating Ms. Swift's knowledge at the time she made statements about Plaintiff's inappropriate conduct with the knowledge others may have had at subsequent times.[4]  For example, Plaintiff asks: "Really, Ms. Swift and the other Defendants did not understand that Mr. Mueller had an employment contract, even though *they* repeatedly telephoned the station to advise that the Swifts 'were considering all their options' . . . ?" Opp. at 20 (emphasis added). However, Plaintiff admitted, Ms. Swift did not herself "telephone" or otherwise contact KYGO. SOF ¶ 22 and Pl.'s Resp. thereto.  Because there is no evidence that Ms. Swift had knowledge of Plaintiff's contract, Plaintiff cannot establish this element of his claim.

## B.  Defendants Did Not Intentionally and Improperly Interfere with Plaintiff's Contract

The undisputed facts and Plaintiff's admissions also make clear that none of Defendants' actions were improper and intentional. *See* Mot. at 15-20.

### 1.  Ms. Swift

In their Motion, Defendants explained that (1) any alleged conduct by Ms. Swift was too remote to interfere with Plaintiff's contract and (2) that there was no evidence that she had an intent or motive to interfere with Plaintiff's contract. Mot. at 16-17. Plaintiff failed to respond to these arguments, and offered no evidence to dispute them. Therefore, they should be deemed

---

[4] Plaintiff's separate claim for *respondeat superior* liability based on Mr. Bell's actions is distinct from Plaintiff's claim against Ms. Swift in her personal capacity for intentional interference with contractual relations. (*See* Dkt. 72 ¶¶ 64-66). To the extent Plaintiff now attempts to survive summary judgment by amending his Complaint to include a *respondeat superior* claim based on actions undertaken by Andrea Swift, the Court should reject Plaintiff's actions. *See, e.g.*, *Hanson v. Beloit Newspapers, Inc*., No. 94-4023-SAC, 1995 WL 646808, at *1 n.1 (D. Kan. Sept. 15, 1995) ("Parties cannot amend their complaints simply by alleging new facts and theories in their memoranda opposing summary judgment.").

conceded and summary judgment entered in Ms. Swift's favor. *Federated Mut. Ins. Co. v. Ever-Ready Oil Co.*, No. 09-cv-857, 2012 WL 11945481, at *4 & n.7 (D.N.M. Mar. 9, 2012).

Plaintiff appears to rest his hopes of overcoming summary judgment by trying to create a "dispute" about whether Mueller touched Ms. Swift over her clothes or under her clothes. *See, e.g.*, Opp. at 2, Stmt. of Add'l Disputed Facts ¶¶ 1, 2 (second). Even though the weight of the evidence contradicts Mueller's view (*see, e.g.*, SOF ¶¶ 6-9, 11-14), and Mueller admits Ms. Swift had no reason to "fabricate a story" (Pl.'s Resp. to SOF ¶ 15), even giving Mueller's argument the slightest credence does not create a genuine dispute of *material fact*. It still leaves undisputed the facts that Ms. Swift contends (and definitely believes) she was touched inappropriately, her belief was reported to the radio station by someone else, and the radio station then conducted an investigation and fired Mueller based on the "damning" photographic evidence and the fact that Mueller changed his story. Mueller offers no explanation for how Ms. Swift's reporting of an unknown man's unwanted touching of her bottom to her mother and management team—but no one connected to Plaintiff (as Plaintiff concedes)—could be improper under the circumstances. Indeed, the case law is clear that it was not.[5] *See* Mot. at 17-18 (citing cases).

### 2.  Andrea Swift

Again, Plaintiff's bald statements that Andrea Swift acted intentionally and improperly are not supported by record facts. Plaintiff admits that Andrea Swift never communicated with KYGO (Pl.'s Resp. to SOF ¶ 19) and fails to identify any other act that Andrea Swift took to intentionally interfere with Mueller's contract.

---

[5] This is true even if Ms. Swift's belief and statements were erroneous—which the record shows they were not. *See Leach v. James*, 455 S.W.3d 171, 175 (Tex. App. 2014); SOF ¶¶ 6-9, 11-14.

Moreover, Plaintiff has not identified how Andrea Swift's conduct was improper. He does not offer any evidence to dispute that Andrea Swift was informed by her daughter that an unknown man inappropriately touched her, that Ms. Swift was visibly distraught during this recounting, and that, as a result, Andrea Swift, in consultation with Ms. Swift's senior management team, decided to have Frank Bell inform the radio station of what happened. Mot. at 18-19; Pl.'s Resp. to SOF ¶¶ 16, 17; Stmt. of Add'l Disputed Facts ¶ 10. Plaintiff does nothing to dispute Defendants' authorities that, under these circumstances, Andrea Swift's conduct was not improper (*see* Mot. at 18-19) and he offers not a single case demonstrating otherwise. Given the facts, Plaintiff cannot sustain a claim against Andrea Swift.

### 3.  Mr. Bell

Plaintiff has not identified how Mr. Bell's conduct was improper or shown that Mr. Bell intended to interfere with Mueller's contract. Plaintiff does not contest that Mr. Bell was informed that Mueller inappropriately touched Ms. Swift and that he then informed the radio station what happened. Pl.'s Resp. to SOF ¶¶ 27, 31; Stmt. of Add'l Disputed Facts ¶ 10. It is also undisputed that Mr. Bell did not ask KYGO to take any specific action with regards to Mueller. SOF ¶ 32 and Reply to same. Under these circumstances, Mr. Bell's conduct was not improper. *See* Mot. at 19-20 (citing cases). Again, Plaintiff has failed to address any of the cases Defendants presented and has not offered any contrary authority.

In an attempt to save his claim, Plaintiff puts the onus on Mr. Bell to have cross-examined Ms. Swift and the other witnesses before contacting KYGO. *See* Opp. at 21. Plaintiff cites no legal

support for this proposition and it is simply a red herring to distract from the absence of facts or law supporting Plaintiff's claim against Mr. Bell.

### C.  Plaintiff Concedes Defendants' Causation Arguments

It is axiomatic that where a plaintiff's opposition fails to address arguments raised in defendant's summary judgment motion, "a court may treat those arguments that the plaintiff fails to address as conceded." *Federated Mut. Ins.*, 2012 WL 11945481, at *4 n.7. Here, Defendants presented three independent arguments supporting their contention that their alleged conduct did not cause Plaintiff's termination. Mot. at 20-24. Most notably, citing on-point and persuasive caselaw, Defendants argued that KYGO's investigation severed any causal connection there may have been between Defendants' report of Plaintiff's inappropriate conduct and his termination. *Id.* at 20-22 (citing cases). Plaintiff did not attempt to respond to these arguments and, as such, the Court should deem them conceded. *E.g.*, *Federated Mut. Ins.*, 2012 WL 11945481, at *4 n.7.

At most, Plaintiff included a few unsupported statements in his Response to Movants' Statement of Undisputed Facts that KYGO's investigation was "a sham" or not "meaningful." Such unsupported statements cannot create a genuine dispute of material fact. *Salehpoor*, 358 F.3d at 789. To the extent Plaintiff attempts to cast doubt on the investigation by claiming KYGO should have taken additional steps, such as interviewing other witnesses, Plaintiff fails to offer any argument or evidence that those steps would have made any material difference to KYGO's investigation or altered the outcome given the evidence KYGO had, including the "damning" and "bad" photograph and Mueller's changing story.[6] *See*, *e.g.*, SOF ¶¶ 11, 14, 33-35, 37, 38. The

---

[6] To the extent Plaintiff now claims KYGO's independent investigation was somehow deficient, that is the basis for a claim against KYGO, not against any of these Defendants.

record is clear that KYGO terminated Mueller not simply because Mr. Bell reported Mueller's conduct to KYGO, but because <u>KYGO</u> determined Mueller was lying, had changed his story, and had inappropriately touched Ms. Swift. SOF ¶ 38.[7] On this record, KYGO's investigation clearly severed the causal connection between Defendants' alleged conduct and Plaintiff's termination. *See* Mot. at 20-22.

Summary judgment is "mandate[d] . . . against a party who fails to . . . establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). Because Plaintiff has no evidence to establish the required elements of his intentional interference with contractual relations claim, summary judgment should be entered for Defendants.

## II. THERE IS NO GENUINE DISPUTE OF MATERIAL FACT REGARDING PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

### A. Plaintiff Concedes the Majority of Defendants' Arguments

Plaintiff's entire response to Defendants' arguments regarding his claim for tortious interference with prospective business relations is contained in a single paragraph and fails to address most of Defendants' arguments.  For example, he does not address the following:

- The identified "endorsement deals" were too speculative to constitute a "prospective business relationship"  (*see* Mot. at 25-26);

---

[7] As pointed out in Defendants' Motion, if the investigation was "inadequate," Mueller has himself to blame because he withheld pertinent information from KYGO. Mot. at 23.

- KYGO's investigation severed any causal connection between Defendants' alleged conduct and Plaintiff's inability to obtain any prospective business relations (*id.* at 27-28); or

- Defendants' alleged conduct did not affect Plaintiff's ability to finalize any alleged prospective business relations (*id.* at 26-28).

As each of these issues relates to a separate element of Plaintiff's claim, his failure to respond to any one of these arguments warrants summary judgment. *See supra* Section I.C.

### B.  Plaintiff Cannot Save His Claim Through the Use of Unsupported Assertions About What he Hopes to Testify to at Trial

Plaintiff tries to gloss over the fact that he has not identified any actual prospective business relations by arguing that he "will testify at trial that he believes KYGO would have exercised" the one-year option in his contract and "that he would have had appearances with the identified vendors."  Opp. at 22. Neither assertion can save his claims.

First, a plaintiff cannot defeat summary judgment with unsupported allegations of what he might testify to in the future (especially where, as here, the plaintiff was already deposed). *Smith v. Flying J, Inc.*, No. 99-cv-433, 2010 WL 4296692, at *4 n.2 (D.N.M. Oct. 12, 2010) ("the mere fact that [a witness] might testify [at trial] cannot help to defeat summary judgment"); *see Liberty Lobby*, 477 U.S. at 249. It was incumbent upon Plaintiff to come forward with some evidence to support his contention (*see, e.g., Cordova*, 2011 WL 7164459, at *9), yet Plaintiff points to none.

Second, Plaintiff's mere conjectural subjective belief about what he thought might have happened cannot save his claim. *See, e.g., Hertz v. Luzenac Group,* 576 F.3d 1103, 1119 (10th Cir. 2009) (to recover, alleged prospective business relations "must be something beyond a mere

16

hope"). Here, Plaintiff has put forth absolutely no evidence beyond his mere hope that any prospective business relations would have been realized. *See* Mot. at 24-26.

Similarly, Plaintiff fails to show the Defendants had knowledge of any alleged prospective business relations. Plaintiff's only response is the unsupported statement that because Defendants knew or should have known that he had an employment contract, they should have known that reporting Plaintiff's behavior "could impact endorsement deals typically for on-air radio personalities." Opp. at 22. This, too, is nothing but unsupported conjecture. *Salehpoor*, 358 F. 3d at 789. In any event, even if Plaintiff could show that the Defendants knew that Plaintiff had a contract with KYGO, Plaintiff offers no support that that should legally translate into knowledge of some unspecified future endorsement opportunities he might have had.[8]

Finally, even if Plaintiff could satisfy the other elements of his claim, Defendants are still entitled to summary judgment because Plaintiff admits he has no evidence to suggest that Defendants ever communicated with any alleged prospective business relations other than KYGO. Pl.'s Resp. to SOF ¶ 58. The absence of such evidence undermines any claim that Defendants induced some third party not to enter into a contract with Plaintiff.

Accordingly, the Court should enter summary judgment for Defendants on Count 2.

### III.   PLAINTIFF'S CLAIMS FOR SLANDER *PER SE* AND *SLANDER PER QUOD* ARE TIME-BARRED

The material facts showing Plaintiff's slander claims are time-barred are not in dispute. Despite knowing by June 3, 2013 all of the alleged defamatory statements alleged in his Second Amended Complaint, Plaintiff did not assert them in his original May 29, 2015 Complaint or his

---

[8] And, as shown above, Ms. Swift did not have knowledge of Plaintiff's contract with KYGO. *Supra* Section I.A.

June 1, 2015 Amended Complaint. SOF ¶¶ 52-56 and Pl.'s Resp. thereto.  Nonetheless, Plaintiff attempts to assert these claims through Colorado's claim revival statute.  *See* C.R.S. § 13-80-109. This attempt is unavailing for at least three reasons.

First, Plaintiff cites absolutely no authority for his novel interpretation of the revival statute that "just as Plaintiff revived Ms. Swift's ability to bring stale assault and battery counterclaims, Ms. Swift revived Plaintiff's ability to bring stale defamation claims." Opp. at 23. Colorado caselaw and practice guidance squarely contradict this interpretation. The court in *Duell v. United Bank of Pueblo* held that plaintiffs could not re-plead stale claims as counterclaims in reply to defendant's compulsory counterclaims. 892 P.2d 336, 340-41 (Colo. App. 1994) ("The language of the pertinent statute makes it clear that its purpose is to allow a party against whom a claim has *initially been asserted* to plead a stale claim *only in response to the claim asserted* against that party and only if it arises out of the same transaction or occurrence . . . ." (emphasis added)). Moreover, the Colorado Practice Handbook on Civil Litigation explicitly precludes Plaintiff's interpretation. It states that the revival statute "does not apply to allow a plaintiff to bring time-barred claims as 'counterclaims' to a defendant's counterclaims." 5A Colo. Prac., Handbook On Civil Litigation § 3:5 (2016 ed.).

Second, even if Plaintiff's interpretation of the revival statute had any merit (it does not), the statute itself does not revive Plaintiff's claims for slander *per se* and slander *per quod* here. The revival statute states that a "*counterclaim or setoff arising out of the transaction or occurrence which is the subject matter of the opposing party's claim shall be commenced within one year after service of the complaint by the opposing party and not thereafter.*" C.R.S. § 13-80-109 (emphasis added). Plaintiff's slander claims were not triggered by Ms. Swift's counterclaims. Rather, they

are based on the *identical* facts he alleged in his first Amended Complaint. *Compare* Am. Compl. & Jury Demand (Dkt. 2), *with* Second Am. Compl. & Jury Demand (Dkt. 72). Thus, Plaintiff's slander claims do not "arise[] out of" the subject matter of Ms. Swift's counterclaims. Moreover, Plaintiff did not raise his slander claims in a reply to Ms. Swift's counterclaims (*i.e.,* he did not raise a counterclaim or setoff). (*See* Dkt. 94). Instead, he amended his complaint to add admittedly stale claims. (*See* Dkt. 72). By its very terms, the revival statute does not save Plaintiff's claims.

Third, to credit Plaintiff's interpretation of the revival statute would turn the statute on its head and eviscerate its purpose: allowing a party in a *defensive* posture to bring compulsory counterclaims that otherwise would be time-barred. "As interpreted by the Colorado courts, this provision 'makes it clear that its purpose is to allow a party against whom a claim has initially been asserted to plead a stale claim only in response to the claim asserted against that party and only if it arises out of the same transaction or occurrence, or the same series thereof.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1168 (10th Cir. 2000) (quoting *Duell*, 892 P.2d at 340-41); *see Plains Metro. Dist. v. Ken-Caryl Ranch Metro. Dist.*, 250 P.3d 697, 702 (Colo. App. 2010) ("The evident 'purpose' of this statute 'is to allow a party against whom a claim has initially been asserted to plead a stale claim' as a counterclaim in certain circumstances.").

The revival statute simply cannot be read to allow a party to manipulate the statute of limitations as Plaintiff attempts to do here. Under Plaintiff's reading, a party could assert a claim, knowing that other causes of action arising out of the same transaction or occurrence are time-barred, against a defendant who previously had no intention of bringing a lawsuit. Then, once the defendant files a compulsory counterclaim as a purely defensive measure to protect his rights, plaintiff could assert claims that he otherwise would have no right to. To allow such a result would

chill the rights of defendants who are wrongfully accused to properly defend themselves against unfounded claims by potentially exposing them to additional litigation or liability on claims that are otherwise time-barred.

Because the revival statute does not apply here, summary judgment should be granted in Defendants' favor on Counts 3 and 4.

## IV.   BECAUSE ALL OF PLAINTIFF'S UNDERLYING TORT CLAIMS FAIL, SO TOO DOES HIS CLAIM OF *RESPONDEAT SUPERIOR*

Plaintiff does not address Defendants' *respondeat superior* argument at all in his Opposition.  Thus, it, too, has been conceded. *See Federated Mut. Ins.*, 2012 WL 11945481, at *4 & n.7.  Moreover, as all of the underlying torts claims against Mr. Bell fail, this necessarily means that his claim against Ms. Swift based on *respondeat superior* liability also fails. *See* Mot. at 29. Summary judgment should be entered in Ms. Swift's favor on Count 5.

## <u>CONCLUSION</u>

For the reasons stated herein, and in Defendants' Motion, the Court should grant summary judgment in Defendants' favor on all of Plaintiff's claims.

November 17, 2016                                      Respectfully Submitted,

                                                      */s/ J. Douglas Baldridge*
                                                      J. Douglas Baldridge
                                                      Danielle R. Foley
                                                      Katherine M. Wright
                                                      Venable LLP
                                                      575 7th Street, NW
                                                      Washington, D.C. 20004
                                                      Telephone:  (202) 344–4000
                                                      FAX:  (202) 344–8300
                                                      E-mail: jdbaldridge@venable.com
                                                      E-mail: drfoley@venable.com
                                                      E-mail: kmwright@venable.com

*Attorneys for Defendants Frank Bell,*
*Andrea Swift, and Taylor Swift*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned counsel hereby certifies that on November 17, 2016 a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system and served on all counsel of record.


<u>/s/ *J. Douglas Baldridge*</u>
J. Douglas Baldridge