**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:15-cv-01974-WJM-KLM

DAVID MUELLER

                Plaintiff,

v.

TAYLOR SWIFT; FRANK BELL; and
ANDREA SWIFT a/k/a ANDREA FINLAY

                Defendants.

**DEFENDANTS' MOTION TO EXCLUDE THE EXPERT REPORT, OPINIONS, AND
TESTIMONY OF JEFFREY B. OPP AND MEMORANDUM IN SUPPORT**

      Pursuant to Federal Rule of Evidence 702, Defendants Andrea Swift, Frank Bell, and

Taylor Swift and Counterclaimant Taylor Swift (collectively, "Defendants") move to exclude the

testimony of Plaintiff / Counterclaim Defendant David Mueller's ("Plaintiff" or "Mueller")

proposed expert witness Jeffrey B. Opp ("Mr. Opp."). Mr. Opp's testimony has previously been

excluded twice by this court, as well as by other federal courts, and should be excluded again.

Mr. Opp should not be allowed to testify about elements of Mueller's financial claims because he

lacks qualifications as an expert witness, his opinions are not based on facts, and his analysis

contains multiple fundamental errors. He is simply not qualified to offer opinions about

Mueller's prospects for future employment as an on-air personality or his "value" as an on-air

radio personality. His opinions are unreliable as they are not grounded in the record facts of this

case, and instead impermissibly rest on Mueller's own speculation about his employment

prospects, and are rife with other errors. Mr. Opp's opinions should also be excluded because he

offers legal opinions.  Finally, Mr. Opp's opinions should be excluded under Federal Rule of Evidence 403.

Mr. Opp's opinions, and purported testimony are unreliable, would not assist the trier of fact, and should be excluded as not meeting the standards of Rule 702 of the Federal Rules of Evidence or the dictates of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Defendants do not request an evidentiary hearing on this Motion.

### D.C.COLO.LCiv R. 7.1 CERTIFICATION

Prior to filing this Motion, counsel for Defendants conferred with counsel for Plaintiff, Gabriel McFarland, regarding the requested relief.  Plaintiff opposes the relief requested herein.

### BACKGROUND

On June 2, 2013, during the fan pre-concert meet and greet at Taylor's Swift's concert at the Pepsi Center in Denver, Colorado, Mueller inappropriately touched Ms. Swift on her bottom. Following this inappropriate contact, an independent investigation was conducted by Mueller's employer, KYGO radio (Denver), and Plaintiff was terminated from his position as an on-air personality. Two years later, Mueller brought this action to recover damages claiming Defendants interfered with his contract and prospective business relations and slandered him, ultimately resulting in his termination from employment at KYGO.

In support of his claim for damages, Plaintiff identified an economist, Jeffrey B. Opp, to opine on the amount of "economic losses" Plaintiff claims to have suffered.  June 14, 2016 Expert Report of Jeffrey B. Opp ("Opp Rep.") at 1 (Ex. 1) (stating purpose of report as analyzing the "economic losses of Mr. Mueller that resulted from the issues associated with claims made against him on June 2, 2013 and his resultant termination"); *see* June 15, 2016 Plaintiff's Fed. R.

Civ. P. 26(a)(2) Disclosures (Ex. 2).  In his report, Mr. Opp assumed that Mueller would have

worked for KYGO for ten to fifteen years, based on Plaintiff's representations that he hoped to

work that long, despite Plaintiff's contract containing a two-year contract term (and checkered

employment history).  Based on that hope, in addition to two other random data points, Mr. Opp

calculated four different possible "total losses" amounts.  Mr. Opp does not identify which of his

possibilities is "correct"; instead, he presents numerous options for a fact finder to decide

between.

Mr. Opp submitted his report on June 14, 2016 and was deposed on July 15, 2016. He has

not supplemented or amended his report or analysis.

## LEGAL STANDARD

Under Federal Rule of Evidence 702, an expert's opinion is not admissible unless (1) the

expert's specialized knowledge will help the trier of fact to understand the evidence or to

determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony

is the product of reliable principles and methods; and (4) the expert has reliably applied the

principles and methods to the facts of the case.  Fed. R. Evid. 702.  It is "[t]he proponent of

expert testimony [that] bears the burden of demonstrating [his] expert's qualification." *Taber v.

Allied Waste Sys., Inc.*, 642 Fed. App'x 801, 807 (10th Cir. 2016) (citation omitted).

The Tenth Circuit employs a two-step analysis to evaluate an expert's testimony under

Rule 702.  *See, e.g.*, *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir.

2001).  First, the Court must determine if the expert witness is qualified as an expert "by

knowledge, skill, experience, training, or education" to render an opinion.  *Id.*; *United States v.

Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).  Second, even if "sufficiently qualified, the court

must determine whether the expert's opinion is reliable by assessing the underlying reasoning, methodology," and application of principles to the facts of the case.  *Nacchio*, 555 F.3d at 1241; *Benton v. Avedon Eng'g, Inc.*, No. 10-CV-1899, 2012 WL 3399367, at *3 (D. Colo. Aug. 15, 2012) (citation omitted); *see also* Fed. R. Evid. 702(b)-(d).

Finally, expert testimony must also satisfy Federal Rule of Evidence 403 and may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## ARGUMENT

### I.     MR. OPP IS NOT QUALIFIED TO OFFER OPINIONS THAT EXCEED THE REASONABLE CONFINES OF HIS SUBJECT MATTER EXPERTISE

"[K]nowledge, skill, experience, training or education," must form the basis of a witness's qualification as an expert. *See* Fed R. Evid. 702. A witness is not qualified as an expert without "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *Taber*, 642 Fed. App'x at 807 (quoting *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004)). Thus, in determining whether an expert is qualified to opine in a given matter, the "dispositive question" is whether the opinions and testimony proffered by an expert fall "within the reasonable confines" of the witness's subject area. *Ralston*, 275 F.3d at 970. If an expert provides testimony beyond the reasonable confines of his subject area, that testimony is inadmissible. *Id*. at 969-70.  "It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000) (citation omitted).  Here, Plaintiff bears the burden of

demonstrating his expert's qualification. *Taber*, 642 Fed. App'x at 807 (citing *Ralston*, 275 F.3d at 970 n.4).

### A.  Mr. Opp Cannot Offer Opinions Specific to the Radio Industry

Mr. Opp, a principal at Opp & Company, Inc., a financial and litigation consulting firm, opines on radio-industry-specific matters that are outside the reasonable confines of his expertise in economics.  First, Mr. Opp asserts that "the amounts [Plaintiff] earned and could expect to have earned under the contract [with Lincoln Financial] (base salary, talent endorsements, bonuses and employer-paid benefits) *are clearly indicative of his quantified value as an On-Air Talent*." Ex. 1, Opp Rep. at 2 (emphasis added); July 15, 2016 Deposition of Jeffrey B. Opp at 31:13-21 (Ex. 3) (opining that Mueller's Lincoln Financial contract is "the clear definition of market value" for on-air talent in Mueller's position).  Second, Mr. Opp opines on Plaintiff's ability to be hired in the radio industry.  *See* Ex. 1, Opp Rep. at 2

Mr. Opp freely admits that he has "absolutely" no expertise in the radio industry and is not a vocational expert on the radio industry.  Ex. 3 at 7:23-8:6; 9:1-10:2; 46:1-18; 53:13-24 ("I'm not a vocational expert."); 55:7-8; *see Perotin v. Colvin*, 110 F. Supp. 3d 1048, 1055 (D. Colo. 2015) ("The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation . . . ." (citation omitted)).  Mr. Opp also has no expertise regarding on-air talent in the radio industry.  Ex. 3 at 46:7-10.

This court, and others, have excluded Mr. Opp's testimony for precisely the infirmity identified above. In *Ryskin v. Joy*, this court excluded Mr. Opp from testifying about a plaintiff's future employability because Mr. Opp had no expertise in physician hiring practices. No. 09-CV-1864, 2010 WL 4873667, at *1 (D. Colo. Nov. 23, 2010) (excluding Mr. Opp's testimony

"concerning Plaintiff's employability, either due to his qualifications or due to the effect of the separation from [plaintiff's former employer]" because such testimony was outside of Mr. Opp's area of expertise). Similarly, in *Rains v. BNSF Railway Co.*, the court excluded Mr. Opp's testimony because although Mr. Opp was not a vocational expert, he relied on assumptions about plaintiff's vocational prospects that only a vocational expert could make. No. 4:06-CV-859-Y, 2009 WL 3459871, at *2 (N.D. Tex. Aug. 11, 2009) (finding Mr. Opp's assumptions about plaintiff's ability to work part-time unsupported in the record).[1]

Thus, Mr. Opp is not qualified to offer these opinions.

### B. Mr. Opp Improperly Asserts Legal Conclusions

Mr. Opp also impermissibly asserts a legal conclusion: that Defendants' alleged actions are the cause of Plaintiff's alleged injury. He states that "[d]espite an extensive job search effort, Mr. Mueller has been unable to find a comparable position to the one he enjoyed a[t] KYGO due to the issues surrounding the claims made against him." Ex. 1, Opp Rep. at 2. He goes even further, stating that "[i]n fact, Mr. Mueller has been unable to find any On-Air Talent positions in radio due to the issues surrounding the claims made against him." *Id.* Although Mr. Opp disclaimed that he was making any legal conclusions in his deposition testimony (Ex. 3 at 26:12-20), his report makes clear that, according to Mr. Opp, Plaintiff has been unable to find any job because of Defendants' alleged actions. Ex. 1, Opp. Rep. at 2.[2]

---

[1] Plaintiff has not offered any vocational expert. Thus, Plaintiff cannot save Mr. Opp's opinion by claiming he relied upon the expertise of someone else. Mr. Opp simply has no foundation for his opinions.

[2] Moreover, these "opinions" as to Mueller's employability are based solely on Plaintiff's representations; Mr. Opp performed no independent analysis or research on the relevant job market to confirm Plaintiff's assertions. Ex. 3 at 34:21-36:23. The notion that Plaintiff engaged in an extensive job search is belied by his testimony. In his deposition, Plaintiff testified that he has focused his job search

This court has previously excluded Mr. Opp for improperly proffering legal opinions. *See Spendrup*, *v. Am. Family Mut. Ins. Co*., No. 13-CV-513, 2014 U.S. Dist. LEXIS 21321, at *10-12 (D. Colo. Feb. 20, 2014) (citation omitted). There, the court recognized that an expert witness may not "state legal conclusions drawn by applying the law to the facts." *Id.* at *9 (quoting *A.E. By & Through Evans v. Indep. Sch. Dist*. No. 25, 936 F.2d 472, 476 (10th Cir. 1991)). Causation is an important issue in this case. *See, e.g.*, Defs.' Mot. for Summ. J. at 20-22 (Dkt. 108). Mr. Opp's conclusion that Plaintiff's alleged inability to obtain employment is <u>because of</u> Defendants' alleged allegations against him inappropriately invades the fact finding province reserved to the jury and the legal province of the Court. *See Spendrup*, 2014 U.S. Dist. LEXIS 21321, at *11-12.

By making unfounded opinions about the radio industry and asserting legal conclusions, Mr. Opp exceeds "the reasonable confines of his subject area" of economics. *Ralston*, 275 F.3d at 970; *Taber*, 642 Fed. App'x at 807 (citation omitted). Mr. Opp is not qualified to offer such opinions in this matter.

## II.    MR. OPP'S REPORT IS BASED ON SPECULATION, UNSUPPORTED ASSUMPTIONS, AND FLAWED METHODOLOGY RENDERING HIS REPORT, OPINIONS, AND PURPORTED TESTIMONY UNRELIABLE

In addition to being qualified, an expert must also base his testimony on sufficient facts or data, the testimony must be the product of reliable principles and methods, and the expert must reliably apply the principles and methods to the facts of the case. Fed. R. Evid. 702(b)-(d). The court may exclude evidence where it finds "an impermissible analytical gap exists between

---

efforts on top 20 markets and has only applied to a "handful" of positions in the three years since he was terminated. July 13, 2016 Deposition of David Mueller at 226:2-227:19 (Ex. 4). Mr. Opp's ignorance of the facts in this matter undermines his opinions regarding Plaintiff's job search and ability to find future employment.

premises and conclusion." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005) (citation and internal quotations omitted); *see Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). Under *Daubert*, "any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Dodge*, 328 F.3d at 1222 (citation omitted). Here, Mr. Opp has failed the final three requirements of Rule 702 by basing his damages opinions on assumptions unsupported in the record, speculating, and failing to reliably apply accepted economic methodology.

### A. Plaintiff's Desires and Intentions Are Insufficient Facts or Data to Support Mr. Opp's Economic Loss Calculations Especially When Plaintiff's Contract Term Expired After Two Years

Rule 702 requires that expert testimony be based on sufficient facts or data. Fed. R. Evid. 702(b). An expert cannot base his opinion on assumptions that have no foundation in the evidentiary record. *Elcock v. Kmart Corp.*, 233 F. 3d 734, 754-56 (3d Cir. 2000). This is particularly true in cases like this where a plaintiff seeks alleged "lost profits." *First Sav. Bank, F.S.B. v U.S. Bancorp*, 117 F. Supp. 2d 1078, 1085 (D. Kan. 2000) (citing cases). However, that is precisely what Mr. Opp has done.

Mr. Opp premises his future economic loss calculations on Mueller's assumed future work-life expectancy of approximately 6.5 to 11.5 years. Ex. 1, Opp Rep. at 4. The basis for this work-life expectancy was obtained solely from Plaintiff's "desire" that KYGO be "his last job in radio before retiring or moving on to some other pursuit." *Id.* Plaintiff told Mr. Opp that "he had intended to work for KYGO for between ten and 15 years before leaving radio." *Id.* Mr. Opp relied on Plaintiff's "desire" and "intentions" without reviewing any other documentation, work-

life tables, or facts in the record to determine whether such a work-life expectancy was reasonable. Ex. 3 at 43:10-44:2; 48:9-49:3; 52:7-53:5. Thus, the entire basis for Mr. Opp's damages opinion was Plaintiff's unsupported and unreliable speculation that he would work as an on-air personality at KYGO for ten to fifteen years.

The law is clear that more than plaintiff's expectation or hope for future employment is required to satisfy the sufficient facts or data requirement. *See, e.g.*, *JDB Medical, Inc. v. The Sorin Group, S.p.A.*, No. 07-CV-350, 2008 WL 10580039, at *8 (D. Colo. June 11, 2008) (finding that "mere hope" of a contract "renewable at the discretion of another party will not support recovery of any future lost profits when the other party can deny renewal at its discretion" (citation and internal quotation marks omitted)); *Benjamin v. Peter's Farm Condo. Owners Ass'n*, 820 F.2d 640, 643 (3d Cir. 1987) (excluding expert testimony where future earning capacity calculation was based solely on plaintiff's personal assessment of his ability to re-enter the work force).[3]  Such self-serving "facts or data" are unduly speculative and not a reliable basis for expert testimony. *See, e.g.*, *MDG Int'l, Inc.*, *v. Australian Gold, Inc.*, No. 1:07-CV-1096, 2009 WL 1916728, at *4-5 (S.D. Ind. June 29, 2009) (excluding damages opinion where expert "'rel[ied] solely on the information provided to him by counsel").

Mr. Opp's reliance on Mueller's "hope" or "desire" to continue to work at KYGO, or another radio station for that matter, for ten to fifteen years is particularly baseless given undisputed facts in the record.  According to Mueller's resume, Plaintiff never held a job as an

---

[3]    Although *Benjamin* was decided prior to the Supreme Court's *Daubert* ruling, *Benjamin*'s holding is still authoritative in determining the propriety of relying solely on one's subjective belief or hope for assumptions in a damages calculation.  *See, e.g.*, *Elcock.*, 233 F.3d at 754-56 (citing extensively to *Benjamin* for the proposition that future damages calculations must be based on proper factual foundation); *Greig v. Botros*, 525 Fed. App'x 781, 793 (10th Cir. 2013).

on-air radio personality longer than four years (with most of his on-air stints lasting one to two years). *See* David Mueller radio resume at MUELLER0082 (Ex. 5). Additionally, prior to starting with KYGO in 2013, Mueller had not worked as an on-air personality since 2006 (*i.e.* he had not worked on-air for over seven years). *Id.*; Ex. 4 at 132:13-20.[4] Mr. Opp did not examine Plaintiff's resume prior to performing his damages calculations and did not research Mueller's prior work history. Ex. 3 at 21:7-22:3; 30:7-21.[5]

Moreover, Mueller's alleged desire to work ten to fifteen years at KYGO is contradicted by his contractual agreement. It is undisputed that Plaintiff had a two year contract with KYGO, with an additional option year electable *solely* at the discretion of KYGO. *See* Jan. 4, 2013 Mueller Employment Contract at SWIFT_0000004 (Ex. 6). Indeed, when asked about his contract, Plaintiff acknowledged that KYGO had no obligation to employ him after the contract's two-year term. Ex. 4 at 157:2-16.

Thus, Mr. Opp's wholesale reliance on Plaintiff's unsupported speculation of future employment is insufficient to support a future damages calculation. *See, e.g.*, *JDB Medical*, 2008 WL 10580039, at *8 (citation omitted) (finding a plaintiff's "mere hope" of future employment "unduly speculative"); *Benjamin*, 820 F.2d at 643; *Fail-Safe LLC v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 887-89 (E.D. Wis. 2010) (excluding expert whose data was "extremely suspect" in that it was no "more than a hopeful projection"). It is also flatly refuted by the fact that Mueller

---

[4]    Plaintiff also testified that prior to his arrival at KYGO, there had been repeated turnover with on-air personalities on the morning show he was joining. Ex. 4 at 156:7-157:1.

[5]    Mr. Opp's failure to support his assumptions with facts in the record also fails the relevance prong of the *Daubert* analysis. *See, e.g.*, *KW Plastics v. U.S. Can Co.*, 131 F. Supp. 2d 1289, 1294 (M.D. Ala. 2001) (explaining that the relevancy prong requires the evidence fit the facts of the case and excluding expert testimony in tortious interference case that was without sufficient foundation to the facts of that matter).

had <u>never</u> held an on-air position for more than four years and had not worked as an on-air personality since 2006. *See, e.g.*, *Elcock*, 233 F. 3d at 754-56 (excluding expert's economic loss opinion based on "assumptions wholly lacking foundation in the record"); *MDG Int'l,* 2009 WL 1916728, at *4 (excluding damages expert who "ignore[d] critical data"); *First Savings Bank*, 117 F. Supp. 2d at 1084-85.

Moreover, Mr. Opp's disregard for Plaintiff's contract term flies in the face of well-settled law excluding future lost profits that exceed a contract term. *See, e.g.*, *JDB Medical,* 2008 WL 10580039, at *8 (granting summary judgment for defendants on claims for future lost profit damages and holding that lost profits beyond the term of the contract were not recoverable); *Underground Vaults & Storage v. Cintas Corp.*, No. 11-CV-1067, 2013 WL 6150764, at *2-3 (D. Kan. Nov. 22, 2013) (granting motion to exclude expert testimony on lost profits for amounts tied to a contract extension of eight years because the "time period [was] not contemplated in the contract" and was therefore "pure unsupported speculation"). Where, as here, a contract limits a plaintiff's available recovery, expert opinion that ignores that reality is unreliable and unsupported. *See Elcock*, 233 F. 3d at 754-56; *MDG Int'l*, 2009 WL 1916728, at *4.

Mr. Opp's reliance on Mueller's assumption of future employment at KYGO, based only on Plaintiff's unsupported "desire" of such future employment, and Mr. Opp's disregard for Plaintiff's contract, reveal a total failure by Mr. Opp to uncover reliable facts or data. Mr. Opp's future lost damages report, opinions, and purported testimony are unreliable and should be excluded.

**B.  The Other Flaws in Mr. Opp's Report Render his Opinion Unreliable**

Expert testimony is inadmissible if (1) it is not "the product of reliable principles and methods" or (2) "the expert has [not] reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(c)-(d); *United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012) ("the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology" (citation omitted)).  Purported expert testimony lacks the required level of reliability when it departs from the "intellectual rigor that characterize the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Lovato v. Burlington N. & Santa Fe Ry. Co.*, No. 00-CV-2584, 2002 WL 1424599, at *11 (D. Colo. June 24, 2002).  Unreliable application can occur at "any step that renders the analysis unreliable" and such misapplication "renders the expert's testimony inadmissible." *Dodge*, 328 F.3d at 1222 (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999)); *see Nacchio*, 555 F.3d at 1241 ("Reliability questions may concern the expert's data, method, or his application of the method to the data).

Here, Mr. Opp's report is rife with flaws that render his opinion unreliable.  For example:

- Mr. Opp failed to account for the fact that 10% of Mueller's compensation went directly to his agent (a fact confirmed by Plaintiff and to which Mr. Opp was entirely unaware) rendering Mr. Opp's calculations inflated by at least 10%. Ex. 4 at 168:17-169:6; Ex. 3 at 57:4-15; Mueller Agency Agreement at WEISS000088 (Ex. 7);

- Mr. Opp did not consistently use economic principles. For example, he used the "look back approach" in determining his discount rate, but did not use this approach in estimating other variables in his analysis (such as Mueller's future employment opportunities, the longevity of Mueller's future position(s), or levels of compensation associated with them). *See* Ex. 3 at 55:9-56:15; Ex. 1, Opp. Rep. at 4. Had Mr. Opp used the look back approach for all such variables, he would have had to address Mueller's prior work history and acknowledged that Mueller's planned work-life at KYGO was unrealistic;

- Mr. Opp applied incorrect annualization calculations to his endorsement talent, gross earnings, and employer contributed 401(k) payment estimates. In calculating annualized amounts, Mr. Opp took the amount Mueller earned for four months of employment in 2013 and multiplied it by an annualization factor. Ex. 1, Opp Rep. at 2, 3 §§ A.3, A.5. Mr. Opp then erroneously added the actual amount Mueller earned. *Id.* This error overstated Mueller's anticipated earnings throughout the remainder of his calculated work-life expectancy;

- Mr. Opp relied entirely on Plaintiff's oral representations as to his 401(k) plan and employer contributions without ever viewing the underlying documents to confirm the very high 401(k) amounts. Ex. 1, Opp Rep. at 3 & n.1; Ex. 3 at 19:3-20:24. Had Mr. Opp reviewed the underlying documentation, he should have recognized that his calculated contribution rate of 10.59% would not have been possible under Lincoln Financial's plan;[6] and

- Mr. Opp did not take into account IRS contribution limits regarding Plaintiff's 401(k). *See generally* Ex. 1, Opp. Rep. This carelessness and lack of detail is emblematic of Mr. Opp's calculations.

The list goes on. In sum, Mr. Opp failed to consistently apply reliable economic principles and his opinion lacked the "intellectual rigors" required of an expert. *See Kumho Tire*, 526 U.S. at 152; *Daubert*, 509 U.S. at 589-590. Exclusion is thus appropriate.

## III. MR. OPP'S TESTIMONY WOULD ONLY SERVE TO CONFUSE THE JURY RENDERING ANY SUCH TESTIMONY INADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 403

What little probative value Mr. Opp's opinion could offer is "substantially outweighed" by the prejudice Defendants would suffer and the confusion to the jury if Mr. Opp is permitted to testify. *See* Fed. R. Evid. 403; *First Sav. Bank*, 117 F. Supp. 2d at 1085-86 (excluding expert

---

[6]    Lincoln Financial's 401(k) Summary Plan Description entitled employees to a core contribution of 4.0% of qualifying earnings for each month of employment, without regard to an employee's participation in the Plan. *See* Sept. 20, 2012 Lincoln Financial Employees' 401(k) Savings Plan at ENTERCOM00010 (Ex. 8). The company also agreed to match $1 for $1 of all monthly contributions made by an employee up to 6% of the employee's qualifying earnings. *Id.* at ENTERCOM00009. Thus, 10% is the maximum amount of qualifying earnings Mueller could have received from Lincoln Financial under his 401(k) plan.

testimony under Rule 403 after identifying numerous underlying problems with the opinion because "its minimal probative value would be substantially outweighed by the unfair prejudice and the confusion to the jury that would result from the authoritative rendering of such substantial damage estimates by a purported economic expert").  As explained above, Mr. Opp opined on matters outside of his expertise, relied on information based solely on the "hopes" and "desires" of Plaintiff, ignored facts in the record, and prepared a methodologically flawed report. Recognizing the cumulative impact of these defects leads to the inescapable conclusion that allowing Mr. Opp to testify at trial would only serve to confuse the jury and unfairly prejudice Defendants. *See Fail-Safe, LLC*, 744 F. Supp. 2d at 900 (recognizing "the obvious danger of putting unrealistic damage figures before the jury" because "such evidence could easily confuse the jury and result in a decision that is contrary to applicable law"); *Elcock*, 233 F.3d at 756 n.13.  Mr. Opp does not satisfy the rigors of Federal Rule of Evidence 403 and his report, opinions, and purported testimony should therefore be excluded.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court exclude the purported testimony of Plaintiff's expert Jeffrey B. Opp and not allow Mr. Opp to testify at trial.

May 11, 2017                              Respectfully Submitted,

                                         /s/ *J. Douglas Baldridge*
                                         J. Douglas Baldridge
                                         Danielle R. Foley
                                         Katherine M. Wright
                                         Venable LLP
                                         600 Massachusetts Ave., NW
                                         Washington, D.C. 20001
                                         Telephone: (202) 344-4000
                                         FAX: (202) 344-8300
                                         E-mail: jdbaldridge@venable.com
                                         E-mail: drfoley@venable.com
                                         E-mail: kmwright@venable.com

                                         *Attorneys for Defendants Frank Bell,*
                                         *Andrea Swift, and Taylor Swift, and*
                                         *Counterclaimant Taylor Swift*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on May 11, 2017 a copy of the foregoing

was filed with the Clerk of the Court using the Court's CM/ECF system and served on all

counsel of record.


/s/ *J. Douglas Baldridge*
J. Douglas Baldridge