# EXHIBIT 4

In the Matter Of:

*MUELLER*

*vs.*

*SWIFT, ET AL.*

_____

*DAVID J. MUELLER*

*July 13, 2016*

_____

CONFIDENTIAL - ATTORNEY'S EYE ONLY - SUBJECT TO PROTECTIVE ORDER

```
          CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
                         DAVID J. MUELLER - 07/13/2016                    Page 1

  1                 IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLORADO
  2
        Civil Action No. 1:15-cv-019474-WJM-KLM
  3     _____

  4              CONFIDENTIAL ATTORNEY'S EYES ONLY
                   AND SUBJECT TO PROTECTIVE ORDER
  5                     VIDEOTAPE DEPOSITION OF:
                    DAVID J. MUELLER - July 13, 2016
  6     _____

  7     DAVID MUELLER,

  8     Plaintiff,

  9     v.

 10     TAYLOR SWIFT; FRANK BELL;
        ANDREA SWIFT a/k/a ANDREA FINLAY;
 11     SCOTT SWIFT; and JOHN DOES 1-5,

 12     Defendants.
        _____
 13
 14             PURSUANT TO NOTICE, the videotape deposition
        of DAVID J. MUELLER was taken on behalf of the
 15     Defendants at 1900 Grant Street, Suite 1025, Denver,
        Colorado 80203, on July 13, 2016, at 8:13 a.m., before
 16     Jennifer Windham, Certified Shorthand Reporter and
        Notary Public within Colorado.
 17

 18

 19

 20

 21

 22

 23

 24     JOB NO.: WDC-090838

 25
```

```
       CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
                     DAVID J. MUELLER - 07/13/2016                    Page 2

   1                    A P P E A R A N C E S

   2    For the Plaintiff:

   3              M. GABRIEL McFARLAND, ESQ.
                  Evans & McFarland, LLC
   4              910 13th Street
                  Suite 200
   5              Golden, Colorado 80401


   6
        For the Defendants:
   7
                  J. DOUGLAS BALDRIDGE, ESQ.
   8              KATHERINE M. WRIGHT, ESQ.
                  Venable, LLP
   9              575 7th Street, NW
                  Washington, D.C. 20004
  10

  11    Also Present:

  12              Jay Schaudies
                  Adam Johnston, Videographer
  13

  14

  15

  16

  17

  18

  19

  20

  21

  22

  23

  24

  25
```

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
DAVID J. MUELLER - 07/13/2016                                    Page 132

```
 1   there's a conspiracy, I'd like to know about it.
 2                This is -- my life was ruined.  I want to
 3   find out who is responsible.  I had a -- I had a nice
 4   career with a good reputation.  I used to go to radio
 5   conventions and people would want to buy me drinks and
 6   spend time with me.  This is the worst thing that's
 7   ever happened in my life.
 8                And this -- my radio career was all I
 9   had.  That was -- that's all I had.  And it's --
10   hopefully it's not gone, but I have a suspicion that
11   maybe it is.  It will never be the way it was, I can
12   tell you that.
13         Q.   Prior to you taking the job in 2013 with
14   KYGO, when was the last time prior to that that you
15   had an on-air radio job?
16         A.   In 2005, 2006 with KDWB in Minneapolis.
17         Q.   So you were eight years where you didn't
18   have an on-air job, correct?
19         A.   I did not have an on-air job at that
20   time, no.
21         Q.   Did somebody blackball you from it during
22   that period?  Is there some reason why?
23         A.   No.  I was -- I was talking to people on
24   a regular basis about jobs.  I would turn them down.
25         Q.   And you had a job at the Minnesota
```

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER

DAVID J. MUELLER - 07/13/2016                               Page 156

```
 1         Q.   As a matter of contract, after
 2   January 20, 2015, KYGO could let you go, right?
 3              MR. McFARLAND:  Objection to form.
 4         A.   There was a stipulation when they had to
 5   notify us if they were going to pick up the option,
 6   but yes, I think . . .
 7         Q.   (BY MR. BALDRIDGE)  Subject to the
 8   requirements to pick up the additional one-year
 9   option, subject to meeting that, as of January 20,
10   2015, once that day passed, you no longer had a right
11   to expect future employment with KYGO, correct?
12              MR. McFARLAND:  Objection to form.
13         A.   Technically speaking.  But we were led to
14   believe that we were the morning show of the future,
15   and they had had a lot of turnover with morning shows,
16   and they wanted -- they had been in a morning show
17   search, their consultant found us, brought us to their
18   attention.
19              We -- and Ryno was -- heard everything I
20   heard.  They indicated that they wanted us around
21   for -- they were going to build the show bigger around
22   us.
23         Q.   (BY MR. BALDRIDGE)  And they had a lot of
24   turnover on the morning show , right?
25         A.   They had turnover with cohosts,
```

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
DAVID J. MUELLER - 07/13/2016                              Page 157

```
 1    apparently, yeah.
 2           Q.    Did you have -- strike that.
 3                 Did KYOG (sic) have any obligation to
 4    employ you after January 20, 2015?
 5                 MR. McFARLAND:   Objection to form.
 6           A.    A legal obligation?
 7           Q.    (BY MR. BALDRIDGE)   Any obligation.  You
 8    cast it however you want.
 9           A.    I think they had a moral obligation.
10           Q.    Okay.  Let's put that there.  We'll come
11    to that.  As a matter of contract, your contract that
12    you read and agreed to, did KYOG have any obligation
13    to employ you after January 20, 2015?
14                 MR. McFARLAND:   Objection to form.
15           A.    Legally, they did not have an obligation.
16    KYGO did not have an obligation.
17           Q.    (BY MR. BALDRIDGE)   Now, the second part
18    of this, this option year, it says, quote, Employer
19    shall have the option in its sole discretion to extend
20    this agreement for one additional year term, correct?
21           A.    Right.
22           Q.    And so if employer, that being KYGO, in
23    its sole discretion decided to extend, that would
24    cause the contract to go on until January 20, 2016,
25    approximately, right?
```

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
DAVID J. MUELLER - 07/13/2016                                   Page 168

1   Media Unit 2.  Going off the record at 1:36.

2                  (Recess taken 1:36 p.m. to 1:50 p.m.)

3                  THE VIDEOGRAPHER:  Back on the record at

4   1:50.  This is the beginning of Media Unit 3.

5        Q.   (BY MR. BALDRIDGE)  Mr. Mueller, the

6   employment agreement we've been looking at, Mueller

7   Exhibit 7, this is just a basic fundamental.  On page

8   13, which is Swift 000015, is that your signature

9   under -- over David J. Mueller?  It's kind of a bad

10  copy, truthfully, but is that it?

11       A.   That's me.

12       Q.   And so this is your contract, right?

13       A.   Yeah.  It must be.

14       Q.   That's called authentication.  Your

15  lawyer will tell you, I just want to make sure I've --

16       A.   Okay.

17       Q.   -- you've confirmed this is the contract.

18  Heather Cohen your -- your agent -- is that fair to

19  call her your agent?

20       A.   Talent agent, I guess --

21       Q.   Talent agent.

22       A.   -- is her official title.

23       Q.   Now, of the amounts in compensation paid

24  to you under your contract, does she or her company

25  get a percentage?

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER

DAVID J. MUELLER - 07/13/2016                              Page 169

```
 1        A.   They did.
 2        Q.   How much of a percentage do they get?
 3        A.   10 percent.
 4        Q.   So is it 10 percent of all compensation,
 5   bonuses, appearances fees, all of that?
 6        A.   Yes.
 7        Q.   And was she paid all of the amounts she
 8   claimed?  That's a terrible question.
 9             She gets 10 percent of your compensation.
10   Does she claim that you still owe her any money?
11        A.   Never claimed it to me.
12        Q.   You mentioned that you were a shareholder
13   in Nineball.
14        A.   Yes.
15        Q.   Do you still own your shares?
16        A.   I do not.
17        Q.   Did you sell your shares?
18        A.   I did.
19        Q.   When did you sell your shares?
20        A.   It was -- I don't have a specific date,
21   but it was last year.
22        Q.   For how much did you sell your shares?
23        A.   And this is all confidential?
24        Q.   Yeah.  You're under a protective order.
25        A.   I sold my shares for $50,000.
```

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
DAVID J. MUELLER - 07/13/2016                                Page 226

```
 1        A.   Not that I know of.
 2        Q.   (BY MR. BALDRIDGE)  Since June 2, 2013,
 3   how many jobs have you applied for?
 4        A.   Well, my focus was on jobs in the top 20
 5   markets, and those would be -- I was in touch with
 6   KVIL Dallas.  I was in touch with KSSX San Diego.  I
 7   sent my package, which in a radio parlance package
 8   means your resume, your demo tape, and a head shot,
 9   typically.  So I sent that to The Wolf here in
10   Denver -- and I'm sorry, I don't know the call
11   letters -- Cool 105.  Both of those are, I think,
12   Dickey or -- yeah -- no, what are those?
13        Q.   It doesn't matter.  Cool 105.
14        A.   Yeah, Cool 105.  I also sent my package
15   to Minneapolis to a station KTWIN, and I -- online
16   there were some very small stations that I applied to,
17   but I, unfortunately, can't tell you how many, but I'm
18   guessing it was between five and ten.  And the closest
19   station would have been Fort Collins or Colorado
20   Springs.  And I only got a response to one of my
21   online applications, and that was from Fort Collins,
22   and they told me that the position was full.
23        Q.   Let's take it by that.  The only thing
24   you heard from Fort Collins was the position is full,
25   correct?
```

DTI Court Reporting Solutions - Washington, DC
1-800-292-4789                    www.deposition.com/washington-dc.htm

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
DAVID J. MUELLER - 07/13/2016                                    Page 227

 1        A.    Correct.

 2        Q.    And from these online very small stations

 3   you referred to, you haven't heard from anyone else?

 4        A.    No, sir.

 5        Q.    Now, did you apply for any jobs outside

 6   of the radio industry since June 2, 2013?

 7        A.    I have not applied for any other jobs

 8   outside of the radio industry.

 9        Q.    Other than the online very small stations

10   at Fort Collins and Colorado Springs, did you apply

11   for any radio jobs outside of top 20 markets?

12        A.    It was just those -- that handful that I

13   had mentioned.  And I -- the only two I remember are

14   Fort Collins and Colorado Springs.  I think one was in

15   Montana, and I'd have to go back and check, but really

16   that -- my main concern was to get into a top 20

17   market because that's what my background was, and

18   that's where you can make enough money to make it

19   worth a relocation.

20        Q.    Now, let's start with Dallas, the station

21   you applied to in Dallas.  Did you submit a written

22   application or your package, as you've described it?

23        A.    I sent my package to Tony Zazza, who was

24   the morning host, and he was looking -- immediately

25   wanted to talk to, you know, talk to me again.  And I