UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-01974-WJM-KLM

DAVID MUELLER

      Plaintiff

v.

TAYLOR SWIFT;
FRANK BELL;
ANDREA SWIFT a/k/a ANDREA FINLAY; and
JOHN DOES 1 - 5

      Defendants

_____

### PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY
### OF LORRAINE BAYARD DE VOLO

_____

Plaintiff David Mueller, through his counsel, M. Gabriel McFarland of Evans &

McFarland, LLC, respectfully submits Plaintiff's Motion to Exclude Testimony of

Lorraine Bayard de Volo.  As grounds therefor, Plaintiff states as follows:

### I.     CERTIFICATION

The undersigned counsel hereby certifies, pursuant to D.C.Colo.LCivR. 7.1 (A),

that he has conferred with Doug Baldridge, counsel for Defendants, regarding the relief

requested in this Motion.  Mr. Baldridge has indicated that Defendants will oppose the

requested relief.

### II.     INTRODUCTION

Ms. Swift contends that during a June 2, 2013 meet-and-greet at the Pepsi

Center, Mr. Mueller "put his hand under [her] dress and grabbed [her] bare ass."  Mr.

Mueller's employer, KYGO, later terminated Mr. Mueller because Ms. Swift and her

team relayed the same to him.  This suit followed.  Mr. Mueller asserts five claims for

relief:  (1) Intentional Interference with Contractual Obligations; (2) Tortious

Interference with Prospective Business Relations; (3) Slander *per se*; (4) Slander *per*

*quod*; and (5) *Respondeat Superior*.  Ms. Swift has asserted a counterclaim for assault.

Defendants designated Lorraine Bayard de Volo, who has a PhD in political

science and is a professor of women and gender studies, as an expert witness.  She has

never before served as an expert witness, and apparently has no training in psychology.

Nonetheless, according to Ms. Bayard de Volo's written report,[1] she intends to opine

that Mr. Mueller had the profile of a person likely to sexually assault women:

> Sexual harassment and assault are fundamentally motived by the
> perpetrator's perceived need to assert power and to protect the
> perpetrator's status.  Throughout David Mueller's pleadings in this lawsuit
> and his deposition testimony, he indicated that even before he met Ms.
> Swift, he felt his job security was threatened, his identity as a radio
> personality was threatened, and his masculinity was threatened.  This
> perfect storm of threats to Mr. Mueller's perceived status is consistent
> with the well-settled, academically-accepted, perceived threats to status
> that motivate a man to commit sexual harassment or assault.

Report at 1-2.  Those opinions are not based on sufficient facts or data, are not

otherwise credible or reliable, and are not admissible.  Moreover, any relevance of the

proposed testimony is outweighed by the danger of unfair prejudice.

---

[1] A copy of Ms. Bayard de Volo's report is attached as Exhibit 1.

### III.    LEGAL STANDARD

A district court must act as a "gatekeeper" in admitting or excluding expert

testimony.  *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).

Admission of expert testimony is governed by Fed. R. Evid. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier
> of fact to understand the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion or otherwise, if (1)
> the testimony is based upon sufficient facts or data, (2) the testimony is
> the product of reliable principles and methods, and (3) the witness has
> applied the principles and methods reliably to the facts of the case.

Ultimately, the Court must determine whether the expert's opinion would assist the trier

of fact in understanding or determining a fact at issue in the case.  *Daubert v. Merrell*

*Dow Pharm.*, 509 U.S. 579, 592 (1993).  The Court must also weigh the relevance of

any proposed expert testimony against "the danger of unfair prejudice, confusion of the

issues, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid.

403.  The proponent of the expert testimony bears the burden of proving the

foundational requirements of Rule 702 by a preponderance of the evidence.  *United*

*States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

### IV.    DISCUSSION

Even though Ms. Bayard de Volo has no training in psychology, has never met

or spoken to Mr. Mueller, and has no idea of Mr. Mueller's upbringing or ideals, she

contends that Mr. Mueller has the profile of a person likely to commit sexually assault:

- "Sexual harassment and assault are fundamentally motived by the
  perpetrator's perceived need to assert power and to protect the
  perpetrator's status.  Throughout David Mueller's pleadings in this
  lawsuit and his deposition testimony, he indicated that even before he

3

met Ms. Swift, he felt his job security was threatened, his identity as a

radio personality was threatened, and his masculinity was threatened.

This perfect storm of threats to Mr. Mueller's perceived status is

consistent with the well-settled, academically-accepted, perceived

threats to status that motivate a man to commit sexual harassment or

assault."[2]

- "Mr. Mueller's pleadings and deposition testimony show that on the

  evening of June 2, 2013, Mr. Mueller faced an accumulation of

  perceived threats to his status consistent with the threats to status that,

  according to well-accepted academic research and studies, motivates

  sexual harassment and sexual assault."[3]

- "Threats to status revolved around his job and identity as a radio

  personality, both of which were also closely tied to his sense of

  masculinity."[4]

- "In my opinion, his stated perception of events and his view of his own

  status is [sic] consistent with the circumstances under which sexual

  aggressors would commit unwanted sexual contact, such as grabbing a

  woman's bottom."[5]

- "His testimony and pleadings also indicate his belief that unwanted

  sexual contact is something that men in radio can get away with even if

  other men cannot for one or a combination or reasons, including the

---

[2] Report at 1-2.
[3] Report at 3.
[4] *Id.*
[5] Report at 8.

4

following:  because Swift's staff would be more likely to believe a man

who is in radio because he thought KYGO would defend him against

Ms. Swift's accusation; or because such groping, if done by a man in

radio, could be excused as a joke, a misunderstanding, part of the

business, or his prerogative as a radio host who regularly met with

famous women."[6]

This is exactly the type of profile evidence that is inadmissible.  "A profile is a

collection of conduct and characteristics commonly displayed by those who commit a

certain crime."  *People v. Robbie*, 112 Cal. Rptr. 2d 479 (Cal. Ct. App. 2001) (opinion

that defendant had the characteristics of a child molester was inadmissible).  "Profile"

evidence is that which attempts to link the general characteristics of, *e.g.*, serial

murderers to specific characteristics of a defendant.  *See People v. Prince*, 40 Cal.4th

1179, 1226 (2007).  Perhaps the most frequently cited example is the drug courier

profile, which the United States Supreme Court has defined as "a somewhat informal

compilation of characteristics believed to be typical of persons unlawfully carrying

narcotics."  *E.g., Reid v. Georgia* 448 U.S. 438, 440 (1980).  Such profile evidence is

not admissible as probative of whether or not the profiled individual committed any

specific act.  *See Salcedo v. People*, 999 P.2d 833, 840 (Colo. 2000) ("In sum, [the

expert witness's] drug courier profile was not helpful to the jury because it was

inherently subjective, of dubious reliability, and logically irrelevant, and because its

probative value was substantially outweighed by a risk of misleading the jury.").

---

[6] *Id.*

The admission of the type of profiling testimony proffered by Ms. Bayaud de Volo runs contrary to fundamental American values of fairness and fundamental legal tenets of burdens of proof. If her report addressed such extreme generalizations about race, as opposed to gender, Defendants would have been embarrassed to submit it. Ms. Bayaud de Volo's profiling of men is no less offensive, and certainly no more helpful to the jury, than classic racial or ethnic profiling. *See People v. Martinez*, 10 Cal. App. 4th 1001, 1006, 12 Cal. Rptr. 2d 838 (1992) ("While the similarities may be a proper consideration for law enforcement in investigating criminal activity, they are inappropriate for consideration on the issue of guilt or innocence for the very reason given in the drug courier profile cases: the potential of including innocent people as well as the guilty."); *People v. Castaneda*, 55 Cal. App. 4th 1067, 64 Cal. Rptr. 2d 395 (1997) ("Every defendant has the right to be tried based on evidence tying him or her to the specific crime charged, and not on general facts accumulated by law enforcement regarding a particular criminal profile.").

## IV.    CONCLUSION

Ms. Bayard de Volo's opinion that men who are worried about their jobs or receive threats to their masculinity are likely to commit sexual harassment or assault will not assist the trier of fact. There are millions of men who worry about their jobs or receive threats to their masculinity every day and who never sexually harass or assault women. In other words, with the group described by Ms. Bayard de Volo, there are at least as many men who have not or would inappropriate touch a woman. Moreover, any potential relevance, however slight that may be, is most certainly outweighed by the danger of unfair prejudice. Defendants cannot reasonably ask the jury to adjudge

Mr. Mueller "guilty" of sexual assault based on the profile of some men who have

had—very generally and vaguely—similar life experiences, rather than on the evidence

of what actually occurred between Mr. Mueller and Ms. Swift on June 2, 2013.

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff's

Motion to Exclude Testimony of Lorraine Bayard de Volo.

Dated this 12th day of May, 2017.

> Respectfully submitted,
>
> EVANS & MCFARLAND, LLC
>
> By: s/ M. Gabriel McFarland
> M. Gabriel McFarland
> Evans & McFarland, LLC
> 910 13th St., #200
> Golden, CO 80401
> Telephone: 303.279.8300
> Facsimile: 303.277.1620
> Email: gmcfarland@emlawyers.com
>
> ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2017, *Plaintiff's Motion to Exclude Testimony of Lorraine Bayard de Volo* was filed with the Clerk of Court using the CM/ECF system and the same served via email upon at least the following:

J. Douglas Baldridge (jbaldridge@venable.com)
Courtney A. Sullivan (casullivan@venable.com)
Katherine M. Wright (kmwright@venable.com)

> s/M. Gabriel McFarland
> M. Gabriel McFarland