**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:15-cv-01974-WJM-KLM

DAVID MUELLER

                Plaintiff,

v.

TAYLOR SWIFT; FRANK BELL; and
ANDREA SWIFT a/k/a ANDREA FINLAY

                Defendants.

## DEFENDANTS' MOTION FOR SANCTIONS FOR PLAINTIFF'S SPOLIATION OF EVIDENCE AND MEMORANDUM IN SUPPORT

Defendants Andrea Swift, Frank Bell, and Taylor Swift and Counterclaimant Taylor Swift (collectively, "Defendants"), move for sanctions, specifically an adverse inference instruction at trial, for Plaintiff / Counterclaim Defendant David Mueller's ("Plaintiff" or "Mueller") spoliation of evidence. In support of their Motion, Defendants state as follows.

### D.C.COLO.LCiv R. 7.1 CERTIFICATION

Prior to filing this Motion, counsel for Defendants conferred with counsel for Plaintiff, Gabriel McFarland, regarding the requested relief. Plaintiff opposes the relief requested herein.

### INTRODUCTION

Simply stated, the question before this Court is: Whether Plaintiff David Mueller's loss or destruction of no less than two laptops, a cell phone, an iPad, and an external computer hard drive, at least five devices that contained relevant evidence potentially harmful to his case, constitutes spoliation requiring an adverse inference instruction to be given to the jury. When overlaid with the recognition that Mueller's destruction of evidence began after he contemplated

litigation and the last devices *were destroyed after he filed suit against Taylor Swift*, under applicable law, the answer is a clear "yes" for the reasons set forth below.

Mueller's deliberate act of destroying and failing to preserve critical evidence relevant to his claims constitutes sanctionable spoliation. Most egregiously, Mueller surreptitiously recorded the entire two hours of his June 3, 2013 meeting with KYGO personnel, which was conducted as part of KYGO's independent investigation into Plaintiff's groping of Ms. Swift during a pre-concert meet and greet. He conveniently preserved a few short, handpicked excerpts, but then destroyed multiple copies of the entirely of that secretly-recorded meeting. Some of that destruction was after he started this litigation. The destruction of the entire recording came well after Mueller was considering litigation as a result of his termination from the radio station. Mueller failed to preserve the cell phone that likely held the entire recording, the laptop that the entire recording was transferred to, and the back-up hard drive that also contained a copy of the entire recording. The destruction of critical evidence, contained on multiple devices, destroyed after Mueller was contemplating litigation, and in the case of his cell phone well after the lawsuit had been filed, rises to the level of bad faith and an adverse inference instruction to the jury at trial that the entirety of the audio recording would have been unfavorable to Mueller is warranted.

## BACKGROUND

On June 2, 2013, during the fan pre-concert meet and greet at Taylor's Swift's concert at the Pepsi Center in Denver, Colorado, Mueller groped Ms. Swift on her bottom. Following this inappropriate touching, representatives for Ms. Swift reported Mueller's actions to his employer,

KYGO radio (Denver). Upon learning of the incident, the radio station immediately began an independent investigation.

As part of that investigation, KYGO employees, Bob Call and Eddie Haskell, met with Mueller on June 3, 2013 to discuss the events of June 2, 2013 and hear Plaintiff's version of his interaction with Ms. Swift. *See* June 16, 2016 Pl.'s Responses to Defendants' First Set of Interrogatories at Answer to Interrogatory No. 5 (Ex. 1)[1]; Investigation Notes of Bob Call at SWIFT_0000025 (Ex. 2). Unbeknownst to Mr. Call or Mr. Haskell, Mueller made a secret audio recording of this meeting. *See* July 13, 2016 Deposition of David Mueller at 28 (Ex. 3); July 14, 2016 Deposition of Hershel Coomer p/k/a Eddie Haskell at 35:9-36:15 (Ex. 4); July 14, 2016 Deposition of Robert Call at 28:11-29:9 (Ex. 5). After meeting with Plaintiff, and otherwise conducting its investigation, KYGO terminated Plaintiff. *See* June 4, 2013 Termination Letter at SWIFT_00000029 (Ex. 6). The decision to terminate, was based, in part on KYGO's determination that Mueller had materially changed his story about what transpired during the meet and greet during his secretly recorded conversation with Mr. Call and Mr. Haskell. *See* Ex. 5 at 9, 34.

During discovery, Mueller produced his personally selected, short excerpts of his recording of the June 3 meeting as part of his Initial Disclosures. *See* Transcript of Recorded Conversations (Ex. 7).[2] These recordings, however, were a small fraction of the entire audio file of the meeting between Mr. Call, Mr. Haskell, and Plaintiff. Ex. 3 [Mueller Dep] at 28 ("the

---

[1]  All Exhibits referenced herein are attached to the June 1, 2017 Declaration of Katherine Wright in Support of Defendants' Motion for Sanctions for Plaintiff's Spoliation of Evidence, which is being filed contemporaneously herewith.

[2]  Defendants obtained a certified transcript of the audio recordings. Should the Court like copies of the produced audio files, Defendants will be happy to provide them.

audio was not complete"); *id.* at 43 (the audio that Mueller provided to his counsel was "a portion of the entire audio"); *id.* at 44 (Mueller "edited down clips from the recording to provide to" his counsel). Upon receiving the excerpts, Defendants requested the entire audio recording. *See, e.g.*, June 16, 2016 Pl.'s Resp. to Defs.' First Set of Requests for Production of Documents at Request 4 (Ex. 8).

On July 13, 2016, Plaintiff was deposed. During his deposition, despite having previously articulated different versions of what happened during the meet and greet with Ms. Swift, Mueller asserted for the first time that his hands and Ms. Swift's hands were "intertwined" and "jostling."[3] Ex. 3 at 41, 42. The following exchange occurred in connection with this brand new explanation:

> Q. Where is [Mueller's claim that his hands were intertwined and jostling with Ms. Swift's hand] in the audio recordings, sir? They're right in front of you.
> A. I don't know if it was in the audio recordings. The audio I recorded was close to two hours long. And the audio I could provide to [Plaintiff's counsel] was a portion of the entire audio.
> Q. Where's the other portion?
> A. It was – the full file was lost.
> Q. So it's an incomplete file?
> A. Yes.
> . . .
> Q. Are you aware of any record of what you said in the parts that are missing from your audio?
> A. Only my memory of it.

Ex. 3 at 43:3-12, 19-21.

After Plaintiff disclosed that he "lost" the entire audio recording file, Defendants' counsel inquired into the precise circumstances surrounding its demise. *Id.* at 43-44. What followed was a description of the loss or destruction of at least five electronic devices, many that Mueller used

---

[3] This is the latest of multiple contradictory accounts Mueller has provided for the events of June 2, 2013.

4

during his employment with and termination from KYGO and at the time of the events at issue in this litigation. Additionally, many of the devices were discarded after Mueller's lawsuit was contemplated or already filed. In sum, Mueller discarded or destroyed the following devices:

- Laptop 1 – Mueller used Laptop 1 from late 2012 until March or April 2013, which included part of his time of employment with KYGO. Mueller says the computer was "fried" when his girlfriend at the time spilled water on it. He voluntarily turned the computer over to an Apple store and received a replacement device. Ex. 3 at 53-55, 57, 61.

- Laptop 2 – Mueller used Laptop 2 from March or April 2013 until 2015. This laptop contained the entirety of the audio recording from Mueller's June 3, 2013 meeting with Mr. Call and Mr. Haskell. Mueller also used this laptop for business purposes during his time with KYGO and after his termination from the station. Mueller voluntarily relinquished custody and control of the laptop to an Apple Store and obtained a new device after coffee got into its keyboard. *Id.* at 44-46, 52, 55-57, 61-62.

- iPad – Mueller used this iPad from early 2013 until 2015 during his employment with KYGO and after his termination from the station. The iPad allegedly shattered after Mueller dropped it, and he obtained a replacement device. *Id.* at 57-58.

- Cell Phone – Mueller used this Cell Phone from 2010 or 2011 until November or December of 2015 (well after he filed this lawsuit in May 2015). Mueller used this phone to text and call people and receive and send emails both during his employment at KYGO and after his termination from the station. This is likely the device on which he made the audio recording of the June 3, 2013 meeting. He threw this phone away in the trash in late 2015. *Id.* at 59-61, 62-63; August 30, 2016 Deposition of Shannon Melcher at 97-99 ("Q: And what did [Mueller] tell you the reason he recorded the conversation was? A. He didn't give me a reason. Q. Do you know what device he stored that on? A. Cellphone.") (Ex. 9).

- External Hard Drive – Mueller used this External Hard Drive from 2010 through 2015. This hard drive contained the entirety of the audio recording from Mueller's June 3, 2013 meeting with Mr. Call and Mr. Haskell. Mueller also used this device to back-up materials during his time with KYGO and after his termination from the station. Plaintiff claims that the device "stopped working" and he does not know where it is. Ex. 3 at 43-44, 46-49, 65-66.

5

## LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *E.E.O.C. v. Dillon Cos.*, 839 F. Supp. 2d 1141, 1144 (D. Colo. 2011) (citing cases). A Court may remedy spoliation with sanctions when (1) the spoliated evidence is relevant to an issue at trial; (2) a party had a duty to preserve the evidence, and (3) the non-spoliating party was prejudiced by the destruction of the evidence. *Id.* (citations omitted); *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009). When a party intentionally or in bad faith destroys evidence, an adverse inference instruction at trial is appropriate. *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008); *Giblin v. Sliemers*, 147 F. Supp. 3d 1207, 1215 (D. Colo. 2015) (citing *Turner*, 563 F.3d at 1149); Fed. R. Civ. P. 37(e)(2) (providing for issuance of adverse inference instruction when "party acted with the intent to deprive another party of the information's use in the litigation").

## ARGUMENT

Plaintiff's bad faith spoliation of extremely relevant evidence on so many devices over such an extended period of time severely prejudices Defendants in this litigation and rises to the level of requiring an adverse inference instruction at trial. Plaintiff selectively edited a fraction of the entire audio recording of his meeting with KYGO to provide to his counsel. That meeting contributed, in large-part, to his termination. Despite knowing or reasonably anticipating that litigation was imminent—and in the case of Mueller's cell phone had commenced many months prior—Plaintiff destroyed and failed to preserve a number of devices containing the entire recording. Mueller's intentional editing of the audio recording and discarding of devices

6

containing the entire recording shows Mueller's bad faith in spoliating extremely relevant evidence and requires imposition of an adverse inference instruction.

### A. The June 3, 2013 Audio Recording is Relevant to This Litigation

There can be no real dispute that the entire June 3, 2013 audio recording is relevant to this litigation. The audio recording contained the entire investigatory meeting and interview between Plaintiff, Mr. Call, and Mr. Haskell. Based in significant part on Plaintiff's changing story during this meeting, KYGO determined that Plaintiff was lying about the incident with Ms. Swift and subsequently terminated him. *See* Ex. 5 at 9, 34. Yet Plaintiff has conveniently destroyed the multiple copies of the best evidence of his changed explanation.[4]

Despite the entire audio recording being approximately two hours long, Mueller only produced edited "portions" of the recordings that amount to less than fifteen minutes of discussions. *See* Ex. 3 at 43:6-8 ("The audio I recorded was close to two hours long."); June 1, 2017 Declaration of Katherine Wright ¶ 3. At his deposition, when Mueller's recollection of the meeting with Mr. Call and Mr. Haskell was challenged based on the provided recordings, Mueller repeatedly noted that the audio recordings were incomplete. *See*, *e.g.*, Ex. 3 at 28, 42-43. The entire recording would provide, at a minimum, information and clarity on what Plaintiff said at the June 3, 2013 meeting and whether it was consistent or inconsistent with Plaintiff's recollection three years later; what Mr. Call and Mr. Haskell communicated about their

---

[4] In its Summary Judgment decision, the Court expressed its view of the lost evidence as "contemporaneously-created evidence regarding the central disputed events in this case . . . ." Dkt. 137 at 10 n.5.

7

interactions with Defendants or any others in relation to the incident; and information about KYGO's investigation into the incident.[5]

### B.  Mueller Had a Duty to Preserve the June 3, 2013 Audio Recording

"A litigant has a duty to preserve evidence that he knows or should know is relevant to imminent or ongoing litigation." *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, No. 97-cv-5089, 1998 WL 68879, at *5 (10th Cir. Feb. 20, 1998); *see also E.E.O.C.*, 839 F. Supp. 2d at 1444 (citing *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621 (D. Colo. 2007) (noting that the duty to preserve is triggered where a party "reasonably anticipates litigation involving the evidence"). A plaintiff's duty to preserve "is more often triggered before litigation commences, in large part because plaintiff's control the timing of litigation." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Securities*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010), *abrogated in part on other grounds*, 685 F.3d 135 (2d Cir. 2012).

Almost immediately after leaving the June 2, 2013 Taylor Swift concert, Mueller knew that litigation was likely and his duty to preserve documents arose.[6] Mueller testified that he first spoke to an attorney about the incident "[s]hortly after [he] was thrown out of the Pepsi Center" on June 2, 2013. Ex. 3 at 111-112, 124-25. Mueller first contacted a civil attorney on June 4, 2013. *Id.* at 124-25. To the extent Mueller argues that he did not have a duty to preserve evidence at the time he contacted lawyers on June 2 and June 4, 2013, he certainly knew that

---

[5]   It could also lend credibility to Mr. Call's unequivocal position that KYGO conducted a full and complete investigation. *See, e.g.*, Ex. 5 at 9, 33-34.

[6]   In fact, it is an entirely reasonable inference that Mueller recorded his June 3 meeting with KYGO personnel precisely because he anticipated using it as evidence in subsequent litigation.

litigation was imminent when his lawyer, Cyd Hunt, sent correspondence threatening imminent litigation to KYGO on February 21, 2014 and Mr. Bell on July 16, 2014. *See* Feb. 21, 2014 Cyd Hunt Email to Jennifer Pettrucelli at LFM0006 ("Mr. Mueller has authorized me to file a wrongful termination suit on his behalf.") (Ex. 10); July 16, 2014 Cyd Hunt letter to Frank Bell at SWIFT_0000086 (Ex. 11); *Doe v. Norwalk Cmty. College*, 248 F.R.D. 372, 377 (D. Conn. 2007) (finding a duty to preserve certainly arises upon the transmittal of a demand letter indicating a party's intention to sue). In any event, Plaintiff edited the recording to <u>send to his attorney</u>. Ex. 3 at 44-45. He certainly knew at that point that the recording was relevant to the claims at issue in this lawsuit and reasonably anticipated litigation.

Plaintiff testified that the entire audio recording was on both a laptop (Laptop 2) and an External Hard Drive. *Id.* at 44:3-5; 48:14-18. Mueller discarded Laptop 2 in 2015 after he spilled coffee on the keyboard. *Id.* at 45:22-46:15; 52:13-18. Mueller also claims that he has not seen and has not been able to locate his External Hard Drive since sometime in 2015. *Id.* at 47:22-48:7; 65:22-66:10. And Mueller threw away the Cell Phone on which he likely recorded the conversation in November or December of 2015 (months after Mueller filed this lawsuit in May 2015). *Id.* at 59:4-11, 63:4-10.

Thus, undeniably, before Mueller got rid of Laptop 2, "lost" his External Hard Drive, and threw away his Cell Phone he had a duty to preserve the full audio recording.

### C. Defendants are Prejudiced by Mueller's Destruction of the Entire June 3, 2013 Audio Recording

A party alleging spoliation satisfies the prejudice element by establishing a "reasonable possibility . . . that access to the lost material would have produced evidence favorable to [its] cause." *E.E.O.C.*, 839 F. Supp. 2d at 1144-45 (finding that spoliated videotape of incident cited

as the reason for plaintiff's termination necessarily prejudiced plaintiff based on the employer's intention to testify about the contents of the video and plaintiff's inability to examine the videotape to support his version of the event or counter the employer's witnesses testimony); *see Hart v. Dillon Cos.*, No. 12-cv-238, 2013 WL 3442555, at *1-2 (D. Colo. July 9, 2013) (acknowledging prejudice based on spoliation of "secret recording" plaintiff's former employer made of an interview with plaintiff when the employer relied on the recording in making its determination to terminate her and there were discrepancies between the employer's notes of the interview and plaintiff's recollection); *Jordan F. Miller Corp.*, 1998 WL 68879, at *6 (affirming finding of prejudice where plaintiff had opportunity to inspect the spoliated evidence and develop a theory of liability when defendant had no such opportunity).

Plaintiff benefits greatly from the absence of the full audio recording. As noted above, when Mueller's recollection of his meeting with Mr. Call and Mr. Haskell on June 3, 2013 was challenged based on the excerpted recordings, Mueller repeatedly pointed to the fact that the audio recordings were incomplete. *See* Ex. 3 at 28, 42-43. Additionally, Plaintiff disputed the notes Mr. Call took of the meeting. *Id.* at 38:2-40:8; *see also* Ex. 2 at SWIFT_0000025-26.

Similar to the defendant in *Hart*, Mueller spoliated a secret recording of a meeting between himself and his employer that the employer later relied upon to terminate his employment. *Hart*, 2013 WL 3442555, at *1-2. However, even more prejudicial to Defendants here, prior to the spoliation, Mueller reviewed the entire recording and cherry-picked portions of the recording to preserve and send to his counsel. *See Jordan F. Miller Corp.*, 1998 WL 68879, at *6. Only those carefully selected excerpts remain. Defendants are certainly prejudiced by not having access to the entire recording and refuting the edited excerpts, especially in light of the

10

fact that Plaintiff disputes notes taken by another meeting participant, Bob Call. *See* Ex. 3 at 38:2-40:8. The entire recording would certainly be favorable to Defendants if it were available to support Mr. Call's notes taken during the meeting and to refute Mueller's claim first-asserted at his deposition three years later that his hands were "intertwined" and "jostling" with Ms. Swift's. *See supra*. Defendants are prejudiced without this opportunity.

### D. Mueller Acted in Bad Faith by Intentionally Destroying the June 3, 2013 Audio Recording[7]

"[T]he general rule is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) (citations omitted). Bad faith is generally equated to "intentional" or "willful" destruction of evidence. *McCargo v. Texas Roadhouse, Inc.*, No. 09-cv-2889, 2011 WL 1638992, at *8 (D. Colo. May 2, 2011); *Pension*, 685 F. Supp. 2d at 466 (noting that in the discovery misconduct context, "willfulness involves intentional or reckless conduct that is so unreasonable that harm is likely to occur"). It does not require proof of evil intent, but rather "may simply signify responsibility and control.'" *McCargo*, 2011 WL 1638992, at *8 (quoting *Philips Elecs. N. Am. Corp. v. BC Technical,* No. 2:08-cv-639, 2011 WL 677462, at *48 (D. Utah Feb. 16, 2011)).

District courts in the Eleventh Circuit (which has the same test for imposing adverse inferences based on spoliation as the Tenth Circuit) have held that the following constitutes circumstantial evidence of bad faith:

---

[7]   In it Summary Judgment decision, the Court stated that "an adverse inference is only available if there is proof that the party who lost or destroyed evidence did so in bad faith." Dkt. 137 at 9. This section addresses Plaintiff's bad faith.

11

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1323 (S.D. Fla. 2010 (citation omitted*); Alabama Aircraft Indus., Inc. v. Boeing Co.*, No. 2:11-cv-3577, 2017 WL 930597, at *15 (N.D. Ala. Mar. 9, 2017). Defendants respectfully submit that standard should assist the Court in its analysis. *See In re Ford,* 492 F.3d 1148, 1156 (10th Cir. 2007) ("Bad faith may be established by circumstantial evidence, or by inferences drawn from a course of conduct."); *Adams v. Gateway, Inc.*, No. 2:02-cv-106, 2006 WL 2563418, at *3 (D. Utah Mar. 22, 2006) (finding plaintiff's "pattern of behavior" of withholding evidence and failing to explain the destruction of certain evidence relevant to the litigation circumstantial evidence of bad faith).

Plaintiff acted intentionally and in bad faith here. First, there is no dispute that the full recording once existed as it is undisputed that Mueller deliberately cut portions of the audio recording and sent them to his attorney. Ex. 3 at 44 ("I edited down clips from the recording to provide to [Mueller's attorney]"). He knowingly and intentionally did not send the entire two hour recording to his attorney. *Id.* at 43.

Second, the entire recording was kept on at least two different, and more likely three, devices. The first, Laptop 2, Mueller intentionally and affirmatively discarded to an Apple Store after he allegedly spilled coffee that "got into the keyboard" in 2015. *Id.* at 44:3-10; 45:25-46:15; 56:4-6. According to Defendants' expert in computer forensics and electronic data discovery, however, the type of liquid spill described by Plaintiff, would still allow for the retrieval of data from the laptop. *See* July 28, 2016 Expert Report of Jason Briody at 7 (Ex. 12).

Internal hard drives in laptop computers typically reside in closed or sealed compartments protecting them from damage from any liquid that enters the computer via keyboard or other openings. *Id.* Even in a case where liquid does physically reach the internal hard drive or storage media—or even if the hard drive is submerged in water—data is still typically retrievable. *Id.* According to Mr. Briody, "there is a high likelihood that all of the data" stored on Laptop 2 was still fully recoverable at the time Mueller permanently surrendered the device to Apple. *Id.* at 8. Despite this high likelihood, Mueller identified no effort to recover the audio recording from Laptop 2 prior to or after intentionally relinquishing custody and control to the Apple store.

The second device, Mueller's External Hard Drive, allegedly stopped working and Mueller has not been able to locate it since sometime in 2015. Ex. 3 at 47:22-48:7; 65:13-66:10. However, even if the hard drive "stopped working," data should still be recoverable from it. Ex. 12 at 7 (explaining that even when an external hard drive fails to power on or work properly, the data storage media can be accessed through numerous methods or techniques). According to Mr. Briody, "there is a high likelihood that all of the data" stored on this External Hard Drive was still fully recoverable despite Plaintiff's claim that it stopped working. *Id.* at 8.

Mueller, again, has not identified any effort to access the entire audio recording from his External Hard Drive. He also has not identified any effort to locate the External Hard Drive and simply says he does not know where it is. Ex. 3 at 47:22-48:10; 65:13-66:10.

As to the third device, Mueller's Cell Phone, it is likely that Mueller recorded and kept the entire audio file on this Cell Phone that he used from 2010 or 2011 through 2015. [8] *See* Ex. 9 at 97-99; Ex. 3 at 59-63. Mueller intentionally and affirmatively discarded the Cell Phone in November or December 2015 (approximately six months after filing this lawsuit) by throwing it away in the trash. Ex. 3 at 59:4-11; 63:4-10. Mueller provided no explanation as to why he simply "threw away" his Cell Phone months into pending litigation. This willful act deprived Defendants of even the possibility of determining whether a copy of the recording was on his Cell Phone.

Because Mueller had responsibility for and control of multiple versions of the entire audio recording, intentionally and affirmatively discarded at least one, and likely two, of them, and has not identified any effort to locate the third, he acted in bad faith in spoliating the entire surreptitiously recorded audio file of his June 3, 2013 meeting with Mr. Call and Mr. Haskell. Additionally, as established above, Mueller spoliated this evidence after his duty to preserve the evidence arose (well after he had engaged litigation counsel and, in at least one instance, months after filing suit). *See supra* Section B. With the exception of an alleged coffee spill, Mueller has also failed to provide any, let alone credible, explanation for his destruction of multiple devices containing extremely relevant evidence. In sum, after cherry picking what he wanted from his meeting with KYGO, Mueller engaged in a systematic effort over time to eradicate every possible copy of the evidence that would support his employer's position and refute his ever-evolving position. Such repeated bad faith destruction over a period of time gives rise to an

---

[8] In any event, Mueller made the recording on some device. That specific device has never been identified and has not been provided to Defendants.

inference that the entire recording would have been unfavorable to Plaintiff and the jury should be instructed as such at trial.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court grant their Motion for Sanctions based on Plaintiff's prejudicial and bad faith spoliation of the highly relevant June 3, 2013 audio recording, and give an adverse inference instruction at trial that the entirety of the June 3, 2013 audio recording would have been unfavorable to Plaintiff and any other sanctions the Court deems appropriate.

June 1, 2017                                    Respectfully Submitted,

/s/ *J. Douglas Baldridge*
J. Douglas Baldridge
Danielle R. Foley
Katherine M. Wright
Venable LLP
600 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 344-4000
FAX: (202) 344-8300
E-mail: jdbaldridge@venable.com
E-mail: drfoley@venable.com
E-mail: kmwright@venable.com

*Attorneys for Defendants Frank Bell, Andrea Swift, and Taylor Swift, and Counterclaimant Taylor Swift*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on June 1, 2017 a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system and served on all counsel of record.

/s/ *J. Douglas Baldridge*
J. Douglas Baldridge
