# EXHIBIT 5

Case No. 1:15-cv-01974-WJM-KLM   Document 139-6   filed 06/01/17   USDC Colorado
pg 1 of 8

CONFIDENTIAL - UNDER PROTECTIVE ORDER - FOR AUTHORIZED USE ONLY
The Deposition of Robert Call, July 14, 2016

```
                                                                     1
 1              IN THE UNITED STATES DISTRICT COURT
                           for the
 2                    District of Colorado

 3          Civil Action No. 1:15-CV-01974-WJM-KLM

 4
    ================================================================
 5

 6   DAVID MUELLER,                                      Plaintiff,

 7
     v.
 8

 9   TAYLOR SWIFT; FRANK BELL;

10   ANDREA SWIFT, A/K/A ANDREA FINLAY;

11   SCOTT SWIFT; ET AL.                                Defendants.

12
    ================================================================
13

14       PURSUANT TO SUBPOENA AND THE COLORADO AND FEDERAL

15   RULES OF CIVIL PROCEDURE, the deposition of ROBERT CALL

16   was taken by Plaintiff David Mueller by and through his

17   attorney, M. Gabriel McFarland, Esq. at the offices of

18   Evans & McFarland, LLC, 910 Thirteenth Street, Suite 200,

19   Golden, Colorado, beginning at the hour of 2:28 p.m. MDT

20   on Thursday, July 14, 2016, recorded stenographically by

21   Merry P. Boslough, A/K/A Pat Boslough, Professional Court

22   Reporter and Notary Public for the State of Colorado.

23

24                        *   *   *   *   *

25
```

CONFIDENTIAL - UNDER PROTECTIVE ORDER - FOR AUTHORIZED USE ONLY
The Deposition of Robert Call, July 14, 2016

2

```
 1                     APPEARANCES
 2   For the Plaintiff:
 3           M. Gabriel McFarland, Esq.
             EVANS & McFARLAND, LLC
 4           910 Thirteenth Street
             Suite 200
 5           Golden, Colorado  80401
             gmcfarland@emlawyers.com
 6           (303)279-8300 x 2
 7   For the Defendants Taylor Swift, Frank Bell, Scott Swift
                                       and Andrea Swift:
 8
             J. Douglas Baldridge, Esq. &
 9           Katherine M. Wright, Esq.
             VENABLE LLP
10           575 Seventh Street, NW
             Washington, D.C.  20004
11           jdbaldridge@venable.com
             kmwright@venable.com
12           (202)344-8300
13   For Bonneville International/Deponent:
14           Michael L. Dowdle, Esq.
             SVP Business Affairs and General Counsel
15           BONNEVILLE INTERNATIONAL
             55 North 300 West
16           Salt Lake City, Utah  84180
             mdowdle@bonneville.com
17           (801)575-5874
18   For Entercom Communications Corporation/Deponent:
19           Michael E. Dash, Esq.
             Deputy General Counsel
20           ENTERCOM COMMUNICATIONS CORPORATION
             401 City Avenue, Suite 809
21           Bala Cynwyd, Pennsylvania  19004
             mdash@enternet.com
22           (610)660-5610
23
     Also Present:  None
24
                      *  *  *  *  *
25
```

CONFIDENTIAL - UNDER PROTECTIVE ORDER - FOR AUTHORIZED USE ONLY

CONFIDENTIAL - UNDER PROTECTIVE ORDER - FOR AUTHORIZED USE ONLY
The Deposition of Robert Call, July 14, 2016

9

1      A    Yes.

2      **Q    So when did you terminate Mr. Mueller?**

3      A    June 4th, 2013.

4      **Q    2013?  Why did you fire Mr. Mueller on June 4th,**
5  **2013?**

6      A    I fired him based on the fact that I had a
7  picture that Taylor Swift's promotion people had sent
8  that -- at least in my opinion -- represented him in a
9  very uncomfortable place with Taylor.

10          I had direct feedback from her radio management
11 group, Frank Bell, whom I've known for many years, who
12 indicated that Mr. Mueller had during a photo session
13 touched her inappropriately, I believe, raised her dress
14 or skirt and that she was very clear on what had happened.
15 And it was related to me that her mother felt the same
16 way.

17          And in talking to -- I was going to call him
18 Jackson, I'm sorry -- Mr. Mueller on Monday the third in
19 the afternoon through a lot of conversation, he certainly
20 indicated that he did not do it; however -- and I believe
21 this is a direct quote -- if I had, it was incidental or
22 accidental.  The combination of those three elements put
23 me in a position where I felt comfortable making the
24 decision.

25      **Q    Any other reasons why you terminated Mr. Mueller**

CONFIDENTIAL - UNDER PROTECTIVE ORDER - FOR AUTHORIZED USE ONLY

The Deposition of Robert Call, July 14, 2016

28

1    A    Then I either waited for Frank to call me or I
2    called him.
3    Q    **Okay.**
4    A    And so I want to say that was 11 or 12-ish my
5    time -- Denver time.
6    Q    **And you've already told me what you can remember**
7    **about --**
8    A    Right.
9    Q    **-- that second conversation?**
10   A    Correct.
11   Q    **And then you met with Mr. Mueller?**
12   A    Eddie set up the meeting for two o'clock.
13   Q    **Okay.  And Mr. Mueller arrived at the designated**
14   **time?**
15   A    Yes.
16   Q    **And he met with you and Mr. Haskell?**
17   A    Yes.
18   Q    **How long did you meet?**
19   A    Oh, at least an hour.
20   Q    **And did that meeting take place in your office?**
21   A    Yes, it did.
22   Q    **What do you recall about the -- well, did**
23   **anybody else participate in that meeting?**
24   A    No.
25   Q    **Was there anybody on the phone listening in?**

CONFIDENTIAL - UNDER PROTECTIVE ORDER - FOR AUTHORIZED USE ONLY
The Deposition of Robert Call, July 14, 2016

29

1  A  No.
2  Q  Was there any -- did you make any recording of
3  that conversation?
4  A  No, I did not make a recording.
5  Q  Do you know whether Mr. Haskell did?
6  A  I don't believe Mr. Haskell made a recording.
7  Q  And you understand now that Mr. Mueller did
8  record the meeting?
9  A  Yes.
10  Q  What do you recall about the communications at
11  that meeting?
12  A  The communications back and forth?
13  Q  Yeah.
14  A  They were cordial.  He denied the incident
15  occurring; indicated that if there were more cameras or
16  other camera angles, it would vindicate him; that I could
17  see that wherever his hand was, it wasn't near her body;
18  and that he had been was distracted.
19      I'm not sure what the distraction was, but that
20  they were moved along very quickly and that he was drawn
21  into the picture at the last minute.  And he said the
22  picture looks the way the picture looked because it was a
23  last-minute thing to get in the picture and smile.
24  Q  Okay.  Do you recall anything else about the
25  communications during that meeting?

CONFIDENTIAL - UNDER PROTECTIVE ORDER - FOR AUTHORIZED USE ONLY
The Deposition of Robert Call, July 14, 2016

33

1   Q   Did you ever ask Mr. Bell whether he had
2   personally talked to any of the other people who were in
3   the room at the time of the alleged incident?
4   A   No.
5   Q   Did he indicate to you that he had talked to any
6   of the other people in the room at the time of the alleged
7   incident?
8   A   I don't recall.
9   Q   Would you agree that as a part of your
10  investigation into the alleged incident, you should have
11  talked to the people in the room at the time of the
12  alleged incident?
13          MR. DOWDLE:  Objection --
14          MR. BALDRIDGE:  Objection -- go ahead.
15          MR. DOWDLE:  Objections to form, speculative,
16  argumentative.
17          MR. BALDRIDGE:  I will join those three and add
18  foundation.
19          MR. DASH:  Same objections.
20   Q   (By Mr. McFarland)  You can answer it.
21   A   No, I never considered talking to him --
22   Q   Why?
23   A   -- as a part of my investigation.  I didn't need
24  that information.
25   Q   You didn't need to know what the other people in

CONFIDENTIAL - UNDER PROTECTIVE ORDER - FOR AUTHORIZED USE ONLY
The Deposition of Robert Call, July 14, 2016

34

1    the room saw with respect to Mr. Mueller's interactions
2    with Ms. Swift?
3             MR. DOWDLE:  Objection, argumentative,
4    foundation and form.
5             MR. BALDRIDGE:  And I join those three.
6             MR. DASH:  Same objections.
7        A    No.
8        Q    (By Mr. McFarland)  Why?
9        A    In my meeting with Mr. Mueller, I had three
10   components in my decision.  I had a picture that appeared
11   very inappropriate, but a picture only.  Secondly, I had
12   feedback from a person that I've known for many years,
13   trusted, had no reason to tell me anything that was
14   incorrect that had occurred.
15            And third, Mueller said to me, "I didn't do it;
16   but if I did, it was incidental."  So I had a picture, I
17   had Taylor's comments through Frank and he changed his
18   story that it couldn't have occurred, then that it was
19   incidental.
20       Q    How did he change his story?
21       A    He said he didn't do it numerous times, and then
22   he said, "If I had, it was incidental."  And I thought
23   that's very different from "I didn't do it."
24       Q    And if, in fact, it had been incidental contact,
25   you still would have fired Mr. Mueller?