**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:15-cv-01974-WJM-KLM

DAVID MUELLER

    Plaintiff,

v.

TAYLOR SWIFT; FRANK BELL; and
ANDREA SWIFT a/k/a ANDREA FINLAY

    Defendants.

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO PARTIALLY EXCLUDE THE TESTIMONY OF DR. LORRAINE BAYARD DE VOLO

  Defendants Andrea Swift, Frank Bell, and Taylor Swift and Counterclaimant Taylor Swift (collectively, "Defendants"), respectfully submit this Opposition to Plaintiff / Counterclaim Defendant David Mueller's ("Plaintiff" or "Mueller") Motion to Exclude Testimony of Lorraine Bayard de Volo.[1] Plaintiff seeks to exclude Dr. Bayard de Volo, a well-regarded professor and expert in gender and violence, on nothing more than Plaintiff's mischaracterization of her opinion as inadmissible "profile" evidence. Plaintiff's characterization is simply wrong. Dr. Bayard de Volo meets all of the requirements of Rule 702 and the Court should deny Plaintiff's Motion.

**BACKGROUND**

  On June 2, 2013, during the fan pre-concert meet and greet at Taylor's Swift's concert at the Pepsi Center in Denver, Colorado, Mueller inappropriately touched Ms. Swift on her bottom.

---

[1] Plaintiff's Motion addresses only Dr. Bayard de Volo's first opinion relating to the motivations for and conditions consistent with acts of sexual harassment and sexual assault. *See* Dkt. 136 at 2 & Proposed Order, Dkt. 136-2. Plaintiff does not challenge the admissibility of Dr. Bayard de Volo's second opinion relating to reasons victims of sexual assault often delay reporting the assault. *See* Dr. Bayard de Volo Report, Dkt. 136-1 at 2, 9-11. This Opposition, therefore, addresses only Dr. Bayard de Volo's first opinion.

Following this inappropriate contact, an independent investigation was conducted by Mueller's employer, KYGO radio (Denver), and Plaintiff was terminated from his position as an on-air personality. Two years later, denying the inappropriate touching, Mueller brought this action against Ms. Swift, her mother, and her Director of Radio claiming Defendants interfered with his contract and prospective business relations and slandered him,[2] ultimately resulting in his termination from employment at KYGO. In response to these baseless allegations, Ms. Swift filed a counterclaim for assault and battery against Mueller.

### Defendants' Expert: Dr. Bayard de Volo

In support of their position, Defendants designated Dr. Lorraine Bayard de Volo as an expert witness. Dr. Bayard de Volo is Chair and Associate Professor of Women and Gender Studies at the University of Colorado Boulder and has over twenty years of research and teaching experience in the field of gender and violence. *See* Dkt. 136-1 at 2; *id.* at 14-20 (Dr. Bayard de Volo's Curriculum Vitae).

Dr. Bayard de Volo provided two opinions in this case. The first, on motivations and conditions identified and accepted by experts in the field that are associated with acts of sexual assault and sexual harassment and the consistency of facts present in this case with those well-accepted factors. The second, on the reactions of victims to such acts, also identified and accepted by experts in Dr. Bayard de Volo's field. Plaintiff does not challenge the second opinion, where Dr. Bayard de Volo states that Ms. Swift's reporting of the assault after completion of the meet

---

[2] This Court granted summary judgment in Defendants' favor on Plaintiff's claims for slander *per se* and slander *per quod* on May 31, 2017. Dkt. 137 at 36.

2

and greet line "filled with moms and little girls" was "entirely consistent with the reaction displayed by someone who has been sexually assaulted." Dkt. 136-1 at 3, 6, 9, 11.

As to Dr. Bayard de Volo's first opinion, generally, expert testimony on this issue involves the identification of generally accepted categories of preconditions that create an environment ripe for sexual harassment and sexual assault. Dr. Bayard de Volo then identified facts in this case consistent with those generally accepted preconditions. Specifically, Dr. Bayard de Volo opined:

> Sexual harassment and assault are fundamentally motivated by the perpetrator's perceived need to assert power and to protect the perpetrator's status. Throughout David Mueller's pleadings in this lawsuit and his deposition testimony, he indicated that even before he met Ms. Swift, he felt his job security was threatened, his identity as a radio personality was threatened, and his masculinity was threatened. This perfect storm of threats to Mr. Mueller's perceived status is consistent with the well-settled, academically-accepted, perceived threats to status that motivate a man to commit sexual harassment and assault.

Dkt. 136-1 at 2-3.

In arriving at her opinion, Dr. Bayard de Volo relied on numerous authoritative and well-regarded authors and studies in the field of gender and violence. She applied generally-accepted methodology and based her opinions firmly in well-accepted literature and academically-accepted conclusions in the field.

**<u>Plaintiff's Motion to Partially Exclude Dr. Bayard de Volo</u>**

Plaintiff moved to exclude Dr. Bayard de Volo's opinion relating to the conditions associated with acts of sexual assault and sexual harassment. In so doing, Plaintiff failed to seriously challenge Dr. Bayard de Volo's qualifications or the reliability of her testimony. Instead, he based his Motion almost exclusively on a flawed argument that the challenged opinion constituted "profile" evidence that, according to Plaintiff, is per se inadmissible.

Plaintiff's position is unsupportable given that Dr. Bayard de Volo is undoubtedly qualified to provide expert testimony, employed reliable methodology, and satisfied all of the Federal Rule of Evidence 702 requirements for admitting expert testimony. Plaintiff's hyperbolic attempt to characterize Dr. Bayard de Volo's testimony as inadmissible profile evidence is not only wrong, but is based on non-binding case law that is at odds with the Tenth Circuit's position on profile evidence. Plaintiff's additional attempt to preclude Dr. Bayard de Volo's testimony under Federal Rule of Evidence 403 is based on a total mischaracterization of her opinion. Dr. Bayard de Volo's opinion is probative, well-reasoned, well-supported, and should be admitted.[3]

## LEGAL STANDARD

Under Federal Rule of Evidence 702, expert testimony is admissible when (1) the expert's scientific, technical, or specialized knowledge assists the trier of fact in understanding the evidence or determining a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

The Tenth Circuit follows a two-step analysis to determine admissibility of expert testimony. *See 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). First, a court determines if the expert witness is qualified "by knowledge, skill, experience, training, or education" to render an opinion. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). This standard is construed liberally and, generally, an expert meets this standard as long as she "stays within the reasonable confines of [her] subject area." *Cook v.*

---

[3] Plaintiff did not request an evidentiary hearing on this Motion and Defendants agree that no such hearing is required. The Court has before it everything required to rule on Plaintiff's limited request to exclude one of Dr. Bayard de Volo's opinions.

4

*Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1084 (D. Colo. 2006) (quoting *Ralston*, 275 F.3d at 970).

Second, a court ensures an expert's opinion is reliable. *See, e.g.*, *Ebonie S. ex rel. Mary S. v. Pueblo Sch. Dist. 60*, No. 09-CV-858, 2011 WL 1755208, at *1-2 (D. Colo. May 5, 2011). When assessing reliability, a "court may consider several nondispositive factors: (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *103 Investors*, 470 F.3d at 990 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993)). These considerations are not exclusive or exhaustive. Rather, a trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The determination ultimately rests on whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*.

Additionally, expert testimony must, of course, be relevant (*i.e.* it must "fit" the case). *Cook*, 580 F. Supp. 2d at 1083; *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (expert testimony must be "applicable to a particular set of facts"). The Tenth Circuit refers to Federal Rule of Evidence 401 for this standard: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Bitler v. A.O. Smith Corp.*, 400 F. 3d 1227, 1234 (10th Cir. 2005) (quoting Fed. R. Evid. 401). "The Tenth Circuit takes a liberal approach to the question of whether proffered expert testimony" is relevant. *Cook*, 580 F.

5

Supp. 2d at 1083 (citing *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1093, 1090 (10th Cir. 1994) ("Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility . . . .").

Dr. Bayard de Volo's opinion easily satisfies all of these requirements.

## ARGUMENT

### I.  DR. BAYARD DE VOLO'S OPINION IS ADMISSIBLE

#### A.  Dr. Bayard de Volo's Opinion Meets the Requirements of Rule 702

1. Qualification

There is no real dispute that Dr. Bayard de Volo is qualified to render an expert opinion in this matter. As detailed in her report, Dr. Bayard de Volo has twenty years of research and teaching experience in the field of gender and violence. Dkt. 136-1 at 2, 14-20. She is Chair and Associate Professor of Women and Gender Studies at the University of Colorado Boulder, and she researches and teaches violence against women, including sexual harassment and sexual assault. *Id.* She has both a Ph.D in political science and a graduate certificate in Women's Studies from the University of Michigan. *Id.* at 2, 14. As shown in her curriculum vitae, Dr. Bayard de Volo has published numerous books and articles on the topic of gender and violence. *Id.* at 14-17. She also lectures on the subject. *Id.* at 17.

Plaintiff's only criticism regarding Dr. Bayard de Volo's qualifications is that she "has no training in psychology." Dkt. 136 at 2, 3. But Dr. Bayard de Volo does not purport to provide a psycho-analysis of Plaintiff; she merely takes the facts *as communicated by Plaintiff* and opines on topics squarely within her subject matter expertise, research, and teaching experience: gender and violence. *See generally* Dkt. 136-1. Because Dr. Bayard de Volo's opinion is squarely within

6

her subject matter expertise and experience, she is qualified to offer expert testimony in this case. *See, e.g.*, *Cook*, 580 F. Supp. 2d at 1084; *Ralston*, 275 F.3d at 970.

### 2. Reliability

Dr. Bayard de Volo employed reliable methodology. As her report states, her opinions are based on reliable facts or data in that she relies on "well-settled, academically-accepted" and "professionally accepted" concepts and findings. *See* Dkt. 136-1 at 3. She cites throughout her report to authoritative, widely accepted, and peer-reviewed articles and studies. *See id.* at 12-13 (listing sources relied upon in report). Nearly every sentence in her report is supported by a citation; further demonstrating the "intellectual rigor" with which Dr. Bayard de Volo approached the formulation of her opinion.

As with Dr. Bayard de Volo's qualifications, Plaintiff does not raise any real question regarding her methodology. At most, he tangentially complains that Dr. Bayard de Volo did not meet with Plaintiff prior to writing her report. *See* Dkt. 136 at 3. This criticism is meritless. Mueller offers no explanation for why meeting him would matter or how meeting him would have changed anything given that Dr. Bayard de Volo's opinion is based purely on record evidence of events leading up to Mueller groping Ms. Swift. Plaintiff's criticism rings particularly hollow given that Dr. Bayard de Volo's opinion was based largely on representations *by Plaintiff* in his filings to this Court and his sworn deposition testimony. *See generally* Dkt. 136-1. Finally, at most, the fact that Dr. Bayard de Volo did not meet with Plaintiff goes merely to the weight of her testimony, it does not affect the admissibility analysis. *See Ulibarri v. City & Cty. of Denver*, No. 07-CV-1814, 2011 WL 2559838, at *8 (D. Colo. June 28, 2011).

### 3. Relevance

Finally, Dr. Bayard de Volo's opinion is undeniably relevant. Throughout this lawsuit, Mueller has repeatedly denied groping Ms. Swift (albeit with varying versions of that denial), and claimed that, therefore, Ms. Swift's report of inappropriate contact was wrongful. *See, e.g.*, Feb. 25, 2016 Second Am. Compl., Dkt. 72 ¶ 38; July 13, 2016 Deposition of David Mueller at 5:22-25 (Ex. 1); *id.* at 35:6-37:16, 71:6-72:13. Ms. Swift on the other hand, has never wavered in her conviction that Mueller was the man who "put his hand under [her] skirt and grabbed [her] bare ass." July 26, 2016 Deposition of Taylor Swift at 7:9-8:1 (Ex. 2); *see id.* at 24:5-12, 26:5-27:13; Oct. 28, 2015 Counterclaim ¶ 1, Dkt. 36 at 9-10. Dr. Bayard de Volo meticulously details numerous motivations and specific conditions conducive to a man engaging in sexual harassment or sexual assault. *See* Dkt. 136-1 at 2-9. She also identified the corresponding motivations and conditions that are present in the case at bar. *Id.* at 4-9. Especially considering the "intractable factual dispute between the two irreconcilable versions of the facts" (Dkt. 137 at 11), Dr. Bayard de Volo's opinion undoubtedly is relevant as it has the "tendency to make a fact" that is "of consequence" (whether Mueller groped Ms. Swift) more or less probable than it would otherwise be. *See* Fed. R. Evid. 401.

### B. Testimony Similar to Dr. Bayard de Volo's is Often Admitted

Testimony like Dr. Bayard de Volo's is routinely deemed admissible in courts around the country. For example, in *Robinson v. Jacksonville Shipyards, Inc.*, 760 F. Supp. 1486 (M.D. Fla. 1991), two different experts were allowed to provide similar testimony. The first, Dr. Wagner, opined on common patterns relating to sexual harassment, and based on her observations, opined that sexually harassing conditions existed at plaintiff's place of work. *Id.* at 1505-06. The second,

Dr. Fiske, an expert in gender/sexual stereotyping, opined on preconditions that enhance the presence of stereotyping in a workplace and found that all of the conditions were present in the workplace at issue in the litigation. *Id.* at 1502-03.

In another matter involving Dr. Fiske, she was allowed to testify about sexual stereotypes based on "phenomena . . . that are very solidly established in the stereotyping literature." *Butler v. Home Depot, Inc.*, 984 F. Supp. 1257, 1264 (N.D. Cal. 1997) (allowing Dr. Fiske testimony on the "causes, manifestations, and consequences of gender stereotyping as well as the organizational circumstances which allow such stereotypes to flourish"). The admissibility and reliability of such gender/sexual stereotyping testimony has been recognized by the Supreme Court. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 235-36, 255-56 (1989) (allowing testimony that sexual stereotyping permeated Price Waterhouse's evaluations and promotions).

Expert testimony on gender/sexual stereotyping is at essence the testimony offered by Dr. Bayard de Volo. Generally, expert testimony on this issue involves the identification of generally accepted categories of preconditions that create an environment ripe for sexual stereotyping in discrimination and sexual harassment cases. *See, e.g.*, *Robinson*, 760 F. Supp. at 1503; *Jenson v. Eveleth Taconite Co.*, 824 F. Supp. 847, 880-82 (D. Minn. 1993). In federal courts across the country, experts have repeatedly been allowed to opine on these preconditions and their presence in specific entities. *See, e.g.*, *Hnot v. Willis Grp. Holdings Ltd.*, No. 01-CV-6558, 2007 WL 1599154, at *2-3 (S.D.N.Y. June 1, 2007); *Beck v. Boeing Co.*, No. C00-0301P, 2004 WL 5495670, at *1-2 (W.D. Wash. May 14, 2004) (allowing an expert to "explain stereotyping and what conditions make it more or less likely to occur"); *Jenson*, 824 F. Supp. at 880-83 (offering expert testimony that sexual stereotyping existed at the defendant employer and contributed to the

9

sexual harassment of plaintiff). Expert testimony identifying general characteristics present in sexual assault cases are also often admitted. *See, e.g.*, *United States v. Charley,* 189 F.3d 1251, 1264-65 (10th Cir. 1999) (allowing expert testimony on the characteristics of sexually abused children, the characteristics present in the victim, and opinion on whether the evidence was "consistent or inconsistent with the victim's allegations of sexual abuse"); *United States v. Hadley*, 918 F.2d 848, 852-53 (9th Cir. 1990).

Like the many cases identified above admitting similar expert testimony, Dr. Bayard de Volo identified a number of generally accepted conditions and/or characteristics that make it likely for sexual harassment or sexual assault to occur. *See* Dkt. 136-1 at 2-4. She then identified the factors present in this case *consistent with* those generally accepted conditions. *Id.* at 4-9 ("In my opinion, [Mueller's] stated perception of events and his view of his own status is *consistent with* the circumstances under which sexual aggressors would commit unwanted sexual contact, such as grabbing a woman's bottom." (emphasis added)). Dr. Bayard de Volo did not, contrary to Plaintiff's characterization, categorically find that "men who are worried about their jobs or receive threats to their masculinity . . . commit sexual harassment or assault." Dkt. 136 at 6. Rather, she stayed within the parameters of generally accepted conditions of such acts and identified the conditions present in this case, the same way experts in sexual stereotyping and sexual assault cases often do.

## II. UNDER BINDING TENTH CIRCUIT LAW, DR. BAYARD DE VOLO'S OPINION IS NOT "PROFILE" EVIDENCE; EVEN IF IT WERE, IT WOULD BE ADMISSIBLE HERE

Plaintiff's only clear challenge to Dr. Bayard de Volo's expert testimony is his erroneous contention that her opinion constitutes inadmissible "profile" evidence. Plaintiff is wrong.

Dr. Bayard de Volo's opinion is not "profile" evidence. The Tenth Circuit has defined profile evidence as "simply an investigative technique. It is nothing more than a listing of characteristics that in the opinion of law enforcement officers are typical of a person engaged in a specific illegal activity." *United States v. McDonald*, 933 F.2d 1519, 1521 (10th Cir. 1992) (recognizing the common use of profile evidence in drug courier cases); *United States v. Robinson*, 978 F.2d 1554, 1563 (10th Cir. 1992). "Profile evidence is primarily a concern when a court is reviewing Fourth Amendment issues and deciding whether the police's actions complied with the Fourth Amendment." *United States v. Goxcon-Chagal*, 886 F. Supp. 2d 1222, 1251 (D.N.M. 2012). "The common use of profile evidence is to make investigative stops." *McDonald,* 933 F.2d at 1521. "Essentially, it is an investigative tool." *United States v. Carter*, 42 Fed. App'x 418, 424 (10th Cir. 2002).

Dr. Bayard de Volo's opinion in this civil action bears little resemblance to inadmissible profile evidence in criminal cases. Clearly, Dr. Bayard de Volo's identification of "well-settled, academically-accepted" conditions often associated with sexual harassment and sexual assault are much more than a law enforcement officer's personal opinion as to the characteristics typical of a person engaged in illegal activity to assist in a criminal investigation. *See McDonald*, 933 F.2d at 1521-22. Moreover, there is no investigative stop, no Fourth Amendment issue, no police action, and no criminal charges in this case. *See id.* at 1521; *Goxcon-Chagal*, 886 F. Supp. 2d at 1251; *Carter*, 42 Fed. App'x at 424. There is simply no comparison between profile evidence and the challenged opinion here.

Despite the inescapable reality that Dr. Bayard de Volo's opinion is not profile evidence, Plaintiff goes to great lengths to characterize it that way. In so doing, he relies primarily on California state court cases that do not reflect the law in the Tenth Circuit. In the Tenth Circuit:

> Rather than focusing the inquiry upon defining and classifying evidence into categories of profile or non-profile, however, we have held that the better approach is to commence the inquiry with an examination of the applicable rules of evidence. Federal Rule of Evidence 702 instructs us to admit specialized knowledge if it will assist the trier of fact to understand the evidence. That Rule dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject.

*United States v. Becker*, 230 F.3d 1224, 1231 (10th Cir. 2000) (quoting *McDonald*, 933 F.2d at 1522 (internal quotation marks and citations omitted); *see also United States v. Rodriguez*, 125 F. Supp. 3d 1216, 1251-52 (D.N.M. 2015) ("the Tenth Circuit has been consistently more permissive than most other Circuits in allowing [profile] evidence"). Given this permissive standard regarding "profile" evidence, the Tenth Circuit has consistently allowed such evidence when "the relevance of the facts would not be immediately obvious to the jury." *United States v. Mirabal*, No. 09-CR-3207, 2010 WL 3894137, at *7 (D.N.M. July 31, 2010); *see Becker*, 230 F.3d at 1231 (admitting "tools of the trade" evidence when the jury would not independently "understand the significance of possession of those items"); *Robinson,* 978 F.2d at 1563-64 (acknowledging "gang-related items may necessitate the appearance of an expert witness if the jury could not understand the significance of possession of these items"). Even the law Plaintiff cites recognizes that there is no bright line rule excluding profile evidence. *See People v. Prince*, 40 Cal. 4th 1179, 1226 (2007) ("In any event, profile evidence does not describe a category of always-excluded evidence; rather, the evidence ordinarily is inadmissible 'only if it is either irrelevant, lacks a foundation, or is more prejudicial than probative.'" (citation omitted)).

Even assuming Dr. Bayard de Volo's testimony constituted profile evidence (it does not), it would still be admissible under Tenth Circuit law. As explained above, Dr. Bayard de Volo meets the Rule 702 standard. *See supra*. Moreover, her testimony will assist the jury as it elucidates the conditions often associated with acts of sexual violence. The culmination of the circumstances Mueller found himself in, and his perceptions being consistent with a "perfect storm" of threats typical of acts of sexual harassment or sexual assault, would not otherwise be immediately obvious to the jury. *See Mirabal*, 2010 WL 3894137, at *7; *Becker*, 230 F.3d at 1231; Dkt. 136-1 at 3.

Finally, even if deemed "profile" evidence, Dr. Bayard de Volo's opinion would still be admissible to show Mueller's motive or intent. *See, e.g.*, *United States v. Doe*, 149 F.3d 634, 636-37 (7th Cir. 1998); *United States v. Solis*, 923 F.2d 548, 550-51 (7th Cir. 1998). *Doe* is instructive. There, a Drug Enforcement Agency agent testified as an expert witness regarding the "profile" and practices of Nigerian drug smugglers. *Doe*, 149 F.3d at 636. The court rejected the defendant's argument that such testimony was impermissible profile evidence because the testimony was probative of, and reflected circumstantial evidence of, the "essential element of intent." *Id.*

Here, Plaintiff has at times stated that he did not inappropriately touch Ms. Swift, but *if he did*, it was "accidental" or "incidental." *See, e.g.*, Ex. 1 at 35:6-36:21; *id.* at 38:17-40:12, 41:13-24; Investigation Notes of Bob Call at SWIFT_0000025-26 (Ex. 3). Evidence of Mueller's intent and motive are probative of whether Ms. Swift acted properly (as opposed to wrongfully) in reporting Mueller's grope, and whether the other Defendants acted properly in their responses to the report. As this Court recognized, evidence of Defendants' intent and motive are core (and disputed) components of the tortious interference claims brought against them. *See* Dkt. 137 at 15-18, 21. Intent is also an essential element of Ms. Swift's assault and battery counterclaims.

Evidence of intent is therefore highly probative, on a multitude of issues, and Dr. Bayard de Volo's opinion is admissible, at the very least, for this purpose.

Thus, while Dr. Bayard de Volo's testimony is clearly not profile evidence, even if it were, it would be admissible here.

### III.  DR. BAYARD DE VOLO'S OPINION IS ALSO ADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 403

Dr. Bayard de Volo's testimony will assist the trier of fact and its probative value is not substantially outweighed by any alleged prejudice. Plaintiff's entire argument on this point is centered again on a mischaracterization of Dr. Bayard de Volo's opinion.

Plaintiff states that any relevance of the challenged opinion "is most certainly outweighed by the danger of unfair prejudice" because Dr. Bayard de Volo essentially "ask[s] the jury to adjudge Mr. Mueller 'guilty' of sexual assault based on the profile of some men who have had . . . similar life experiences." Dkt. 136 at 6-7. This is a flagrant mischaracterization of Dr. Bayard de Volo's opinion and does not provide any legitimate reason to exclude her testimony. Nowhere does Dr. Bayard de Volo conclude that Mueller did, in fact, assault Ms. Swift. Rather, as noted above, Dr. Bayard de Volo's opinion elucidates and explains certain conditions that can lead to sexual harassment and/or sexual assault and where conditions consistent with those findings are present here. *See supra*. This relevant testimony is unrebutted.

Plaintiff's entire objection appears to hinge on the fact that Dr. Bayard de Volo's testimony will hurt his case. While true, that fact is simply insufficient to show that her testimony's probative value is *substantially* outweighed by any alleged prejudice. *See, e.g.*, *United States v. Martinez*, 938 F.2d 1078, 1082 (10th Cir. 1991) ("Evidence is not unfairly prejudicial simply because it is

14

damaging to an opponent's case."); *United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir. 2003) (same). There is no basis to exclude Dr. Bayard de Volo's testimony under Rule 403.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court deny Plaintiff's Motion to Exclude the Testimony of Dr. Lorraine Bayard de Volo.

June 2, 2017

Respectfully Submitted,

/s/ *J. Douglas Baldridge*
J. Douglas Baldridge
Danielle R. Foley
Katherine M. Wright
Venable LLP
600 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 344-4000
FAX: (202) 344-8300
E-mail: jdbaldridge@venable.com
E-mail: drfoley@venable.com
E-mail: kmwright@venable.com

*Attorneys for Defendants Frank Bell, Andrea Swift, and Taylor Swift, and Counterclaimant Taylor Swift*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on June 2, 2017 a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system and served on all counsel of record.

/s/ *J. Douglas Baldridge*
J. Douglas Baldridge

16