# EXHIBIT 1

In the Matter Of:

*MUELLER*

*vs.*

*SWIFT, ET AL.*

_____

*DAVID J. MUELLER*

*July 13, 2016*

_____

CONFIDENTIAL - ATTORNEY'S EYE ONLY - SUBJECT TO PROTECTIVE ORDER

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
DAVID J. MUELLER - 07/13/2016                          Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
 2
      Civil Action No. 1:15-cv-019474-WJM-KLM
 3   _____

 4           CONFIDENTIAL ATTORNEY'S EYES ONLY
              AND SUBJECT TO PROTECTIVE ORDER
 5                VIDEOTAPE DEPOSITION OF:
               DAVID J. MUELLER - July 13, 2016
 6   _____

 7    DAVID MUELLER,

 8    Plaintiff,

 9    v.

10    TAYLOR SWIFT; FRANK BELL;
      ANDREA SWIFT a/k/a ANDREA FINLAY;
11    SCOTT SWIFT; and JOHN DOES 1-5,

12    Defendants.
     _____
13

14          PURSUANT TO NOTICE, the videotape deposition
     of DAVID J. MUELLER was taken on behalf of the
15   Defendants at 1900 Grant Street, Suite 1025, Denver,
     Colorado 80203, on July 13, 2016, at 8:13 a.m., before
16   Jennifer Windham, Certified Shorthand Reporter and
     Notary Public within Colorado.
17

18

19

20

21

22

23

24    JOB NO.: WDC-090838

25
```

DTI Court Reporting Solutions - Washington, DC
1-800-292-4789                www.deposition.com/washington-dc.htm

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
DAVID J. MUELLER - 07/13/2016                               Page 2

```
 1                  A P P E A R A N C E S

 2    For the Plaintiff:

 3              M. GABRIEL McFARLAND, ESQ.
                Evans & McFarland, LLC
 4              910 13th Street
                Suite 200
 5              Golden, Colorado 80401

 6
      For the Defendants:
 7
                J. DOUGLAS BALDRIDGE, ESQ.
 8              KATHERINE M. WRIGHT, ESQ.
                Venable, LLP
 9              575 7th Street, NW
                Washington, D.C. 20004
10

11    Also Present:

12              Jay Schaudies
                Adam Johnston, Videographer
13

14

15

16

17

18

19

20

21

22

23

24

25
```

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
DAVID J. MUELLER - 07/13/2016                                    Page 5

1        MR. McFARLAND: Mr. Baldridge, sorry to
2  interrupt before you get started. But like we did
3  with the other depositions, I want to note for the
4  record that we're designating the transcript, as well
5  as the video, as confidential pursuant to the
6  protective order that we have in place.
7                    EXAMINATION
8  BY MR. BALDRIDGE:
9        Q.   Mr. Mueller, please state your full name
10 for the record.
11       A.   David Joseph Mueller.
12       Q.   Have you ever been deposed before?
13       A.   No.
14       Q.   Do you realize that the answers you will
15 provide in response to questions today are under oath
16 under penalty of perjury?
17       A.   Yes.
18       Q.   Do you realize that for purposes of what
19 you say and what it proves, you're essentially in a
20 courtroom right now?
21       A.   Yes.
22       Q.   Your lawsuit generally alleges that you
23 were falsely accused of inappropriately touching
24 Taylor Swift's rear end, correct?
25       A.   Yeah.

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
DAVID J. MUELLER - 07/13/2016                                    Page 35

```
 1   know, there's a certain consistency in, you know, what
 2   I know that security did, and they said that, you
 3   know, you had indicated nothing happened, and that if
 4   anything did happen, it was an accident or -- voice
 5   two, absolutely.
 6                   And I'll represent that voice two was
 7   your voice.  Was that your response to Mr. Call's
 8   statement that you had stated that nothing happened,
 9   but if something did happen, it was an accident?
10        A.   This -- if voice two is me, and this is
11   an accurate transcript, then I said -- that's what I
12   said.
13        Q.   Does that help you to recall that you had
14   said, I didn't do it, but if I did it was an accident?
15        A.   I never said I didn't do it, but if I did
16   it was an accident.
17        Q.   What did you say?
18        A.   Are you referring to my conversation with
19   Craig?
20        Q.   I'm referring to any conversation in
21   which you would have said words to the effect, I
22   didn't do it, but if I did it was an accident or
23   incidental.  Did you ever say that to anyone?
24        A.   If somebody suggested that I accidentally
25   touched Taylor Swift, I would have said that that is
```

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER

DAVID J. MUELLER - 07/13/2016                                Page 36

```
 1   possible, because I did come into contact with her
 2   during the photo session.
 3          Q.   Okay.  Just to break that down.  So it is
 4   possible that you accidentally touched Ms. Swift
 5   inappropriately during the photo shoot?
 6          A.   No.
 7          Q.   No?
 8          A.   No.  Because I touched her, but
 9   inappropriately, no.  Our -- our hands came into
10   contact for sure.  And while our hands came into
11   contact, I'm not sure where my hand went, because she
12   was pushing my hand.  And I was trying to get my hand
13   behind her, and she was trying to get her hand behind
14   me, and for a while there was some jostling.
15               But I was looking at the photographer,
16   just as I'm looking at this gentleman here, while I
17   was trying to put my hand behind her, and her hand was
18   jostling is the only word I can come up with right
19   now.  And at that point, I don't know where my hand
20   went.  That's why I would say it would have been an
21   accident.
22          Q.   So it's possible, by accident, that you
23   touched Ms. Swift's rear end?
24          A.   No.
25          Q.   Not possible.  You didn't know where your
```

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
DAVID J. MUELLER - 07/13/2016                                    Page 37

```
 1   hand was, but it's not possible?
 2         A.    I would know if I had on her rear end.
 3   But I do know that my hand was headed toward her side,
 4   and that's why she was -- she was trying to get my
 5   hand back, right?
 6         Q.    Away from her rear end, right?
 7         A.    From her side, from her rib cage.  My
 8   hand went in, her hand was jostling with my hand, and,
 9   eventually, my hand went back and her hand went back
10   behind me.
11         Q.    Just to be clear, it is possible that you
12   accidentally touched her rear end, isn't it?
13               MR. McFARLAND:  Objection to form.  Asked
14   and answered.
15         Q.    (BY MR. BALDRIDGE)  Yes or no?
16         A.    No.
17               (Deposition Exhibit 2 was marked.)
18         Q.    I'm going to have this marked as Mueller
19   Exhibit 2, please.  I put before you, sir, some
20   documents that, I think, all counsel have in this
21   case.  And what these are, are some interview notes of
22   discussions that people at KYGO had with you, and they
23   took notes and typed them up.  I'm representing to you
24   that that's what they are.  Have you seen these
25   before?
```

DTI Court Reporting Solutions - Washington, DC
1-800-292-4789                    www.deposition.com/washington-dc.htm

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
DAVID J. MUELLER - 07/13/2016                             Page 38

```
 1         A.   I have seen them.
 2         Q.   Now, if you turn to -- I'm going to call
 3   it Bates number, which are these numbers in the bottom
 4   right-hand corner that start with Swift.  The one that
 5   is Swift, a number of zeros, and 24.  Do you see that?
 6         A.   First page, yeah.
 7         Q.   No, sir.  I think it's -- yeah, it is the
 8   first page.  There you go.  That is -- these are notes
 9   taken by Bob Call.  Okay?
10         A.   Okay.
11         Q.   Now, if you turn to the second page of
12   Mr. Call's notes at the bottom of that page, which is
13   Swift 25, to get the Bates number.  Go to the
14   second-to-last line.  Are you with me?  Right here,
15   sir.
16         A.   Second-to-the-last line, yes.  Yes.
17         Q.   Okay.  I'm going to read into the record,
18   and tell me if I read this correctly.  Quote, He
19   indicated he did not touch Taylor inappropriately, did
20   not grab her or raise her skirt up in any way.  And if
21   he did touch her at all, it was accidental and
22   incidental, closed quotes.  Did I read that correctly?
23         A.   You read it correctly.
24         Q.   Is that what you told Mr. Call?
25         A.   I don't know.  That's what Mr. Call wrote
```

```
 1    in his notes.
 2            Q.   Do you have any reason to dispute that
 3    that's what you told Mr. Call?
 4            A.   I don't remember saying that.
 5            Q.   But as you sit here today, can you
 6    suggest any fact, other than your lack of memory, that
 7    would suggest you didn't say that to Mr. Call?
 8            MR. McFARLAND:  Objection to form.
 9            A.   I don't have a fact.
10            Q.   (BY MR. BALDRIDGE)  Now, if you'll go to
11    the next page, Swift 26, a little farther than halfway
12    down that page, if you're looking at the left-hand
13    margin, you'll see a margin or at the end of a
14    sentence that says "after taking the photo."  Do you
15    see that?
16            A.   Yes.
17            Q.   I'm going to read the next sentence into
18    the record.  Quote, Jackson said Taylor's story is
19    absolutely inaccurate.  And if it did occur, was
20    accidental and incidental, closed quotes.  Did I read
21    that correctly?
22            A.   You read it correctly.
23            Q.   Do you have any reason to dispute that
24    Mr. Call took that note inaccurately of what you had
25    said?
```

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
DAVID J. MUELLER - 07/13/2016                                Page 40

```
 1         A.   I don't remember saying that.
 2         Q.   Beyond --
 3         A.   I -- I -- as far as I'm concerned, this
 4   is just his note.
 5         Q.   Do you think Mr. Call is inaccurate in
 6   taking this note?
 7         A.   I think the way he's phrasing things
 8   is -- it's vague.
 9         Q.   Do you --
10         A.   I never denied that my hand came into
11   contact with her.  My hand did come into contact with
12   her, but it was mostly her hand.
13         Q.   What else was it?
14         A.   I don't know because she was moving it
15   around.
16         Q.   You don't know, correct?
17         A.   Well, I -- I told you that it was on the
18   side of her.
19         Q.   Now, how long have you known Mr. Call?
20         A.   I met him in September of 2012, I
21   believe.
22         Q.   Have you ever known him to be untruthful?
23              MR. McFARLAND:  Objection to form.
24         A.   At this time, I can't think of any time
25   he was untruthful with me.
```

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
DAVID J. MUELLER - 07/13/2016                                    Page 41

```
 1            Q.   (BY MR. BALDRIDGE)  Now, if, and the word
 2   is if, you accidentally touched Ms. Swift's bottom,
 3   from her standpoint, can you think of any reason why
 4   an accidental touching would be any less offensive
 5   than an intentional touching?
 6                 MR. McFARLAND:  Objection to form.
 7            A.   In the context of posing for a photograph
 8   when you're jostling somebody's hand with your hand,
 9   they're trying to get their hand behind you and you're
10   trying to get your hand behind them, I don't think
11   that that would be alarming to the average person, to
12   a reasonable person.
13            Q.   (BY MR. BALDRIDGE)  So if it was an
14   accidental touching of her rear end, that would not be
15   alarming to the average person?
16                 MR. McFARLAND:  Objection to form.  Asked
17   and answered.
18            A.   If her hand was directing my hand -- this
19   is what I mean by accidental.  Our hands were
20   intertwined.  So if she's saying that my hand came
21   into contact with her derriere after she was jostling
22   with my hand, I would say that that's incidental,
23   accidental, and I would be alarmed that she would be
24   upset about it.
25            Q.   (BY MR. BALDRIDGE)  Now, you've seen
```

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
DAVID J. MUELLER - 07/13/2016                                    Page 71

```
 1    Is that your testimony?
 2                 MR. McFARLAND:  Objection to form.
 3         A.   I did not see where my hand was.  And my
 4    hand was being moved by Taylor and her hand was being
 5    moved by me.
 6         Q.   (BY MR. BALDRIDGE)  Is it your testimony,
 7    sir, based on the facts you have told me, that it is
 8    not possible that you touched Ms. Taylor Swift's rear
 9    end?
10         A.   I think I would know if I had my hand on
11    her rear end.
12         Q.   Is it your testimony, based upon the
13    facts that you have testified to, that it is not
14    possible that you touched Ms. Swift's rear end?
15         A.   In my mind, I did not touch her rear end.
16         Q.   Is it your testimony, based on the facts
17    you have testified to, that it is not possible that
18    you touched Ms. Swift's rear end?
19         A.   I don't think I did touch her rear end.
20         Q.   Is it your testimony, based on the facts
21    you have already testified to, that it is not possible
22    that you touched Ms. Swift's rear end?
23                 MR. McFARLAND:  Same objection.
24         A.   I didn't touch her rear end, to my
25    knowledge.
```

CONFIDENTIAL - ATTORNEY'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER
DAVID J. MUELLER - 07/13/2016                                    Page 72

 1        Q.   (BY MR. BALDRIDGE)  Sir, I'm going to
 2   just keep asking the question.  And the question is
 3   different than the one you're answering.  Is it your
 4   testimony, based upon the facts you have already
 5   testified to, that it is not possible that you touched
 6   Ms. Swift's rear end?
 7        A.   I would say it's possible that my hand
 8   came into contact with her skirt or somewhere behind
 9   her.  But as I sated earlier, she was moving my hand;
10   I was moving her hand.  I did not think I touched her
11   inappropriately, which is why I did not apologize to
12   her.  I would have apologized had I thought I did
13   something inappropriate.
14        Q.   Now, you previously testified that you
15   believe Mr. Frank Bell spoke to people at KYGO; is
16   that correct?
17        A.   I was told that he did.
18        Q.   And you were told that by Mr. Call and
19   Mr. Haskell, correct?
20        A.   Yes.
21        Q.   Did anyone else tell you that Mr. Bell
22   had spoken to KYGO?
23        A.   Anyone else from --
24        Q.   Other than Mr. Call or Mr. Haskell?
25        A.   No.