UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-01974-WJM-KLM

DAVID MUELLER

    Plaintiff

v.

TAYLOR SWIFT;
FRANK BELL;
ANDREA SWIFT a/k/a ANDREA FINLAY; and
JOHN DOES 1 - 5

    Defendants

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE EXPERT REPORT, OPINIONS, AND TESTIMONY OF JEFFREY B. OPP**

---

Plaintiff David Mueller, through his counsel, M. Gabriel McFarland of Evans & McFarland, LLC, respectfully submits Plaintiff's Response in Opposition to Defendants' Motion to Exclude the Expert Report, Opinions, and Testimony of Jeffrey B. Opp.

### I.    INTRODUCTION

As of June 2013, Plaintiff had established a long career as a radio personality, most recently for KYGO radio in Denver. In the days following Defendant Taylor Swift's June 2, 2013 concert in Denver, Ms. Swift and others on her behalf repeatedly contacted Plaintiff's employer, falsely asserted that Plaintiff had assaulted Ms. Swift, and threatened dire consequences if Plaintiff was not disciplined by KYGO. KYGO's response to these false allegations and threats was the termination of Plaintiff's

employment contract. Since that termination, the publicity and rumors attendant to Defendants' allegations have prevented Plaintiff from procuring employment in his profession. Plaintiff thus asserts claims for intentional interference with contractual obligations and tortious interference with prospective business relations.

If he prevails on these claims, Plaintiff is entitled to damages that include "(a) the pecuniary loss of the benefits of the contract or the prospective relation; (b) consequential losses for which the interference is a legal cause; and (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference." *Westfield Development Co. v. Rifle Investment Associates*, 786 P.2d 1112, 1120 (Colo. 1990). At trial, based on his intimate knowledge of the facts of this case and on his long history with and knowledge of the radio industry, Plaintiff will testify about the consequences of Defendants' wrongful conduct, including the termination of his contract by KYGO and his inability to procure other appropriate employment after being defamed by Defendants. Plaintiff's designated expert witness, economist Jeffry Opp, will testify about the value of these lost opportunities, based on Plaintiff's historical and projected earnings.

In moving to exclude Mr. Opp's report and anticipated testimony in their entirety, Defendants conveniently skate over his well established expertise in economics, including, in particular, lost opportunity valuations, and proclaim him unqualified to render **any** opinions in this case because he is not an expert in the radio industry. Defendants' overreaching position is without merit, and their Motion to Exclude should be denied.

## II. DISCUSSION

### A. Opp's Qualifications

As disclosed in Mr. Opp's CV and testimony record (Exhibit 1), he has 31 years of professional experience, most of it in financial and litigation consulting, and has assisted in the analysis of lost profits and personal injury damages, such as those at issue in this case, on thousands of occasions. His litigation consulting experience includes, for one relevant example, analysis and calculation of lost earnings and benefits in numerous class actions and personal injury cases. His expert testimony has been admitted at trial in well over sixty cases in a wide range of state and federal jurisdictions. As discussed below, even in the two local cases cited by Defendants as evidence of Mr. Opp's incompetence, the courts ordered only the exclusion of very specific opinions, not of Mr. Opp's entire testimony, and neither court questioned his expertise in economics.

Nonetheless, Defendants urge this Court to completely disqualify Mr. Opp as an expert witness, which no court to date has seen fit to do, and for which Defendants present no credible argument.

### B. Standard of Review

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

The trial court acts as the "gatekeeper" on the issue of reliability, and has great flexibility in ascertaining whether a proposed expert's testimony is sufficiently reliable

3

and relevant to assist the jury in its fact finding duties. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) ("under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable"); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152-53 (1999) (also noting that a trial court has "discretionary authority needed both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted. . .Indeed, the Rules seek to avoid 'unjustifiable expense and delay'. . . ."); *Young v. Brock*, No. 10-CV-01513-WJM-CBS, 2014 WL 553413, at *1 (D. Colo. Feb. 12, 2014) ("The primary purpose of the Court's gatekeeping function is to protect juries from unreliable or confusing scientific testimony. . ."); Fed. R. Evid. 702 Advisory Committee Notes to 2000 Amendment ("[T]his amendment is not intended to provide an excuse for an automatic challenge to the testimony of every expert.").

When a party raises a *Daubert* challenge to an expert's proposed testimony, precluding that expert from testifying—or even from proffering certain opinions—is not the norm. "A review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 Advisory Committee Notes to 2000 Amendment; *see also Christou v. Beatport, LLC*, No. 10-CV-02912-RBJ-KMT, 2013 WL 248058, at *3 (D. Colo. Jan. 23, 2013) ("[T]he Court is mindful that Rule 702 was intended to create a liberal standard for the admissibility of expert testimony, not to create new barriers.").

The sorts of challenges raised by Defendants here are more appropriately raised at trial, not in "unnecessary 'reliability' proceedings." "Vigorous cross-examination,

4

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595; *see also United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996) ("[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."); *Christou v. Beatport, LLC*, No. 10-CV-02912-RBJ-KMT, 2013 WL 248058, at *7 (D. Colo. Jan. 23, 2013) ("[T]he Court's task is not to decide which expert is correct."); *Borel v. Trek Bicycle Corp.*, No. 09-CV-01312-ZLW-MJW, 2010 WL 2682118, at *1 (D. Colo. July 1, 2010) ("the court need not determine that the expert evidence is correct or irrefutable in order to admit it").

When, as here, an expert's fundamental qualifications are not in doubt, objections to specific inadequacies may affect the weight to be given his testimony, but they do not justify peremptory exclusion. Exclusion is appropriate only when the testimony is so unreliable "as to be unworthy of being heard at all." *Christou v. Beatport, LLC*, No. 10-CV-02912-RBJ-KMT, 2013 WL 248058, at *7 (D. Colo. Jan. 23, 2013). If the expert's credentials and methods are unchallenged, "His assumptions can be challenged on cross-examination and through expert testimony. Defendants' issues go to the weight, not the admissibility, of the opinions." *Id.* at *9. In particular, the types of challenges raised by Defendants to Mr. Opp's opinions here go to the weight the jury should give them, not to their admissibility. *See Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-CV-01644-REB-CBS, 2010 WL 3522416, at *4 (D. Colo. Sept. 1, 2010) ("Any weakness in Murray's expertise, facts, or rationale go to the weight to be accorded to his opinion.").

5

### C.     Opp's Opinions in this Case

Despite this Court's clear directive in its Practice Standards that a party seeking to exclude expert testimony "Identify with specificity each opinion the moving party seeks to exclude and the specific ground(s) on which each opinion is challenged, e.g., relevancy, sufficiency of facts and data, or methodology," Defendants assert that all of Mr. Opp's opinions are fatally flawed and neglect to distinguish exactly which of their many criticisms apply to which of his opinions.  In any event, Defendants' sweeping attack fails to establish the inadmissibility of Mr. Opp's proposed testimony, which will properly assist the jury in its fact finding duty.

#### 1.     Mr. Opp is not required to be an expert in the radio industry.

For example, Defendants aver that Mr. Opp's admission that he is not an expert in the radio industry disqualifies him from testifying as an expert in economics.  This argument is absurd on its face.  Mr. Opp would not have to practice medicine to opine on a doctor's lost income, and he does not have to become an expert in the radio industry to opine on Plaintiff's lost income, both past and future.  Under the Federal Rules of Evidence, experts are allowed to rely on the knowledge of others in forming their opinions.  In this case, it is reasonable for Mr. Opp to rely on Plaintiff's many years of radio industry experience in analyzing Plaintiff's lost income damages.

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703; *see also, e.g., Daubert*, 509 U.S. at 592 ("Unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. See Rules 702 and 703."); *People in Interest of J.E.B.*, 854 P.2d 1372, 1375-76 (Colo. App. 1993) ("CRE 703 permits an expert to rely on facts and data reasonably relied upon by experts in that field, and it is clear that is what happened here. Thus, the experts properly relied upon reports and information in the case which otherwise might have been objectionable hearsay.").

More specifically, Defendants' objection to Mr. Opp's opinion that Plaintiff's contract with KYGO is indicative of Plaintiff's value in the radio industry is particularly baseless. It is axiomatic that the value of property—personal property, real property, or talent—is the price that property can demand in the marketplace. It does not even require expertise in economics to infer that Plaintiff's contract with KYGO is sound evidence of the value of Plaintiff's talent in the radio market place.

The cases Defendants cite to discredit Mr. Opp are easily distinguishable, and again highlight how overreaching Defendants' demand for total exclusion of his opinions is. In *Ryskin v. Joy,* No. 09–cv–01864–MEH–KMT, 2010 WL 4873667 (D. Colo. Nov. 23, 2010), while the court ruled that Mr. Opp was not qualified to opine on the plaintiff's employability *per se*, Magistrate Judge Mix also explicitly held, "Mr. Opp can legitimately testify, consistent with Fed.R.Evid. 702, concerning back pay and estimated future wage loss." *Id.* at \*1. Similarly, in *Rains v. BNSF Railway Co.*, No. 4:06-CV-858-Y, 2009 WL 3459871 (N.D. Tex. Aug. 11, 2009), the court disallowed Mr. Opp's testimony only to the extent it was premised on an assumption the court

7

found was unsupported as to the plaintiff's limitations; the court did not grant the defendant's motion for exclusion of Mr. Opp's testimony *in toto*. *Id.* at \*\*3-4. Thus, these cases fail to support Defendants' demand for total exclusion. In addition, in contrast to the circumstances in those cases, in the instant case Mr. Opp's opinions about future losses will be supported by the Plaintiff's testimony on his experiences in seeking employment and his chances of employment, based on his own extensive experience in the radio industry, so there is no insufficiency in the factual basis for the expert opinions.

### 2. Mr. Opp does not proffer any legal opinions.

Even Defendants themselves seem confused about this argument. First, they assert that Mr. Opp's opinion on the cause of Plaintiff's inability to find suitable employment is an impermissible legal opinion, which it obviously is not. *E.g., United States v. Camick*, 796 F.3d 1206, 1223 (10th Cir. 2015) ("causation is a factual issue"); *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 619 (10th Cir. 1998) ("causation is generally a question of fact"). Oddly, Defendants then also argue that Mr. Opp's opinion on causation "inappropriately invades the fact finding province reserved to the jury," apparently because "[c]ausation is an important issue in this case" (Motion at 7), but they are also wrong in this regard. "An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704; *see also Spendrup v. Am. Family Mut. Ins. Co.*, No. 13-CV-00513-KLM, 2014 WL 656862, at \*3 (D. Colo. Feb. 20, 2014) ("Pursuant to Fed.R.Evid. 704(a), an expert opinion 'is not objectionable just because it embraces an ultimate issue.'"). Defendants' reliance on the *Spendrup* case to support their position is misplaced; in that case, Mr. Opp was precluded from

8

testifying on the **legal** issue of entitlement to wrongful death damages, not on the **factual** issue of causation. *See id.* at *4 ("At trial Mr. Opp may offer his expert opinion regarding the *factual* basis for the amount of damages owed to Plaintiff and his calculations relating to the amount of damages. In doing so, he may properly refer to estimated future lost profits of SMJ, if his calculation of the amount of damages includes that estimate. However, he may not offer an opinion regarding the *legal* basis for his computation of damages in a wrongful death case.").

### 3.     Mr. Opp's Opinions are amply supported.

Although Defendants purport to challenge Mr. Opp's "methodology," they provide no actual explanation of what objectionable methods he employed in his economic analysis and no support from any economics expert to suggest his methodology itself is flawed under the *Daubert* standard, *i.e.*, that he employed inappropriate economic models. Instead, Defendants argue that the **facts** supplied to Mr. Opp by Plaintiff are inadequate to support Mr. Opp's opinions. Even if Defendants' characterization of those facts were accurate, which it is not, that would not justify the exclusion of Mr. Opp from trial. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.

Defendants' primary argument here is that Plaintiff's continued employment beyond the term of his contract with KYGO, which was directly interrupted by Defendants' wrongful conduct, is too speculative to justify an award of future lost income. Clearly, this argument does not explain why Mr. Opp should be precluded

9

from opining about the damages caused by the cancelation (versus the non-extension) of that contract. And, as to future losses, Defendants' casting of Plaintiff's future with KYGO as a mere "hope" or "desire" ignores the fundamental facts that Plaintiff's radio show was popular and well supported by sponsors and that KYGO is in the business of making money. Plaintiff is certainly capable of testifying to these facts and to the circumstances under which such contracts are usually extended. In contrast to the plaintiffs in the cases cited by Defendants, Plaintiff's future income damages are not "extremely suspect" or "[no] more than a hopeful projection." It will be up to the jury, as trier of fact, to decide at what future point Plaintiff's lost income becomes too speculative and to choose from Mr. Opp's multiple projections accordingly. As noted under similar circumstances by Magistrate Judge Mix in the *Ryskin* case:

> The Court believes that Mr. Opp can legitimately testify, consistent with Fed.R.Evid. 702, concerning back pay and estimated future wage loss.
> First, as addressed in the Court's Order on Defendants' Joint Motion in Limine, the Court believes that **evidence concerning future wage loss, although by no means a mathematical certainty, falls within the zone of admissibility that the Colorado courts permit**. Thus, Mr. Opp will be permitted to testify about Plaintiff's claim for past wage loss (presented as the amount of compensation [including benefits] Plaintiff would have received had he remained with Defendant Banner Health, Inc., less any similar compensation received prior to trial as a result of mitigation efforts). He will also be permitted to testify that, based on Plaintiff's work history from his date of separation from Banner until the time of trial, Plaintiff might be subjected to future lost compensation, up to his expected date of retirement, reduced to present value. As the Court stated on the record during the hearing on this matter, Plaintiff can legitimately argue that had Defendants' actions not resulted in his separation, he would still be employed with Banner, and he can request the proximate damages stemming from that separation. **Mr. Opp's use of five, ten or seventeen-year time frames to project future lost compensation is subject to vigorous cross-examination but should not be precluded as a matter of law.**

2010 WL 4873667, at *1 (internal citation omitted; emphasis added).

10

Defendants' other accusations of flaws in Mr. Opp's report (Motion at 12-13) go to allegations of minor inconsistencies or errors in calculation that, if they exist, can be easily addressed during cross-examination.  Even accepting these criticisms at Defendants' word, they do not comprise the sort of fundamentally flawed methodology requiring the extreme sanction of witness preclusion.  *See Borel*, 2010 WL 2682118, at *1 ("the court need not determine that the expert evidence is correct or irrefutable in order to admit it"); *14.38 Acres of Land*, 80 F.3d at 1078 ("[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.").

### 4. Mr. Opp's testimony is admissible under Fed. R. Evid. 403.

Regardless of what weight Defendants think it should be given, Mr. Opp's proposed testimony goes to a fact of consequence in this action, the amount of Plaintiff's damages, and makes that fact more probable than it would be without Mr. Opp's testimony; it is therefore relevant and admissible under Fed. R. Evid. 401.  In arguing that it should nonetheless be excluded under Rule 403, Defendants fail to explain how Mr. Opp's testimony would confuse the jury or unfairly prejudice Defendants .  Certainly the jury is capable of comprehending Mr. Opp's testimony, and equally capable of appreciating whatever doubts about his opinions Defendants think they can raise in cross-examination.

Defendants' reliance on *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 899 (E.D. Wis. 2010), is misplaced.  In that case, the court concluded the expert witness had completely misapprehended the measure of damages available to the plaintiff on its claims.  The court therefore found that "no reasonable juror could award the plaintiff damages in the amount theorized by FS's witnesses," the proposed

11

testimony would thus not assist the trier of fact, and its presentation would just confuse the issues to be properly considered by the jury. *Id.* In the instant case, whether Defendants like the figures or not, the damages on which Mr. Opp opines are appropriate to the claims prosecuted by Plaintiff and to the facts of this case.

Finally, the only prejudice to Defendants from Mr. Opp's testimony is that, should Plaintiff establish the other elements of his claims, the jury will have a basis upon which to assess his damages. This result cannot legitimately be characterized as **unfairly** prejudicial, as required for preclusion under Rule 403.

### III.   CONCLUSION

Defendants' claim that Jeffrey Opp is unqualified to testify as an expert in this case is belied by Mr. Opp's extensive qualifications and history of acceptance as an expert by many courts, including this one, on numerous occasions.

To the extent any of Defendants' criticisms of Mr. Opp's analysis or conclusions have any legitimacy whatsoever, Defendants will have ample opportunity to so demonstrate to the jury at trial. That is the proper course here, rather than a blanket exclusion that would unfairly and improperly deprive Plaintiff of the ability to fully prosecute his claims, as demanded by Defendants. *See, e.g., Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, No. 10-CV-02271-PAB-BNB, 2012 WL 5249459, at *5 (D. Colo. Oct. 24, 2012) ("Two Moms' argument does not challenge the reliability of the methodology applied by Mr. Milner. Instead, it argues only that Mr. Milner was mistaken with respect to certain facts at issue. However, such a challenge does not limit the admissibility of Mr. Milner's opinions, but rather goes to the weight of the testimony."); *Parker Excavating, Inc. v. Lafarge W., Inc*, No. 14-CV-01534-LTB-

12

MJW, 2015 WL 6750268, at *3 (D. Colo. Nov. 5, 2015) ("It is a question for the jury as to the weight to be given to expert testimony that is admitted at trial.").

Plaintiff does not request an evidentiary hearing on Defendants' Motion.

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendants' Motion to Exclude the Expert Report, Opinions, and Testimony of Jeffrey B. Opp

Dated this 8th day of June, 2017.

Respectfully submitted,

EVANS & MCFARLAND, LLC

By: s/ M. Gabriel McFarland
M. Gabriel McFarland
Evans & McFarland, LLC
910 13th St., #200
Golden, CO 80401
Telephone: 303.279.8300
Facsimile: 303.277.1620
Email: gmcfarland@emlawyers.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2017, **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE EXPERT REPORT, OPINIONS, AND TESTIMONY OF JEFFREY B. OPP** was filed with the Clerk of Court using the CM/ECF system and the same served via email upon at least the following:

J. Douglas Baldridge (jbaldridge@venable.com)
Danielle Foley (drfoley@venable.com )
Katherine M. Wright (kmwright@venable.com)

s/Gina Bowermaster
Gina Bowermaster