## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1:15-cv-01974-WJM-KLM

DAVID MUELLER

               Plaintiff,

v.

TAYLOR SWIFT; FRANK BELL;  and
ANDREA SWIFT a/k/a ANDREA FINLAY

                Defendants.

## <u>DEFENDANTS' MOTION *IN LIMINE*</u>

Defendants Andrea Swift, Frank Bell, and Taylor Swift and Counterclaimant Taylor Swift

(collectively, "Defendants"), move *in limine*, to address two specific evidentiary issues prior to

trial.  In support of their Motion, Defendants state as follows:

## D.C.COLO.LCiv R. 7.1 CERTIFICATION

Prior to filing this Motion, counsel for Defendants conferred with counsel for Plaintiff,

Gabriel McFarland, regarding the requested relief.  Plaintiff opposes the relief requested herein.

**EVIDENTIARY ISSUE 1: EXCLUDING PLAINTIFF'S TESTIMONY FORMING THE BASIS OF ALLEGED FUTURE LOST PROFITS BEYOND THE TERM OF HIS CONTRACT**

As an initial matter, because Plaintiff will be unable to prove liability as to any of the

Defendants, he will not be entitled to any damages. However, in an abundance of caution,

Defendants file this Motion *in Limine* asking the Court to exclude Plaintiff's pure speculation

about earnings after the expiration of his contract as such speculation cannot serve as the support

for a future lost profits damages award. This exclusion includes any testimony by Plaintiff

regarding alleged appearances or other opportunities beyond his two-year contract with KYGO

and the one-year option contained therein.[1]  Because any such testimony is unduly speculative and contains inadmissible hearsay, it must be excluded.

## LEGAL STANDARD

For evidence to be admissible, it must be relevant and its probative value must not be substantially outweighed by a danger of misleading the jury. Fed. R. Evid. 401, 403.  Hearsay, generally, is not admissible. Fed. R. Evid. 802.

In Colorado, a plaintiff may only recover damages for intentional interference with contract or prospective business relations "if the injuries are reasonably to be expected to result from the interference." *Jones v. Wells Fargo Bank, N.A.*, No. 13-CV-02210, 2014 WL 3906297, at *1 (D. Colo. Aug. 7, 2014) (citing *Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1121 (Colo. 1990) (en banc)).  Such recovery departs from contractual damages only "when necessary" to make plaintiff "whole." *Westfield*, 786 P.2d at 1120.  In theory, a plaintiff may *seek* damages for "(a) the pecuniary loss of the benefits of the contract or the prospective relation; (b) consequential losses for which the interference is a legal cause; and (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference." *Id.* at 1121 (quoting Restatement (Second) of Torts § 774A(1)).  But when (as here) damages are premised on a theory of future lost profits, they must be foreseeable and established with reasonable certainty.  *See, e.g.*, *Master Palletizer Sys., Inc. v. T.S. Ragsdale Co*., 725 F. Supp. 1525, 1535 (D. Colo. 1989); *Denny Constr., Inc. v. City & Cnty. of Denver*, 199 P.3d 742, 746 (Colo. 2009) (en banc). "[A] plaintiff

---

[1]     Plaintiff's one-year option with KYGO was electable at the sole discretion of KYGO. *See* January 4, 2013 Mueller Employment Contract at SWIFT_0000004 (Ex. 1). Defendants maintain that Plaintiff will not be able to prove that KYGO would have exercised his option with reasonable certainty and he would therefore not be entitled to damages for the option either.  However, given the Court's summary judgment Order, Defendants reserve argument on this point until trial.  *See* Dkt. 137 at 30-31.

seeking future damages must provide the trier of fact with (1) proof of the fact that damages will accrue in the future, and (2) sufficient admissible evidence which would enable the trier of fact to compute a fair approximation of the loss." *Denny Constr.*, 199 P.3d at 746 (internal quotations marks and citation omitted). Importantly, "[l]ost profits are not recoverable if either the amount of the profit that would have been earned or the fact that the plaintiff would have earned them is too speculative, remote, imaginary, or impossible to ascertain." *Master Palletizer*, 725 F. Supp. at 1535; *see Lee v. Durango Music*, 355 P.2d 1083, 1087 (Colo. 1960) (lost profit damages "may not be speculative, remote, imaginary, or impossible of ascertainment"); *W. Cities Broad., Inc. v. Schueller,* 849 P.2d 44, 50 (Colo. 1993); *Wojtowicz v. Greeley Anasthesia Servs., P.C.*, 961 P.2d 520, 522-23 (Colo. App. 1997) ("a damage award cannot be based on speculation or conjecture").

## ARGUMENT

In the unlikely event Plaintiff is able to prove liability, Plaintiff should be excluded from testifying about potential opportunities or recovery outside the terms of his contract.  Not only would such recovery fly in the face of well-settled law that awarding damages beyond the enumerated terms of a contract is too speculative, but here, Plaintiff also relies on inadmissible hearsay to support his claims.  Plaintiff's future lost profits calculations incorporate both consequential losses and losses for reputational harm, and thus he must show his entitlement to both types of recovery with reasonable certainty. *See generally* June 14, 2016 Jeffrey Opp Report ("Opp Report"), attached as Exhibit 1 to Dkt. 135[2]; *Denny Constr.*, 199 P.3d at 746. Because Plaintiff has no admissible evidence to support future lost profits beyond the terms in his contract,

---

[2]    Defendants have also moved to exclude Mr. Opp's report, opinions, and testimony based on his reliance on Plaintiff's bare speculation and assumptions contradicted in the record. *See* Dkts. 135,152.

any testimony by Plaintiff related to such recovery is not relevant, would only serve to mislead the

jury, and must be limited and excluded accordingly.

### A.  Future Lost Profits Beyond Plaintiff's Contract Term are Too Speculative

As noted above, it is axiomatic that damages for future losses cannot be based on

speculation. *See* cases cited *supra*.  It is also well-established that calculating future lost profits

damages beyond a plaintiff's contract term is often unduly speculative.  *See, e.g.*, *JDB Medical,*

*Inc. v. The Sorin Group, S.p.A.*, No. 07-cv-350, 2008 WL 10580039, at *8 (D. Colo. June 11,

2008); *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-cv-1468, 2014 WL 2891575, at *3-5

(D. Colo. June 26, 2014) (finding future damages beyond the term of the contract were "pure

speculation")[3]; *Underground Vaults & Storage v. Cintas Corp.*, No. 11-cv-1067, 2013 WL

6150764, at *2-3 (D. Kan. Nov. 22, 2013) (excluding testimony on lost profits for amounts tied to

contract extension of eight years because the "time period [was] not contemplated in the contract"

and was therefore "pure unsupported speculation").

*JDB Medical* is instructive here. There, the court granted summary judgment for

defendants on plaintiff's claims for future lost profit damages that extended beyond the five year

term of the contract at issue.  2008 WL 10580039, at *8.  The court noted that plaintiff's claims

for lost profit damages beyond the five year term were "based on the assumption that the agreement

would have been renewed at the end" of the term. *Id.*  The court stated that the "'mere hope' for

---

[3]    As the Court knows, *SOLIDFX* was reversed in part and vacated in part on appeal when the Tenth
Circuit Court of Appeals found that lost profits were not available at all under the terms of the contract.
841 F.3d 827, 838 (10th Cir. 2016).  The Tenth Circuit did not address this Court's instructive analysis and
finding that recovery for lost future earnings was capped at the plaintiff's five-year contract term.  2014
WL 2891575, at *5. Moreover, as explained below, given the unsupported, purely speculative nature of
purported future damages that Plaintiff has alleged in this case, the Court's subsequent opinion pursuant to
Rule 59 also does not change the result here. *See* 2015 WL 494196 (D. Colo. Feb. 3, 2015).

renewal of a contract 'renewable at the discretion of another party will not support recovery of any future' lost profits when the other party can deny renewal at its discretion." *Id.* (citation omitted). Thus, the plaintiff's "mere hope" of renewal was "unduly speculative" and lost profits beyond the contract's term were not recoverable. *See id.*

So too here where Plaintiff bases his claim for future lost profits on pure, unsupported speculation that he would continue to work at KYGO after his two-year contract term expired.  As explained in Plaintiff's purported expert Jeffrey Opp's economic loss analysis, Plaintiff's future lost profits calculations are based on the fact that he (1) "intended to work for KYGO for between ten and 15 years before leaving radio;" and (2) had a "desire" for KYGO to be "his last job in radio before retiring or moving on to some other pursuit." *See* Opp Report at 4. But these "intentions" or "desires" cannot form the basis for an award of future lost profits.

Plaintiff's self-serving assertion that he had a "desire" and "intention" to continue working at KYGO after his contract expiration has absolutely no evidentiary support.  The only admissible evidence on this point squarely contradicts his continued employment at KYGO after the expiration of this contract term. First, it is undisputed that Plaintiff's contract contained a two-year term. Ex. 1 at SWIFT_0000004. And Plaintiff admitted that KYGO had no obligation to employ him after the contract's two-year term expired. *See* June 13, 2016 Deposition of David Mueller at 157:2-16 (Ex. 2).  Second, according to his resume, Plaintiff has never held a job as an on-air radio personality longer than four years (with most on-air stints lasting one to two years); thus the notion that KYGO would continue to employ Plaintiff for ten or fifteen years is implausible and speculative. *See* David Mueller radio resume at MUELLER0082 (Ex. 3). Moreover, prior to starting with KYGO in 2013, Mueller had not worked as an on-air personality since 2006. *Id.*; Ex. 2 at 132:13-20.  Third, Plaintiff testified that prior to his arrival at KYGO, there had been repeated

5

turnover with on-air personalities on the morning show he was joining. Ex. 2 at 156:23-157:1. And

fourth, Plaintiff's employer also testified that at the time of his termination, his morning show was

performing "not well." *See* July 14, 2016 Deposition of Hershel Coomer P/K/A Eddie Haskell at

38:4-13 (Ex. 4). Plaintiff has nothing to refute any of this.

Thus, Plaintiff should not be allowed to testify or present any evidence of opportunities

forming the basis of alleged damages outside of the term of his contract and option with KYGO.

Any request for compensation beyond that point is irrelevant and would only serve to mislead the

jury. *See* Fed. R. Evid. 401, 403.

### B. Plaintiff's Alleged Prospective Business Relations Are Also Unduly Speculative and Based on Inadmissible Hearsay

Plaintiff should also not be allowed to testify or present any purported "evidence" relating

to alleged prospective business relations as they are also based on unallowable speculation and

inadmissible hearsay.[4]  *See, e.g.*, *Master Palletizer*, 725 F. Supp. at 1535; *Red Lion Homes, Inc.*,

704 F.2d at 489; *see* Fed. R. Evid. 801, 802.  Plaintiff articulated the following opportunities as

part of his tortious interference with prospective business relations claim at his deposition:

appearances at Water World, Firestone Tire Center, Dickey's Barbeque, and Paula Homes. Ex. 2

at 217:12-225:6. Other than Plaintiff's self-serving contentions at his deposition, in discovery,

Plaintiff provided not one piece of paper—no contract, term sheet, letter of intent, or other

document—evidencing these alleged "prospective business relations," nor has he identified any

witness who could provide testimony in support of them.  These deficiencies are fatal to Plaintiff's

attempt to use his own testimony of purported appearances as support for any monetary recovery.

---

[4]    Again, given the Court's summary judgment ruling, Defendants do not include Plaintiff's onw-year
option in this discussion and will reserve argument on the option until trial.

Plaintiff's deposition testimony about his basis for believing the alleged appearances

constitute prospective business relations seals its fate. Plaintiff testified to the following:

- Water World: Plaintiff was "scheduled to be at a water park, and I believe it was
  for the end of June. . . . I was only there once to meet with the people on the
  marketing staff." Ex. 2 at 217:19-25; *see also id.* at 221:13-15 ("they wanted us to
  do three hours, but only get paid as if it was two hours").

- Firestone Tire: Plaintiff and his on-air partner "had already done an appearance at
  a Firestone Tire Center or auto center. And when we were there, they told us that
  we – in the future we'd be going to other Firestones." *Id.* at 218:5-8; *see also id.* at
  220:17-25 ("We were told there might be [appearances] at other locations").

- Dickey's Barbeque: Plaintiff and his on-air partner "did an appearance at a
  Dickey's Barbeque. . . . And we were told when we did an appearance there that
  there would be other Dickey's Barbecue locations that they would want to have us
  be there for two hours." *Id.* at 218:8-16.

- Paula's Homes: Plaintiff and his on-air partner "were doing live commercials for
  them, and we went out there a couple of times to meet with the guys that did the –
  owned it, and also the marketing head. And they told us that they wanted us to come
  out and do a weekend . . .  they wanted us to be there so people would come out to
  meet us and then they would look at homes." *Id.* at 218:17-219:3

Quite plainly, these purported prospective business relations are mere speculation and cannot form

the basis of any recovery.

And if the speculative nature of Plaintiff's future "appearances" were not enough to

exclude his testimony of their purported existence (which it undeniably is), such testimony also

contains inadmissible hearsay. *See* Fed. R. Evid. 801, 802.  To admit Plaintiff's explanation of the

appearances described above, the Court would have to admit Plaintiff's testimony about the

unnamed people who supposedly (1) told him they wanted him to work three hours and get paid

for two hours at Water World, (2) told him there would be future appearances at Firestone, (3) told

him there would be other appearances at other Dickey's Barbecue locations, and (4) told him they

wanted him to come out and do a weekend appearance at some undefined time in the future.  *See*

Ex. 2 at 217-220.  Other than his own testimony, Plaintiff has not designated any witness from any prospective relations to testify, and there is no admissible basis for any future loss involving the prospective business relations identified above.  The Court cannot allow Plaintiff to present these textbook hearsay statements.  *See* Fed. R. Evid. 801, 802.

Thus, while Defendants are confident Plaintiff will not be not entitled to any damages, any testimony by Mueller relating to alleged appearances or opportunities forming the basis of possible monetary recovery beyond the term of his contract should be excluded. Any such testimony is either too speculative, inadmissible hearsay, or both, and would only serve to mislead the jury.

**EVIDENTIARY ISSUE 2: LIMITING PLAINTFF'S TESTIMONY REGARDING THE RADIO INDUSTRY AND ON-AIR PERSONALITIES**

Defendants anticipate Plaintiff will attempt to provide testimony akin to expert or lay testimony on the radio industry, and on-air talent in particular, including hiring patterns and the effect of terminations. Because Plaintiff is not qualified to express an expert opinion or a lay opinion on these matters, he should be precluded from doing so.

**LEGAL STANDARD**

When discussing a specific industry and its practices, expert testimony is generally required. *See  Stamey v. Nat'l Gen. Ins. Co.*, No. 15-cv-560, 2016 WL 8540310, at \*4 (D. Colo. Sept. 22, 2016) (quoting *Goodson v. Am. Std. Ins. Co. of Wisc.*, 89 P.3d 409, 415 (Colo. 2004) ("The aid of expert witnesses is often required in order to establish objective evidence of industry standards."); *Parret v. UNICCO Serv. Co.*, No. 01-cv-1432, 2006 WL 4999986, at \*6 (W.D. Okla. Mar. 22, 2006) ("expert testimony is often admitted as to the custom and practice in particular industries or as to the usual or customary way of doing things"); Fed. R. Evid. 702 (requiring expert testimony on areas of "specialized knowledge").  This is precisely why vocational experts

8

are employed in litigation. *See Perotin v. Colvin*, 110 F. Supp. 3d 1048, 1055 (D. Colo. 2015) ("The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation . . . ." (citation omitted)).

Federal Rule of Evidence 701 governs lay opinion testimony. When a witness is not testifying as an expert, his opinion is limited to testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge" required in Rule 702. Fed. R. Evid. 701. This rule "does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011); *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979). "Lay witnesses may express opinions only from personal knowledge and first-hand experience." *United States v. Gutierrez*, No. 10-CR-3383, 2012 WL 12549877, at *2 (D.N.M. Sept. 28, 2012).

## ARGUMENT

In a recent filing in this Court, Plaintiff alluded to testifying on radio-industry-specific practices, particularly relating to on-air personalities. Specifically, Plaintiff stated: "At trial based on his intimate knowledge of the facts of this case and on his long history with and knowledge of the radio industry, Plaintiff will testify about the consequences of Defendants' wrongful conduct, including the termination of his contract by KYGO and his inability to procure other appropriate employment." *See* Dkt. 145 at 2; *see also id.* at 6 ("it is reasonable for [Plaintiff's damages expert] to rely on Plaintiff's many years of radio industry experience in analyzing [his] damages"); *id at* 1 (touting Plaintiff's "long career as a radio personality"). Thus, Plaintiff is apparently planning on providing his own testimony related to hiring practices and implications of terminations in the

9

radio industry generally, and particularly with regard to on-air personalities; testimony that can only properly come from an expert on the industry. Plaintiff should not be allowed to provide such testimony for three independent reasons.

First, Plaintiff's *post hoc* attempt to qualify *himself* as an expert in radio on-air personalities circumvents the Federal Rules of Civil Procedure. The deadline to designate affirmative experts in this case was July 28, 2016, over ten months ago. *See* Dkt. 93. There is no reason to allow Plaintiff to willfully ignore this deadline and try to back-door his testimony on on-air personalities in the radio industry under the guise of lay opinion testimony or otherwise.

Second, Plaintiff could never qualify as an expert regarding radio on-air personalities because, with the exception of the five month period he was employed at KYGO, he has had no experience as an on-air personality *in over ten years*. *See* Ex. 3. Prior to his job at KYGO, he had not worked as an on-air personality since 2006. *Id.* As a result, Plaintiff simply does not have any "specialized knowledge" that would allow him to opine on radio industry hiring practices and potential impacts of terminations regarding on-air personalities. *See* Fed. R. Evid. 702.

Third, Plaintiff's purported testimony does not qualify as lay opinion testimony as, again, it requires specialized knowledge. *See* Fed. R. Evid. 701, 702; *James River*, 658 F.3d at 1214. Moreover, lay opinion testimony must be based on personal knowledge and experience. *Gutierrez*, 2012 WL 12549877, at *2. As just explained, Plaintiff has only worked as an on-air personality for approximately five months in the past ten years. *See* Ex. 3. He simply does not have personal knowledge or experience as an on-air personality to draw from to present lay opinion testimony.

The Court should thus preclude Plaintiff from testifying about the radio industry, and in particular on-air personality, hiring practices and impacts of termination and limit any such testimony to his own experience.

June 23, 2017                                         Respectfully Submitted,

                                                     /s/ *J. Douglas Baldridge*
                                                     J. Douglas Baldridge
                                                     Danielle R. Foley
                                                     Katherine M. Wright
                                                     Venable LLP
                                                     600 Massachusetts Ave., NW
                                                     Washington, D.C. 20001
                                                     Telephone: (202) 344-4000
                                                     FAX: (202) 344-8300
                                                     E-mail: jdbaldridge@venable.com
                                                     E-mail: drfoley@venable.com
                                                     E-mail: kmwright@venable.com

                                                     *Attorneys for Defendants Frank Bell,*
                                                     *Andrea Swift, and Taylor Swift*
                                                     *and Counterclaimant Taylor Swift*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on June 23, 2017 a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system and served on all counsel of record.

/s/ *J. Douglas Baldridge*
J. Douglas Baldridge
