# EXHIBIT 1

*Scanned 1/15/13*



**Lincoln**
**Financial Media**
*A member of Lincoln Financial Group®*

David J. Mueller
11935 27th Avenue North
Plymouth, MN 55441

Dear David:

This AGREEMENT sets forth the terms and conditions of your employment and is entered into as of this __4__ *Jan*, 20*13* by and between Lincoln Financial Media Company of Colorado ("we" or "Employer"), owner and operator of Radio Station KYGO ("Station"), 7800 E. Orchard Rd., Suite 400, Greenwood Village, Colorado 80111, and you (sometimes referred to herein as "Employee").

### 1. SERVICES.

We are employing you to render and furnish artistic and professional services to us and to Station as On-Air Personality on Station, Monday-Friday, at the hours set forth in Section 2 hereof ("Programs"). Your duties shall be performed during the Station's regular business hours, Monday through Friday each week, subject to the Station's right to otherwise reasonably require your services. As part of your duties, you will:

(a) Prepare and present live and recorded music, news or talk shows and commercials in connection with the Programs;

(b) Make public appearances, which may be broadcast on Station, that promote Station or Employer or that assist in the selling of commercial time;

(c) Meet with and entertain persons in the entertainment, advertising and related fields at reasonable times;

(d) Attend meetings involving the production and creation of Program ideas;

(e) Perform all technical duties required of on-air personalities at Station and/or by Federal Communications Commission ("FCC") regulations. The Programs will be presented under the supervision and control of Employer or Station, which shall have the unqualified right to alter the content of, or the personnel involved in the presentation and production of, the Programs; provided, however, that Employee and Ryan Kliesch shall be the opportunity to advise on the hiring of a Program sidekick, which shall be subject to the final approval of Employer. You will abide by all applicable Employee and Station training requirements and policies provided in writing, and the requirements of all laws, rules, and regulations applicable to your services; and

(f) Perform any ancillary duties, consistent with your position that we may in our sole but reasonable discretion require from time to time. Your services shall be rendered at the Station's facilities or from such remote locations as we may reasonably choose. Although you may be asked to endorse products and/or services, you shall not be required to endorse those that you cannot, in good conscience, endorse.

You will use your best efforts to perform such duties to our reasonable satisfaction and in accordance with the policies, rule and procedures of Employer and Station. You will act under the supervision and direction of the Station's General Manager and of Employer.

Exhibit No.: 3
Deponent _____
Date/RPR: 7-15-16
Hunter + Geist, Inc.

1

2. <u>WORK WEEK.</u> You will perform your services during an on-air shift of approximately four (4) hours consecutive hours per day, from 5:00 am to 9:00 am, Monday-Friday each week; provided, however, that we reserve the right to change the time of broadcast, to any four (4) hour period within the hours of 5:00 am to 10:00 am.

3. <u>TERM.</u>

Subject to the provisions for termination hereinafter, the Term of this Agreement shall begin on January 21, 2013 and shall continue for a period of two (2) years through and including January 20, 2015. When used herein, "Term" shall refer to the entire period of engagement of Employee hereunder including any extension of this Agreement upon Employer's exercise of any option(s) described herein, whether for the period provided above or whether terminated earlier as hereinafter provided.

Employer shall have the option, in its sole discretion to extend this Agreement for one (1) additional one (1) year term, which if exercised shall be referred to as "Option Year 1." Such option must be exercised in writing by Employer no later than one hundred twenty (120) days prior to the end of the Term.

4. <u>COMPENSATION.</u>

(a) <u>Annual Compensation.</u> During the Term and conditioned upon the full and faithful performance by you of all of your material obligations hereunder, we will pay you, as full and complete compensation for all of the services to be rendered by you, for all rights granted to us and for all representations, warranties and agreements made by you hereunder, the following, payable in accordance with Station's standard payroll practices:

| DATES | SALARY |
|---|---|
| January 21, 2013-January 20, 2014 | $150,000 |
| January 21, 2014-January 20, 2015 | $150,000 |
| January 21, 2015-January 20, 2016 | $170,000 (Option Year 1, if exercised) |

(b) <u>Bonus Based on Arbitron PPM Survey.</u>[1]

If Employee's Programs achieve one of the ranks set forth below among radio stations in the Denver-Boulder Arbitron Metro area based on the average of PPM Months 1, 2 and 3; PPM Months 4, 5 and 6; PPM Months 7, 8 and 9; and PPM Months 10, 11 and 12 (beginning with 2013 PPM Months 1, 2 and 3, Employee shall receive a bonus in the highest applicable amount for each block of three PPM Months.

<u>From January 20, 2013 through January 21, 2015</u>

Monday-Friday, 5am to 9am
Audience: Adults 25-54
AQH Persons:

| Rank (AQH Persons) | Bonus |
|---|---|
| #1 | $20,000 |

---

[1] If due to encoding or other sampling problems as determined by Employer in its sole discretion, Arbitron is unable to provide sufficient market data to determine the AQH share rank for any applicable time period noted in Paragraph 4(b), then Employee's eligibility for a bonus shall be determined based on Arbitron Diary Surveys for such period; provided, however, that if Diary Surveys are not available for such period then Employer and Employee will negotiate in good faith as to an appropriate method for determining Employee's bonus eligibility for such time period.

Confidential

SWIFT_0000004

| #2  | $15,000 |
|-----|---------|
| #3  | $10,000 |
| #4  | $7,000  |
| #5  | $6,000  |
| #6  | $5,000  |
| #7  | $4,000  |
| #8  | $3,000  |
| #9  | $2,000  |
| #10 | $1,000  |

From January 21, 2015 through January 20, 2016 (Option Year 1, if exercised)

Monday-Friday, 5am to 9am
Audience: Adults 25-54
AQH Persons:

| Rank (AQH Persons) | Bonus    |
|--------------------|----------|
| #1                 | $20,000  |
| #2                 | $15,000  |
| #3                 | $10,000  |
| #4                 | $7,000   |
| #5                 | $6,000   |

In the event of a tie in ranking Employee will be paid the full amount of the bonus. Any bonus earned pursuant to Paragraph 4(b) shall be paid to Employee within thirty (30) days following the date of issuance of the Arbitron PPM data release for the third month comprising the applicable three month PPM period. Employee must be employed by Station for the duration of each three month PPM period to be eligible for a bonus, except that, if Employee is terminated pursuant to Paragraph 8(e), Employee shall be eligible to receive a prorated bonus for that portion of time that Employee was employed. Any recall or adjustment in the published ratings will result in an adjustment of the bonus to be paid pursuant to Paragraph 4(b).

(c) Other Compensation.

(i)     Signing Bonus. Employer agrees to pay Employee a one-time signing bonus of $25,000 payable within five (5) business days of execution of this Agreement. Employee agrees that in the event Employee terminates this Agreement, Employee shall be required to pay back to Employer a prorated amount of such signing bonus based on the number of months left on the initial two-year Term at the time of termination. By way of example, if Employee terminates this Agreement with eight months left prior to the end of the Term, Employee shall pay back 8/24 of the signing bonus.

(ii)     Talent Fees. Employee shall receive additional compensation, through product endorsements, remotes, paid sponsor events and personal appearances, of a minimum of $10,000 during each year of the Term. Employer will use commercially reasonable efforts to secure competitive rates for such endorsements, remotes, events and appearances, but does not guarantee a minimum such rate. Employee shall have approval over all endorsements, such approval not to be unreasonably withheld.

(iii)     House-Shopping Expenses. Employer agrees to pay Employee's reasonable air transportation, hotel and rental car expenses incurred in connection with one (1) visit to shop for a house in the Denver market. Such expenses shall not exceed $1,500, and will be payable following the receipt of documentation evidencing payment for such expenses no later than sixty (60) days following the date each expense is incurred.

3

Confidential

(d) <u>Deductions; Withholdings.</u> All payments to Employee hereunder are subject to such deductions and withholdings as are required by state, local or federal law, or to which Employee consents.

(e) <u>No Claims.</u> Employee represents and warrants that this Agreement and all sums payable to Employee hereunder are not and will not be subject to any claim against Employer or Station by any broker, agent, representative or any other person or party, whether or not Employer or Station has actual or constructive knowledge of such claim.

(f) <u>IRS Code 409A Compliance.</u> The intent of the parties is that payments and benefits under this Agreement comply with Internal Revenue Code Section 409A and the regulations and guidance promulgated thereunder (collectively "Code Section 409A") and, accordingly, to the maximum extent permitted, this Agreement shall be interpreted to be in compliance therewith. If the Employee notifies the Employer (with specificity as to the reason therefor) that Employee believes that any provision of this Agreement (or of any award of compensation, including equity compensation or benefits) would cause the Employee to incur any additional tax or interest under Code Section 409A and the Employer concurs, or the Employer (without any obligation whatsoever to do so) independently makes such determination, the Employer shall, after consulting with the Employee, use reasonable efforts to reform such provision to the extent possible to comply with Code Section 409A; provided that such modification shall, to the maximum extent practicable, maintain the original intent and economic benefit to the Employee and the Employer of the applicable provision without violating the provisions of Code Section 409A; and further provided that if the Employer, in its sole discretion, determines that reformation or modification is not practical, the Employer is under no obligation whatsoever to make such reformation or modification.

In no event whatsoever (including, but not limited to as a result of Paragraph 4(d) above or otherwise) shall the Employer be liable for any tax, interest or penalties that may be imposed on the Employee by Code Section 409A or any damages for failing to comply with Section 409A or Paragraph 4(d) above. Employee acknowledges that he or she has been advised to obtain independent legal, tax or other counsel in connection with Code Section 409A, and Employee acknowledges that his or her decision to enter into this Agreement is based on consultation with such counsel.

## 5. BENEFITS.

(a) <u>Benefits.</u> Employee shall be entitled to participate in any Employer benefit plans now existing or hereafter adopted for which Employee may be eligible pursuant to established Employer policy, subject to the provisions of such plans as the same may be in effect from time to time. Nothing contained in this Agreement shall prevent Employer or Station from terminating or modifying any such benefit plan in whole or in part at any time.

(b) <u>Paid Time Off.</u> Employee shall be entitled to paid time off ("PTO") in accordance with the then current Employer policy.

6. **PAY OR PLAY.** Nothing contained in this Agreement shall be deemed to obligate Employer or Station to use Employee's services or to broadcast any Program in connection with which Employee has rendered services. Payment to Employee of the annual compensation set forth in Paragraph 4(a) hereof shall fully discharge all of Employer's and Station's obligations hereunder. In the event of Employee's death, this Agreement shall terminate and Employer shall make all payments accrued and not yet paid as of the date of Employee's death. Employer may make such payments to Employee's legal representative or representatives.

7. **EXPENSES.** Employee, with management's prior express written approval, is authorized to incur reasonable expenses in the performance of Employee's duties hereunder. Employer will reimburse Employee for all such reasonable expenses upon the timely presentation by Employee of an itemized account and receipts for such expenditures on such forms as may be required by Employer.

8. **TERMINATION BY EMPLOYER.**

4

Confidential

(a) <u>Termination for Cause.</u> Employer may terminate this Agreement for cause, as hereinafter defined, with or without notice, at any time. If Employee is terminated for cause, Employee shall be entitled to compensation that has accrued up to the date of termination, but Employee shall not be entitled to any severance or other payment whatsoever and the covenant not to compete set forth at Paragraph 11(c) hereof, shall apply to Employee in accordance with its terms. The term "Cause" as used herein shall include, but not be limited to, the following: (1) Employee's continued incapacity for three (3) weeks or more or for thirty (30) or more Programs in the aggregate during any fifty-two (52) week period or beyond the period provided in the Family and Medical Leave Act, if applicable. The term "incapacity" shall mean any physical, mental or other disability rendering Employee incapable of fully performing the services required to be performed by Employee hereunder and/or pursuant to the applicable job description including any material impairment of Employee's voice, even with a reasonable accommodation of such disability. Should a question arise as to Employee's ability to perform all the essential functions of the work required under this Agreement and/or the applicable job description, Employee will cooperate fully in assisting Station in making a determination of whether a physical or mental disability affects Employee's ability to perform those essential functions with or without a reasonable accommodation, including, without limitation, submission to medical examinations by licensed health care providers designated by Station. Employee will also be asked to help in determining if a reasonable accommodation can be made. Station will give Employee prompt notice of the action it intends to take upon determining that Employee cannot perform all essential functions of the applicable job description and/or the services to be provided pursuant to this Agreement; (2) Willful, habitual, or substantial neglect of duties by Employee; (3) Any material breach of this Agreement; (4) Material Dishonesty in the performance of Employee's duties; (5) Theft; (6) Use or possession of illegal drugs during working hours; (7) Use of alcohol during working hours (except for moderate consumption of alcohol during business entertainment in the discharge of Employee's duties); (8) Unethical business conduct; (9) Negligence in the performance of duties likely to cause or actually causing personal injury or property damage; (10) Failure to work in a harmonious manner with management or other employees; (11) Insubordination; (12) Failure to comply with any rules or regulations of Employer or any conduct inconsistent with the policies, procedures, or best interest of Employer which have been furnished to Employee and consistently applied; (13) Any violation of FCC rules and regulations, including without limitation rules relating to indecency, payola and/or plugola; (14) Excessive absenteeism or tardiness; and (15) Employee's failure or refusal to perform the services required of Employee under this Agreement for a period of two (2) or more days for reasons other than vacation, illness, accident, injury, incapacity or authorized leave of absence. In the event that Employee engages in any act or omission which would constitute "Cause" and in the event such act or omission is curable as determined by Employer in its sole discretion, then Employer shall give Employee, on a one-time only basis, written notice of such act or omission, and Employee shall have three (3) business days from the date of such written notice to cure such act or omission; provided, however, that (a) if Employee fails to cure such act or omission, as determined by Employer in its sole discretion, then Employee may be terminated for cause as provided hereunder; and (b) Employer may immediately terminate Employee for cause upon any subsequent such act or omission without providing Employee written notice or the opportunity to cure such subsequent act or omission.

(b) <u>Disciplinary Action; Suspension.</u> If at any time Employee fails to perform fully any one or more of the obligations hereunder, or in the event of breach by Employee of any representation, warranty, term, obligation or condition of this Agreement, Employer shall have the right at its sole but reasonable option, in addition to the rights set forth in this Agreement and any other right at law or in equity, to discipline Employee by suspension from work but in no event shall a suspension from work be an unpaid suspension for more than two (2) weeks. If a suspension exceeds two (2) weeks, then such suspension will be a paid suspension beginning after the second week of suspension.

(c) <u>Termination In The Event Of Termination Of Morning Show Partner.</u> Employer may terminate this Agreement in the event that Employee's morning show partner, Ryan Kliesch, is terminated for cause by Employer, in which event Employee shall be immediately terminated and following Employee's termination receive the lump sum amount equal to Employee's base salary for the following ninety (90) days. The payment described in Section 8(c) is contingent on Employee first executing an agreement acceptable to Employer releasing all claims against Employer, its affiliated companies, management and employees and that release becoming effective according to its terms.

5

Confidential

(d) Return of Property Upon Termination or Expiration. In the event this Agreement expires or is terminated, Employee shall promptly return to Employer all property of Employer or Station then in Employee's custody, possession or control.

(e) Termination of Employment. Any termination of this Agreement, whether by expiration or otherwise as provided hereunder, shall also constitute a termination of employment with Employer, unless a successor agreement is executed or employment otherwise continues as provided below. Severance and termination benefits, if any, shall be governed by the terms of this Agreement, provided, however, that in the event of expiration of this Agreement, Employee shall not be entitled to severance. If, by the expiration date of this Agreement, no successor agreement is executed by Employee and Employer and, at Employee's request, Employee continues to provide Employee's personal services to Employer, any such continued employment of Employee by Employer shall be day-to-day, terminable at the will of either party for any reason and without notice. Unless otherwise expressly agreed to in writing by Employer, compensation and other terms and conditions of such day-to-day employment shall be governed solely by the terms of this Agreement, provided however, that Employee shall not be entitled to any severance (pursuant to this Agreement or otherwise) upon termination of such day-to-day employment hereunder. The time periods referred to in the First Refusal clause and the Non-Compete clause set forth in this Agreement shall be deemed to commence pursuant to the provisions contained in Paragraphs 11(c) and 11(d) upon expiration or termination of this Agreement, unless Employee continues employment on a day-to-day basis as set forth above past the expiration date of the Agreement. In that case, such time periods shall be deemed to commence on the date Employee's employment with Employer is ended. If Employer does not request Employee to continue providing Employee's personal services after expiration of this Agreement, and Employee has not advised Employer of Employee's intention to terminate Employee's employment with Employer upon expiration of this Agreement, the Employee's employment shall be deemed terminated by Employer. If Employer does request Employee to continue providing Employee's personal services after expiration of this Agreement, but Employee declines to provide Employee's personal services, then Employee's employment shall be deemed terminated by Employee.

9. **STATEMENTS TO THE MEDIA.** You will not grant an interview or otherwise make a statement to any media, including without limitation to any TV station, newspaper or trade press, or any radio station that is not affiliated with Employer without our prior written consent which will not be unreasonably withheld and will be given in a timely fashion.

10. **EXCLUSIVITY.** During the Term you will not, without our prior written consent, perform any service in for any other person or business entity whatsoever. Employee will not discuss any future employment with any third party until expiration of the First Negotiation Period set forth in Paragraph 11(b). Notwithstanding the foregoing, it is understood that Employee has the right to do voiceover work and television with the prior written approval of Employer, not to be unreasonably withheld, so long as this work does not conflict with the Employee's primary obligation to the Employer, in Employer's reasonable discretion. It is also understood that Employee will remain on the Board of Directors of Nineball Radio and maintain his partial ownership of Nineball Radio and is a part owner of the site NineballRadio.com. It is also understood that Employee owns the websites, rynoandjackson.com and rynoandjackson.net, which Employee agrees shall not feature or include Employee or Station materials, including without limitation intellectual property, without the prior written consent of Employer.

11. **RESTRICTIVE COVENANTS.**

(a) Notification of Offer From a Third Party. Employee will immediately notify Employer in writing of all offers of employment received by Employee from any third party to perform broadcasting services, or any duties described in Paragraph 1 herein, during the Term of this Agreement.

(b) First Negotiation. If Station desires to continue to utilize Employee's services after the expiration of this Agreement, Station shall so notify Employee, in writing, at least 120 days prior to the expiration of the Term. Upon such written notification and until sixty (60) days prior to the expiration of the Term, Employee shall negotiate in good faith exclusively with Station concerning continuation of Employee's services to Station in the period following expiration of

6

SWIFT_0000008

this Agreement. In the remaining sixty (60) days prior to the expiration of the Term, Employee shall be entitled to negotiate with other companies for employment after the Term. Nothing contained herein shall relieve Employee of Employee's non-compete and first refusal obligations under this Paragraph 11.

(c) Covenant Not to Compete. Employee is familiar with the business of Employer, the commercial and competitive nature of the industry, and the substantial commitment Employer makes in developing Employee, and Employee acknowledges Employee's extraordinary and unique services and abilities which enable Employee to seek and obtain similar employment outside Station's market. Employee further recognizes that the value of Employer's business would be injured if Employee obtained comparable employment within Station's market. After this Agreement expires or is otherwise terminated, for a period of six (6) months, Employee shall not, regardless of whether or not for pay (i) accept employment for, (ii) provide any services (whether related to programming or otherwise) for, or (iii) voluntarily allow the use of Employee's name, voice or likeness to be heard or transmitted live or by recording via, radio or television, commercial or noncommercial, within a fifty (50) mile radius of Station (as defined below) or whose ratings are reported for the Denver-Boulder market, as defined by Arbitron, during any reporting period which occurs during the first six (6) months following the expiration or earlier termination of this Agreement. In addition, Employee shall not, for the same length of time, voluntarily allow Employee's name, voice or likeness to be used in print media or display advertising by, in connection with, or on behalf of any entity set forth in the sentence immediately preceding this one. For purposes of this Paragraph 11(c) and of Paragraph 11(d), the term "radio" means the transmission or retransmission of an aural signal by means of individual and/or interconnecting AM, FM or other facilities receiving or transmitting audio programming, whether by amplitude or frequency modulation, microwave, digital, wireless, Internet streaming or audio webcasting, hard wire or satellite, or any method now known or hereafter developed. For purposes of this Paragraph 11(c) and of Paragraph 11(d), a station shall be deemed to be within a fifty (50) mile radius of Station if any location within the community of license of such station or the transmitter of such station is within a fifty (50) mile radius of the transmitter or any part of the community of license of Station. The compensation contained in Paragraph 4 of this Agreement serves as full consideration for this covenant not to compete.

(d)     Right of First Refusal. For a period commencing sixty (60) days prior to and ending ninety (90) days after the date this Agreement expires or is otherwise terminated, and subject to Paragraph 11(c) hereof, Employee shall not, regardless of whether or not for pay (i) accept employment for, (ii) provide any services (whether related to programming or otherwise) for, (iii) voluntarily allow the use of Employee's name, voice or likeness to be heard or transmitted live or by recording via, (iv) or agree to do any of the foregoing for radio (as defined in Paragraph 11(c)) or television, commercial or noncommercial, within a fifty (50) mile radius of Station (as defined in Paragraph 11(c)) or whose ratings are reported for the Denver-Boulder market, as defined by Arbitron, during any reporting period which occurs during the first three (3) months following the expiration or earlier termination of this Agreement, unless Employee has first offered to enter into an agreement for Employee's services with Station on terms and conditions at least as favorable to Station as those offered to Employee by such other employer or offered to such other station by Employee. Station shall have seven (7) days from receipt of notice from Employee of any such offer within which to notify Employee of Station's election to accept said offer. Notice to Station of any such offer must be in writing, set forth all details of such offer and contain the signature of both the offeror and offeree, acknowledging the validity of the offeror's offer and the offeree's willingness to accept such offer. Station shall be deemed to have accepted Employee's offer by acceptance of all terms and conditions which shall include duration of employment, air shift hours, work week hours, general format, FM or AM as the case may be, and terms that provide financial compensation (i.e., salary, bonuses, benefits and other economic incentives reducible to cash or cash equivalents) and shall include the type or format of the station or the program, whether it is produced and/or broadcast by a network or a local station, or via broadcasting services. If Station does not accept any offer of which Employee duly notifies Station, and Employee does not enter into the employ of or provide services for the third party on the terms and conditions set forth in said offer, the terms of this Paragraph shall apply to any subsequent offer to or by Employee.

12. CONFIDENTIALITY.

(a) In the course of Employee's employment, Employee will have access to confidential information, trade

7

SWIFT_0000009

secrets, records, data, specifications and secret inventions and other knowledge (hereinafter collectively referred to as the "Confidential Information") owned by Employer or in the possession of Employer and/or its related companies. All Confidential Information shall be and remain the property of Employer and/or its related companies, as the case may be. During and after Employee's employment by Employer, whether pursuant to this Agreement or otherwise, Employee shall not, without the prior written consent of Employer, disclose to any individual or entity for any reason or purpose whatsoever, other than in the regular course of business of Employer and/or its related companies, any Confidential Information of Employer and/or its related companies.

(b) Except as expressly provided herein, Employee shall maintain in complete confidence the terms and consideration set forth in this Agreement. The only exceptions to the foregoing are that Employee may discuss these matters with his or her tax preparers, counsel and immediate family, or as otherwise required by law.

13. **CONDUCT RELATING TO OTHER EMPLOYEES.** Employee shall not induce or attempt to induce any employee of Employer or any affiliate of Employer to render services for any other person or business nor shall Employee participate in any scheme or arrangement, the purpose of which is to cause any of the employees of Employer or its affiliates to terminate their agreements or employment with the same.

14. **SERVICES UNIQUE; INJUNCTIVE RELIEF.**

(a) You acknowledge that the services to be rendered by you hereunder are unique, special and original in character and competitively valuable to us for that reason; and that your breach of this Agreement would cause us irreparable harm for which money damages alone could not adequately compensate us. Accordingly, we shall be entitled, without notice, in addition to other remedies we may have, to seek injunctive relief in the event of any such breach or threat to commit a breach, including without limitation failing to complete the Term or failing to comply with the provisions of Paragraphs 11 or 12. Employer shall not be required to file any bond in connection with any such request for injunctive or other equitable relief.

(b) All remedies provided in this Agreement shall be deemed cumulative and the exercise of one shall not preclude the exercise of any other remedy for the same event or any other event; nor shall the specification of remedies herein exclude any rights or remedies at law or in equity.

15. **PERSONNEL POLICIES AND SECTION 317 AND 507 OF THE COMMUNICATIONS ACT.**

(a) Employee represents that Employee has read Sections 317 and 507 of the Communications Act of 1934 as amended, copies of which are attached, and understands Employee's responsibilities and the criminal liabilities thereunder. Employee warrants and represents that Employee will comply with any and all policies, rules and regulations as Employer may from time to time adopt in order to fulfill its responsibilities as a broadcaster with respect to said Section 317 and the public policy involved.

(b) Employee warrants and represents that, to the best of Employee's knowledge, information and belief, Employee has not accepted, agreed to accept, or paid or agreed to pay any money, provide service or receive or receive any valuable consideration except the compensation payable hereunder from Employer, as defined in Section 507 of the Federal Communications Act of 1934, as amended, for the broadcast of any matter contained in any Program. Employee further covenants, warrants and agrees that during the Term Employee will not accept or agree to accept (except from Employer) or pay or agree to pay any money, provide service or receive any valuable consideration, as defined in Section 507 of the Federal Communications Act of 1934, as amended, for the broadcast of any matter contained in any Program. In the event such consideration has been or is offered, accepted, or paid, voluntarily or involuntarily, full disclosure must be promptly made to Employer. Any breach of this Paragraph 15 shall give Employer the right to terminate this Agreement for cause, including all payments to be made hereunder.

(c) Employee will comply with any and all policies, regulations and procedures Employer may from time to time

8

adopt. Employee will not retain or acquire any outside economic interest which in Employer's reasonable judgment could in any material way compromise Employee's faithful and "best efforts" performance of duties hereunder or influence Employee's presentation of any broadcast matter, and Employee will disclose to Employer any economic interests that might be considered as having such an effect. With respect to Section 507 of the Communications Act of 1934, as amended, Employee will complete the Annual Statement and Questionnaire and promptly return it to Employer. Employee will submit, at Employer's request, written reports pertaining to Employee's services or conformance with policies, regulations and procedures of Employer.

### 16. UNAUTHORIZED ACTS.

(a) Employee shall refrain from any offensive or distasteful remarks or conduct in Employee's performances or on-air, the broadcast of which Employer believes would not be in the public interest or may jeopardize Employer's Federal license to operate Station, and shall faithfully comply to the best of Employee's ability with all of Employer's directives relating to on-the-air material and the manner of delivering or using the same, of which directives Employee has received prior notice.

(b) If Employee should commit any act or become involved in any situation or occurrence which, in Employer's reasonable opinion, will bring Employee into public disrepute, contempt, scandal or ridicule, will provoke, insult or offend the community, or will reflect unfavorably upon Employer or Station or any of its sponsors, Employer shall have the right to terminate this Agreement and Employee's employment hereunder for cause. The foregoing shall not limit Employer's right to terminate for any other cause.

### 17. FORCE MAJEURE. If the regular broadcast operations of Station are suspended because of an act of God, inevitable accident, fire, lockout, strike or other labor dispute, riot or other civil commotion, act of public enemy, enactment, rule, order or act of any government or governmental instrumentality (federal, state or local), failure of broadcast facilities, failure or delay of transportation facilities, or other cause of a similar or different nature not reasonably within Station's control, and if any such suspension period shall exceed ten (10) consecutive weeks, Employer may, by written notice, terminate this Agreement with no further liability hereunder. During the continuation of such suspension of the Station's regular broadcast operations, Employer shall not be required to pay any sums to Employee. No such suspension shall operate to extend the Term.

### 18. ADVERTISING AND PUBLICITY.

(a) Employer has the right to use and license others to use Employee's name, professional name, nickname, recorded voice, approved biographical material, approved portraits, approved pictures and approved likenesses for purposes of trade, advertising, promotion and publicity in connection with the institutions, services and products of Employer and its sponsors; provided, however, that no direct endorsement by Employee of any product or service shall be used without Employee's consent.

(b) Employee shall not use or authorize the use of Employee's name, nickname, recorded voice, biographical material, portrait, picture or likeness to advertise, promote, or publicize in any manner, any institution, product, or service for any person or entity other than Employer or its affiliated entities without obtaining the prior express written consent of Employer.

(c) Employee shall not authorize or release any advertising or promotional matter or any other publicity in any form with reference to Employee's services hereunder or the Programs of Employer without Employer's prior express written approval.

### 19. PROPERTY RIGHTS.

9

Confidential

(a) For every Program and announcement for which Employee renders services hereunder, the titles and content thereof, and every format, idea, theme, script, characteristic, element and incident thereof, with respect to all results and proceeds of any and all of Employee's services hereunder, and for all materials created or developed by Employee pursuant to this Agreement (whether by Employee acting alone or in conjunction with other persons), Employer, its successors and assigns are the sole and exclusive owner, that all rights, title, interest and property therein and thereto are vested in Employer for all uses and purposes throughout the world and that Employee shall claim no right, title, interest, powers, privilege, control or property of any kind whatsoever therein or thereto. Employee represents and warrants that all ideas, creations, literary, musical and artistic materials and intellectual properties furnished by Employee hereunder will be Employee's own original creation except for materials in the public domain or materials that Employee is fully licensed to use, and that all materials furnished by Employee and the use thereof by Employer, Station or its designees will not infringe upon or violate any rights of any kind whatsoever of any individual or entity. At no time, during the Term or thereafter, will Employee, directly or indirectly, render any service on or in connection with any radio program (as defined in Paragraph 19(b) herein) that is identified by any name or title confusingly similar to the name or title of a program on or in connection with which Employee has rendered services for Employer or Station. Notwithstanding the foregoing, Employer shall have no control over the use by Employee of Employee's own real or professional names or nicknames after termination or expiration of this Agreement. All titles, forms and methods of expression, and material, work and ideas conceived, created or executed by Employee in connection with Employee's services hereunder shall be subject to the foregoing provisions of this paragraph. Employee shall execute such further and additional instruments as Employer may reasonably require to effectuate the purpose of this paragraph and to vest in Employer all such property rights.

(b) In the exercise of the rights granted to Employer hereunder, Employer or its designees may, at their election, at any time and from time to time, exploit and turn to account any and all rights granted to Employer hereunder, and the Programs and recordings thereof produced pursuant hereto, in any manner and by any means, whether now known or hereafter devised, including, but not limited to, by way of radio broadcasting, including transmission over Station's licensed analog or digital facilities, as well as transmission or distribution of the Programs by means whether now known or hereafter devised, including but not limited to Internet streaming, podcasting, webcast, satellite, text messaging or otherwise. For the purpose of this Agreement, the terms "recording" and "recordings" as used herein shall mean and include any recording or recordings made (whether before, during or after a broadcast transmission) by tape, wire, film, disc or any other similar or dissimilar methods of recording audio portions of Programs, whether now known or hereafter developed. All recordings of all Programs and all rights therein, as between Employee, on the one hand, and Employer on the other, shall be the sole and absolute property of Employer for any and all purposes whatsoever. Notwithstanding the foregoing, it is understood the Employer will only use these Programs and recordings after the Term for occasional archival and historical purposes only.

(c) Without in any way limiting Employer's rights as expressed elsewhere herein, it is expressly understood that the Programs may be broadcast and rebroadcast over Station or other radio stations, whether or not licensed directly or indirectly to Employer or its affiliated entities, as Employer shall from time to time elect and on a sustaining and/or commercially sponsored basis by any method now or hereafter known by such sponsor or sponsors as Employer may select or authorize in Employer's sole discretion and/or on any other financial basis, whether now known or hereafter developed. Notwithstanding the foregoing, should the Employer wish to simulcast or syndicate the Programs, then Employer and Employee will enter into good faith negotiations for additional compensation.

(d) The rights granted to Employer by this Agreement include the broadest possible right to cut, edit, change, add to or subtract from the materials created hereunder and the Programs that include Employee's services, and to combine one Program with another or with other Programs, and Employee hereby waives all so-called Author's Rights.

## 20. INDEMNIFICATION.

(a) By Employee. Employee shall indemnify and hold Employer, its parent corporation and affiliated entities, any stations or systems over which the Programs are broadcast and/or distributed, their shareholders, officers, directors,

10

SWIFT_0000012

agents, employees, sponsors, successors and assigns harmless from and against any and all claims, debts, demands, obligations, costs and expenses, including without limitation reasonable counsel fees, liabilities assumed by Employer in connection with Employee's services and attorney's fees and disbursements) arising out of (i) the making or enforcement by Employer of any right, privilege or option hereby granted to it, (ii) any performance or utterance (ad lib or otherwise) by Employee that is broadcast on Station or made while Employee is performing services for Employer, (iii) any unauthorized act done by Employee under this Agreement, (iv) the use of any material furnished by Employee hereunder, (v) any act or omission of Employee prior to the date of this Agreement and the breach by Employee of any representations, warranties or provisions of this Agreement. Employer shall have the right to assume the defense of and control the disposition of any such claim or litigation, whether by compromise, settlement or other resolution, and Employee shall fully cooperate with requests of Employer to such end. Employer or Station's approval of any material furnished by Employee shall not constitute a waiver of Employee's indemnity with respect thereto. Employee shall notify Employer promptly of any litigation or claim to which any indemnity hereunder may apply. The expiration or termination of this Agreement shall not affect the continuing obligations of Employee as indemnitor.

(b) By Station. Station shall indemnify and hold harmless Employee from and against any and all claims, debts, demands, obligations, costs and expenses, including without limitation reasonable counsel fees, arising out of the use of any materials or services furnished by Employer in connection with the production, rehearsal or broadcast of any of the Programs. Employee shall promptly notify Employer of any claim or litigation to which the indemnity set forth in this sentence applies. At Employer's option, Employer may assume the defense of any such claim or litigation, to which the indemnity set forth in this section applies, and Employee shall fully cooperate with requests of Employer to such end, in which event Employer's obligations with respect thereto shall be limited to the payment of any judgment or settlement approved by Employer in connection therewith.

21.     RIGHTS TO INSURE.  Employer shall have the right to secure in its own name, or otherwise, at its own expense, life, health, accident or other insurance covering Employee and Employee shall have no right, title or interest in or to such insurance. Employee shall reasonably assist Employer in procuring insurance by submitting to a medical examination (with Employee's own physician present, if Employee so elects) and by signing such application and other instruments as may be required by the insurance carriers to which the application is made for any such insurance.

22. GENERAL.

(a)  "Sponsor(s)" as used herein shall mean any and all advertisers whose commercial material is to be or is incorporated in any one or more Programs or announcements, live or recorded, broadcast over the facilities of Station and shall include any advertising agencies acting on behalf of such advertisers.

(b)  You represent and warrant that you have the full right and power to enter into and perform this Agreement in accordance with its terms and that you are under no obligation whatsoever that will or might prevent you from fully performing your obligations under this Agreement. Without limiting the foregoing, you represent and warrant that your services are not presently contracted to any other person or firm, and your services shall not be so contracted during the Term except as permitted in Paragraph 10.

(c)  This Agreement contains the sole understanding between the parties with respect to its subject matter and shall be construed according to the laws of the State of North Carolina. The validity, interpretation and legal effect of this Agreement and all matters and issues collateral thereto shall be governed by the laws of the State of North Carolina applicable to contracts entered into and performed entirely within the State of North Carolina, with respect to the determination of any claim, dispute or disagreement, which may arise out to the interpretation, performance or breach of this Agreement, and will be subject to enforcement and interpretation solely in the appropriate courts within the State of North Carolina. This Agreement supersedes any and all previous agreements and understandings between us, oral or written, with respect to this subject matter (including without limitation Employee's existing employment agreement, if any) and cannot be changed or modified except in writing.

11

Confidential

(d) This Agreement shall be binding upon and inure to the benefit of the parties, their legal representatives, successors and, subject to the provisions of this Agreement relating to assignments, their assigns.

(e) This Agreement shall become binding when executed by Employee and the Employer and/or Station signatories noted on the signature page of this Agreement, and until then shall have no force and effect.

(f) If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect.

(g) Employee acknowledges that the terms of this Agreement have been fully explained to Employee and that Employee understands the nature and extent of Employee's rights and obligations under this Agreement and has been given the opportunity to have this Agreement reviewed by counsel of Employee's choice.

(h) Each party to this Agreement shall bear its respective costs and expenses and shall pay all expenses (including legal fees) incurred by it in negotiating, closing and carrying out the transactions contemplated by this Agreement.

(i) All remedies provided in this Agreement shall be deemed cumulative and the exercise of one shall not preclude the exercise of any other remedy for the same event or any other event; nor shall the specification of remedies herein exclude any rights or remedies at law or in equity. The delay or failure of Employer to assert or exercise any right, remedy or privilege hereunder, with actual or constructive notice or knowledge of the breach of any representation, warranty or provision herein, shall not constitute a waiver of any such right, remedy, privilege or breach. No waiver by Employer shall in any event be effective unless such waiver is in writing, and then it shall be applicable only in the specific instance for which such waiver is given.

(j) Employer shall have the right to assign this Agreement to any person or entity who succeeds to ownership of Station or to any future licensee of Station. Employee may not assign this Agreement or any of Employee's rights hereunder under any circumstances.

(k) The titles of the paragraphs of this Agreement are for convenience only, and shall not in any way affect the interpretation of any paragraph of this Agreement or of the Agreement itself.

(l) All notices, consents and approvals required hereunder shall be in writing and shall be given by personal delivery, recognized overnight courier service or certified or registered mail (i) to Employer, addressed to Station's General Manager at the Station's address first set forth above, or (ii) to Employee, at Employee's address as it appears in the records of Employer, with a courtesy copy to Eric Weiss, The Weiss Agency, 16724 Via Pacifica, Pacific Palisades, CA 90272. Either party may change its address for purposes of this paragraph by written notice to the other party in accordance with the provisions of this paragraph. Notice by mail in accordance with the provisions of this paragraph shall be deemed to have been given at the time of dispatch.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

LINCOLN FINANCIAL MEDIA COMPANY OF COLORADO,
d/b/a Station KYGO

12

Confidential

By:                   _____
                                Bob Call, Senior Vice President and General Manager

EMPLOYEE:    _____
                    David J. Mueller

13

Confidential

SWIFT_0000015

(JPEG image, 1702 × 2193 pixels) - Scaled (31%)          https://mail-attachment.googleusercontent.com/attachment/?ui=2&ik–a...

(h) Each party to this Agreement shall bear its respective costs and expenses and shall pay all expenses (including legal fees) incurred by it in negotiating, closing and carrying out the transactions contemplated by this Agreement.

(i) All remedies provided in this Agreement shall be deemed cumulative and the exercise of one shall not preclude the exercise of any other remedy for the same event or any other event; nor shall the specification of remedies herein exclude any rights or remedies at law or in equity. The delay or failure of Employer to assert or exercise any right, remedy or privilege hereunder, with actual or constructive notice or knowledge of the breach of any representation, warranty or provision herein, shall not constitute a waiver of any such right, remedy, privilege or breach. No waiver by Employer shall in any event be effective unless such waiver is in writing, and then it shall be applicable only in the specific instance for which such waiver is given.

(j) Employer shall have the right to assign this Agreement to any person or entity who succeeds to ownership of Station or to any future licensee of Station. Employee may not assign this Agreement or any of Employee's rights hereunder under any circumstances.

(k) The titles of the paragraphs of this Agreement are for convenience only, and shall not in any way affect the interpretation of any paragraph of this Agreement or of the Agreement itself.

(l) All notices, consents and approvals required hereunder shall be in writing and shall be given by personal delivery, recognized overnight courier service or certified or registered mail (i) to Employer, addressed to Station's General Manager at the Station's address first set forth above, or (ii) to Employee, at Employee's address as it appears in the records of Employer, with a courtesy copy to Eric Weiss, The Weiss Agency, 16724 Via Pacifica, Pacific Palisades, CA 90272. Either party may change its address for purpose of this paragraph by written notice to the other party in accordance with the provisions of this paragraph. Notice by mail in accordance with the provisions of this paragraph shall be deemed to have been given at the time of dispatch.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

LINCOLN FINANCIAL MEDIA COMPANY OF COLORADO, d/b/a Station KYGO

By: _____
Bob Call, Senior Vice President and General Manager

EMPLOYEE: _____  1/4/2012
David J. Mueller

1/4/2013 3:14 PM

Confidential

SWIFT_0000016

SECTION 317 OF THE COMMUNICATIONS ACT OF 1934, as amended

Announcement With Respect to Certain Matter Broadcast

    (a)    (1) All matter broadcast by any radio* station for which any money, service or other valuable consideration is directly or indirectly paid, or promised to or charged or accepted by, the station so broadcasting, from any person, shall, at the time the same is so broadcast, be announced as paid for or furnished, as the case may be, by such person: provided, that "service or other valuable consideration" shall not include any service or property furnished without charge or at a nominal charge for use on, or in connection with, a broadcast unless it is so furnished in consideration for an identification in a broadcast of any person, product, service, trademark or brand name beyond an identification which is reasonably related to the use of such service or property on the broadcast.

    (2) Nothing in this section shall preclude the Commission from requiring that an appropriate announcement shall be made at the time of the broadcast in the case of any political program or any program involving the discussion of any controversial issue for which any films, records, transcriptions, talent, scripts, or other material or service of any kind have been furnished, without charge or at a nominal charge, directly or indirectly, as an inducement to the broadcast of such program.

    (b)    In any case where a report has been made to a radio station, as required by Section 507 of this Act, of circumstances which would have required an announcement under this section had the consideration been received by such radio station, an appropriate announcement shall be made by such radio station.

    (c)    The licensee of each radio station shall exercise reasonable diligence to obtain from its employees, and from other persons with whom it deals directly in connection with any program or program matter for broadcast, information to enable such licensee to make the announcement required by this section.

    (d)    The Commission may waive the requirement of an announcement as provided in this section in any case or class of cases with respect to which it determines that the public interest, convenience, or necessity does not require the broadcasting of such announcement.

    (e)    The Commission shall prescribe appropriate rules and regulations to carry out the provisions of this section.

*    All references to Radio apply in like manner to Television.

14

Confidential

SECTION 507 OF THE COMMUNICATIONS ACT OF 1934, as amended

Disclosure of Certain Payments

(a)    Subject to subsection (d), any employee of a radio* station who accepts or agrees to accept from any person (other than such station), or any person (other than such station) who pays or agrees to pay such employee, any money, service, or other valuable consideration for the broadcast of any matter over such station shall, in advance of such broadcast, disclose the fact of such acceptance or agreement to such station.

(b)    Subject to subsection (d), any person who, in connection with the production or preparation of any program or program matter which is intended for broadcasting over any radio station, accepts or agrees to accept, or pays or agrees to pay, any money, service or other valuable consideration for the inclusion of any matter as a part of such program or program matter, shall, in advance of such broadcast, disclose the fact of such acceptance or payment or agreement to the payee's employer, or to the person for whom such program or program matter is being produced, or to the licensee of such station over which such program is broadcast.

(c)    Subject to subsection (d), any person who supplies to any other person any program or program matter which is intended for broadcasting over any radio station shall, in advance of such broadcast, disclose to such other person any information of which Employee has knowledge, or which has been disclosed to him as to any money, service or other valuable consideration which any person has paid or accepted, or has agreed to pay or accept, for the inclusion of any matter as a part of such program or program matter.

(d)    The provisions of this section requiring the disclosure of information shall not apply in any case where, because of a waiver made by the Commission under Section 317(d), an announcement is not required to be made under Section 317.

(e)    The inclusion in the program of the announcement required by Section 317 shall constitute the disclosure required by this section.

(f)    The term "service or other valuable consideration" as used in this section shall not include any service or property furnished without charge or at a nominal charge for use on, or in connection with, a broadcast, or for use on a program which is intended for broadcasting over any radio station, unless it is so furnished in consideration for an identification in such broadcast or in such program of any person, product, service, trademark, or brand name beyond an identification which is reasonably related to the use of such service or property in such broadcast or such program.

(g)    Any person who violates any provision of this section shall, for each such violation, be fined not more than $10,000 or imprisoned not more than one year, or both.
*    All references to Radio apply in like manner to Television.

15

Confidential

SWIFT_0000018