## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1:15-cv-01974-WJM-KLM

DAVID MUELLER
                      Plaintiff,
v.

TAYLOR SWIFT; FRANK BELL; and
ANDREA SWIFT a/k/a ANDREA FINLAY
                      Defendants.

### REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

Defendants Andrea Swift, Frank Bell, and Taylor Swift and Counterclaimant Taylor Swift (collectively, "Defendants"), respectfully submit their Reply in Support of their Motion for Sanctions, specifically an adverse inference instruction at trial, for Plaintiff / Counterclaim Defendant David Mueller's ("Plaintiff" or "Mueller") spoliation of evidence.

Plaintiff has spoliated no less than five devices, three of which it is undisputed contained a complete recording of what would have been key evidence in this case. It is also undisputed that some of this destruction came well after Plaintiff retained counsel and after he initiated this litigation. Most notably, after secretly recording his June 3, 2013 meeting with his superiors at KYGO about the precise incident at issue, Mueller cherry-picked excerpts of that meeting, sent the excerpts to his lawyer, and then spoliated every device containing the full recording. The egregiousness of these acts warrants the imposition of an adverse inference instruction at trial.

### I.    PLAINTIFF CONCEDES HE ENGAGED IN SANCTIONABLE SPOLIATION

When a litigant engages in spoliation, the court's imposition of a sanction is proper where: (1) the spoliated evidence is relevant to an issue at trial; (2) a party had a duty to preserve the evidence, and (3) the non-spoliating party was prejudiced by the destruction of the evidence.

*E.E.O.C. v. Dillon Cos.*, 839 F. Supp. 2d 1141, 1144 (D. Colo. 2011); *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009). When the spoliation is done intentionally or in bad faith, an adverse inference instruction is warranted. *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008).

In his Opposition, Plaintiff does not contest (or even address) that the full audio recording is relevant, that he had a duty to preserve it, or that Defendants are prejudiced by its destruction. *See generally* Dkt. 153. Plaintiff has thus conceded all of the requirements for sanctioning spoliation. *See, e.g.*, *Alfonso v. SSC Pueblo Belmont Operating Co*., No. 11-cv-1186, 2012 WL 2863128, at *6 (D. Colo. July 11, 2012); *Misner v. Potter*, No. 2:07-cv-330, 2008 WL 410128, at *3 (D. Utah Feb. 12, 2008) ("Plaintif[f] concedes this point by his failure to address it in his opposition brief.").

As to bad faith, Plaintiff does not address a single case cited by Defendants or refute any of the facts surrounding his destruction of the full recording.[1] *See generally* Dkt. 153. Plaintiff's only rebuff to Defendants' showing of bad faith is an entirely self-serving, unsupported assertion that while his spoliation may have been negligent, it was not done in bad faith. *Id.* at 2. Plaintiff does not cite a single case in support of this assertion and has no legal basis for it.[2] *CFTC v. Gramalegui*, No. 15-cv-2313, 2017 WL 2570022, at *4 (D. Colo. June 14, 2017) ("A defendant must do more than merely assert some inability to comply with discovery and must introduce

---

[1]    The only exception being an irrelevant statement, with no supporting evidence, that Mueller transferred the full recording from his Cell Phone prior to discarding it. Dkt. 153 at 3. Yet, Mueller still did not produce that allegedly transferred recording and provides no justification for not doing so.

[2]    Plaintiff's reference to the Court's Summary Judgment ruling is equally unavailing. Dkt. 153 at 1-2. The Summary Judgment Order was based "on the record presently before the Court." Dkt. 137 at 10. In their Motion for Sanctions, Defendants refined and enhanced their arguments and presentation of evidence of bad faith. *See* Dkt. 139. Plaintiff's reliance on the Court's Summary Judgment statement, made under a different standard and on different record, is simply inapplicable at this stage.

evidence in support of that claim."). Thus, Defendants' legal and factual bad faith analysis warranting an adverse inference instruction is also essentially unchallenged.

There is no dispute that there were at least three devices, of at least five spoliated devices, owned by Mueller that contained the surreptitiously recorded file of KYGO's two-hour investigatory interview. And there is no dispute that every single copy of the full recording has been lost or destroyed, some after counsel was retained and after litigation commenced.[3] Dkt. 139 at 7-9. Neither Mueller nor his counsel ensured the protection of this critical evidence. Even now, Plaintiff has not advised of any steps he has taken to locate the full recording, despite it likely being retrievable on multiple devices. *See* Dkt. 139-13. Nor has Plaintiff's counsel, in spite of this Court's inquiry, provided any explanation for his failure to ensure preservation of the entire recording after receiving excerpts from Mueller. *See* Dkt. 137 at 10-11 n.5. Plaintiff failed at every turn to preserve this critical evidence, and his counsel similarly failed to ensure compliance with Plaintiff's discovery responsibilities. To adequately address these failures, the Court should sanction Plaintiff with an adverse inference instruction at trial.

## II.    AN ADVERSE INFERENCE INSTRUCTION IS THE APPROPRIATE SANCTION

Sanctions for spoliation serve three distinct remedial purposes: punishment, accuracy, and compensation. *McCargo v. Tex. Roadhouse, Inc.*, No. 09-cv-2889, 2011 WL 1638992, at *10 (D. Colo. May 2, 2011) (citation omitted). The two most important factors in determining spoliation sanctions are "(1) the degree of culpability of the party who lost or destroyed the evidence; and (2) the degree of actual prejudice to the other party." *Patten v. Target Corp.*, No. 08-cv-1043, 2009 WL 1279331, *3 (D. Colo. May 6, 2009). "Culpability is the degree of fault

---

[3]    Mueller's spoliation of other devices leaves Defendants left to wonder what other helpful information they were deprived of accessing.

3

to be assigned to the offending party." *Browder v. City of Albuquerque*, 209 F. Supp. 3d 1236, 1245 (D.N.M. 2016). Prejudice exists when the spoliated evidence goes to a critical issue. *See Genova v. Banner Health,* No.11-cv-01139, 2012 WL 2340122, at *3 (D. Colo. June 7, 2012).

In its June 27, 2017 Order, the Court instructed Defendants to include their position on any sanctions short of an adverse inference. *See* Dkt. 159. Prior to and in response to that Order, Defendants explored a number of other possible sanctions, including but not limited to (1) "allowing the aggrieved party to question a witness in front of the jury about the missing evidence"; (2) ordering the culpable party to produce related documents regardless of any claims of privilege; (3) excluding evidence; (4) awarding attorney fees; or (5) imposing costs for creating a substitute for spoliated data. *See, e.g.*, *Browder*, 209 F. Supp. 3d at 1244; *Henning*, 530 F.3d at 1220 n.6; *Baker v. Comm. Health Sys., Inc.*, No. 05-cv-279, 2012 WL 12294413, at *18 (D.N.M. Aug. 31, 2012). After careful consideration, Defendants maintain that these potential alternative sanctions are insufficient because they do not adequately address (1) the severity of Plaintiff's culpable conduct, (2) the extreme prejudice to Defendants, or (3) the remedial purposes of spoliation sanctioning.

First, many of the alternative sanctions are imposed upon findings of mere negligence, rather than bad faith, often in circumstances of an inadequate litigation hold or human error. *See e.g.*, *Browder*, 209 F. Supp. 3d at 1245; *Baker*, 2012 WL 12294413, at *12, 18. But Plaintiff's culpability was not merely negligent; he engaged in bad faith by intentionally destroying or otherwise losing at least three devices containing arguably the most important piece of evidence in this case; all after selecting and editing the recording portions he wanted preserved. *See* Dkt. 139 at 3-5. Second, there is nothing to suggest that Plaintiff is withholding evidence that could in any way replace the full audio recording. Third, the exclusion of evidence is not suitable because

4

while the produced portions of the recording constitute a small fraction of the whole, those excerpts are evidence that Defendants may affirmatively use in their case, and, in any event, the jury should be made aware that Plaintiff destroyed the full recording. Fourth, imposing fees or costs does nothing to remedy the prejudice to Defendants from Plaintiff's destruction.

Finally, allowing Defendants to question Plaintiff in front of the jury about the missing evidence—while certainly something Defendants should be entitled to do—would, again, not be an adequate sanction here. In *Browder*, a case that instituted this proposed sanction, the spoliating party's conduct was found to be "human error or negligence" when an employee pulled the wrong dates of videotaped footage and the original tapes were destroyed through a routine destruction policy. *See* 209 F. Supp. 3d at 1240-45. The human error and failure to timely institute a litigation hold ending the routine destruction in *Browder* involved significantly less culpable behavior and was less prejudicial than Plaintiff's conduct here. *See id.* at 1246-47.

In stark contrast, Plaintiff's culpability and the prejudice to Defendants are severe. As explained in Defendants' Motion, Mueller spoliated important evidence in bad faith by intentionally editing portions of the full audio recording to send to his attorney, affirmatively discarding Laptop 2 containing the full recording, failing to make any identifiable effort to find his External Hard Drive that contained the full recording, and throwing the Cell Phone on which he made the full recording in the trash. *See* Dkt. 139 at 12-14; Dkt. 153 at 3. Not only did Plaintiff destroy or lose at least three devices containing the full audio recording, he did so well after he engaged counsel, and in the case of his Cell Phone, six months *after* he filed suit. Dkt. 139 at 8-9. Moreover, the prejudice to Defendants as a result of Mueller's spoliation is indisputably extreme. The recording goes not only to *a* critical issue in this case, but rather *the* critical issue: what precisely happened at Ms. Swift's pre-concert meet and greet on June 2,

2013. It also informs the critical issue of the adequacy of KYGO's independent investigation. *See* Dkt. 137 at 23-24; Dkt. 139 at 10 (highlighting Mueller's use of the recording's incomplete nature as a shield whenever his recollection of his meeting with KYGO superiors was challenged). Even the limited excerpts of the recording Plaintiff produced provide support for Defendants' position that Plaintiff has repeatedly changed his story as to what happened on June 2, 2013. It is therefore extremely likely that the entire audio recording would be even more helpful to Defendants and detrimental to Plaintiff.[4]

The facts here are on par with other cases in the Tenth Circuit imposing an adverse inference instruction, and it is the appropriate sanction to impose. *See, e.g.*, *Dillon Cos.*, 839 F. Supp. 2d at 1145; *Vitamins Online*, 2016 WL 3747582, at *1, 4-5; *McCargo*, 2011 WL 1638992, at *5-11. Any lesser sanction would incentivize litigants to disregard their discovery duties and allow them and their counsel to claim ignorance, or, as here, give no explanation, for their shortfall without any meaningful repercussions. To faithfully serve the purposes of spoliation sanctioning, and to adequately address Plaintiff's highly culpable and prejudicial conduct, an adverse inference instruction is the appropriate sanction here.

WHEREFORE, for these reasons and those stated in Defendants' Motion, Defendants respectfully request the Court grant their Motion and give an adverse inference instruction at trial.

---

[4]    Finally, Defendants must address Plaintiff's misguided attempt to impute any spoliation of evidence on Defendants. Plaintiff's statements in this vein are both inaccurate and completely unsupported in the record. *See* Dkt. 153 at 3-4. In response to Plaintiff's requests for production, Defendants produced a copy of all photographs from the meet and greet at issue. To be clear, at no time have Defendants, or any of their counsel, ever stated that pictures taken before Plaintiff and his girlfriend entered the meet and greet were not produced. In any event, Plaintiff's supposition that the "before" photographs (which, again, have been produced) could "[p]otentially" have "absolved" him is as undeveloped and unsupported as the rest of his Opposition and should be disregarded. *See* Dkt. 153 at 4.

6

June 30, 2017                                  Respectfully Submitted,

                                              _/s/ J. Douglas Baldridge_
                                              J. Douglas Baldridge
                                              Danielle R. Foley
                                              Katherine M. Wright
                                              Venable LLP
                                              600 Massachusetts Ave., NW
                                              Washington, D.C. 20001
                                              Telephone: (202) 344-4000
                                              FAX: (202) 344-8300
                                              E-mail: jdbaldridge@venable.com
                                              E-mail: drfoley@venable.com
                                              E-mail: kmwright@venable.com

                                              *Attorneys for Defendants Frank Bell,
                                              Andrea Swift, and Taylor Swift, and
                                              Counterclaimant Taylor Swift*

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on June 30, 2017 a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system and served on all counsel of record.

/s/ *J. Douglas Baldridge*
J. Douglas Baldridge