**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 15-cv-1974-WJM-KLM

DAVID MUELLER,

      Plaintiff,

v.

TAYLOR SWIFT,

      Defendant and CounterClaimant,

      and

FRANK BELL, and
ANDREA SWIFT a/k/a Andrea Finlay,

      Defendants.

---

**ORDER ON DEFENDANTS' MOTION FOR SANCTIONS**

---

In this tort action pending under the Court's diversity jurisdiction, 28 U.S.C.

§ 1332, Plaintiff pursues claims against all Defendants for tortious interference with his

employment contract and with related business expectancies, while Defendant-

CounterClaimant Taylor Swift ("Swift") pursues counterclaims for the torts of assault

and battery.  Now before the Court is Plaintiff's Motion for Sanctions for Plaintiff's

Spoliation of Evidence.  (ECF No. 139 (Defendants' "Motion").)  As explained below,

Defendants' Motion is granted in part, to impose a spoliation sanction that is less harsh

than the adverse inference requested by Defendants, but which the Court finds is the

most appropriate sanction in the circumstances of this case.

## I.  BACKGROUND AND FINDINGS OF FACT

The Court set forth the factual background and allegations in this case in detail in its Order Granting Summary Judgment in Part.  (ECF No. 137 ("summary judgment order")), which is incorporated by reference herein, while repeating only the relevant background in summary fashion.  Plaintiff does not dispute any of the additional evidence presented by Defendants in support of their present Motion.  (*See* ECF Nos. 139-1 through 139-13; ECF No. 153.)  Therefore, the additional background set out below is both undisputed and supported by evidence in the record.

Plaintiff worked as an on-air radio personality for a Denver area radio station, KYGO.  On June 2, 2013, he attended a backstage "meet and greet" preceding a concert performed by Swift at Denver's Pepsi Center.  As detailed in the summary judgment order, Swift alleges that during a staged photo opportunity at the "meet and greet," Plaintiff purposefully and inappropriately touched her buttocks beneath her dress.  Plaintiff denies having done so.  (*See* ECF No. 137 at 2–3.)

Plaintiff's employer, the company that owned KYGO,[1] was informed of Swift's accusation on the evening of June 2, 2013 and on the following day.  On June 3, 2013, Plaintiff met with his superiors at KYGO, including Robert Call ("Call") and Hershel Coomer (a/k/a "Eddie Haskell") ("Haskell").  Unbeknownst to Call and Haskell at the time, Plaintiff made an audio recording of their conversation.  (*See* ECF No. 139-4 at 5.)[2]  The following day, June 4, 2013, Plaintiff was terminated from his employment at

---

[1] For simplicity, the Court refers to Plaintiff's employer simply as "KYGO."

[2] All citations to docketed materials are to the page number in the CM/ECF header, which often differs from the documents' internal pagination, as in deposition transcripts.

KYGO by Call.  Call explained that one reason for Plaintiff's termination was because Call perceived Plaintiff had "changed his story that it couldn't have occurred, then that it was incidental."  (ECF No. 108-8 at 20.)

At some point thereafter, well after having first contacted an attorney regarding potential legal action, Plaintiff edited the audio recording of the June 3, 2013 conversation, and then sent only "clips" of the entire audio file to his attorney.  (*See* ECF No. 139-4.)  In his deposition testimony, Plaintiff offered the following explanation for these actions: "[t]he audio I recorded was close to two hours long.  And the audio that I could provide to [Plaintiff's counsel] was a portion of the entire audio" (*id.*), and "it was so long, that I edited down clips from the recording to provide to [Plaintiff's counsel] to give an idea of what kind of questioning I went . . . through" (*id.* at 12).

According to his testimony, Plaintiff edited the audio file on his laptop computer, on which he also retained a full copy of the original audio file(s).  (*See id.* at 11–12.)  However, sometime thereafter, coffee was spilled on the keyboard of Plaintiff's laptop, damaging it.  (*Id.* at 14.)  Plaintiff took the laptop to the Apple Store, and was given "a new machine."  (*Id.* at 14.)  He did not keep the original hard drive or recover the files from it.  Evidently this occurred sometime in 2015.  (*Id.* at 18.)  In addition, although Plaintiff kept an external hard drive "to store audio files and documents" (*id*. at 15), and the complete audio recording was saved on this drive (*id.* at 16), at some point it "stopped working."  (*Id.* at 31.)  At his deposition, Plaintiff testified that he "may have kept" this hard drive (*Id.* at 16–17), but that because it was "useless" he "[didn't] know if

I discarded it because it was junk" (*id.* at 16).  It has not been produced.[3]

The end result of all this is that the complete audio recording of the June 3, 2013 conversation among Plaintiff, Call, and Haskell has never been produced.  So far as the record reveals, Plaintiff is the only person who has ever heard it.  Defendants and their lawyers have never heard it, and neither has Plaintiff's own lawyer.  (*See* ECF No. 153 at 3, n. 1.)  As a result, Defendants move for a Court-imposed sanction for spoliation of evidence, and in particular for the Court to give the jury an adverse inference instruction at trial, to direct the jury "that the entirety of the June 3, 2013 audio recording would have been unfavorable to Plaintiff."  (ECF No. 139 at 15.)

## II.  LEGAL STANDARD

"A spoliation sanction is proper where: '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.'"  *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015) (quoting *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir.2009)).  In deciding whether to sanction a party for the spoliation of evidence, courts have considered a variety of factors, but two "generally

---

[3] In addition, the record reflects that Plaintiff also had an iPad which was "shattered" and replaced in approximately 2015.  (ECF No. 139-4 at 23–24).  He also had a cell phone which he used beginning in approximately 2010 or 2011, and which may have been the device he used to record the June 3, 2013 conversation.  (*Id.* at 25–26; see also ECF No. 139-10 at 6.)  But, in approximately November 2015—after this lawsuit was filed and pending—Plaintiff "threw it in the trash."  (ECF No. 139-4 at 25.)  However, the record does not establish whether either of these devices contained relevant and discoverable evidence at the time they were destroyed.  Defendants also point to Plaintiff's prior laptop, which was "fried" and replaced after water spilled on it.  (ECF No. 139 at 5; ECF No. 139-4 at 19–21.)  But this occurred before the incidents giving rise to this lawsuit.  While the somewhat serial nature of Plaintiff's loss of electronic devices contributes to the conclusion that Plaintiff was needlessly careless in protecting the devices that contained relevant evidence against known and obvious risks, Defendants' argument that he spoliated "five devices" is overstated.

carry the most weight: (1) the degree of culpability of the party who lost or destroyed the evidence; and (2) the degree of actual prejudice to the other party." *Browder v. City of Albuquerque*, 209 F. Supp. 3d 1236, 1244 (2016).

"As a general rule, the 'bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction.'" *E.E.O.C. v. Dillon Companies, Inc.*, 839 F. Supp. 2d 1141, 1144 (D. Colo. 2011) (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir.1997)).  However, the Tenth Circuit has also characterized an adverse inference as a harsh sanction.  *Jones,* 809 F.3d at 580.  Accordingly, an adverse inference instruction may only be given if the Court makes a finding that the party who lost or destroyed evidence did so in bad faith.  *Turner*, 563 F.3d at 1149.  "Mere negligence in losing or destroying records," does not support giving an adverse inference instruction, "because it does not support an inference of consciousness of a weak case."  *Aramburu*, 112 F.3d at 1407.

However, the negligent loss or destruction of evidence may still warrant imposition of lesser sanctions, "so long as the party seeking sanctions can show it suffered prejudice and the other side was on notice that the evidence should be preserved."  *Browder*, 209 F. Supp. at 1244; *103 Inv'rs I, L.P. v. Square D Co.*, 470 F.3d 985, 988 (10th Cir. 2006).

The nature of the appropriate sanction in any case "is a question peculiarly committed to the district court."  *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 268 (8th Cir. 1993).  The Tenth Circuit has noted that the district courts "have 'substantial weaponry'

in their arsenal to shape the appropriate relief for spoliation." *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1225 (10th Cir. 2017) (quoting *Turner*, 563 F.3d at 1149). Thus, spoliation sanctions may include, for example, "an award of attorney fees; an order that the culpable party produce related documents regardless of any claims of privilege or immunity; excluding evidence or striking part of a party's proof; allowing the aggrieved party to question a witness in front of the jury about the missing evidence; and imposing costs for creating a substitute for spoliated data." *Browder*, 209 F. Supp. 3d at 1244 (citations omitted). "Sanctions for spoliation serve three distinct remedial purposes: punishment, accuracy, and compensation," and may also be "designed to promote accurate fact finding by the court or jury." *U.S. ex rel. Koch v. Koch Indus., Inc.*, 197 F.R.D. 488, 490 (N.D. Okla. 1999). "A court should select the least onerous sanction necessary to serve these remedial purposes." *Id.*

## III. ANALYSIS

### A. A Spoliation Sanction is Warranted

The Court concludes that Plaintiff's loss or destruction of the complete recording of the June 3, 2013 conversation constitutes sanctionable spoliation of evidence.

#### 1. Duty to Preserve

Initially, Plaintiff does not dispute that he knew or should have known that litigation was imminent and that he was therefore under a duty to preserve relevant evidence, including the complete audio recording, at the time when he first altered it for his own purposes and then lost or destroyed the unedited file. (*See* ECF No. 153.) *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("The

obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." (internal quotation marks omitted)).

The Court finds that Plaintiff knew or should have known that litigation was imminent. He had consulted with a criminal attorney immediately following the events of June 2, 2013, before being terminated by KYGO. (ECF No. 139-4 at 33.) He then consulted with a civil attorney about the allegations in this case, on or very shortly after June 4, 2013, and in contemplation of suing KYGO. (*Id.* at 47.) Indeed, it is quite likely that the reason Plaintiff secretively recorded his conversation with Call and Haskell was because he knew that some form of adversarial legal action was likely to follow.

Moreover, Plaintiff later edited the audio file in order to send "clips" to his own attorney, when it was abundantly clear that litigation was imminent, because Plaintiff himself was actively considering it. *See Turner*, 563 F.3d at 1149 (duty to preserve evidence arises when party "knew, or should have known, that litigation was imminent"); *see also Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010) ("A plaintiff's duty is more often triggered before litigation commences, in large part because plaintiffs control the timing of litigation.") *abrogated in part on other grounds*, 685 F.3d 135 (2d Cir. 2012). Plaintiff does not contest the fact that he was under a duty to preserve the recording at the time when it was lost. (*See* ECF No. 153.)

2.    Relevance

The Court also readily concludes that the recording of the June 3, 2013

conversation was relevant to numerous disputed facts and issues in this case.  For

instance, to prevail on his tortious interference claims, Plaintiff must prove that

Defendants' communication with KYGO was improper, and that Defendants' conduct

caused KYGO to terminate him.  (*See generally* ECF No. 137 at 13, 18-23, 28.)  The

statements made by Plaintiff and by Messrs. Call and Haskell the day following the

incident with Swift and the day before KYGO fired him would plainly be relevant to

proving or disproving those facts.  Moreover, the record reflects that one of the reasons

Mr. Call decided to terminate Plaintiff was because he perceived that Plaintiff had

"changed his story" during the course his communications with KYGO.  (ECF No. 108-8

at 20.)  A recording of this conversation could be invaluable to a jury that will be asked

to decide, in part, whether they agree with Mr. Call's assessment that Plaintiff has been

inconsistent in his descriptions of the events of June 2, 2013.

In short, the Court holds to its prior characterization of the lost recording as

"contemporaneously-created evidence regarding the central disputed events in this

case."  (ECF No. 137 at 10–11 n.5.)  Since the Court finds the likely relevance of this

evidence to be obvious, and since Plaintiff makes no attempt to argue otherwise (*see*

ECF No. 153), the Court will not belabor the point by listing all of the issues in dispute

as to which the recording might have been probative, if it had been preserved.

3.    Prejudice

The Court similarly finds that Defendants were prejudiced by the loss of

evidence.  At the very least, if the complete recording had been available, it might have

saved time and expense in litigation by documenting the June 3, 2013 conversation,

allowing for better preparation for depositions and ultimately for trial.  Moreover, to the

extent there may now be discrepancies in the accounts that Plaintiff and Messrs. Call and Haskill give regarding their June 3, 2013 conversation, the recording would probably have resolved them. The absence of the recording limits Defendants' ability to explore whether Plaintiff has or has not "changed his story," and Defendants are largely unable to cross-examine Plaintiff regarding any "cherry picking" of only the favorable "clips" of the conversation. For all these reasons, Plaintiff's spoliation of evidence was prejudicial to Defendants. Once again, the Court finds this conclusion to be quite clear, and so does not attempt to explain every aspect of the prejudice. Again, Plaintiff makes no argument to the contrary. (ECF No. 153.)

4.    Culpability

Finally, the Court finds that the degree of culpability warrants a sanction. Although the Court declines to make a finding that Plaintiff acted in "bad faith" in the sense that he *intended* to destroy the evidence, it also cannot characterize the loss or destruction of evidence in this case as innocent, or as "*mere* negligence." *See Aramburu*, 112 F.3d at 1407. Rather, the spoliation falls higher up on the "continuum of fault." *Browder*, 209 F. Supp. at 1244. Evidence of obvious relevance that Plaintiff himself created and knew was in his sole custody was lost for entirely foreseeable and preventable reasons. Plaintiff had numerous opportunities to take easy steps to prevent this ultimate loss of evidence, but failed to do so. *Cf. McCargo v. Texas Roadhouse, Inc.*, 2011 WL 1638992, at *9 (D. Colo. May 2, 2011) ("even if Defendant's intent was not evil, Defendant certainly had notice of the duty to preserve, a responsibility to do so, and understood the consequences of the failure to do so").

Plaintiff knew full well that litigation was imminent, since he was pursuing it.  He knew that he was the only person in possession of the complete audio recording.  He made the decision— inexplicably, in the Court's view—to *alter* the original evidence and to present his lawyer with only "clips" hand-picked from the underlying evidence.  This reflects that he obviously intended to make use of portions of the recording to advance his own claims.[4]  Plaintiff nevertheless failed to take any number of rather obvious steps to assure that this evidence was not lost.  While the spill of liquid on his laptop may not have been Plaintiff's fault, it was an entirely foreseeable risk.  Indeed, the same thing had happened to Plaintiff's previous laptop not long before.  *See supra*, note 1.  Plaintiff could and should have made sure that *some* means of backing up the files relevant to litigation was in place, but this was not done.

Moreover, when Plaintiff surrendered his laptop for repair or replacement, he knew that it contained relevant evidence.  Depending on whether this occurred before or after the loss of his external hard drive (the record is unclear), the laptop contained either the only remaining copy of the complete audio file or one of only two, as Plaintiff also knew or should have known.  Despite this, the record does not reflect that he made any effort to retain the hard drive, to have it returned to him after he surrendered the damaged laptop, or to otherwise recover the lost file(s).  The same was true when his external hard drive stopped working.  Rather than saving it, seeking to have it repaired,

---

[4] Plaintiff's explanation for why he provided his attorney only "clips" of the recording makes little sense.  The original recording was, according to Plaintiff, "close to two hours long." Attorneys routinely spend a far longer time reviewing evidence and investigating a case in its early stages.  Moreover, the parties—and the Court—have now spent far, far more time and money addressing this issue than it would have taken for Plaintiff's counsel to listen to—and then preserve—the complete file in the first place.

or taking steps to preserve the files stored on it, Plaintiff evidently just set the drive aside, and eventually lost it.[5]

It is also troubling that Plaintiff later "threw out" his cell phone, months *after* this litigation was filed.  The record does not establish whether or not the phone contained relevant evidence (*see supra*, note 1), but it was a device Plaintiff had used during the time relevant to his claims, and it *may* have been the device he originally used to record the June 3, 2013 conversation.  The record also does not establish whether Plaintiff took any steps to confirm that the phone contained no relevant evidence, or whether he discussed with his attorney whether he should throw it away.

On the whole, the present record leaves the Court with the view that Plaintiff was unjustifiably careless in his handling of evidence that he had a clear duty to preserve, particularly evidence that he himself had taken the trouble to create.  Plaintiff may seek almost $3 million for his claims in this case.  (*See* ECF No. 135-2 at 2.)  He has testified that "my life was ruined" as a result of Swift's accusations.  (ECF No. 135-5 at 5.)  Given these claims, it is very hard to understand how he spent so little time and effort to preserve the very evidence which—one might think—could have helped him to prove his claims, and why he evidently responded with nonchalance when that evidence was lost.

## B.    Appropriate Sanction

---

[5] Defendants retained an expert in data forensics, Jason T. Briody, who submitted a report opining "there is a high likelihood that all of the data stored on each of these devices was [*sic*] still fully recoverable." (ECF No. 139-13 at 5–6.)  While this may be true, the relevant point for present purposes is that there is no indication that Plaintiff even attempted to preserve the relevant evidence that he knew was on his laptop and his external hard drive.

Despite the discussion of Plaintiff's culpability above, the Court rejects Defendants' request to make a finding of bad faith and to give the jury an adverse inference instruction.  Having considered various options, and after directing Defendants to brief the issue of alternative sanctions, the Court finds that the following sanction is appropriate: *Notwithstanding any limitations under Federal Rule of Evidence 611(b), Defendants will be permitted to cross-examine Plaintiff in front of the jury regarding the record of his spoliation of evidence, as described above*.[6]

The Court concludes this is the most appropriate sanction for several reasons. *First*, while Plaintiff is culpable, the Court does not find that the nature of that culpability warrants an adverse inference instruction.  Although a threshold finding of bad faith is a prerequisite for an adverse inference, the Court does not view bad faith as a binary or "yes/no" issue.  "The destruction of potentially relevant evidence obviously occurs along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality."  *Browder*, 209 F. Supp. 3d at 1245 (alterations incorporated; internal quotation marks omitted).  As set forth above, the Court takes a dim view of Plaintiff's acts of spoliation, which Defendants characterize–-not entirely unfairly—as defendant "cherry picking what he wanted" from the recording, then "conveniently destroy[ing] the multiple copies." (*See, e.g.*, ECF No. 139 at 2, 7, 14.)[7]  However, the record does not establish—at least not clearly—that Plaintiff was acting with an *intent* to deprive

---

[6] The Court will not allow any attorney to discuss the contents of this Order and the Court's imposition of sanctions in front of the jury.

[7] The Court takes an even more dim view of Plaintiff's counsel's unexplained failure to obtain, listen to, preserve, and produce the complete audio file, but that is a separate issue from whether Plaintiff should be sanctioned.

Defendants of relevant evidence.  Absent a more clear showing that Plaintiff's conduct reflected his own "consciousness of a weak case," an adverse inference instruction is not appropriate.  *See Aramburu,* 112 F.3d at 1407; *see also* Fed. R. Civ. P. 37(e)(2) (as to electronically stored information, adverse inference jury instruction is permissible "only upon [a] finding that the party acted with the intent to deprive another party of the information's use in litigation").[8]

*Second*, the Court finds that the other available evidence somewhat mitigates the prejudice to Defendants.  Although the recording is not available, all three participants in the conversation (Plaintiff and Messrs. Call and Haskell) are anticipated to testify at trial.  (ECF No. 126 at 8, 12.)[9]  In addition, the record includes Mr. Call's notes created at or shortly after the time of the June 3, 2013 conversation.  (ECF No. 108-7.)  The availability of testimony and other evidence reporting on what transpired during the June 3, 2013 conversation somewhat mitigates the prejudice arising from the fact that the audio recording of that conversation is no longer available.

---

[8] The evidence here was not the type of large-volume "electronically stored" information which motivated the 2015 adoption of the present Rule 37(e)(2)(e).  *See* Fed. R. Civ. P. 37, Advisory Committee Notes to 2015 Amendment.  Still, one might expect the rule to apply on its face to an audio file that was digitally recorded and electronically stored.  Neither party has made any argument based on this Rule, although it is cited in Defendants' Motion.  Nor have the parties addressed whether the requirement to show the opposing party "acted with the intent to deprive" differs from a showing of "bad faith" under the older case law.  These questions would not alter the Court's determination of the appropriate remedy here, and so they are not further addressed, but Rule 37(e)(2)(e) gives further support to the Court's conclusion that an adverse inference instruction should not be imposed.

[9] To effectuate its sanction, the Court will, in its discretion, take a relaxed approach to the application of hearsay rules to the extent they might limit the testimony of Messrs. Call and Haskell about the June 3, 2013 conversation.  *See Koch*, 197 F.R.D. at 490 ("A court may also choose to address spoliation by remedying any evidentiary imbalance caused by the spoliator's destruction of relevant evidence.").  Of course, it is likely that such testimony would not be inadmissible hearsay anyhow.  *See* Fed. R. Evid. 801(d)(2).

*Third*, an adverse inference instruction is a harsh sanction, *Jones* 809 F.3d at 580, and the Court finds it would be unduly harsh in the circumstances of this case.  As the Court emphasized in its summary judgment order, this case turns on resolution of the parties' irreconcilable versions of the events of June 2, 2013, and on the jury's determinations of Plaintiff's and Swift's respective credibility.  If the Court were to affirmatively instruct the jury that it may draw an adverse inference against Plaintiff, that would put too heavy of a thumb on the scale against Plaintiff's credibility and claims, and would unduly intrude on the jury's role in making credibility determinations.  *Cf. Anderson v. Liberty Lobby*, 477 U.S. 242, 255 ("Credibility determinations . . . are jury functions, not those of a judge.")   In these circumstances, an adverse inference instruction could veer too close to directing a verdict, and would be too harsh a sanction.  *See Koch Indus.*, 197 F.R.D. at 490 ("A court should select the least onerous sanction necessary to serve [its] remedial purposes.").

*Fourth,* allowing Defendants to cross examine Plaintiff about his spoliation of evidence has the benefit of allowing the jury to make its own assessment of Plaintiff's degree of culpability and of the actual prejudice to Defendants.  The Court has little doubt that if the jury concludes Plaintiff acted with bad faith or an intention to destroy or conceal evidence, they will draw their own adverse inferences, whether the Court instructs it or not.  In this case where Plaintiff's credibility is critical to his claims, allowing cross-examination regarding his spoliation of evidence, including the fact that he personally chose and edited the "clips" now available to the jury is therefore quite a heavy sanction.  On the other hand, if the jury is persuaded that Plaintiff's actions were indeed innocent, then the impact of the Court's sanction will be far less harsh.

Likewise, the jury may draw its own conclusions about the degree of actual prejudice to Defendants.  If the other evidence regarding the June 3, 2013 conversation presents a consistent picture of what was said, then the jury will likely find that hearing the recording would have changed little and that Defendants therefore suffered little prejudice.  But, if the accounts of that conversation reveal material inconsistencies, then the jury's desire to hear the recording for themselves will be much greater, and their view of Plaintiff's spoliation will, no doubt, be correspondingly more harsh.  In this way, the remedial effects of the Court's sanction will be proportionally scaled to the degree of Plaintiff's culpability and the degree of resulting prejudice.  *See Koch*, 197 F.R.D. at 490 (consideration of the "degree of culpability" and the "degree of actual prejudice" should "carry the most weight").  However, the remedial and punitive impact of the Court's sanction will follow from the jury's own findings and credibility determinations, rather than from findings by the Court on the basis of only the written record.

For all these reasons, the Court concludes in the exercise of its discretion that among all the many possible sanctions it might impose, the one set forth above is properly suited to the circumstances of this case, is no more onerous than is necessary to serve its purposes, and best serves the interests of justice.

### IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion for Sanctions for Plaintiff's Spoliation of Evidence (ECF No. 139) is GRANTED IN PART and DENIED IN PART as described above.

Dated this 19th day of July, 2017.

BY THE COURT:

_____

William J. Martínez
United States District Judge