**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-1974-WJM-KLM

DAVID MUELLER,

    Plaintiff and CounterDefendant,

v.

TAYLOR SWIFT,

    Defendant and CounterClaimant,

    and

FRANK BELL, and
ANDREA SWIFT a/k/a Andrea Finlay,

    Defendants.

---

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO EXCLUDE THE
EXPERT REPORT, OPINIONS, AND TESTIMONY OF JEFFREY B. OPP**

---

In this tort action pending under the Court's diversity jurisdiction, 28 U.S.C. § 1332, Plaintiff pursues claims against all Defendants for tortious interference with his employment contract and with related business opportunities, while Defendant-CounterClaimant Taylor Swift ("Swift") pursues counterclaims for the torts of assault and battery. Now before the Court is Defendants' Motion to Exclude the Expert Report, Opinions, and Testimony of Jeffrey B. Opp. (ECF No. 135 (Defendant's "Motion").) For the reasons explained below, Defendants' Motion is granted in part and denied in part.

### I. BACKGROUND

The Court has previously set forth the factual background and allegations in this

case in some detail, including in its Order Granting Summary Judgment in Part. (*See* ECF No. 137.) Familiarity with that factual background is presumed. In summary, Plaintiff worked as an on-air radio personality for a Denver area radio station, KYGO. On June 2, 2013, he attended a backstage "meet and greet" preceding a concert performed at Denver's Pepsi Center by Swift. Swift alleges that during a staged photo opportunity at that event, Plaintiff purposefully and inappropriately touched her buttocks. Plaintiff denies having done so. (*See* ECF No. 137 at 2–3.) After KYGO was informed of Swift's accusation, Plaintiff was terminated, and this lawsuit followed.

In the course of litigation, Plaintiff disclosed Mr. Jeffrey B. Opp to testify as an expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2) and Federal Rule of Evidence 702. Mr. Opp is anticipated to offer expert economic testimony regarding the value of Plaintiff's claimed damages. (*See generally* ECF No. 135-2 (Mr. Opp's "Report").) In particular, and as further detailed below, Mr. Opp calculated lost historical and future earnings allegedly resulting from Plaintiff's termination from KYGO. (*Id.*)

## II. LEGAL STANDARD

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004). Admission of expert testimony is governed by Rule 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the

principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

While an expert witness's testimony must assist the jury to be deemed admissible, Fed. R. Evid. 702(a), it may not usurp the jury's fact-finding function. *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). The line between what is helpful to the jury and what intrudes on the jury's role as the finder of fact is not always clear, but it is well-settled that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704.

Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993)).

In addition to analysis under Rule 702, an expert's proposed testimony must be relevant and otherwise admissible. *See Adamscheck v. Am. Family Mut. Ins. Co.*, 818 F.3d 576, 588 n.7 (10th Cir. 2016). To be relevant, expert testimony must "logically advance[ ] a material aspect of the case" and be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635

F.3d 472, 476 (10th Cir. 2011) (brackets in original). Furthermore, "[e]xpert testimony . . . is subject to exclusion if it fails the Fed. R. Evid. 403 balancing test" *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994).

### III.  ANALYSIS

Defendants raise numerous objections to the admissibility of Mr. Opp's proposed testimony under Rule 702, which the Court will address in turn.

**A.     Opinions Allegedly Beyond Mr. Opp's Qualifications**

1.     <u>Opinions Arguably Requiring Radio Industry Expertise</u>

As set out in his Report, Mr. Opp began his analysis with the assumption that "barring the claims made against him and his termination, [Plaintiff] could have expected to earn amounts consistent with his KYGO contract for the balance of his planned work-life expectancy." (ECF No. 135-2 at 3, ¶ 2.) He states the amounts Plaintiff earned at KYGO were "clearly indicative of his quantified value as an On-Air Talent." (*Id.*) Defendants argue this statement reflects an opinion by Mr. Opp going beyond his qualifications, because he is not a vocational expert and has no expertise or experience in the radio industry. (*See* ECF No. 135 at 5–6.)

Mr. Opp acknowledges that he "do[es] not have the vocational expertise to determine whether or not Mr. Mueller would, in fact, be employable . . . into the future." (ECF No. 135-4 at 5–7.) However, the Court does not read Mr. Opp's Report as disclosing any independent expert opinion as to Plaintiff's future employability, the propriety of the salary he was paid at KYGO, or more broadly the amount(s) that he "could expect to have earned," under his KYGO contract or beyond its terms. Mr. Opp

simply used Plaintiff's KYGO contract salary as one of the underlying assumptions for his analysis of lost earnings. (*See* ECF No. 135-2 at 3 ("I have *assumed* that [Plaintiff] . . . . could have expected to earn amounts consistent with his KYGO contract" (emphasis added)); *accord* ECF No. 135-4 at 7 (explaining treatment of Plaintiff's future employability or "work-life expectancy" was an assumption).) Reliance on this assumptions does not render Mr. Opp's testimony inadmissible. Defendants cite no authorities holding to the contrary – that an economist's calculation of lost earnings cannot rely on the plaintiff's most recent salary or can only be predicated on independent vocational expert testimony. Criticisms of Mr. Opp for relying exclusively on Plaintiff's KYGO salary may certainly be brought out on cross-examination and by competing evidence, including by Defendants' anticipated competing expert testimony. *See* Fed. R. Evid. 702, advisory committee's note ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")

Accordingly Defendants' Motion is GRANTED to the limited extent that Mr. Opp may not offer opinions stating his own view of Plaintiff's KYGO salary, or of his "quantified value" in the radio industry, nor regarding Plaintiff's employability. (*See* ECF No. 135-2 at 3.) But, Defendants' Motion is otherwise DENIED on this point, including to the extent Defendants' Motion seeks to preclude Mr. Opp's lost earnings analysis for having relied upon Plaintiff's KYGO salary, or for failure to obtain and rely on independent opinions from a vocational expert. *Accord Ryskin v. Joy*, 2010 WL 4873667, at *1 (D. Colo. Nov. 23, 2010) (permitting Mr. Opp to offer opinions regarding past and future wage loss, while prohibiting him from "render[ing] opinions concerning

Plaintiff's employability, either due to his qualifications or due to the effect of the separation from [his former employer].")[1]

### 2. Causation Opinions

Defendants next argue that Mr. Opp offers an impermissible legal conclusion, specifically that Defendants' conduct was the cause of Plaintiff's subsequent lack of employment. (*See* ECF No. 135 at 6–7.) Mr. Opp's Report recites that "[d]espite an extensive job search effort, [Plaintiff] has been unable to find a comparable position to the one he enjoyed a[t] KYGO *due to* the issues surrounding the claims made against him," and that he he "has been unable to find any On-Air Talent positions in radio *due to* the issues surrounding the claims made against him." (ECF No. 135-2 at 3 (emphasis added).) Since Mr. Opp has neither personal knowledge nor expert qualifications that permit him to opine as to the sufficiency of Plaintiff's job search, nor as to *why* Plaintiff has been unable to find a similar position since his termination, he may not offer causation opinion testimony on these points. *See* Fed. R. Evid. 701 & 702.

Accordingly, Defendants' Motion is GRANTED to the extent that Mr. Opp is precluded from offering opinions regarding the *cause* of Plaintiff's inability to find work since his termination at KYGO. *See Ryskin*, 2010 WL 4873667, at *1. This includes exclusion of any opinion that Plaintiff has been unable to find a subsequent position

---

[1] Defendants' citation to cases recognizing the importance of a vocational expert's testimony in Social Security benefits appeals is inapposite. (*See* ECF No. 135 at 5 (citing *Perotin v. Colvin*, 110 F. Supp. 3d 1048, 1055 (D. Colo. 2015).) Social Security appeals are an area of law unto themselves, in which vocational experts play a specific and unique role, wholly distinct from the context here.

"*due to*" either Defendants' conduct or the "claims made against" Plaintiff. (*See* ECF No. 135-2 at 3, ¶ 1.) Rather, Mr. Opp is limited to summarizing his understanding of the historical or narrative facts underlying his calculation of lost earnings, such as by describing that Plaintiff has not found another position *since* or *subsequent* to his termination from KYGO, but not *because of* or *as a result of* that termination, or the circumstances surrounding it.[2]

### B.  Allegedly Unreliable Bases For Opinions

#### 1.  Plaintiff's "Work-Life Expectancy" Beyond KYGO Contract Terms

Mr. Opp's Report explains that, in his calculations, Plaintiff's "work-life expectancy as of June 14, 2016 [the date of Mr. Opp's Report] [was] assumed to be between approximately 6.54 and 11.54 years." (ECF No. 135-2 at 5.) This assumption was "based upon [Plaintiff's] desire at the time he signed his KYGO contract to have this be his last job in radio before retiring or moving on to some other pursuit." (ECF No. 135-2 at 5.)

The central argument in Defendants' Motion is that Mr. Opp's testimony should be excluded as a whole because this assumption is based solely on Plaintiff's own testimony. (*See* ECF No. 135 at 8–11.) Defendants further argue that Plaintiff's stated

---

[2] Further supporting exclusion of any opinion by Mr. Opp regarding the extent of Plaintiff's efforts to obtain another position, Mr. Opp acknowledges that his knowledge of Plaintiff's job search is limited to "[o]nly what he told me." (ECF No. 135-4 at 16.) Defendants point to evidence that tends to contest Mr. Opp's characterization that Plaintiff has engaged in "an extensive job search." (*See id.* at 17; ECF No. 135 at 6, n. 2.) Plaintiff does not respond or establish that Mr. Opp had a reliable basis for this opinion. (*See* ECF No. 145 at 8–9.) Plaintiff therefore has not carried his burden of showing that Mr. Opp is qualified to opine as to the extensiveness of Plaintiff's job search or has an adequate basis for doing so. *See Nacchio*, 555 F.3d at 1241.

hope or expectation of working at KYGO for longer than the term of his 2-year employment contract is merely speculative, and that other record evidence tends to show it was unlikely Plaintiff would have remained at KYGO as long as he had hoped. (*Id.* at 9–10; ECF No. 135- at 5; ECF No. 135-6.)

The Court finds that Defendants arguments go to the weight of Mr. Opp's opinions, rather than to their admissibility. Mr. Opp's reliance on Plaintiff's testimony on this point is analogous to his reliance on Plaintiff's KYGO salary as to Plaintiff' expected pay. Much as the contract salary is a permissible basis from which Mr. Opp could predict Plaintiff's anticipated annual income, Plaintiff's stated intention to work at KYGO for up to 15 years is a permissible point of departure for Mr. Opp's decision to calculate future lost earnings for that period. Analysis of lost future earnings is inherently subject to uncertainty, including the possibility that an employee might not continue his or her employment as long as desired, for a variety of reasons. This uncertainty does not render an expert's testimony inadmissible; nor does it require exclusion of evidence that is less than mathematically precise. *See, e.g.*, *Ryskin v. Banner Health, Inc.*, 2010 WL 4873671, at *1 (D. Colo. Nov. 23, 2010) ("There are uncertainties inherent in any estimation of future damages; however, this fact generally should not prevent a plaintiff from presenting such an estimate—based on competent evidence and reasonable inferences therefrom—and having its estimate evaluated by the trier of fact" (quoting *Denny Constr., Inc. v. City & Cnty. of Denver ex rel. Bd. of Water Comm'rs*, 199 P.3d 742 (Colo.2009))).

On this point, this case is not meaningfully distinct from the many cases in which a terminated or injured worker indicates that he or she had intended to continue working

for a certain period of time (*e.g.*, until retirement), and therefore an estimate of lost future earnings or front pay is calculated on that basis. Defendants are of course free to attack the bases for Mr. Opp's assumption via cross-examination and contradictory evidence, and the evidence may lead the jury to find it unlikely Plaintiff would have continued to work at KYGO for any particular period of time, but this does not render Mr. Opp's opinion inadmissible under Rule 702.

The non-controlling cases cited by Defendants on this point are distinguishable, and do not require exclusion of Mr. Opp's testimony. These cases tend to show that expert opinions may be inadmissible when they are based on assumptions regarding empirical or objective facts that are demonstrably false or entirely unsupported by record evidence.[3] The disputed assumption here is different. The question of how long Plaintiff *might* have continued to work in radio is not empirical or an objective fact which Mr. Opp simply got wrong; rather, it is an assumption regarding a disputed future projection, and is inherently subject to uncertainty. Mr. Opp needed to make *some*

---

[3] *See, e.g.*, *Elcock v. Kmart Corp.*, 233 F.3d 734, 755–56 (3d Cir. 2000) (district court erred by admitting expert testimony based on assumptions wholly unfounded or demonstrably contradicted by the record on such matters as past earnings, the degree to which the plaintiff had been shown to be disabled, and failing to adjust for life expectancy as calculated by the plaintiff's own expert); *MDG Int'l, Inc. v. Australian Gold, Inc.*, 2009 WL 1916728, at *5 (S.D. Ind. June 29, 2009) (rejecting expert testimony that relied on multiple "faulty assumption[s]," regarding, *inter alia*, empirical financial data); *see also Greig v. Botros*, 525 F. App'x 781, 793 (10th Cir. 2013) (holding expert opinions lacked foundation where using only hypothetical annual income figures without a record basis); *Benjamin v. Peter's Farm Condo. Owners Ass'n*, 820 F.2d 640, 641 (3d Cir. 1987) (holding, pre-*Daubert*, that expert's opinion lacked sufficient foundation where based only on the plaintiff's statements of how much he "[felt] he would earn" in future endeavors); *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 887–94 (E.D. Wis. 2010) (excluding expert testimony for both unreliable methodology and unreliable underlying data, including, *inter alia*, relying on "extremely suspect" business estimates of target sales and projected future growth, and numerous other "basic, unwarranted assumptions" showing proffered testimony was inadmissible speculation).

assumption on this point, and using Plaintiff's stated desire regarding how long he hoped or planned to keep working does not render Mr. Opp's opinion inadmissible. To the extent contrary evidence shows Plaintiff's hopes were overly optimistic, this goes to the weight of Mr. Opp's opinion, not its admissibility.

Moreover, Mr. Opp's Report separates his calculations regarding historical lost earnings, covering only the term of Plaintiff's employment contract, from future lost earnings, which are offered separately for each projected future year, and summarized for different time periods. (*See* ECF No. 135-2 at 2, 8.) The form of Mr. Opp's opinion thus makes it easy for the jury to determine—after hearing both sides' evidence—what time period, if any, provides an appropriate basis for an award of future future lost earnings.

Finally, Defendants argue that Mr. Opp's opinion runs counter to cases that have held lost profits cannot be recovered where they extend beyond the fixed term of a contract. Since Plaintiff had only a two-year employment contract, Defendants argue that an award of lost wages beyond that period is not supportable.[4] However, Mr. Opp's calculation treats Plaintiff's "work-life expectancy" as an assumption, but he does not propose to offer his own opinion that Plaintiff's contract actually would have been extended, or that Plaintiff would have continued working in radio for any particular

---

[4] *See* ECF No. 135 at 10–11 (citing *Underground Vaults & Storage v. Cintas Corp.*, 2013 WL 6150764, at *3 (D. Kan. Nov. 22, 2013) (excluding expert's opinion that a 10-year document storage contract "would be extended an additional 8 years," as "pure speculation")) and *JDB Med., Inc. v. The Sorin Grp., S.p.A.*, 2008 WL 10580039, at *8 (D. Colo. June 11, 2008) (holding, in the context of an independent sales contract, that "'[t]he mere hope' for renewal of a contract 'renewable at the discretion of another party will not support recovery of any future' lost profits when the other party can deny renewal at its discretion." (quoting *United Way of San Antonio, Inc. v. Helping Hands*, 949 S.W.2d 707, 712 (Tex. Civ. App. 1997).)

period.  (*See* ECF No. 135-2 at 5.)  This distinguishes Mr. Opp's opinions, for example, from the *Underground Vaults* case on which Defendants rely, where an expert sought to opine that a contract "would be extended."  2013 WL 6150764, at *3.  More broadly, as the Court observed in denying Defendants' Motion *In Limine*, Defendants' argument and authorities on this point bear on the sufficiency of Plaintiff's evidence to support his claims, not on the admissibility of that evidence in the first instance.  (*See* ECF No. 192.)

For all these reasons, Defendants' Motion is DENIED to the extent it seeks to exclude Mr. Opp's opinion in its entirety for making an unreliable assumption about Plaintiff's "work-life expectancy."

2.  Commission Due to Agent

Defendants next argue that Mr. Opp failed to account for Plaintiff's contractual agreement with his agent.  This agreement provided that for a period of three years (October 19, 2012 through October 18, 2015) and renewable thereafter, Plaintiff agreed to pay his agent "commissions in the amount of ten percent (10%) of [Plaintiff's] gross compensation during each year of engagement in an Entertainment Market."  (ECF No. 135-8 at 2.)  Mr. Opp testified that he was unaware if Plaintiff even had an agent, and acknowledged that "[i]f he had an agent and if his agent was due a portion of his earnings, those would have to be subtracted from [Mr. Opp's calculations]."  (ECF No. 135-4 at 28.)

Plaintiff characterizes this attack, along with others addressed below, as only "minor inconsistencies or errors in calculation that . . . can be easily addressed during cross-examination."  (ECF No. 145 at 1.)  The Court disagrees.  Plaintiff has the burden

of establishing the admissibility of Mr. Opp's testimony under Rule 702. *Nacchio*, 555 F.3d at 1241. Mr. Opp, however, specifically admitted that if Plaintiff had an obligation to pay an agent part of his earnings, that amount should be accounted for in his damages calculations. Despite this admission, Mr. Opp has evidently never supplemented his Report on this point. Moreover, now that Defendants have provided evidence that Plaintiff had such an obligation (at least for certain years), Plaintiff makes no response showing how Mr. Opp's opinions remain reliable on this issue. *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) ("Under Daubert, any step that renders the analysis unreliable renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." (internal quotation marks omitted; alterations incorporated)).

Accordingly, Defendants' Motion is GRANTED to the extent that Mr. Opp is precluded from offering any opinions regarding lost earnings which do not account for Plaintiff's obligation to pay his agent a commission. (*See* ECF No. 135-4 at 28; ECF No. 135-8.)

3. <u>Allegedly Inconsistent Methods</u>

Defendants next argue that Mr. Opp "did not consistently use economic principles," for example, that he used a "'look back approach' to determine his discount rate but used a different approach to determine other variables in his analysis." (ECF No. 135 at 12.) Defendants argue that if Mr. Opp had consistently used a "look back approach" to review Plaintiff's work history before his contract with KYGO, this would have revealed problems in Mr. Opp's underlying assumptions, and presumably led to a lower calculation of Plaintiff's annualized earning capacity. Despite the fact that Plaintiff

fails to address this criticism in any meaningful way, the Court concludes that Mr. Opp's choice of which economic methodology to apply as to different variables in his model goes to the weight of his opinions, not their admissibility.

### 4. Treatment of 401(k) Benefits

Defendants final argument under Rule 702 criticizes Mr. Opp's treatment of the 401(k) plan contributions paid by KYGO as part of Plaintiff's compensation. Mr. Opp's overall calculation of lost earnings incorporates a calculation of "expected annualized employer-paid 401K [sic] contributions" which Mr. Opp opines Plaintiff could have expected to continue receiving if he had not been terminated. (ECF No. 135-2 at 3, ¶ 5.) Mr. Opp's Report notes that Plaintiff's annualized 401(k) contribution amounts are equivalent to 10.59% of his gross earnings. (Id.; see also id. at 8.) Over the full span of 2013–27 for which Mr. Opp calculated potential lost earnings, this totals close to $500,000 in calculated lost earnings for the 401(k) contributions.

Defendants argue that in several respects, this calculation is inflated and would not have been possible under either the terms of KYGO's 401(k) plan, or under IRS contribution limits. (See ECF No. 135 at 12–13.) Notably, Mr. Opp's Report went out of its way to acknowledge that "this rate of employer-paid [401(k)] contributions is significantly higher than what I would have expected," but that "KYGO did in fact contribute at this rate . . . prior to [Plaintiff's] termination, and according to [Plaintiff], KYGO's 401K [sic] plan was exceedingly generous." (Id. at 4, n.1.) However, Mr. Opp testified that despite his statement that "KYGO did in fact contribute" at this rate, Mr. Opp did not himself confirm what Plaintiff's 401(k) contributions had been under the terms of the 401(k) plan, and had not reviewed the terms of the plan, but only "trusted

what [Plaintiff] read to me over the telephone." (ECF No. 135-4 at 10.)

In support of their Motion, Defendants have submitted a copy of KYGO's 401(k) plan terms, effective September 20, 2012. (ECF No. 135-9.) These terms tend to show that the maximum potential combined contribution would have been 10% of Plaintiff's eligible earnings, notwithstanding Mr. Opp's representation that the actual contributions were greater. (*Compare* ECF No. 135-9 at 10–12 *with* ECF No. 135-2 at 4.) It is conceivable there is some explanation for this discrepency. However, Plaintiff, who bears the burden of showing Mr. Opp's testimony is admissible under Rule 702, has offered no such explanation. While Mr. Opp acknowledged that review of the underlying plan documents might require him to supplement his opinion, this evidently never occurred, and Plaintiff's response merely characterizes this as a "minor inconsistenc[y] or erro[r]." (ECF No. 145 at 11.) Plaintiff has therefore not discharged his burden of showing the reliability and admissibility of Mr. Opp's opinion on this point under Rule 702. Defendants' Motion is therefore GRANTED to preclude Mr. Opp from offering any opinion as to the value of Plaintiff's historical or future lost earnings calculated on the basis of KYGO's anticipated 401(k) contributions.

**C.    Rule 403 Analysis**

Finally, Defendants argue that any portion of Mr. Opp's testimony which is not excluded under Rule 702 should be excluded under Rule 403 as unduly prejudicial and confusing to the jury. (ECF No. 135 at 13–14.) The Court disagrees and rejects this argument. As is clear above, the Court anticipates that Mr. Opp's testimony will be vigorously challenged by Defendants through cross-examination and the introduction of competing evidence. The jury will have ample opportunity to test whether Mr. Opp's

testimony is credible and persuasive, and Defendants do not show how they will be unduly confused or prejudiced by whatever portions of his testimony, if any, they ultimately choose to credit.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Exclude the Expert Report, Opinions, and Testimony of Jeffrey B. Opp (ECF No. 135) is GRANTED in PART and DENIED IN PART, as described herein.  Plaintiff's counsel is DIRECTED to inform Mr. Opp of the rulings set out in this Order, and Mr. Opp's anticipated testimony at trial will be limited accordingly.

Dated this 25th day of July, 2017.

BY THE COURT:

_____
William J. Martínez
United States District Judge