**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 15-cv-1974-WJM-KLM

DAVID MUELLER,

Plaintiff and CounterDefendant,

v.

TAYLOR SWIFT,

Defendant and CounterClaimant,

and

FRANK BELL, and
ANDREA SWIFT a/k/a Andrea Finlay,

Defendants.

---

# AMENDED FINAL PRETRIAL ORDER

---

## 1. DATE AND APPEARANCES

The Final Pretrial Conference was held on December 8, 2016 at 10:00 a.m. in Courtroom A-401, Fourth Floor, Alred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado, before Magistrate Judge Kristen L. Mix. M. Gabriel McFarland (Evans & McFarland, LLC, 910 13th Street, Suite 200, Golden, CO 80401, Telephone: (303) 279-8300, Fax: (303) 277-1620)) appeared on behalf of Plaintiff / Counterclaim Defendant David Mueller. Brian L. Schwalb, Danielle R. Foley, and Katherine M. Wright (Venable LLP, 575 7th Street, Washington, DC 20001, Telephone: (202) 344-4000, Fax: (202) 344-4300)) appeared on behalf of Defendants Frank Bell

and Andrea Swift and Defendant / Counterclaim Plaintiff Taylor Swift.

A Final Trial Preparation Conference was held before presiding Judge William J. Martínez on July 21, 2017 (ECF No. 194), at which modifications to this Final Pretrial Order were discussed and approved consistent with the Parties' Stipulated Amendments to Final Pretrial Order (ECF No. 181).

## 2. JURISDICTION

This Court has subject matter jurisdiction over Mr. Mueller's claims pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446 because the amount in controversy in Mr. Mueller's Amended Complaint exceeds $75,000.00 (exclusive of interest and costs) and the dispute is between citizens of different states. The Court also has subject matter jurisdiction over Ms. Swift's Counterclaim pursuant to 28 U.S.C. §§ 1332 and 1367.

## 3. CLAIMS AND DEFENSES

Plaintiff's Claims:

Mr. Mueller contends that Defendants tortiously interfered with his employment contract and prospective business opportunities by falsely accusing him of improperly touching Taylor Swift, when in fact he did not, and subsequently pressuring his employer, Lincoln Financial, to terminate his employment.

Defendants' Defenses:

On June 2, 2013, during the fan pre-concert meet and greet at Taylor Swift's concert at the Pepsi Center in Denver, Colorado, Plaintiff David Mueller assaulted Ms. Swift by reaching under her dress and grabbing her bottom. Ms. Swift reported the incident to her mother, Andrea Swift, and others on her team, but spoke with no one at

Plaintiff's employer, KYGO.[1] Defendant Frank Bell reported the incident to KYGO. At no time did Mr. Bell, or any other Defendant, ask KYGO to take any specific action.

KYGO investigated the incident and, based on that independent investigation, made the decision to terminate Mueller, and did so on June 4, 2013. No less than seven KYGO personnel participated in the investigation, reviewing the photographic evidence, interviewing Mueller and his then-girlfriend, and discussing the incident with Mr. Bell. KYGO fired Mueller for violating the morality clause of his contract after it independently determined that he had lied about the incident, changed his story, and inappropriately touched Ms. Swift. Mueller never sued KYGO for breach of his employment contract.

Mueller contends he did not inappropriately touch Ms. Swift. The evidence, however, shows he did. The photograph of Ms. Swift and Plaintiff has been described by witnesses as "damning" and other witnesses describe seeing Mueller lift Ms. Swift's skirt and grope her bottom. Ms. Swift is absolutely certain of what Mueller did. Ms. Swift testified, and will testify at trial, that Mueller "put his hand under [her] dress and grabbed [her] bare ass." Ms. Swift is certain that Mueller's act was intentional – it was not an accident. Ms. Swift has "never been so sure of anything in [her] life."

Even though Mueller disputes that he groped Ms. Swift as she described, Mueller has no proper legal basis to sue Ms. Swift or the other Defendants based on KYGO's independent decision to terminate Mueller's contract. For the reasons set forth in Defendants' ~~pending~~ Motion for Summary Judgment, the undisputed facts cannot, and do not, support a claim for intentional interference with contractual relations or tortious

[1] Plaintiff was employed by Lincoln Financial Media Company of Colorado ("Lincoln Financial"), the entity that owned radio station KYGO at the time. Defendants / Counterclaim Plaintiff use the terms "KYGO" and "Lincoln Financial" interchangeably in their submissions.

interference with prospective business relations, or for Mueller's slander claims. Moreover, due to other evidentiary deficiencies on Plaintiff's affirmative claims, the Court does not need to determine whether, or not, Plaintiff did, in fact, grope Ms. Swift. Plaintiff's efforts to challenge Ms. Swift's recollection of the assault as to his tortious interference and slander claims is mere obfuscation. Specifically, Plaintiff's claims fail because he has no evidence that: (1) Ms. Swift had knowledge of Mueller's contract with KYGO; (2) any Defendant had knowledge of any of the speculative prospective business relations Plaintiff now claims he may have had; (3) Defendants acted improperly in reporting Mueller's conduct to KYGO (and in fact, neither Ms. Swift nor Andrea Swift had any contact with KYGO); (4) Defendants were the cause of his termination (especially given that KYGO's independent investigation severed any causal connection); (5) he had any prospective business relations (he had only his "mere hope" that KYGO would exercise its one-year option and that other appearance and endorsement deals would materialize); (6) Defendants acted improperly toward any alleged prospective business relationship; or (7) any alleged prospective business relations were lost because of Defendants' alleged actions.[2]

Furthermore, Plaintiff has failed to mitigate any damages he claims he suffered and he is not entitled to damages he could have reasonably avoided.

Finally, *respondeat superior* is not a stand-alone claim, it must be based on underlying tortious conduct. Because all of the underlying tort claims fail as to Mr. Bell,

[2] The Court has already ruled on Defendants' written Motion for Sanctions, including Defendants' request for an adverse inference instruction. (*See* ECF No. 190.) Additional or renewed requests will not be considered.

~~Given Plaintiff's spoliation of relevant evidence, including the full recordings of his conversation with his superiors at KYGO during the radio station's investigation, an adverse instruction to the jury is warranted. Any motions relating to spoliation of evidence shall be made in writing.~~

so too does the claim for *respondeat superior* against Ms. Swift.

Defendants seek attorneys' fees and costs for all expenditures made in defending this frivolous lawsuit because Plaintiff lacks "substantial justification" for his claims. C.R.S. § 13-17-102.

Defendants also assert the defenses of unclean hands, laches, and estoppel based on Mueller's wrongful, unconscionable, or inequitable conduct in assaulting Ms. Swift and his inequitable delay of filing his claims long after the basis of them were known to him. Defendants' other stated affirmative defenses assert Plaintiff's failure of proof on his claims, and by asserting those defenses, Defendants do not assume the burden of proof on those issues.

Counterclaim Plaintiff Claims:

Counterclaim Plaintiff Taylor Swift brings Counterclaims of assault and battery against Counterclaim Defendant David Mueller. During the fan meet-and-greet on June 2, 2013 described above, Mueller reached under Ms. Swift's skirt and grabbed her bare bottom. Ms. Swift was shocked and distressed by Mueller's harmful and offensive physical contact. After Plaintiff's assault and battery, Ms. Swift did not have "one split second without a fan in front of her" until the last fan left the meet-and-greet area. At that time, Ms. Swift immediately discussed and confirmed the assault and battery with her photographer, her tour manager, and security that Mueller—a man completely unknown to her—had lifted her skirt and groped her. Both the photographer and security personnel at the fan meet-and-greet identified Mueller as the man who inappropriately touched Ms. Swift and there is photographic evidence supporting Ms. Swift's claim.

Moreover, the security guard who saw Plaintiff lift Ms. Swift's skirt was so sure of what he saw that he was able to identify Mueller shortly after the meet and greet near a bar.

Ms. Swift seeks judgment in her favor and compensatory and nominal damages in an amount to be proved at trial and any additional relief the Court deems just and appropriate.

Counterclaim Defendant Defenses:

Mr. Mueller denies that he improperly touched or threatened to improperly touch Taylor Swift in any manner and otherwise denies any liability to Ms. Swift on her assault and battery counterclaims.

## 4. STIPULATIONS[3]

The Parties stipulate to the following undisputed facts and evidence:

1. Plaintiff David Mueller is an individual who is, and at all relevant times was, a citizen of Colorado.

2. Defendants Taylor Swift, Frank Bell, and Andrea Swift are, and at all relevant times were, citizens of Tennessee.

3. Mr. Mueller was employed by Lincoln Financial Medial Group of Colorado ("Lincoln Financial") in January 2013.

4. As of June 2, 2013, KYGO was owned by Lincoln Financial.

5. As of June 2, 2013, Mr. Mueller was working at Denver, Colorado based country-radio station KYGO.

6. Mr. Mueller's employment contract with Lincoln Financial, dated January 4, 2013, was for a term of two years with a base salary of $150,000.00.

[3] For purposes of jury instructions, the Court will use the stipulations included in the parties' stipulated requested jury instructions. (ECF No. 166 at 7–8.)

7. Lincoln Financial had the option, at its sole discretion, to extend Mr. Mueller's contract for one additional year.

8. ~~Eddie Haskell~~Hershel Coomer (p/k/a Eddie Haskell) was the Program Director at KYGO on June 2, 2013 and was Mr. Mueller's immediate supervisor.

9. Robert ("Bob") Call is the Vice-President Market Manager at KYGO and was one of Mr. Mueller's bosses.

10. As of June 2, 2013, Mr. Mueller was known by the professional pseudonym "Jackson."

11. Lincoln Financial terminated Mr. Mueller on June 4, 2013.

12. Ms. Swift was twenty-three years old on June 2, 2013.

13. Mr. Mueller was fifty-one years old on June 2, 2013.

14. On Sunday, June 2, 2013, Ms. Swift held a concert at the Pepsi Center in Denver, Colorado.

15. Mr. Mueller and his co-worker/girlfriend at the time, Shannon Melcher, attended Ms. Swift's fan meet and greet prior to her June 2, 2013 concert at the Pepsi Center.

16. During the fan pre-concert meet and greet, a photograph was taken of Mr. Mueller, Ms. Melcher, and Ms. Swift.

17. On June 3, 2013, Frank Bell, at Bob Call's request, sent KYGO/Lincoln Financial the photograph of Ms. Swift, Mr. Mueller, and Ms. Melcher taken in Ms. Swift's pre-concert meet and greet.

**5. PENDING MOTIONS**

There are no motions currently pending.

## 6. WITNESSES[4]

Nonexpert witnesses to be called by Plaintiff / Counterclaim Defendant:

1. Witnesses who will be present at trial (*see* Fed. R. Civ. P. 26(a)(3)(A))

    a. Frank Bell – Mr. Bell will testify about the facts and circumstances surrounding the June 2, 2013 pre-concert meet and greet; the decision to contact KYGO regarding Mr. Mueller; his communications with KYGO regarding Mr. Mueller; and the purpose of contacting KYGO regarding Mr. Mueller.

    b. David Mueller – Mr. Mueller will testify about the facts and circumstances surrounding the June 2, 2013 pre-concert meet and greet; the fact that he did not inappropriately touch Ms. Swift; his employment with and termination from KYGO; the impact of Defendants' tortious interference and defamation on him; his character; and damages.

    c. Andrea Swift – Andrea Swift will testify about the facts and circumstances surrounding the June 2, 2013 pre-concert fan meet and greet; her interactions with Ms. Swift and members of Ms. Swift's team; the decision to contact KYGO regarding Mr. Mueller; the decision to not contact the police regarding Mr. Mueller; and the purpose of contacting KYGO regarding Mr. Mueller.

    d. Taylor Swift – Ms. Swift will testify about the facts and

[4] The Parties incorporate the Final Witness Lists filed pursuant to WJM Revised Practice Standards Section IV.B.4. Because the witness lists are filed as restricted documents, they are not included in their entirety here.

circumstances surrounding the June 2, 2013 pre-concert fan meet and greet.

2. Witnesses who may be present at trial if the need arises (*see* Fed. R. Civ. P. 26(a)(3)(A)):

a. Robert Call – Mr. Call will testify about his communications with Mr. Bell regarding the June 2, 2013 pre-concert meet and greet; KYGO's subsequent termination of Mr. Mueller; and the decision to terminate Mr. Mueller.

b. Greg Dent – Mr. Dent will testify about the facts and circumstances surrounding the June 2, 2013 pre-concert fan meet and greet; his position as Ms. Swift personal bodyguard; and his duties and responsibilities in that position.

c. ~~Eddie Haskell~~Hershel Coomer (p/k/a Eddie Haskell) – Mr. ~~Haskell~~ Coomer will testify about the facts and circumstances surrounding the June 2, 2013 pre-concert fan meet and greet; KYGO's subsequent termination of Mr. Mueller; and the decision to terminate Mr. Mueller.

d. Ryan Kliesch – Mr. Kliesch will testify about the facts and circumstances surrounding the June 2, 2013 pre-concert fan meet and greet; KYGO's subsequent termination of Mr. Mueller; the decision to terminate Mr. Mueller; and Mr. Mueller's character.

e. Gabby Liddicoat – Ms. Liddicoat will testify about the facts and circumstances surrounding the June 2, 2013 pre-concert fan meet

and greet; her position with Ms. Swift; and her interactions with Defendants.

f. Shannon Melcher – Ms. Melcher will testify about the facts and circumstances surrounding the June 2, 2013 pre-concert fan meet and greet; her relationship with Mr. Mueller; Mr. Mueller's character; and Mr. Mueller's termination from KYGO.

g. Stephanie Simbeck – Ms. Simbeck will testify about the facts and circumstances surrounding the June 2, 2013 pre-concert fan meet and greet; her position with Ms. Swift; and her interactions with Defendants.

h. Erica Worden – Ms. Worden will testify about the facts and circumstances surrounding the June 2, 2013 pre-concert fan meet and greet; her position with Ms. Swift; and her interactions with Defendants.

3. Witnesses where testimony is expected to be presented by means of a deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony (*see* Fed. R. Civ. P. 26(a)(3)(B)):

a. None.

<u>Nonexpert witnesses to be called by Defendants / Counterclaim Plaintiff:</u>

Defendants may offer testimony at trial from the individuals listed below. The inclusion of an individual on this witness list is not an admission by Defendants that all potential parts of the individual's testimony (*e.g.* by deposition) or potential topics known to the individual are relevant or should be admitted into evidence. Defendants

reserve the right to supplement their witness list, if necessary, for rebuttal or impeachment purposes, or to lay the foundation for the admission of evidence.

1. Witnesses who will be present at trial (*see* Fed. R. Civ. P. 26(a)(3)(A)):

   a. Taylor Swift – Ms. Swift will testify about Mueller assaulting her by lifting her skirt and grabbing her bare bottom at her June 2, 2013 pre-concert fan meet and greet, her reaction to Mueller's conduct, and how it affected her. She will also testify that she did not know Mueller prior to June 2, 2013, had no contact with KYGO regarding Mueller's conduct, and that she never directed anyone to have Mueller fired. She will also testify that she had no reason or motive to accuse Mueller of inappropriately touching her.

   b. Andrea Swift – Andrea Swift will testify about Ms. Swift's reaction to Mueller assaulting her. She will also testify about her role in the decision to advise KYGO about the incident. Andrea Swift will also testify that she did not know Mueller prior to June 2, 2013, had no contact with KYGO regarding Mueller's conduct, and that she did not ask KYGO to fire or take any specific action against Mueller.

   c. Frank Bell – Mr. Bell will testify about his communications with KYGO about Mueller assaulting Ms. Swift. Mr. Bell will explain that he did not ask KYGO to fire or take any specific action against Mueller.

   d. Stephanie Simbeck – Ms. Simbeck will testify about the June 2, 2013 pre-concert meet and greet, including taking the photograph of

Ms. Swift and Mueller, her reaction to the photograph, and her interactions with Ms. Swift regarding Plaintiff's inappropriate conduct.

e. Erica Worden – Ms. Worden will testify about the June 2, 2013 pre-concert meet and greet, including her reaction to the photograph and her interactions with Ms. Swift regarding Plaintiff's inappropriate conduct.

f. Greg Dent – Mr. Dent will testify about the June 2, 2013 pre-concert meet and greet, including his observations of Plaintiff's conduct, and how he located Plaintiff in the arena after the meet and greet.

g. Robert Call – Mr. Call will testify about his communications with Mr. Bell, KYGO's investigation of the events of June 2, 2013, and KYGO's decision to terminate Plaintiff.

h. ~~Eddie Haskell~~Hershel Coomer (p/k/a Eddie Haskell) - Mr. ~~Haskell~~Coomer will testify about Plaintiff's work at KYGO and KYGO's investigation of the events of June 2, 2013, including its decision to terminate Plaintiff.

2. Witnesses who may be present at trial if the need arises (*see* Fed. R. Civ. P. 26(a)(3)(A)):

a. John Dimick, Address and phone number forthcoming - Mr. Dimick will testify about Plaintiff's work at KYGO and KYGO's investigation of the events of June 2, 2013, including its decision to terminate Plaintiff.

b. Gabby Liddicoat - Ms. Liddicoat will testify about the June 2, 2013 pre-concert meet and greet, including her observations of Ms. Swift reporting Plaintiff's inappropriate conduct.

3. Witnesses where testimony is expected to be presented by means of a deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony (*see* Fed. R. Civ. P. 26(a)(3)(B)):

a. To the extent any witness listed above is unavailable per Fed. R. Civ. P. 32(a)(4), that witness's deposition will be used.

Expert witnesses to be called by Plaintiff / Counterclaim Defendant:

1. Witnesses who will be present at trial (*see* Fed. R. Civ. P. 26(a)(3)(A)):

a. Jeffery B. Opp **–** Jeffrey B. Opp is an economist. He will testify as to the damages incurred by Mr. Mueller as a result of Defendants' tortious interference and defamation, subject to the limitations imposed pursuant to Federal Rule of Evidence 702 by the Court's prior written Order (ECF No. 195) .

Expert witnesses to be called by Defendants / Counterclaim Plaintiff:

1. Witnesses who will be present at trial (*see* Fed. R. Civ. P. 26(a)(3)(A)):

a. Kevin Call – Mr. Call is a forensic accountant and partner at Betzer Call Lausten & Schwartz, LLP. If necessary, he will rebut the testimony of Plaintiff's damages expert, Jeffrey Opp.

b. Jason Briody – Mr. Briody is the Director of Forensic Services at Atlanta Data Forensics. He will testify, in connection with Defendants' spoliation claim, about the high likelihood that data stored on Plaintiff's

discarded devices was still fully recoverable at the time Mueller disposed of or voluntarily and permanently surrendered each device.

c. Lorraine Bayard de Volo – Ms. Bayard de Volo is Chair and Associate Professor of Women and Gender Studies at the University of Colorado Boulder, with twenty years of research and teaching experience in the field of gender and violence. She will testify about the emotional and psychological traits associated with the perpetrators and victims of sexual assault and sexual harassment, ~~how Mueller's stated perception of his own status is consistent with the circumstances under which sexual aggressors would commit unwanted sexual contact,~~ and how Ms. Swift's reaction to Mueller's improper conduct is consistent with someone who has been sexually assaulted, subject to the limitations stated in the Court's prior written Order pursuant to Federal Rules of Evidence 702 & 403 (ECF No. 193).

2. Witnesses who may be present at trial (*see* Fed. R. Civ. P. 26(a)(3)(A)):

a. None

3. Witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony (*see* Fed. R. Civ. P. 26(a)(3)(B)):

a. None

Address and telephone information has previously been provided for all of Plaintiff's and Defendants' witnesses unless otherwise specified above.

## 7. EXHIBITS

Plaintiff / Counterclaim Defendant:

*See* Exhibit 1.

Defendants / Counterclaim Plaintiff:

*See* Exhibit 2.

Copies of listed exhibits must be provided to opposing counsel at or by the meet and confer required by WJM Revised Practice Standards Section V.F.1. Objections to exhibit lists ~~shall~~ may be filed and served via the Court's CM/ECF system no later than ~~Wednesday, July 26~~Thursday, August 3, 2017 (*see* ECF No. 199). Written objections filed pursuant to Fed. R. Civ. P. 26(a)(3) are not self-executing to receive rulings or exclude any evidence. The Court will not rule on written exhibit objections prior to trial or before such time as any party seeks to admit any disputed exhibit, Counsel remain obligated to raise and renew objections at trial pursuant to Fed. R. Evid. 103(a).

The Parties stipulate and agree to exchange copies of summary and demonstrative exhibits, including expert demonstrative exhibits, no less than 5 days before trial. Summary and demonstrative exhibits need not be listed separately on the Exhibit List.

## 8. DISCOVERY

Discovery has been completed.

## 9. SPECIAL ISSUES

**1)** The Court has considered and addressed all "Special Issues" and related matters previously raised by the parties.

**2)** This case is set for a nine-day jury trial to commence on Monday, August 7,

2017.

**3)** Trial proceedings will go forward under the terms of the Court's previously-entered Trial Decorum Order. (ECF No. 191.) Pursuant to the terms of that Order, the Court may modify or amend procedures as required to conduct an orderly and safe trial and to facilitate fair adjudication and appropriate access to the Court for those involved in this trial and all those with other cases and business before the Court.

**4)** Jury selection will proceed on Monday, August 7, 2017, as discussed with counsel for all parties at the Final Trial Preparation Conference.

~~The Court may wish to consider the following issues prior to trial:~~

~~1. Confidentiality concerns regarding evidence and potential measures to ensure a fair trial:~~

~~Recent events have raised serious concerns regarding public disclosures about the evidence and facts of this case and the potential impact on the jury pool and jury selection. Both the Court and the Parties have previously recognized that the media attention to this case is substantial and far-reaching, and that, as a result of that media attention, there is a significant risk of tainting or limiting the jury pool. Recognizing these issues, on October 21 the Court ordered that a photograph relating to the events at issue in this case would be sealed because "widespread media dissemination of this image might significantly complicate jury selection." (Dkt. 115 at 3)~~

~~Despite the Court's October 21 Order sealing a photograph in this case, the photograph was leaked to and published on "celebrity gossip" site, TMZ, on November 12, 2016. Defendants assert that, to be clear, the Defendants (and no one on their~~

behalf) disclosed the photograph or had any reason to do so. Three days later, remarks attributed to Plaintiff's counsel commenting on the photograph and how it supposedly helps Plaintiff's claims, were published on TMZ as well.[5] Then, on November 29, 2016, Plaintiff appeared for an extensive radio interview with a disk-jockey friend of sixteen years, which interview was broadcasted, posted to the Internet, and picked up by many news sources. Plaintiff asserts that, to be clear, however, he (and no one on his behalf), disclosed the photograph or had any reason to do so.

Defendants believe the decision of Plaintiff and, apparently, his counsel, to go public with their one-sided, self-serving version of events violates the intent behind the prior ruling of this Court, which was designed to avoid trying the case in the media and compromising the jury pool. It also contravenes the express representations the Plaintiff and his counsel had previously made to the Court in the parties' October 14 joint motion. (*See* Dkt. 111). The Court should address Plaintiff's public statements and impose any appropriate Order governing extrajudicial statements going forward, such as making it clear that all of the Parties and their counsel are strictly prohibited from making any public statement, disclosure or comment on this matter prior to and pending trial. Plaintiff states that he does not really care one way or the other whether a gag order is implemented; he simply wants a level playing field.

2. Jury selection: potential use of a jury questionnaire, length and nature of voir dire given pre-trial publicity, and jury pool size.

3. Security issues and concerns before and during trial.

4. Whether any special arrangements are necessary or appropriate to

[5] *See* http://m.tmz.com/#article/2016/11/15/taylor-swift-david-mueller-butt-grab-photo/.

~~effectively manage courtroom access / media attention.~~

~~5. If Defendants' Motion for Summary Judgment is not granted, Defendants request a trial date in the first quarter of 2017. Therefore, timing for motions in limine, motion for an adverse inference based on Plaintiff's spoliation of relevant evidence and a Daubert motion regarding Plaintiff's designated damages expert should be discussed.~~

~~6. As noted below, the Parties estimate needing 7-10 days for trial. Because the Parties foresee more than 5 days for this civil trial, the Parties request the Court schedule a telephonic status hearing contemplated in Section V.D of Judge Martinez's Practice Standards prior to the Pretrial Conference so that the Parties are able to set the trial date at the Pretrial Conference. Parties shall file a motion to make the above request.~~

**10. SETTLEMENT**

a. The details of settlement discussions are explained in the Parties' August 19, 2016 Joint Status Report. [*See* Dkts. 97, 107]. That Status Report is currently under seal as a restricted document and the Parties therefore do not further disclose specific settlement discussion details here.

b. The participants in the settlement conference, included counsel and party representatives.

c. The parties were promptly informed of all settlement conversations.

d. Counsel for the parties have no current plans to hold future settlement conferences, but are open to continuing settlement discussions.

e. It appears from the discussion by all counsel that there is little possibility of

settlement.

f. Counsel for the parties considered ADR in accordance with D.C.COLO.LCivR.16.6.

g. At the Final Trial Preparation Conference on July 21, 2017, counsel for all parties represented that the prospects of settlement are low. In reliance on that representation, the Court expects to proceed to trial commencing August 7, 2017, as set forth in this Order.

## 11. OFFER OF JUDGMENT

Counsel acknowledge familiarity with the provision of Rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure. Counsel have discussed it with the clients against whom claims are made in this case.

## 12. EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice. The pleadings will be deemed merged herein. This Final Pretrial Order supersedes the Scheduling Order. In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 13. TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

1. As stated herein and in the Trial Decorum Order, a nine-day jury trial will commence on Monday, August 7, 2017. No requests for a continuance or

enlargement of schedule will be entertained at this point, barring a true emergency. Pursuant to D.C.COLO.LCivR. 54.2, jury costs will be assessed unless the Court is notified in writing prior to 12:00, noon on Friday, August 4, 2017 that this matter has been resolved.

1. Trial is to a jury.

2. The estimated trial time is seven to ten days.

3. Situs of trial is in Denver, Colorado.

4.2. Any other orders pertinent to the trial proceedings: None.Trial Decorum Order (ECF No. 191).

Dated this 28th of July, 2017.

BY THE COURT:

William J. Martinez
United States District Judge

APPROVED:

*/s/ M. Gabriel McFarland*
M. Gabriel McFarland
Evans & McFarland, LLC
910 13th Street, #200
Golden, CO 80401
Telephone: 303-279-8300
Email: gmcfarland@emlawyers.com

*Attorney for Plaintiff / Counterclaim*
jbaldridge@venable.com
*Defendant David Mueller*

*/s/ J. Douglas Baldridge*
J. Douglas Baldridge
Danielle R. Foley
Katherine M. Wright
Venable LLP
600 Massachusetts, Ave. NW
Washington, D.C. 20001
Telephone: (202) 344-4000
Email:

Email: drfoley@venable.com
Email: kmwright@venable.com

*Attorneys for Defendants Frank Bell, Andrea Swift, and Taylor Swift, and Counterclaim Plaintiff Taylor Swift*